IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI                              )
2620 Poag Street,                            )
Alexandria,Virginia  22303                   )
                                             )
and                                          )
                                             )        CIVIL ACTION NO.  _____
JOHN D. HEMENWAY                             )
4816 Rodman Street, NW                       )
Washington, D.C. 20014                       )
                                             )
and                                          )
                                             )        JURY TRIAL DEMANDED
DAVID HEMENWAY                               )
4813 Rodman Street, NW                       )
Washington, D.C. 20014                       )
                                             )
        Plaintiffs,                          )
                                             )
v.                                           )
                                             )
The SUPERIOR COURT of the                    )
DISTRICT of COLUMBIA                         )
500 Indiana Avenue, NW                       )
Washington, D. C  20001                      )
                                             )
and                                          )
                                             )
The DISTRICT OF COLUMBIA                     )
COURT OF APPEALS                             )
500 Indiana Avenue, NW                       )
Washington, D. C  20001                      )
                                             )
and                                          )
                                             )
THE PANEL OF JUDGES                          )
OF THE DISTRICT OF COLUMBIA                  )
COURT OF APPEALS in their                    )
official capacity as setters of case         )
management policy in their decisions         )
en banc and as three judge panels            )
                                             )
and                                          )

1

ANNE B. WICKS, Executive Officer,          )
District of Columbia Courts,               )
in her official capacity as                )
administrator of the D.C. courts,          )
Room 1500                                  )
500 Indiana Avenue, NW,                     )
Washington, D.C.  20001                    )
                                           )
and                                        )
                                           )
THE BOARD OF JUDGES OF                     )
THE DISTRICT OF COLUMBIA                   )
500 Indiana Avenue, NW                     )
Washington, D. C. 20001                    )
                                           )
and                                        )
                                           )
RUFUS G. KING, III, Chief Judge,           )
Superior Court of the District of Columbia, )
in his official capacity as                )
setter of judicial policy and practice     )
for the Superior Court of the              )
District of Columbia                       )
500 Indiana Avenue, NW                     )
Washington, D. C  20001                    )
                                           )
and                                        )
                                           )
ERIC T. WASHINGTON, Chief Judge,           )
District of Columbia Court of Appeals,     )
in his official capacity as                )
setter of judicial policy and practice     )
for the District of Columbia               )
Court of Appeals,                          )
500 Indiana Avenue, NW                     )
Washington, D. C  20001                    )
                                           )
and                                        )
                                           )
HERBERT B. DIXON, JR.                      )
Judge, Superior Court                      )
of the District of Columbia,               )
in his official capacity as judge to whom  )
the case at issue is presently  assigned,  )
500 Indiana Avenue, NW                     )

Washington, D. C  20001        )
                                          )
                                          )
        Defendants.             )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MONETARY DAMAGES, COSTS AND FEES

### I.

### JURISDICTION

1.   Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to vindicate rights secured by the First, Fifth and Seventh Amendments to the Constitution of the United States, and also upon 42 U.S.C. § 1981, and the law of the District of Columbia.

2.   This Court has jurisdiction over the causes of action set forth in this complaint under 28 U.S.C. §§ 1331, 1337 and 1343 as well 42 U.S.C. 1343 and 1341.  Appropriate declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

3.   This Court has venue over the causes of action set forth herein under 28 U.S.C. § 1391.

### INTRODUCTION: THE GRAVAMEN OF THE CAUSE

4.    The gravamen of the case is the deprivation of the rights of these plaintiffs by the municipal courts of the District of Columbia as a municipality through administrative and judicial practices, policies and customs of those courts rather than decisions of law; the relief sought is declaratory and injunctive in connection with litigation in that court which was initiated in 1986 in the Superior Court of the District of Columbia, CA 7075-86, and as to which these plaintiffs have been denied repeatedly any resolution of their defenses and claims and any advancement of those defenses and claims despite motion after motion, all of which have been unruled upon for years both before and after a stay in the Superior Court of the District of Columbia in order that certain claims, at the instance of a judge of the Superior Court, could be tried in federal courts, particularly this Court.  Despite that plan put upon the case by a judge of the Superior Court as

taken note of by the United States Court of Appeals for this circuit (opinion by Edwards, J. *Hoai v. Sun Refining and Marketing Co., Inc.*, CADC 1989, 866 F2d 1515, at 1519, 1520, 275 USAppDC 397) that the claims, D.C. and federal, be split, when the federal actions were separated out, tried in this Court and one other, and thus concluded as so separated, the Superior Court refused to follow its own plan and, instead of then allowing the claims in the Superior Court by these plaintiffs and those of their opponents there to be tried, sat on the claims of these plaintiffs and blocked them in every way for years while inappropriately trying to let a powerful non-Vietnamese oil company out of the case so as to avoid having it held accountable in any way for behavior that had already been determined in this Court and the United States Court of Appeals for this circuit to be illegal.

5.      Instead of allowing these plaintiffs, as it had promised, to pursue their claims in the Superior Court once matters were wound up in the federal courts, the Superior Court not only blocked, ignored and "sat upon" their claims in every way, it used the excuse of these plaintiffs having tried their claims separately in the federal courts as they were induced by the Superior Court to do, to try and get the oil company, Sunoco, out of the case and permanently prevent any resolution between the plaintiff Hoai and his Vietnamese adversary in the Superior Court proceeding of the matters in controversy between them as pled in the litigation in that court.

6.      It has now, relatively recently, become evident why these events have transpired as they have, and the real reasons why the D. C. courts and their judges and administrators have wanted this case to "go away" as it involves any resolution of the allegations of plaintiff Hoai and the two non-Vietnamese who sought to assist him about his being set upon by a would-be Vietnamese mafia and why the D.C. courts have sought to prevent these plaintiffs from ever having the truth of their allegations of this Vietnamese would-be mafia activity, including threats of violence and even death, reached.  That reason is a racial bias against letting a wronged Vietnamese, and those who assisted him, have his day in court against a would-be Vietnamese

ethnic mafia that had greatly oppressed and wronged him and with whom both Sun and a prominent judge of the Superior Court (and, later, of the D. C. Court of Appeals) had sided, the latter in the role of a prosecutor and advocate, stepping outside the judicial role and, thus, her jurisdiction, altogether.

7.       First, these events were enabled by a singularly clearly wrong and manifestly unjust initial TRO decision of that Superior Court judge, who rose later to great power within the system after she made that decision, a decision in which she ignored testimony about the threatening of breaking of legs, abandoned her rule as a judge and stepped beyond that role and its immunity to become *sua sponte* a prosecutor and advocate in the cause, insisting that these plaintiffs' opponent Vo and  his company, as plaintiffs in that cause, add to their claims one she inserted into the case from her background in private practice before going on the bench at the outset of the TRO hearing.  In doing so she ignored the specialized laws governing service station franchise, D.C. and federal and even the law of the concept she introduced; she ignored this law even though it was before her and ignored also the governing franchise document as placed before her.  As a result she ignored and overrode the constitutional rights of these plaintiffs.   This decision was so clearly wrong and, as made evident in the federal case in this Court from which the Edwards opinion alleged above is taken, worked manifest injustice.

8.       Thus a policy change in the law of the case doctrine which took place in the D.C. courts at that time enabled, *per* se, the ignoring of constitutional rights as protected under 42 U.S.C. § 1983 inasmuch as it abandoned the policy that such interlocutory decisions as the TRO in question, when they affected later stages of the case such as when carried forward into permanent injunctive relief, (also done in this instance in violation of federal rights) could be overturned or vacated or changed if clearly wrong or manifestly unjust in favor of a policy that interlocutory decisions, no matter how clearly wrong or manifestly unjust, could not be challenged unless new facts or newly changed law were put forth.  Thus the entire course of the

proceedings complained of by these plaintiffs, including the "sucker punch" plan of the case imposed upon it and then dishonored, were an exemplification of this policy change which, in the particular case, was used in order to protect a politically powerful municipal judge who rose to great power within the municipal court system of the District of Columbia.

9.    That this was the aim of the Superior Court judges was made evident this past summer when the Superior Court judge then in charge, after ignoring and refusing to consider and rule upon every motion of these plaintiffs to advance their cause literally for years, used the occasion of the retirement of the judge who made the initial clearly wrong and manifestly unjust decision to seek to dismiss the case of these plaintiffs for failure to prosecute.  Thus, after these plaintiffs tried to prosecute their case over and over again with motion after motion over years, all of which the Superior Court judges refused to rule or act upon, including particularly the defendant Dixon, the Superior Court through its judge then sought to destroy the rights of these plaintiffs to have their grievances redressed and their claims tried by a jury by using its own inaction as a pretext for dismissing the claims of these plaintiffs as if the Superior Court's inaction could be transferred to these plaintiffs.

10.    In addition, after the plaintiff Hoai had defeated Sun Refining and Marketing Co., Inc. (Sun) in the case in this Court from which the Edwards opinion referred to above is drawn, and received severely limited damages pursuant to that claim, damages that were specifically limited because the claims were split pursuant to the plan of the case, the Superior Court judge involved, defendant Dixon, while ignoring that plan and the motions of these plaintiffs to advance the cause that had been outstanding for years, leapt with alacrity upon motions of Sun to seek to let Sun out of the case so that the question of Sun's collusion with the Vietnamese would-be mafia against Hoai and the two other plaintiffs herein could not be reached. In what was ruled in this Court was a private act by which Sun colluded with the ringleader of what Hoai maintains is the would-be Vietnamese mafia that was acting against him, Sun and that

ringleader, Thanh Van Vo (Vo) destroyed the value of Hoai's business relationship with Sun under common law tort law, leading to large damages that Hoai was not allowed to recover in his narrow victory in this Court under the Federal Petroleum Marketing Practices Act (PMPA).  It has become evident that, perceiving Sun and those representing Sun as part of the non-Vietnamese "establishment," the Superior Court wants to let Sun out of any possibility that it might be held accountable for its knowingly joining with those whose mafia-like characteristics it well knew and colluding with them against Hoai and the two other plaintiffs here who sought to assist him.  In order to do this the D. C. courts and their judges, it is now clear, want to deny the benefits of the justice system to Hoai and the two others who sought to help him because that would require letting a Vietnamese have the benefits of the American system of justice as it is supposed to be.  This is purposeful racial discrimination.

## FURTHER INTRODUCTION: THE COMPLEX FACT PATTERN

11.     Plaintiffs are an American of Vietnamese ethnicity and racial origin and two Caucasian Americans who tried to assist him when his valuable service station franchise in the District of Columbia was taken over by a group of other Vietnamese who told him that they aspired to be like the Mafia and who used mafia-style tactics, as they perceived them, in taking over the service station franchise through threats, deceit and intimidation, including threats of death, as part of a scheme in which they also lured the Vietnamese plaintiff Thanh Vong Hoai into sinking his capital into a food stall business and then took that over with threats of violence, seizing its inventory into which the Vietnamese plaintiff had sunk, what was for him considerable capital.  While luring his capital into the food stall business, these same individuals induced him to accept a sham loan for the plaintiff Hoai's starting up of the service station franchise with Sunoco.

12.     The counter and third-party defendants in the Superior Court of the District of Columbia case in question pursued this scheme through a pattern of events which included threats

of violence, including death, and a classic "mafia-style" "one dollar contract" forced upon the plaintiff Hoai by the intimidation and threats against Hoai and his family, by which one of the ringleaders of the would-be Vietnamese mafia purported to buy the station, doing so in violation of the local Retail Service Station Act, (RSSA) and the franchises agreement between Hoai and Sun Refining & Marketing (Sun) as entered into under the Federal Petroleum Marketing Practices Act., (PMPA) laws and a contract to which the would-be Vietnamese mafia paid no attention when they employed the tactics that they did.

13.    But, after a considerable time of occupying plaintiff Hoai's Sun Refining and Marketing (Sun) franchise by these mafia-style tactics, the Vietnamese thugs who happened to be in the station on that day left the premises when the plaintiff Hoai, accompanied by the two other plaintiffs in this case, John D. and David Hemenway (the Hemenways) entered the service station, on Pennsylvania Avenue, SE, in Anacostia, with a notice signed by Ernie Peele, the Sun Area Representative, informing those illegally occupying the station, (as required when intruders illegally occupying premises by D. C. law are asked to leave by the legitimate occupants,) that plaintiff Hoai was the lawful franchisee and occupant of the premises and that they should leave. Those members of the would-be mafia occupying the premises at the time left without putting up any opposition or argument.

14.    Several days later, one of the ring-leaders of the would-be Vietnamese mafia, one Thanh Van Vo (Vo), led a gang which reentered the premises in a threatening manner, with one gang member brandishing a knife, early in the morning when plaintiffs Hoai and David Hemenway were in the station, forcing them into retreating into the station building, locking it, and then the gang began to break into the building to get at plaintiffs Hoai and David Hemenway.

15.    David Hemenway called the 911 emergency police number, stating that he and Hoai were under attack, and the police came.

16.     In the ensuing confrontation involving additional parties from both sides, it was agreed that the parties would meet the following day at the station in the presence of Ernie Peele, the Sun Area Representative, and abide by his decision as to who was the legitimate franchisee and occupant of the Sun station on Pennsylvania Avenue, SE in Anacostia.

17.     The parties met on the agreed upon day and Peele informed them that Hoai, a plaintiff here, was Sun's dealer and the legitimate occupant of the station and owner of the franchise.  The would-be Vietnamese mafiosi, with their lawyer present, appeared to abide by the decision Ernie Peele and left the station.  The conversation containing this agreement was tape recorded by John D. Hemenway, one of the present plaintiffs.

18.     However, the ringleader Vo then went out and got other lawyers and within a few days launched a pre-emptive strike lawsuit in the Superior Court of the against the plaintiffs herein, charging them with a number of fabricated common law offenses, such as assault, in effect accusing plaintiffs of the sort of behavior that they themselves had engaged in.  Vo sued in that case along with, as a second plaintiff, a company he had formed when he illegally took over physical control of the gas station franchise. The complaint made no mention of, and avoided, the statutes and the law that govern service station franchises and unfulfilled conditions precedent to any transfer which were clearly set out in the franchise contract between Hoai and Sun (Even though that franchise agreement was attached to their complaint.).  It was drafted as if the same did not exist.

19.     There then began a series of events in the Superior Court of the District of Columbia in which the rights of these defendants to due process under the Fifth Amendment to the Constitution of the United States as it grants that right to those in the District of Columbia were violated and in addition their right to petition for the redress of their grievances under the First Amendment by having access to the courts and the remedies available to citizens therein were persistently and continuously violated.  Ultimately it was made clear that the D. C. courts

did not want these plaintiffs to have a trial by jury on their defenses and their claims against Vo and his cohorts, and particularly against Vo and Sun once Sun knowingly joined with Vo and the would-be Vietnamese mafia as such a trial by jury is guaranteed by the Seventh Amendment. The claims of these plaintiffs against the man Thanh Van Vo and his company as counterdefendants as well as against others of the Vietnamese would-be mafia and those who joined with and cooperated with them (including Sun) in their efforts as third-party defendants, were suppressed, obstructed and ignored in every way.  Early on in these events Sun had switched sides and knowingly joined with Vo and the Vietnamese would-be mafia in their efforts to take and hold the Hoai Sun franchise station on Pennsylvania Avenue and did so pursuant to a Rule and practice of the Superior Court of the District of Columbia which violated constitutional rights of these plaintiffs and so is actionable under 42 U.S.C. § 1983 as complained of herein.

20.    Eventually, a judge of the Superior Court formulated a plan for the litigation whereby these plaintiffs would pursue their federal claims in the federal courts, including this Court, while action in the Superior Court would be stayed pending the outcome of the federal actions and then, when the federal actions were completed, these plaintiffs would have the right to resume and conclude their actions and claims in the Superior Court of the District of Columbia. See Edwards opinion, as alleged in 4, *supra*.

21.    These plaintiffs accepted this plan as offered and, in reliance upon it, proceeded in the federal courts while the actions in the Superior Court were stayed, with, at that point, their motions in that court, such as their motion to enforce the settlement whereby the ringleader Vo agreed to abide by the word of Ernie Peele, before Sun switched sides, unruled upon and their discovery completely blocked even though they had won a motion to compel from the only judge in the Superior Court to in any way allow them to pursue their claims there.  Their several pending motions were to remain unruled upon for years and are still unruled upon.

22.     These plaintiffs proceeded in the Federal Courts.  A RICO case against the would-be Vietnamese mafia in the Eastern District of Virginia by the plaintiff Hoai was unsuccessful when it was dismissed on motion on the grounds that though two separate businesses were taken it was done pursuant to a single scheme.  After Hoai appealed this dismissal to the 4th Circuit it was affirmed and his petition for certiorari to the Supreme Court wsa denied.  A different case with the same issue was taken and a few months after Hoai's petition was denied the Supreme Court struck down the "single scheme" rationale for dismissal where at least two separate such predicate acts as perpetrated against Hoai are involved.

23.     A suit in this Court against the would-be Vietnamese mafia figures and those private individuals who worked with them under 42 U. S. C. § 1983, including Sun for having switched sides to work with them failed and was dismissed because it was held no governmental entities such as the Superior Court itself were defendants or alleged to have been illegally involved.  *Hoai, et al.  v. Vo*, Civil Action No. CV 89-2397.  At that time it had not yet been established in case law as it now has that the District of Columbia is a municipality for purposes of 42 U.S.C. § 1983 and that its entities, including its courts, can be sued under that statute.  No governmental defendants were named in that suit and no governmental actions were directly attacked as violative of the rights of these plaintiffs.

24.     The plaintiff Hoai filed another suit in this Court against Sun as the only defendant under the Federal Petroleum Marketing Practices Act (PMPA), a statute which exclusively provides for service station franchisees to sue oil company franchisors  *Hoai v. Sun Refining and Marketing Company, Inc.,* Civil Action No. 87ca02456.  In the PMPA suit Hoai sought to have the actions in which Sun switched sides and colluded with Vo, the ringleader of the would-be Vietnamese mafia, to take over his franchise and operate it declared an illegal termination of his franchise under the PMPA.  He sought no wider relief in this Court in that suit than  the narrow relief under the PMPA of having these actions by Sun declared an illegal

termination under the PMPA and receive whatever damages he was entitled to under that narrow

relief.  He narrowed what he sought in reliance upon the word of the judge in the Superior Court,

Judge Weisberg, that the Superior Court would follow and honor the plan of the litigation set

forth by Judge Weisberg.   This occurred in colloquy in hearings in the Superior Court of the

District of Columbia wherein this plan of splitting the claims between the federal courts and the

Superior Court was imposed upon the case by Judge Weisberg in hearings on September 16, 1988

and March 14, 1989.

      25.     Although he seemed to take cognizance of the plan of the Superior Court judge,

Judge Weisberg, that these plaintiffs proceed with their federal claims in the federal court and

then go back to the Superior Court to finish up their common law claims there, the judge of this

Court to whom the case was assigned sought to avoid taking action and insisted that the claims of

Hoai in the Superior Court should go ahead while he stayed action in this Court.

      26.     The plaintiff Hoai reversed that decision in an interlocutory appeal taken under

the collateral order doctrine as already set out.  The decision of the Court of Appeals of this

circuit found that the Superior Court wanted the federal causes of action to proceed in this Court

and found that the consent order of the Superior Court that had effectively turned the original

TRO (of which more below) into a permanent injunction without any notice to these plaintiffs as

defendants, counter and third-party plaintiffs in that court represented no independent judgment

of the Superior Court.

      27.     On the basis of that decision of the United States Court of Appeals for this

circuit, the plaintiff Hoai then obtained summary judgment against Sun on the issue of liability

for the illegal termination of the franchise in violation of the terms of the PMPA.  In granting

partial summary judgment to the present plaintiff Hoai as the plaintiff in that PMPA case, the

judge of this Court held that a Consent Order entered into under the Judge-in-Chambers

procedure then in effect in the Superior Court of the District of Columbia between Vo and Sun

only, without any notice to Hoai (or for that matter the Hemenways) illegally terminated Hoai's franchise with Sun under the PMPA. This is the same consent order between the two parties Vo and Sun that the United States Court of Appeals for this circuit had already held constituted no independent judgment of the Superior Court. See the October 1, 1990 opinion by Judge Louis F. Oberdorfer, of this Court granting summary judgment to present plaintiff Hoai in his PMPA case against Sun after Hoai reversed the stay of his PMPA action in the U. S. Court of Appeals opinion alleged above. This opinion is reported on Lexis-Nexis as 1990 U. S. Dist. Lexis 13015.

28.    A trial was then held in this Court on the amount of the damages resulting from the illegal termination and a verdict was returned against Sun that was restricted by the judge of this Court to compensatory economic damages for a short term of the franchise and then attorney's fees were awarded under the fee-shifting provisions of the PMPA. The Court ruled that there could be no common law tort type of damages such as pain and suffering in the manner claimed by these plaintiffs in their common law claims in the Superior Court, and that there could be no punitive damages awarded in this Court under the PMPA, such damages, it was held could only be sought pursuant to common law claims, which Hoai had not filed in this Court. These plaintiffs had filed such claims in the Superior Court in accordance with the aforesaid plan of the litigation, though, at that point, Judge Oberdorfer overlooked that pertinent fact and implied that Hoai should have filed such claims in the federal court but it was then too late to do so.

29.    Thus, late in the day in that PMPA case by the plaintiff Hoai against Sun, the judge of this Court, ignoring the plan of the litigation imposed by the Superior Court, opined that Hoai should have brought his common law counts in this court and that he had been amiss in not doing so. He also volunteered his opinion that the main reason for Sun's having gotten into difficulty was the dispute between Hoai and Vo, as if Sun had not knowingly and willfully colluded with the would-be Vietnamese mafia, though there was no information before Judge Oberdorfer to support such opining.

30.     After the conclusion of the PMPA suit, the stay in the Superior Court was lifted upon motion by these plaintiffs.

31.     Upon the lifting of the stay after the completion of the actions in this Court in accordance with the plan of the litigation as imposed by Judge Weisberg of the Superior Court, the Superior Court completely ignored all of the outstanding motions of these plaintiffs, including dispositive motions and motions seeking to get some meaningful discovery, since, despite having been granted a motion to compel, these plaintiffs had been unable to get any meaningful discovery and the counter-defendant Vo in particular had been allowed to have been completely defiant about discovery.   The motions thus deliberately ignored included motions that had been outstanding and unruled upon for years as well as additional dispositive, discovery and other motions.   In particular when these defendants made a motion based upon the holdings of this Court and particularly the United States Court of Appeals for this circuit that seemed to dispose of the claims against them in the Superior Court in many respects and render clearly erroneous some of the early holdings in the Superior Court they were completely ignored, as if they weren't even there and as if their many motions did not exist.

32.     These plaintiffs were not allowed to advance either their defenses or their many claims in the Superior Court in any way, despite their many outstanding motions, many of them outstanding for years and in particular were not allowed to advance any of their claims about Sun's switching sides and knowingly colluding with the would be Vietnamese mafia against Hoai and also against the Hemenways as the Hemenways sought to help Hoai.

33.     Instead the judge in the Superior Court to whom the case was then assigned, defendant Dixon, leapt with alacrity upon Sun's motion to be dismissed from the case, and it only, and sought to let Sun off the hook altogether for any collusion with the would be Vietnamese mafia.

34.     Defendant Dixon did this by ignoring the plan that his own court had imposed upon the litigation, violating that plan, and used the fact that the claims in the case had been split, although that had been done at the instance of his own court, to seek to let Sun off the hook.

35.     He did this also to prevent these plaintiffs from ever being able to overturn the extremely flawed and clearly wrong TRO in the case, which had been effectively turned into a permanent injunction by the consent order obtained by Vo and Sun in a collusive fashion without any notice to these defendants in the proceeding which the United States Court of Appeals for this circuit had recognized was no independent judgment of the Superior Court at all.

36.     Though these proceedings were interlocutory completely and were plainly wrong and had been found by this Court, at that point, to have worked a manifest injustice by terminating Hoai's franchise illegally, these plaintiffs were not allowed to seek to have them held erroneous and declared as such or overturned in any way.

37.     To have allowed this right to these plaintiffs to proceed in the courts and thus have due process and seek to petition for the redress of their grievances, would have exposed the outrageous error in these proceedings early in the case which had then become "locked in" and embarrassed the judges who perpetrated them in violation of these plaintiffs' rights which the Superior Court used its procedures, practices and administration of the case used to make sure could never happen.

38.     In particular defendant Dixon rule with alacrity on Sun's motion only and then sat on the case of these plaintiffs in every respect until the time recently, years later, when the judge who perpetrated the original TRO violative of these plaintiffs' rights retired from the D. C. Courts.

39.     At that point, and that point only, defendant Dixon held a status conference and made it clear to these plaintiffs that he wanted to dismiss their case altogether in order to ensure that no resolution of the claims against them which they have always maintained were fabricated,

would not be heard and that those fabricated claims would not be resolved on their merits and that the counter and third-party claims of these plaintiffs would never be advanced or heard in any way.

40.    Defendant Dixon attempts to do this in the guise of the alleged failure of these defendants to prosecute their case when they made motion after motion and never could get them heard or ruled upon and when their discovery efforts had been greatly curtailed by the Superior Court so that the Superior Court refused to allow these plaintiffs to prosecute their case and now seized upon that which it imposed upon these plaintiffs to dismiss the case of these plaintiffs so as to cut off any effective appeal by them.

41.    In so doing the defendant Dixon made clear that the Superior Court, despite the plan it imposed upon the litigation, would seek to make sure that the large oil company Sun, as part of the non-Vietnamese and non-ethnic establishment, will have its every wish in the Superior Court heeded but that mere Vietnamese and those that seek to assist a Vietnamese, are not worthy of receiving the benefits of the justice system.  They must solve their "problems" among themselves without any right to resort to the American system of justice or hope in any way that the Superior Court might take seriously in any way the claims of one such as Hoai as opposed to whatever Sun wants.  This is a very insidious type of racial discrimination and it violates 42 U.S.C. § 1983.

42.    These are violations of 42 U.S.C. § 1983 and § 1981 by policies and practices of the D. C. courts which are not law as such and by acts of its judges which are outside the law or are policy decisions concerning case management not law as such.

43.    First among these policies and practices was a doctrine developed in the case law of the District of Columbia courts and by the D. C. Court of Appeals in particular under which the "law of the case" doctrine no longer allowed the correction of preliminary, interlocutory and supposedly temporary orders because of such things as "manifest erroneousness of the prior

decision," "where the earlier decision was plainly wrong," and where to apply the rule "would

work manifest injustice."

44.    Starting in 1986 so as to apply it to the claims of these three plaintiffs in

particular, as the official policy of the municipality of the District of Columbia, it was no longer

sufficient that an earlier ruling be clearly or manifestly erroneous or work a manifest injustice or

be clearly wrong.  Commencing in that year, the D.C. courts held and the defendant District of

Columbia Court of Appeals held in particular, without specifically overruling any of the earlier

cases, that an earlier, preliminary, interlocutory ruling must be "clearly erroneous in light of

newly-presented facts or a change in substantive law.   This is in contrast to the federal courts of

this jurisdiction which still adhere to the old doctrine. Thus, the D.C. local, municipal courts,

through decisions of the D.C. Court of Appeals made it official policy that no interlocutory or

temporary ruling or earlier ruling in a case, no matter how wrong, or how much it works a

manifest injustice or how manifestly it is erroneous, even a TRO, will ever be reconsidered unless

there is some change in the substantive law or newly presented facts.   This present case presents

a clear picture of how this judicial policy deprived these plaintiffs of important constitutional

rights, namely their rights of due process as made applicable to the District of Columbia under the

Fifth Amendment and their rights of access to the courts in order to have the benefits of the

courts' processes as part of their right to petition for the redress of their grievances under the First

Amendment.

45.    Further, it has now been revealed by the behavior of the defendants Superior

Court, District of Columbia Court of Appeals panel of judges and the Board of Judges and Judge

Dixon that this policy has led to a pattern of behavior in which the claims of a Vietnamese-

American man and those who assist him will not be taken seriously, will not be allowed to be

heard or adjudicated and, generally, will not be paid attention to or taken seriously.  Thus it is a

conscious denial of  the benefits of the justice system to one who is Vietnamese and who alleges

very serious wrongs, and a denial also of the rights of those attempting to assist him, by an attitude that mere Vietnamese are not deserving of the justice system or justice because they are not part of the "white" establishment of America by contrast with the non-Vietnamese Sun Refining & Marketing Company, whose motions and every letter and suggestion were heeded and granted with alacrity in the subject case without any regard for the motions of the Vietnamese plaintiff which went unruled upon literally for years in order to set it up so that the claims of the Vietnamese plaintiff and the two Americans who sought to assist him might be buried altogether without any right of appeal, the situation that now threatens.

46.     The  purpose of the implementation of this policy as newly adopted in the District of Columbia courts as applied to the subject case in the Superior Court over a span of time from 1986 to the present, for over 19 years, as it is now revealed, was to prevent a particularly flawed and erroneous initial decision to issue a TRO against these plaintiffs as defendants in that cause from ever being effectively reviewed and corrected, even though a TRO, by definition, Rule and law, is to be temporary and valid for 10 days only unless extended.

47.     The TRO at issue was never legally extended but was extended in fact, in violation of the rights of these plaintiffs extended illegally by the use of another Rule, practice and procedure of the Superior Court of the District of Columbia as in effect at that time in violation of 42 U.S.C. § 1983 as it protected the rights of these plaintiffs to due process and the redress of their grievances.  Under this procedure, pursuant to a "Judge-in-Chambers" Rule as in effect at the time, two parties to a multi-party case, in this case Vo and Sun, one the plaintiff, and the other then a defendant, could go to a Judge in Chambers without giving any notice to the other parties in a case and get a willing judge to give a private consent order between them the effect of a  judgment extending the TRO and *de facto* making of it a permanent injunction, even though, as subsequently found by the United States Court of Appeals for this circuit, it did not have any status as an independent judgment of the Court but was only a private consensual

agreement between on plaintiff and one defendant in that cause without even any notice to the other defendants who were dramatically effected by, and had their property and rights deprived by virtue of it.

48.     In a further violation of the rights of these plaintiffs under the Constitution as secured by 42 U.S.C. § 1983, though a bond was set for the TRO as a necessary condition precedent according to the law of TRO's as purportedly recognized by the courts of the District of Columbia, and was to be paid in cash by a time certain, in fact the bond was not paid in cash by the time set but was "paid" with an NSF check on the very account of the service station which Vo was illegally occupying, (as now determined by a decision of this Court). Though the law of the District of Columbia purportedly recognizes that bonds must be paid as a precedent condition in order for TRO's and other injunctions to come into being, in fact the administrators of the D.C. courts have developed a policy and practice of routinely not requiring timely payment of such bonds and routinely release them improperly as well.

49.     None of these policies and practices are functionally legal decisions, but are rather administrative and policy decisions, made by those to whom the authority for such decisions was delegated or given.

50.     This policy of the law of the case doctrine in particular is not a legal doctrine or decision as such, but rather a policy in administering the calendar of the courts, as recognized by the courts of the District of Columbia in cases, it is a rule of practice, not a limitation of power, and in this, before the Court Reform Act, when the federal courts had appellate jurisdiction directly over the District of Columbia, followed the Supreme Court of the United States.

51.     That is a policy, not a legal decision, was recognized in *Morse v. Morse*, 213 A.2d 581, 583 (D.C. 1965), and the old case of *Davis v. Davis*, 96 F.2d 512, 68 U.S.App.D.C. 240, 243 (D.C. Cir. 1938), following *District of Columbia v. Brewer*, 32 App. D.C. 388; *Warner v. Grayson,* 24 App. D.C. 55 noting that the Supreme Court of the United States had said that the

rule does not constitute an absolute limit upon the power of the court, but, rather, expresses the practice of courts generally to refuse to reopen what has been decided.  *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152, and cases there cited; *King v. West Virginia,* 216 U.S. 92, 100, 101, 30 S. Ct. 225, 54 L. Ed. 396.  The court has power, under some circumstances, to disregard a prior decision, although it should not be exercised, except in a clear case (*Williams v. Order of Commercial Travelers*, 6 Cir., 41 F.2d 745), where the earlier adjudication was plainly wrong (*Seagraves v. Wallace*, 5 Cir., 69 F.2d 163, 165; *Rogers v. Chicago, R. I. & P. Ry.*, 8 Cir., 39 F.2d 601, 604), and where the application of the "law of the case" rule would work manifest injustice.  *Zurich General Accident & Liability Ins. Co. v. O'Keefe,* 8 Cir. 64 F.2d 768, 770; *Johnson v. Cadillac Motor Car Co.*, 2 Cir., 261 F. 878, 886, 8 A.L.R. 1023.  Cf. *United States v. Moser*, 266 U.S. 236, 242, 45 S. Ct. 66, 67, 69 L. Ed. 262.

52.    And finally, it is now clear, the purpose of these actions also was and is to assure that these plaintiffs will never get the serious issues that they have raised in their defenses and claims tried by a jury as guaranteed under the Seventh Amendment, lest a jury correctly perceive right and wrong and find that Hoai and the Hemenways were trespassed against and harmed by Vo and his would-be Vietnamese Mafia and that the party that switched sides, Sun, doing so knowingly to combine with parties they knew had threatened violence against their  own franchisee, was guilty of deliberate and knowing collusion with the would-be Vietnamese mafia of which Vo was a ringleader.  The purpose of this also has a racially discriminatory component of protected Sun, as a member of the non-Vietnamese "establishment" from having to suffer the consequences of its wrongs against a Vietnamese man and those who sought to assist that Vietnamese man.

## PARTIES

53.  The plaintiff Thanh Vong Hoai is a resident of Northern Virginia who, at the pertinent times to the litigation at issue in the Superior Court of the District of Columbia and the

Court of Appeals of the District of Columbia owned and operated a Sunoco franchise on Pennsylvania Avenue, SE, in Anacostia. In the case at issue in the D. C. courts, he was sued and then became a counter-plaintiff and third-party plaintiff as well as a defendant.

54.    The plaintiff John D. Hemenway is a resident of the District of Columbia and member of its bar who attempted to assist the plaintiff Thanh Vong Hoai in protecting his gas station franchise and another business, a food business located in a Vietnamese shopping center building in Arlington, Virginia, when the third party defendants other than Sunoco initially attempted to take them away from the plaintiff Hoai. In the case at issue in the D. C. courts, he was sued and then became a counter-plaintiff and third-party plaintiff as well as a defendant.

55.    The plaintiff David Hemenway is a resident of the District of Columbia who attempted to assist the plaintiff Thanh Vong Hoai in protecting his gas station franchise and another business, a food business located in a Vietnamese shopping center building in Arlington, Virginia, when the third party defendants other than Sunoco initially attempted to take them away from the plaintiff Hoai. In the case at issue in the D. C. courts, he was sued and then became a counter-plaintiff and third-party plaintiff as well as a defendant.

56.    The defendant Herbert B. Dixon, Jr., ("Judge Dixon") is a judge of the Superior Court of the District of Columbia, the municipal court in which the case at issue is presently pending and is the judge to whom the case is presently assigned.

57.    The defendant Superior Court is the trial level court of the District of Columbia, and as such is the court of a municipality under the decisions of the courts.

58.    The defendant District of Columbia Court of Appeals is the appellate court of the District of Columbia as a municipality for purposes of the statutes sued under.

59.    The defendant Anne B. Wicks is the Executive Director of both the trial and appellate courts of the District of Columbia and, as such, is responsible for policies and practices of those courts. She is sued in her official capacity only.

60.    The defendant Board of Judges of the District of Columbia consists of the Chief Judge and all the Associate Judges of the District of Columbia Superior Court.  They are responsible for policies and practices of the Superior Court and for seeing that they are carried out and observed.

61.    The defendant Rufus G. King, III, is the Chief Judge of the Superior Court of the District of Columbia and, as such, in his official capacity, in which capacity he is sued, can decide upon and influence judicial policy such as that which is involved in litigation plans that allow claim splitting and their enforcement and in case management policy where there is application of law of the case doctrine or discriminatory treatment based on race or national origin or other such discretionary matters of judicial policy as opposed to application of the law as such.

62.    The defendant Eric T. Washington is the Chief Judge of the District of Columbia Court of Appeals and, as such, in his official capacity, in which capacity he is sued, can decide upon and influence judicial policy such as that which is involved in litigation plans that allow claim splitting and their enforcement and in case management policy where there is application of law of the case doctrine or discriminatory treatment based on race or national origin or other such discretionary matters of judicial policy as opposed to application of the law as such.

63.    The defendant panel of judges of the District of Columbia Court of Appeals is the body of judges of that Court addressed in their official capacity as they make decisions, particularly those decisions that are not legal decisions as such but decisions about case treatment and management.

64.    For purposes of the Federal Civil Rights Statutes at issue here the defendant courts and court officers are courts and officers of a municipal government, that of the District of Columbia., a body duly constituted pursuant to the Constitution and acts of Congress.

II.

22

COUNT ONE: A JUDICIAL POLICY OF NO LONGER ALLOWING THE
VACATION OR REVERSAL OF INTERLOCUTORY ORDERS, EVEN TRO'S,
VIOLATES 42 U.S.C. § 1983 INASMUCH AS IT HAS ENDED ALLOWING
INTERLOCUTORY ORDERS THAT ARE CLEARLY WRONG OR MANIFESTLY
UNJUST FROM BEING CORRECTED

65.  Plaintiffs incorporate herein by reference the allegations of 1 through 64 above.

66.  By abandoning the judicial policy under its practice of the law of the case doctrine

that interlocutory orders, including TRO's, that were clearly wrong or worked a manifest injustice

in favor of a policy of the law of the case doctrine that only allows the vacation or reversal of

interlocutory orders, as here a TRO where there is new evidence or newly developed law the

defendant courts of the District of Columbia and the defendant District of Columbia Court of

Appeals in particular have violated 42 U.S.C. § 1983 inasmuch as such a policy and doctrine does

not allow for the correction of violations of the constitutional or federal statutory rights such as

occurred here.

67.  A conscious, judicial policy decision to abandon a policy standard whereby

interlocutory orders and decisions will be vacated or corrected or reversed if plainly wrong in

favor of a policy that such decisions will only be vacated, corrected or reversed if there are new

facts or newly developed law affecting the decision, if done purposefully, is either a deliberate

deprivation of due process rights as applicable to the District of Columbia under the Fifth

Amendment and also of litigants' right under the First Amendment to Petition for the Redress of

their Grievances through the courts or a negligent deprivation of those rights.

68.  In this case it also has led to an attempt to deprive these plaintiffs of their right to a

trial by jury under the Seventh Amendment.

WHEREFORE, in this Count One, these plaintiffs pray for:

A.  A declaratory judgment that the change in policy by the District of Columbia

Courts as set out and alleged is a violation of 42 U.S.C. § 1983 that leaves

litigants such as these plaintiffs vulnerable to a violation of their constitutional and federal statutory rights and

B.  A temporary and permanent injunction against these defendants that the old policy as it was before the passage of the Judicial Reform Act and up until just before the time of the litigation at issue be resumed and that the courts of the District of Columbia use a policy standard of allowing the vacating, correcting or reversing of interlocutory decisions, particularly TRO's made permanent as here, where they are clearly wrong or manifest an injustice, and that, further, decisions that implemented that flawed policy, such as have occurred here in the D. C courts, be declared violative of those rights.

C.  A temporary and permanent injunction that this flawed policy as it was applied in the subject litigation be considered and examined and that any refusal to reexamine flawed interlocutory decisions in the case be reexamined, particularly where these plaintiffs moved in dispositive motions or otherwise for such reexamination and their motions have remained unruled upon for years.

D.  A declaration that a Temporary Restraining Order (TRO) is governed by the policy of the law of the case doctrine and not by the law of *res judicata* or issue preclusion.

E.  An award of the costs of this proceeding, including reasonable counsel fees, against these defendants pursuant to 42 U.S.C. § 1988.

F.  An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to the plaintiff Hoai by the actions complained of.

G.  Such further and other relief as to this Court may seem meet and just.

COUNT TWO: DECLARATORY AND INJUNCTIVE RELIEF AGAINST
THE ORIGINAL FLAWED DECISION VIOLATIVE OF PLAINTIFFS'
RIGHTS

69.   Plaintiffs incorporate herein by reference the allegations of 1 through 68 above.

70.   When Thanh Van Vo and his company Suntech filed their preemptive law suit in
violation of the settlement agreement that they had entered into at the station as set out in above
they requested a Temporary Restraining Order (TRO).

71.   The judge who heard their TRO request, Judge Annice Wagner, then an associate
judge, a trial judge in the Civil Division of the Superior Court, stepped outside of her judicial role
and function and decided to act a prosecutor and advocate against these plaintiffs and Sun as the
then named defendants in the lawsuit in question, introducing into the cause a tort not pled by the
plaintiffs and insisting that these defendants be tried for it.  She thus stepped outside her common
law immunity and privilege as it protects her personally against violations of 42 U.S.C. § 1983
and acted where she had no jurisdiction at all, as opposed to arguably making a questionable
judgment where she did have some basic jurisdiction.

72.   It happened like this:

73.   Vo and the company he had set up to take the franchise from the plaintiff Hoai sued
in the Superior Court on a number of common law theories with fact allegations that plaintiffs
maintain were entirely fabricated such as that plaintiff David Hemenway, when he brandished an
iron bar from within the locked station building to indicate that he and the plaintiff Hoai would
protect themselves if the gang led by Vo continued to break into the station building was
committing an assault.  Their other theories were: breach of the one dollar extortionate contract,
civil trespass, conversion, lost profits, and tortious interference with a business contract.  At that
time they sued not only the three plaintiffs in this litigation but also Sun as having allegedly
participated in these enumerated torts.

74.  The attorneys for Vo and Suntech presenting the case for the TRO had scarcely gotten out a few sentences of their case when the judge, Judge Wagner, interrupted and made it clear that she did not care about the torts that were pled; she wanted these plaintiffs and Sun, as the defendants at that point, prosecuted for the tort of "wrongful eviction."  This was a tort that had not been pled and was thus not in the complaint which the TRO was in support of.

75.  Thus the judge, Judge Annice Wagner, stepped outside the role of jurist and took on the role of prosecutor and advocate in complete violation of the rights of these defendants, which she trampled upon egregiously.  For this a judge has no jurisdiction.  It is not a case of having some jurisdiction and exceeding the bounds of propriety.

76.  In doing this she ignored completely the laws governing gas station franchises in  the District of Columbia such as the PMPA (as noted in this Court in the PMPA case)  and the District of Columbia Retail Service Station Act (RSSA), both of which enable  or, in the latter case, statutorily mandate waiting  periods before such transfers of service station franchises in order that the franchisor (Sun here) may check the background and experience as  well as the credit and financial status of the proposed transferee.

77.  Thanh Van Vo had no background and experience as an operator of service stations and did not even know how to check the oil in a car.

78.  Thanh Van Vo had no credit and financial strength; in fact he and his colleague Thach were running a scam in which Thach falsely claimed to be president of a bank and they falsely claimed to be lending the plaintiff Hoai $35,000.00 by putting it in an account for the station when in fact they "salted" the account with a very small amount of money, then forbade the plaintiff Hoai access to it while they then put the proceeds of the station into the account while writing bad checks on the account, including to the Superior Court for the TRO bond and to Sun for gasoline deliveries.

79.  The plaintiff Vo and his company attached to and incorporated into their complaint a copy of the franchise agreement between the plaintiff Hoai and Sun which clearly set out the precedent conditions which had not been fulfilled.

80.  Thus by the language of the complaint the plaintiff in the Superior Court suit, Thanh Van Vo, and his company were asking the defendant Superior Court to enforce the conditions precedent that they knew had not been fulfilled in order to impose their unlawful "one   dollar contract" upon the plaintiff  Hoai and Sun in violation of the very franchise agreement between Hoai and Sun which they had incorporated in their complaint as well as the applicable law controlling service station franchises.

81.  Further, the common law claims of Thanh Van Vo and his company Suntech in the Superior Court initial complaint were invalid in that they assumed that franchise belonged to Thanh Van Vo and that these plaintiffs were trespassers when, of course, it was the other way around, something that the plaintiff Hoai ultimately had to come to this Court to establish and did.

82.  The Vo complaint did not even request any injunctive relief for the TRO being sought to be in support of.

83.  Nonetheless, all of this was ignored by the TRO judge in order that she might act as a prosecutor and advocate and insert into the case and prosecute  her  concept of "wrongful eviction" which she knew of from her days in private practice as a "People's Counsel" enforcing tenants' rights.

84.  This was not an landlord and tenant situation and hence, even by D.C. law the concept of wrongful eviction did not apply as well as for many other reasons, such as that Vo was an intruding scrambler in Prosser's phrase.  He had no occupancy rights; he was  trying to get the Superior Court to give him such rights in the face of clear contractual and legal barriers against them.

85.  During the hearing there was testimony from Ernie Peele, Sun Area Representative, about the failure to meet precedent conditions by Vo and the talk by Vo and his would-be Vietnamese mafia colleagues about "breaking legs" of Hoai.   The TRO judge ignored these things, refused to consider the actual facts of the case or the controlling law and found the equities to be for the would-be Vietnamese mafias. In fact she made no effort at all to consider the harm that would come to the plaintiff Hoai from her decision to deprive him of his gas station franchise based on her emotional decision to become a prosecutor in the cause.

86.  This was as clear a case of a decision that was clearly wrong and worked a manifest injustice as could be found.

87.  Nonetheless, since the TRO all the energies of the defendant courts have been devoted to seeing that this clearly wrong and manifestly unjust decision is never examined or in any way found to have been wrong.

WHEREFORE, these plaintiffs pray in this Count Two that this Court:

A.  Declare that for the TRO judge to step outside the rule of jurist and assume the role of prosecutor was outside of any jurisdiction that a judge has and was a violation of the constitutional rights of these plaintiffs to the due process of law as the same is applied to the District of Columbia under the Fifth Amendment and also a violation of their right to petition for the redress of their grievances and pursue them in court under the First Amendment inasmuch as the TRO judge stepped outside her role as a jurist and acted as a prosecutor and advocate in order to block those rights and that the same, therefore, can be addressed with declaratory and injunctive relief pursuant to 42 U.S.C. § 1983;

B.  Temporarily and  permanently enjoin the D.C. courts to examine the TRO proceedings and results and determine whether they were clearly wrong and/or manifestly  unjust inasmuch as they affect the counterclaims and third-party claims

made by these plaintiffs in the Superior Court proceeding and that the impact of the resulting TRO and those proceedings in their wrongfulness or manifest injustice as they affected these plaintiffs be fully considered in considering all the motions of these plaintiffs which the Superior Court has refused to rule upon for years and the advancement of the defenses, counterclaims and third-party claims of these plaintiffs in the Superior Court.

C.   That the extent to which the events in the Superior Court case in question have been an attempt to make sure that the wrongfulness and manifest injustice of the TRO proceedings not be examined be analyzed and corrected, particularly as regards the motions of these plaintiffs that have been unruled upon for years which would implicate that wrongfulness and manifest injustice.

D.   An award against the defendants of the costs of this litigation, including counsel fees, pursuant to 42 U. S. C. § 1988.

E.   An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to the plaintiff Hoai by the actions complained of.

E.   Such further and other relief as to this Court may seem meet and just.

COUNT THREE: DECLARATORY AND INJUNCTIVE RELIEF: THE PROCEDURE OF THE SUPERIOR COURT THAT ALLOWED THE TRO TO BE TURNED INTO A PERMANENT INJUNCTION BY PRIVATE COLLUSIVE ACTION BETWEEN VO AND SUN

88.   Plaintiffs incorporate herein by reference the allegations of 1 through 87 above.

89.   The TRO that was granted as set out above, as is standard, stated that it would expire by its own terms in ten days.

90.   Though one was required by D. C. Superior Court Civil Rule 65 which was the same as Federal Rule of Civil Procedure 65 no temporary injunction hearing was ever held.

91.  Instead Sun, then a defendant, decided collusively to switch sides and give the franchise and station to the man Thanh Van Vo, who, along with his company he formed to take the station, had sued Sun along with these present plaintiffs as a defendant in the Superior Court action in question.

92.  At that time the defendant Superior Court had a Rule called the Judge-in-Chambers Rule.  Under this rule and the practice and procedure under it in the Superior Court any parties to multi-party litigation could go to the judge-in-chambers without notifying any of the other parties to the controversy and agree among themselves how to dispose of the property in controversy without even notifying the other parties to the litigation and enter the matter as a Consent Order and then get other judges in the court to act like their private agreement had the force of a decision, of law in effect.

93.  That is what Sun and Vo did in the subject litigation, even though, as it was later held in this Court, the same was an illegal termination of plaintiff Hoai's franchise and the same had no status as an actual judgment.

94.  This private agreement was treated as judgment thereafter by the defendant Superior Court and the defendant District of Columbia Court of Appeals and their members and to this day has not been held to be other than a judgment or treated as what it is, a private collusive agreement between two private parties without any force of judgment by the judges of the defendant courts.  The parties Vo, Suntech and Sun have been repeatedly allowed to successfully argued that this illegal act established a binding rule of the case and made the equally illegal TRO a *res judicata*.

95.  These plaintiffs have not been allowed in the D.C. Courts to proceed against this private agreement as what it is in order to pursue claims of interference with contract and other torts that arise from such collusive action that is illegal as it affected and affects these plaintiffs.

96.  These plaintiffs appealed the TRO as *de facto* made into a temporary and permanent injunction by the private consent order obtained through the judge-in-chambers proceeding but the defendant District of Columbia Court of Appeals refused to rule on the issues because it found them to be "moot", holding that they both had expired, even though the defendants Superior Court and its Board of Judges continued to give them practical effect.

97.  For their effect was permanent, depriving Hoai of his franchise and, in addition to violating the PMPA as an illegal termination as found by this Court subsequently, also interfering with his contract and business relationship with Sunoco, constituting an abuse of civil  process against these  plaintiffs and other claims which they have pending in the Superior Court.

98.  The Superior Court continues to avoid examining either the TRO or the consent order as being clearly wrong or manifestly unjust and, to avoid having to do so, sits on and blocks all the motions and claims of these plaintiffs and now seeks to dismiss their claims altogether by seeking to transfer its failure to act to them.

99.  The defendant D. C. Court of Appeals was following its practice that it has developed that no interlocutory opinion, no matter how clearly wrong or manifestly unjust, shall be reexamined and reconsidered and seeking to assure that the Superior Court did not have to examine or find fault with or correct the TRO and the consent order and their consequences either.

100.  Thus, up until the present time the Superior Court has refused to undertake any examination of this judge-in-chambers authorization of what this Court and the United States Court of Appeals for this circuit have recognized and found to be a wrongful private act that illegally terminated the franchise of the plaintiff Hoai and put Sun in the position of privately colluded with a man that its personnel knew was the ring-leader of a would-be Vietnamese mafia that was preying upon its franchisee, Hoai, to harm Hoai and the other two plaintiffs herein.

101.  As a consequence the D.C. courts, and the Superior Court in particular have purposefully prevented these plaintiffs from having their common law claims that implicate Sun heard in violation of their rights of due process and to petition for the redress of their grievances, and, further, to have their claims against Sun by a jury, all in violation of 42 U.S.C. § 1983 and have consistently, rather than hearing or allowing the motions and claims of these plaintiffs to advance,  have sought to let Sun out of the case based on applying false ideas about the holdings of this Court and the United States Court of Appeals for this circuit, all to avoid examination of these clearly wrong and manifestly unjust policy decisions.

102.  These persistent attempts to interfere with the rights of these plaintiffs in order to assist Sun are taken because Sun with its representatives are part of the non-Vietnamese establishment perceived as Caucasian and the plaintiff Hoai, and the two assisting him, are perceived by the Superior Court as not part of that establishment and, therefore, not worthy of benefiting from the Superior Court's system of justice, that is, having their claims treated seriously and heard.  This is in violation of 42 U.S.C. § 1981.

WHEREFORE, these plaintiffs pray in this Count Three that this Court:

A.  Declare that the said procedure of the Superior Court for a Judge in Chambers to give private agreements between less than all the parties to a case the imprimatur of the Superior Court as if it were a judgment where such valuable property was involved without notice to all the parties was on its face unconstitutional and violative of 42 U.S.C. § 1983 and that it was used here to deprive these parties of their due process rights under the Fifth Amendment as applicable in the District of Columbia, their right to petition for the redress of their grievances through the courts as guaranteed by the First Amendment and, ultimately, their right to equal treatment under the laws as the advocates of the claims of a Vietnamese under 42 U.S.C. § 1981.

B.  Declare that the consistent and persistent refusal of the D. C. courts to examine the wrongness of this use of the Superior Court's judge-in-chambers proceeding and the implications of the findings by this Court and our United States Court of Appeals that the consent order thus obtained was a private act violates the rights of these plaintiffs and that they are entitled to have their claims that this wrongful private act of the consent order allows them to make common law tort claims which include Sun as a third party defendant colluding with Vo and to have those claims paid attention to and heard with Sun kept in the case and to have any attempts to allow Sun out of the case vacated until such claims involving Sun are heard.

C.  To enjoin temporarily and permanently that the Superior Court hear all the outstanding motions of these plaintiffs concerning the private consent order and the involvement of Sun in the torts at common law, apart from the federal claims already heard in this court, and that the Superior Court reconsider any orders releasing Sun from the case until such claims involving Sun are fully heard by a trier of fact and adjudicated.

D.  To award to these plaintiffs all of their costs of this action, including counsel fees under 42 U.S.C. § 1988.

E.  An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to these plaintiffs by the actions complained of.

F.  Such further and other relief as to this Court may seem meet and just.

## COUNT FOUR: DECLARATORY AND INJUNCTIVE RELIEF: THE TRO THAT NEVER CAME INTO BEING

103.  Plaintiffs incorporate herein by reference the allegations of 1 through 102 above.

104.   The TRO that was entered in the subject Superior Court case specifically ordered that the TRO was conditioned as a precedent condition upon the plaintiff in that matter, Thanh Van Vo, posting a bond in "cash" of $3,000.00   That TRO is attached and incorporated herein by reference.  It is dated August 29, 1986.

105.   Toward the end of the second day of the TRO hearing, which was the day that the TRO debate was heard to the extent it was heard, counsel for the plaintiff Vo and the plaintiff Suntech implored the TRO judge to be able to use an attorney's check in lieu of cash.

106.   The plaintiff did not pay for the ordered precedent condition bond with either cash or an attorney's check.

107.   Instead the plaintiff purported to pay the ordered bond with a check drawn of the account of the service station franchise that  he, as has now been established by decision of this Court, did not own.

108.   The check was not covered by sufficient funds and Thanh Van Vo knew this when he issued the check.

109.   In fact what Thanh Van Vo did, as was documented extensively by these plaintiffs in their filings in the Superior Court which the judges of that court have never read or heeded (the same is true for the defendant D. C. Court of Appeals and its judges) was to purport to lend $35,000.00 to the plaintiff  Hoai to assist him in capitalizing the Sun franchise which was a fraud. Thanh Van Vo and his would-be mafia colleague Thach set up a bank account for the station, barred the plaintiff Hoai from access to it or knowledge of what was in it.  They fraudulently told Hoai that they had put $35,000.00 into the account when in fact they "salted" it with a few hundred dollars.  Then they put the proceeds which they appropriated from Hoai's franchise into the account and wrote checks on it, including this one, which bounced  They also bounced a check to Sun for a load of gasoline.

110.  Weeks later the Superior Court notified Vo of the NSF check.  See Attachment incorporated by reference.

111.  In the District of Columbia a check is not payment unless  honored.

112.  Thus the precedent condition was never fulfilled and the TRO never came into being.

113.  It has become the custom in the Superior Court, where often such precedent bond conditions for a TRO are not paid timely, or are not paid, to allow the TRO anyway.

114.  The Superior Court judges and administrators have provided no mechanism by which those whose property and liberties are affected by such failures to pay bonds may enforce the failure and cause the TRO to be rejected.  This is neglect which deprives parties such as these plaintiffs of their property without due process of law and of their right to petition for the redress of their grievances.

115.  To add insult to injury the Superior Court administrators and judges then released the bond money to Thanh Van Vo once he did make his NSF check drawn on the account of the franchise he was illegally occupying to Thanh Van Vo without notice to these plaintiffs or opportunity for them to oppose it, for the purposes of enabling Vo to pay his attorney, who had withdrawn from the case because of Vo's failure to pay.  Thus the ordered "security" of the bond was a joke and a farce perpetrated through the customs of the Superior Court which further deprived these plaintiffs of their rights.

116.  Every attempt, in filing after filing, by these plaintiffs to the attention of the judges of the D. C. Courts went unread and unacted upon.

117.  Thus a fraud was perpetrated upon these plaintiffs by the Superior Court itself and it was a fraud in which Sun knowingly joined when it executed the private consent order to purportedly extend the non-existent TRO and colluded with Vo in that effort.

WHEREFORE, these plaintiffs pray in the Count Four that this Court:

G.  Declare that as a matter of law in any system of Civil Rules such as those of the Superior Court of the District of Columbia, where the Rules are the Federal Rules of Civil Procedure except where modified, a failure to pay a bond that is a precedent condition for the TRO that is sought, for which that bond is security, causes that TRO to never come into being and that that is what happened here;

H.  Enjoin the D. C. Courts to look into the full implications of that failure of the TRO to come into being and be void in the subject case and cease ignoring and failing to read the filings of these plaintiffs trying to get the D. C. courts to look into the question;

I.  Grant to these plaintiffs all their costs of this proceeding, including counsel fees, under 42 U.S.C. § 1988;

J.  An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to these plaintiffs by the actions complained of;

K.  Such further and other relief as to this Court may seem meet and just.

## COUNT FIVE: FAILURE TO FOLLOW THE LITIGATION PLAN: DECLARATORY AND INJUNCTIVE RELIEF PLUS FEES AND COSTS AND DAMAGES

118.  Plaintiffs repeat and incorporate herein by reference the allegations of 1 through 117 above.

119.  At a hearing in the Superior Court case at issue, *Vo v. Hoai, supra,* in which the present plaintiffs are defendants, counterclaimants and third-party plaintiffs, on September 16, 1988, before Judge Frederick Weisberg, the Superior Court judge to whom the case was then assigned, Judge Weisberg suggested to these plaintiffs that they organize their case by trying what parts of their claims they could and pursue them in the federal courts while getting their third party claims under control in the Superior Court by serving the third-party defendants that they intended to proceed against so that the case could ultimately be set for trial.

120.  First, Judge Weisberg asked plaintiff Vo's counsel if he would object to the matters being stayed in the Superior Court pending the outcome of the federal action under the PMPA.

121.  Then, specifically, Judge Weisberg asked, speaking to the counsel for these present plaintiffs (there defendants, counterplaintiffs and third-party plaintiffs: "Speaking only to the question of whether we can simplify the Superior Court litigation and expedite part of this case at least without depriving you in any way of your right to litigate the rest of it, perhaps after the federal court case runs its course;" thus inducing these plaintiffs to stay matters in the Superior Court and then come back and litigate their claims in the Superior Court.

122.  This plan, of splitting the claims of the litigation, was taken note of, as alleged above, by Judge Harry Edwards of the United States Court of Appeals for this circuit in a published opinion.  *Hoai v. Sun Refining and Marketing Co., Inc.*, CADC  1989, 866 F2d 1515, at 1519, 1520, 275 USAppDC 397).

123.  These plaintiffs served the third party defendants.

124.  At a follow-on hearing before Judge Weisberg in the case on March 14, 1989, Judge Weisberg reiterated his plan that the claims could be split and the federal claims tried separately in the federal courts without any threat to the rights of these plaintiffs to try their claims against Vo and others that were not federal claims being tried in the Superior Court.

125.  The plaintiffs accepted this plan as offered by Judge Weisberg.

126.  Pursuant to this plan the plaintiff Hoai tried his federal claims in the federal courts, as stated, after the plaintiffs obtained a stay of proceedings in the Superior Court..

127.  After the completion of plaintiff Hoai's case against Sun in this Court these plaintiffs, as defendants, counterclaimants and third-party defendants in the Superior Court, moved to lift the stay and resume the Superior Court proceedings.

128.  At that point the plaintiffs had many motions outstanding in the Superior Court proceeding, some of them dispositive, which had gone unruled upon for years.

129.  After a hearing before another Superior Court judge the case was again assigned to Judge Dixon.

130.  Plaintiffs made additional motions, some of them also dispositive.

131.  Judge Dixon ignored the plan of the case as imposed upon it by Judge Weisberg and upon which the plaintiffs had relied as such plans are allowed and authorized by the Restatement as an exception to the bar against claim-splitting in the administration of a case.

132.  Judge Dixon refused to act upon any of the plaintiffs' motions, including the dispositive ones.

133.  Instead Judge Dixon ruled upon a Sun motion to be allowed out of the case on the basis that the victory by plaintiff Hoai in the federal courts against Sun under the Federal Petroleum Marketing Practices Act was a *res judicata* that prevented the plaintiffs from pursuing their claims against Sun in the Superior Court, both the common law and other claims where the plaintiffs accused Sun of cooperating with Vo and others of the Vietnamese who aspired to be like the mafia to the harm of the plaintiffs and, pursuant to those claims, the claims of the plaintiffs for additional damages resulting from those acts complained of over and above the damages given in this Court in the PMPA action.

134.  Simultaneously Judge Dixon ignored the numerous *res judicatae* resulting from the federal court actions that would have favored these plaintiffs and in particular that this Court had clearly ruled that Sun had illegally terminated the franchise of Hoai, thereby establishing incontrovertibly that prior to that illegal termination the franchise could not have belonged to Vo and that Sun, in giving the franchise to Vo, participated in a number of common  law torts as alleged by these plaintiffs in their claims in the Superior Court, claims which they were entitled to have heard against Vo and Sun.

135.   In doing this ignoring of the plaintiffs' claims based upon the holdings in the federal courts, though the same were comprehensively presented to him, and in instead leaping with alacrity upon the Sun claim of a *res judicata* based upon Sun's argument that these plaintiffs should have presented their common law claims in Hoai's PMPA federal case in violation of the plan of splitting the claims imposed by his own court, Judge Dixon violated the rights of these plaintiffs.

136.   This was a violation of the plan which the plan which the plaintiffs had been induced to rely upon by Judge Weisberg and the Superior Court and upon which the plaintiffs had relied.

137.   Under that plan these plaintiffs are entitled to have their claims against Sun and the would-be Vietnamese mafia tried and tried before a jury before Sun can be in any way dismissed from the case.

138.   As such it was an administrative decision violative of their rights of due process and to petition for the redress of their grievances under the Constitution of the United States and, as such, violated 42 U.S.C. § 1983, to the harm and detriment of the plaintiffs, greatly aggravating and increasing their damages complained of.

139.   Instead of acting in any way upon their claims and their many outstanding motions, including the one Judge Dixon did nothing for years after having erroneously let Sun out of the case in this violation of the rights of these plaintiffs and refusing repeatedly to reconsider this manifest injustice in plainly wrong decisions.

140.   Judge Dixon waited until the judge of the Superior Court who had made the original TRO decision which plaintiffs had alleged throughout was violative of their rights, as ratified by the consent order between Sun and Vo entered as a judgment against the plaintiffs without any notice to them and which they also claimed throughout was violative of their rights had retired.  That judge in the meantime had risen to become Chief Judge of the D. C. Court of

Appeals, and now attempts *sua sponte* with the connivance of Sun and the counterdefendants to dismiss the case of the plaintiffs for an alleged failure to prosecute in order to prevent the plaintiffs from ever having the claims against them defeated, from ever winning their many claims, and from having any appeal for the violation of their rights by an improper exercise of his discretion in excess of that discretion and entirely outside it.

141.   The plaintiffs did not fail to prosecute; they filed their claims and sought to advance them; they filed motions to dispose of the case against them and summarily win their own claims; they filed claims for sanctions for some of the outrageous things that were done.

142.   The Superior Court itself made an administrative decision to refuse to rule upon their many motions, blocking their discovery and any disposition of the claims against them or any disposition of their claims and deliberately sat on the case for years so as to prevent the plaintiffs from any due process or any ability to petition in the Superior Court for the redress of their many grievances.

143.   Primary among these motions was a dispositive motion filed by these plaintiffs as counterclaimants in the Superior Court case was a motion that the plaintiffs filed as counterclaimants on August 25, 1989 for temporary and permanent injunctive relief against the plaintiffs in the Superior Court case to enjoin them to conform with the agreement they made on the tarmac at the service station on August 26, 1986.  The agreement was tape recorded at the time by the plaintiff John D. Hemenway who was openly carrying a tape recorder for the purpose.

144.   These plaintiffs accompanied that motion with a parallel motion to accelerate the matter for trial and to join their dispositive motion for the said injunctive relief with the other claims and defenses in that case for that trial.

145.   Under this agreement so recorded, as aforesaid, the attorney for Thanh Van Vo and Vo's company, one Michael Arif, agreed in Vo's presence to the parties abiding by the decision

of the then Sunoco Area Representative, Ernie Peele, as to who was the legitimate possessor of the station.

146.  Instead of adhering to this agreement to abide by the decision of Ernie Peele, which Vo appeared to be doing at the time in the presence not only of Vo but of police officers, Vo and his company sued these plaintiffs in violation of that agreement the next day and created the complex of litigation that is the subject of this action.

147.  By simply forcing Thanh Van Vo and his company, as the plaintiffs who sued in violation of their agreement to adhere to the agreement, the Superior Court could have, at any time from August of 1989 on, ended the suit against these plaintiffs and greatly achieved what the professed goal of its judges was, namely, to simplify matters.

148.  As aforesaid, the Superior Court could not bring itself to rule upon this motion either before or after the stay to allow these plaintiffs to finish the Hoai cases in the federal courts, thus indicating its consistent pattern of refusing to these plaintiffs and to plaintiff Hoai in particular, as a Vietnamese-American, the benefits of the American legal system.  While quick to protect the interests of Jones, Day and Sun as mighty, "white" institutions the Superior Court throughout these proceedings bent over backwards to make sure that the plaintiff Hoai and the two other plaintiffs trying to help him, got no opportunity to receive due process or proceed with the right to petition for the redress of their grievances.  The wrongs that they claimed were treated with contempt throughout, all through administrative rather than legal decisions.

149.  In another dispositive motion, filed after the stay in the Superior Court of proceedings there had been lifted, on May 2, 1998, these plaintiffs, as defendants, counterclaimants and third-party plaintiffs, filed a motion, based on the decisions that they had obtained in this Court and in the United States Court of Appeals for this Circuit to apply the *res judicatae* and issues preclusions thus won and grant to these plaintiffs, as defendants, counterclaimants and third-party plaintiffs, a dismissal of the complaint filed

against them in the Superior Court by Thanh Van Vo and his company, Suntech Sunoco,

or, in the alternative, judgment on the pleadings against that complaint.  Plaintiffs herein

attach and incorporate by reference the first pages of their memorandum in support of

that motion, in which they list all of the *res judicatae* and issue preclusions resulting from

the victory of the plaintiff Hoai over Sun in the PMPA case, in addition to other

unconstitutional procedures employed by the Superior Court and Thanh Van Vo and Sun.

150.  For example, in an interlocutory appeal from plaintiff Hoai's case against

Sun under the PMPA in this Court, an appeal in which plaintiff Hoai prevailed, Judge

(later Chief Judge) Harry Edwards had ruled that the "Consent Order" entered by a

Superior Court judge in a proceeding in chambers at the instance of Thanh Van Vo and

Sun, acting in collusion as, in effect a  permanent extension of the TRO granted in the

Superior Court, a permanent extension granted without any notice to these plaintiffs or

inclusion of them in the process, did not constitute an independent judgment of the

Superior Court.  *Hoai v. Sun Refining and Marketing Company, Inc.*

151.  Thus the plaintiff Hoai had to go all the way to the United States Court of Appeals

for this circuit to find a court responsible enough to hold that a consent agreement between two

parties to a litigation as to which the other parties to the litigation were given no notice and as to

which they had no chance to participate was not an independent judgment of the court which

allowed such a travesty to be perpetrated and that, therefore a TRO was, after all, a temporary and

not a permanent injunction.

152.  Thus, by applying this *res judicata* it could be determined as a matter of law

that no lawful extension of the TRO could have been effected in the District of Columbia

Superior Court.

153.  Further, the findings in the federal court showed beyond a peradventure of a doubt that Sun illegally terminated plaintiff Hoai's franchise by its obtaining collusively with Thanh Van Vo this "Consent Order" and that, therefore, the station franchise never belonged to Thanh Van Vo for that and many other reasons evident in the pleadings and the record.

154.  In addition plaintiffs herein, as defendants, counterclaimants and third-party plaintiffs in the Superior Court proceeding, pointed out that Thanh Van Vo had never actually obtained a valid TRO because the records of the Superior Court showed that he had given in payment of bond for the TRO as precedent condition an NSF check drawn on the account of the station franchise which was not his.

155.  Thus, after the Superior Court stay was lifted, when the plaintiffs sought to have applied their hard won victories in the Hoai PMPA case in this Court, they were completely ignored.

*156.*  Had the plan of the case imposed upon it by Judge Weisberg been followed, then, upon the completion of the Hoai claims in the federal courts and the return of these plaintiffs to the Superior Court and the reopening of the pre-existing litigation there, the claims of Vo and his company against these plaintiffs and the counter and third-party claims against Vo and others would have been examined to subtract out what had been settled in the federal courts and then the parties, principally Vo, his company, and these plaintiffs as opponents would have been allowed to go forward to the point where one side or the other would have been exposed as having no case.

*157.*  Since these plaintiffs were promised in the Superior Court by Judge Weisberg when he imposed his plan upon the case in the Superior Court that once their claims presented as counter and third party claims in the Superior Court were narrowed down by the resolution of that portion of their claims that could be pursued in the federal courts, the remainder of their claims in

the Superior Court could be pursued without any harm to those claims by the resolution of their federal claims, that is what should have happened.

158. That is not what happened. The plaintiffs herein, upon finishing up their claims in the federal courts with the resolution of the claim by present plaintiff Hoai against Sun under the Petroleum Marketing Practices Act in favor of Hoai but with limits upon his damages, moved to reopen matters in the Superior Court and did reopen them but the Superior Court then, in the person of defendant Dixon, refused in any way to consider or in any way allow these plaintiffs to advance their remaining claims and in fact acted to block their pursuit of those claims.

159. This was a direct violation of the plan of the case as it had been imposed upon the litigation by Judge Dixon's fellow judge on the Superior Court, Judge Weisberg.

160. Instead of following the plan of the case which these plaintiffs had accepted when asked to do so, Judge Dixon hastened to apply a false *res judicata* on behalf of Sun, which by that time had switched sides in what the federal courts had found to be an illegal termination against Hoai to join with Thanh Van Vo against these plaintiffs in a series of collusive acts.

161. In doing this Judge Dixon violated and utterly disregarded the plan of litigation which had been imposed by Judge Weisberg.

162. In fact, he relied upon an argument from Sun that there could be no claim splitting and ruled against these plaintiffs on that basis, thus causing the Superior Court to have induced these plaintiffs into claim splitting and then using their having split their claims to rule against them with an application of a purported *res judicata* based on claim splitting not being allowed.

163. This was a racially discriminatory act or series of acts, specifically designed, as other actions in the Superior Court litigation had been intended, to prevent Hoai as a Vietnamese set upon by fellow Vietnamese with whom Sun collusively and improperly joined, from having his day in court, from effectively petitioning for the redress of his grievances and having due process and depriving also the defendants John D. and David Hemenway from having those same

constitutional rights because they were assisting a Vietnamese in such a plight, all to benefit Sun as a perceived non-Vietnamese member of the white establishment of America..

164.  In order to determine whether Sun had illegally participated in the schemes of Vo and his Vietnamese would be mafia it would have been necessary to give Hoai and the Hemenways their day in court on the issues of Sun's switching sides from its beleaguered dealer and franchisee to knowingly participate with Vo and his group in common law torts against the plaintiffs.  The Superior Court and its judges went out of their way to make sure that that could never happen and now seek to bury the case forever in order to make sure that these plaintiffs never have due process or the right to petition in the courts for the redress of their grievances or their right to a trial by jury, fundamental rights of all American citizens, in violation of 42 U.S.C. § 1983.

165.  This was an overt display of racial bias in violation of 42 U.S.C. § 1981, an act or series of acts now reinforced by this latest act of attempting *sua sponte* to dismiss the claims of these plaintiffs so as to damage their appellate rights as much as possible and prevent the substantive wrongs against them from ever being brought to issue in violation of the plan of the litigation imposed upon them by the Superior Court itself as an administrative measure.  This also violated 42 U.S.C.  § 1983.

WHEREFORE plaintiffs pray in this Count Five, because of the Superior Court having imposed a plan of claim splitting upon the litigation in which these plaintiffs were involved not at their choosing, and then having refused to follow the plan thus induced by the Superior Court to the harm of these plaintiffs and the destruction of their defenses and claims in violation of their rights of due process and to petition for the redress of their grievances, for the following declaratory and injunctive relief:

A.  That the plan of litigation imposed upon the litigation by Judge Weisberg be declared controlling of the litigation as an administrative measure under which a judicial

estoppel was created, these plaintiffs having been persuaded to adopt and pursue the plan and the United States Court of Appeals for this circuit having taken note of that plan and a judge of this Court, at least initially, having accepted the plan, however begrudgingly.

B.  That the defendants be enjoined temporarily and permanently from dismissing the plaintiffs case in the Superior Court, CA No. 1986 CA 007075B, until such time as the present plaintiffs defenses, their having been sued therein, be resolved on the merits and the claims of the plaintiffs herein, both counter- and third-party claims are advanced and decided on their merits in accordance with the plan imposed upon the litigation by Judge Weisberg and that they be enjoined also from letting Sun out of the case until the claims of these plaintiffs against Sun and Vo for collusive activity are heard, reconsidering any orders heretofore issued based upon an ostensible *res judicata* in this Court in favor of Sun until the *res judicatae* in this Court in favor of these plaintiffs as advanced by them in the Superior Court are considered and particulary the *res judicata* that Sun having been held in this Court to have illegally terminated Hoai's franchise be considered as necessarily indicating that Vo could not have owned the franchise and that, therefore, the actions of Sun in giving the franchise to Vo illegally be considered in all its common law tort implications;

C.  That the same defendants be enjoined to forthwith decide all of the outstanding motions filed by the plaintiffs herein in that case, which have been outstanding and unruled upon for years, and cease neglecting motions filed by the Vietnamese plaintiff and the two plaintiffs who sought to assist him while acting with alacrity at the beck and call of Sun, perceived as a "white" institution;

D.  That the defendants be enjoined from embodying an attitude that a Vietnamese litigant and those assisting him is not deserving of the justice of American courts and

that the threats and acts of extortion which he alleges be litigated and decided on their merits and no longer be treated as if a mere Vietnamese man is not worthy of justice in our system;

E. That the administrative practice of the D. C. courts of ignoring the plan of the litigation imposed upon it by a judge of the Superior Court, under which the Vietnamese plaintiff was induced to try and did try his federal issues in the federal courts with the promise that this "claim splitting" mandated by the Superior Court would be the plan of the case and that, upon the completion of the federal actions thus urged upon plaintiff Hoai, the remaining non-federal matters would be litigated separately in the Superior Court be honored, and that decisions heretofore made in the Superior Court based in whole or in part upon a *res judicata* creating claim splitting that was held to be improper or based upon filings by Sun that there was claim splitting or a *res judicata* in any way implying claim splitting or that claim splitting was improper be vacated and reconsidered in light of the plan imposed upon the litigation by the defendants;

F. That all of the defenses and claims of these plaintiffs that are so triable be tried before a jury without allowing Sun to be dismissed from the case in the Superior Court on any pretense of violation of any *res judicata* that ignores the plan of the case imposed by the Superior Court.

G. That the decisions of this Court and the United States Court of Appeals in plaintiff Hoai's litigation against Sun be considered and applied by the defendants in making their decisions and that the Superior Court and its judges cease seeking to apply a *res judicata* and issue preclusion to assist Sun before the questions of collusion between Thanh Van Vo and Sun incorporated in the claims of these plaintiffs in the Superior

Court are fully adjudicated so that the question of Sun's collusion with Vo as alleged by these plaintiffs outside the scope of the PMPA are fully adjudicated.

FURTHER, the plaintiffs also pray in this Count I for the following expenses and damages against these defendants:

H.  All of their costs of this litigation, including counsel fees, expert fees and all other costs, for having to bring this action and prosecute it pursuant to 42 U.S.C. § 1988.

I.   All of their extra costs, including counsel fees and all other costs for having their claims obstructed and blocked by the defendants, including having to repeatedly, for example, move to compel discovery from the counterdefendants and third party defendants which discovery was repeatedly refused by the counter and third party defendants, with the defendant Superior Courts and its judges refusing to rule upon such motions to compel, even refusing to enforce an order to compel which one of their own, Judge Goodrich, granted.

J.  An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to these plaintiffs by the actions complained of.

K.  Such further and other relief as to this Court may seem meet and just.

COUNT SIX: VIOLATION OF THESE PLAINTIFFS' RIGHTS TO HAVE THEIR
CLAIMS AND THOSE AGAINST THEM TRIED BY A JURY UNDER THE
SEVENTH AMENDMENT AS A VIOLATION OF 42 U.S.C. § 1983

166.  Plaintiffs repeat and incorporate herein by reference the allegations of 1 through 165 above.

167.  In acting in the manner described the defendants meant to assure that Sun and Vo and those working with Vo in the would-be Vietnamese mafia would never have to face a jury on any of the defenses or claims of these plaintiffs.

168.  By never acting upon or ruling upon the motions of these plaintiffs the defendant Dixon and the other defendants, as part of their administrative policy that decisions, such as those of the TRO judge and the Judge-in-Chambers in this case, which are manifestly unjust and just plain wrong, not be subject to correction, meant to keep these plaintiffs' defenses and claims, particularly as they involve the collusion between Vo and Sun, their claims not tried  in the federal courts under the claim-splitting  plan of the case, from ever being tried before a jury.

169.  Thus they are acting and have acted to deprive these plaintiffs of their right to a trial by jury pursuant to the Seventh Amendment of the Constitution of the United States inasmuch as the service station franchise and all of the claims associated with the illegal termination of that franchise by the collusive actions between Vo and Sun exceed $50 in value and this deprivation violates 42 U.S. C. § 1983.

WHEREFORE, these plaintiffs pray in this Count Six for the following declaratory and injunctive relief:

A.  That this Court declare that the Vietnamese-American plaintiff Hoai, and the two non-Vietnamese Americans who assisted him in his struggles with the would-be Vietnamese mafia (as they allege) are entitled to have their defenses and claims, to the extent that the same are not disposed of as a matter of law, tried before a jury.

B.  That the defendants be enjoined to see that such defenses and claims that these plaintiffs have that are not disposed of as a matter of law be tried before a jury, even if they involve Sun.

C.  That all of the defenses and claims of these plaintiffs that are so triable be tried before a jury without allowing Sun to be dismissed from the case in the Superior Court on any pretense of violation of any *res judicata* that ignores the plan of the case imposed by the Superior Court;

D.   And that these plaintiffs be paid their costs of this suit, including counsel fees, by these defendants pursuant to 42 U.S.C. § 1988.

E.   An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to the plaintiff Hoai by the actions complained of.

F.   Such further and other relief as to this Court may seem meet and just.

## COUNT SEVEN: VIOLATION OF 42 U.S.C. § 1981: PURPOSEFUL RACIAL DISCRIMINATION

170.   Plaintiffs repeat and incorporate herein by reference the allegations of 1 through 169 above.

171.   The actions of the defendant Dixon and other judges of the Superior Court in effectively refusing to advance the plaintiffs' case by refusing to decide upon any motion they filed, including dispositive motions and motion to compel the discovery denied them so as to prevent them from developing and  pursuing their defenses and claims, while rushing to let Sun out of the case upon the lifting of the stay in the Superior Court after the split out claims were tried in the federal courts with varying success, were done as a purposeful racial discrimination to deny to the plaintiff Hoai and the Hemenways assisting him the benefits of the American system of justice because they were perceived of as a mere Vietnamese and two non-Vietnamese  who had decided to help him when he was set upon by a would-be Vietnamese mafia.

172.   Even threats of violence to Hoai were derided and not taken seriously by the Superior Court judges, starting with Judge Wagner at the TRO hearing.  After all, these were only disputes among a lesser people, as the attitude has now been revealed, not worthy of finding that decisions that were just plain wrong or manifestly unjust correctable where they might expose an American company, part of the establishment, such as Sun, to liability for its actions in colluding with the would-be Vietnamese mafia against their own contract and their own dealer.

50

173.  The leaping upon the claimed *res judicata* advanced by Sun in violation of the plan of the case under which claims were to be split between the Supererior Court and this Court while ignoring the *res judicatae* advanced by these plaintiffs under the plan as imposed by the defendant Superior Court, the racial bias was made glaringly evident.

WHEREFORE, these plaintiffs pray in this Count Seven that this Court:

G.  Declare that a Vietnamese-American claiming to be set upon and wronged by a would-be mafia of his own ethnic group is entitled to have those claims heard and to have due process and the right to proceed in the courts of the District of Columbia and so too do those who seek to assist him;

H.  That Hoai and the Hemenways have their full rights to benefit from the procedures of the D.C. Courts even in a non-Vietnamese entity, Sun, may be implicated and have to bear liability as a result;

I.  That the District of Columbia Courts be enjoined to  proceed in accordance with the above declarations and allow the full measure of justice to these plaintiffs with all their rights honored and their causes heard;

J.  That all of the defenses and claims of these plaintiffs that are so triable be tried before a jury without allowing Sun to be dismissed from the case in the Superior Court on any pretense of violation of any *res judicata* that ignores the plan of the case imposed by the Superior Court;

K.  That these plaintiffs be awarded their costs of this litigation, including counsel fees, pursuant to 42 U.S.C. § 1988.

L.  An award against the defendant courts of the District of Columbia of all the extra costs, including counsel fees, caused directly to the plaintiff Hoai by the actions complained of.

M.  Such further and other relief as to this Court may seem meet and just.

WITH REGARD TO ALL COUNTS, PLAINTIFFS DEMAND TEMPORARY AND

PERMANENT INJUNCTIVE RELIEF AND WILL SEEK A TRO IN SUPPORT.


PLAINTIFFS DEMAND A TRIAL BY JURY

     Respectfully submitted,


_____
Laurence A. Elgin #159582
Suite 900, South Building
601 Pennsylvania Avenue, NW
Washington, D. C. 20004-3615
(202) 628-1114
fax (202) 628-6798