# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.*            )
             Plaintiffs,            )
                          )
v.            ) CIVIL ACTION NO.  1:06-cv- 00210-RJL
                          )
                          )
The SUPERIOR COURT of the            )
DISTRICT of COLUMBIA, *et al.,*            )
            Defendants.            )

## PLAINTIFFS' MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

Plaintiffs move the Court for a preliminary and permanent injunction based on the *res judicatae* and collateral estoppel or claim and issue preclusion to which they are entitled because of rulings and holdings in this Court and the United States Court of Appeals for this circuit. The rulings claimed to create the preclusion are on the issue of the ownership of the Sunoco (Sun) franchise which was the subject of the still pending complaint filed against them in the Superior Court of the District of Columbia by one Thanh Van Vo.   All of the defendants are sought to be enjoined because all of them have a role in connection with that litigation in the municipal courts of the District of Columbia.  Plaintiffs move for this relief based solely on Count I of their complaint.

They move the Court for a consolidation of a hearing on a preliminary injunction and a trial on the merits of the permanent injunction request of Count 1 pursuant to Rule 65(a)(2).  They seek to enjoin relitigation in the municipal courts of the District of Columbia of the claim and issue thus precluded.  They move for both preliminary and permanent injunctive relief because, as set out in the accompanying Memorandum of

Points and Authorities in Support of this motion the criteria for such preliminary relief to avoid such relitigation and for the permanent injunction of such relitigation are the same.

These plaintiffs claim as a preclusion that in earlier litigation in this Court which was successfully prosecuted by the present plaintiff Thanh Vong Hoai (Hoai) against Sun Refining and Marketing Company, Inc. (Sun) under the Petroleum Marketing and Practices Act (PMPA) 15 U.S.C. § 2801 *et seq.* this Court found that Sun had illegally terminated its franchise owned by Hoai in violation of the PMPA. Throughout that PMPA litigation in this Court Sun advocated the interests of Thanh Van Vo (Vo) as being legitimately in possession of the subject station and franchise pursuant to agreement between it and Vo whereby Sun again gave the franchise to Vo. Sun claimed throughout the PMPA litigation without success that an agreement between it and Vo which they entitled a "Consent Order" was a "restoration" of the station and franchise to Vo. Sun claimed this agreement was an act of the Superior Court because Sun and Vo persuaded a Superior Court judge to sign it under a procedure in which they gave no notice to Hoai of that signing. The restoration which Sun thus claimed was of a supposed earlier acquisition of the franchise by Vo.

Vo had sued the present plaintiffs as defendants in the Superior Court when Hoai, at the urging of Sun and with Sun's cooperation, had reentered his franchise peacefully with the assistance of the Hemenways, after an attempted forceful reentry into the franchise by Vo led to an altercation and settlement in which it was agreed that Hoai was the franchisee. In violation of that settlement Vo sued these three present plaintiffs as defendants in that litigation, defendants who then became counter and third-party plaintiffs against Vo, Sun and others. This ownership by Vo of Sun's franchise in

question which Sun claimed in the PMPA litigation, supposedly came to be because of a purported contract by which Vo purchased the franchise for one dollar ($1.00). Sun claimed in the PMPA litigation that it "ratified" this agreement. Hoai claimed throughout that this purported contract to purchase the franchise for one dollar ($1.00) was a classic, mafia-style extortion attempt forced upon him by threatening his life which he had immediately reported to Sun and, at the time, got Sun's confirmation that it was an illegal attempt to transfer the franchise to a person whom Sun would not, as required under controlling law, approve as a transferee of the franchise.

This Court and the United States Court of Appeals for this circuit repudiated these ideas that Vo had purchased the franchise for one dollar ($1.00) and Sun had "ratified" that supposed purchase and then "restored" Vo to his franchise by an order of the Superior Court. Although Vo and Sun had entitled their private agreement a "Consent Order" and had had it signed by a judge of the defendant Superior Court, the federal courts found it to be but a private agreement between Vo and Sun that illegally terminated Hoai's Sun franchise and gave it to Vo. Thus the federal courts have ruled that the station and franchise belonged to Hoai and not to Vo. Otherwise Sun could not have been held to have illegally terminated the franchise of Hoai. The declarations in the PMPA litigation that Sun illegally terminated its franchise agreement with Hoai by necessary implication decided the ownership of the franchise, and all that goes with that ownership, including right of possession, in favor of Hoai as opposed to Vo.

Vo's Superior Court complaint asserted that he and not Hoai owned the Sun franchise in question. If it was not Vo's station and franchise as the federal courts have ruled, then these plaintiffs are entitled to enjoin him from pursuing that claim. Not only

the specific issue of ownership but Vo's claim in the Superior Court is precluded since if it were pursued it would necessitate the relitigation of the issue of ownership already decided in the federal courts.

When matters in the federal courts were concluded and all appeals were over, these plaintiffs moved and were granted a lift of the stay in the Superior Court and prepared to further defend themselves against Vo's complaint there and prosecute their remaining, non-federal counter and third-party claims under the rights reserved to them by Judge Weisberg of the Superior Court when he induced them to split their claims and try their federal claims in the federal courts.

After the stay was lifted in the defendant Superior Court these plaintiffs moved, as defendants and counter and third-party plaintiffs in the litigation there, to dismiss Vo's claim there against them as precluded based on the rulings in the federal courts in Hoai's PMPA suit against Sun. That motion was fully briefed but has been ignored now for many years. From the beginning the Superior Court and the other defendants in this case have ignored the PMPA and local statutory law governing service station franchises throughout the litigation in the defendant courts. Other filings by these plaintiffs from both before and after the PMPA litigation in the federal courts have also been ignored for years in the defendant Superior Court and the defendant District of Columbia Court of Appeals has continued to duck the issues and controlling law in the case.

These plaintiffs request that the defendants be temporarily and permanently enjoined from relitigating this issue of ownership and that they apply the preclusion of that issue to Vo's complaint against these three defendants in the Superior Court and all other aspects of the litigation there to which it applies and that they be awarded all of

their fees and costs for having to obtain the injunctions.  The details supporting this request are given in the accompanying Memorandum of Points and Authorities in support of this motion.

Respectfully submitted,

/s/

Laurence A. Elgin          Bar # 159582
Suite 900 South Building
601 Pennsylvania Avenue, NW
Washington, DC 20004-3615
(202) 628-1114
(202) 628-6798 - fax

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.*     )
           Plaintiffs,    )
                       )
v.                     ) CIVIL ACTION NO.  1:06-cv- 00210-RJL
                       )
                       )
The SUPERIOR COURT of the    )
DISTRICT of COLUMBIA, *et al.,*   )
           Defendants.    )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

### PRELIMINARY AND PERMANENT INJUNCTION REQUESTS: THE FOUR FACTORS

In assessing an application for a preliminary injunction in this circuit, the four traditional factors are considered.  They are: 1) A substantial likelihood of success on the merits, 2) That the movants would suffer irreparable injury for which there is no adequate remedy if the injunction is not granted, 3) That the injunction would not substantially harm other interested parties, and 4) That the public interest would be furthered by the injunction.  *Cityfed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.Circ. 1995) citing *Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989).  See also *Taylor v. Resolution Trust Corporation*, 56 F.3d 1497, 1505 (D.C.Cir. 1995), and *City of Las Vegas v. Lujan*, 891 F.2d 927, 931 (D.C.Circ. 1989), the latter citing in turn *Friends For All Children v. Lockheed*, 746 F.2d 816, 834-35 & n. 32; *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842 (D.C.Circ. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Circ. 1958).  And see MOORE'S FEDERAL PRACTICE 3D, INJUNCTIONS 65-73.

THE FIRST FACTOR: LIKELIHOOD OF SUCCESS ON THE MERITS IN THE ISSUE
AND/OR CLAIM PRECLUSION CONTEXT: CONTROLLING AUTHORITY

We take up the first of the four factors as applicable to the present case. In a later case than those cited above for the four factors to be considered, the United States Court of Appeals for the District of Columbia circuit has addressed the issue of enjoining litigation in the Superior Court where the possibility of relitigation is claimed. In *Thomas v. Powell*, 247 F.3d 260, 345 U.S.App.D.C. 398, (D.C.Circ. 2001), *cert. den.* 122 S.Ct. 347, 151 L.Ed.2d 262 (2001) a three judge panel addressed the specific issue of applying collateral estoppel or issue preclusion in order to prevent relitigation of an issue in the Superior Court. Although there was one dissent on whether or not the issue in that case was precluded, all three members of the panel were unanimous that, were the issue precluded, injunctive relief against the relitigation in the Superior Court would be granted. Further, all three members were in agreement that issue preclusion would lie to prevent relitigation of an issue already litigated and decided in the federal courts of this circuit whether the Anti-Injunction Act, 28 U.S.C. § 2283, applies or not. Two members of the panel specifically avoided deciding whether the Anti-Injunction Act applied. *Id.* Another held that the Anti-Injunction Act did not apply. *Id.* at 267, (Sentelle, J., dissenting) see n. 2. But the dissent further stated: "Whether we apply the Anti-Injunction Act or the general law of issue preclusion, our analysis is the same …" *Id.* at 268. This last point, then, would seem to be unanimous and controlling authority upon this Court.

In his dissent, Judge Sentelle specifically addressed the issue of what constitutes a likelihood of success on the merits in an attempt to enjoin litigation in the Superior Court, saying: "Here, to establish success on the merits, counsel must show that Thomas and his

coplaintiffs are collaterally estopped from asserting the issues raised in their … claims." The majority, consisting of then Chief Judge Edwards and Judge Randolph, in an opinion by Judge Randolph, agreed with Judge Sentelle as to what was success on the merits by their analysis and what they held, though they did not specifically state what success on the merits was.  They analyzed whether or not there was issue preclusion and held that there was, upholding the judgment below which granted the injunction against the Superior  Court action's proceeding because, in their opinion, had it done so, it would have been relitigation of an issue already decided in the federal courts.

In the case below, *Thomas v. Albright*, 77 F.Supp. 2d 114, (D.D.C. 1999) the traditional four factors applied in this circuit were listed.  *Id.* at 123.  It was then pointed out in an analysis of some six pages, from 116 to 123, that there was issue preclusion. There was, therefore, a likelihood of success on the merits.  *Id.*  Thus it is established, as a matter of controlling authority, that, for the municipal courts of the District of Columbia to be enjoined from relitigating an issue, there must be an analysis of whether or not the issue in question has been litigated and decided in this Court and the United States Court of Appeals for this circuit.  If it has been, then there <u>is</u> a likelihood of success on the merits and the first factor of the traditional four part analysis for injunctive relief has been met.

### THE SAME CRITERIA FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

In his dissent in *Thomas, supra*, Judge Sentelle indicated that the same would be true to obtain permanent injunctive relief, so that if a temporary injunction is in order here, a permanent one is as well, citing *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 94  L.Ed.2d 542 (1987).  *Id.* 247 F.3d at 267.  Again,

the majority opinion did not articulate this proposition but illustrated its applicability by its analysis and conclusion, in which it upheld the opinion below.  The opinion below, on the same analysis that would be applied for injunctive relief, granted a permanent injunction.  *Thomas v. Albright, Id.*, at 124.  Of course, the Supreme Court opinion in *Amoco Production Co., supra*, is binding upon this Court.  In that opinion it is clear that the analysis for such a preliminary injunction and permanent injunction are the same.

RELITIGATION EQUALS IRREPARABLE INJURY

The majority in *Thomas v. Powell, supra*, although they specifically declined, as stated, to hold that the Anti-Injunction Act even applies to the District of Columbia, found that the relitigation exception, should it apply, rests on the idea that federal court litigants should not be compelled to rely on state courts to decide whether either *res judicata* or collateral estoppel applies.  *Id.* 247 F.3d at 262, citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) and the dissenting opinion of Mr. Justice Reed in *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 146, 62 S.Ct. 139, 86 L.Ed. 100 (1941).  Similarly, in the decision below that was affirmed in *Thomas v. Powell, supra*, *Thomas v. Albright, supra*, it was found that "… a federal court may enjoin an action in a state court when issue preclusion (collateral estoppel) or claim preclusion (res judicata) is the source of the movant's application for relief."  The lower court also cited the Supreme Court in *Chick Kam Choo, supra.*  Thus, under controlling authority, both claim preclusion and issue preclusion apply.  This Court may enjoin either an issue or a claim that has already been decided in the federal courts.

We note that the bulk of the majority opinion in *Thomas v. Powell, supra*, as well as the dissent, is taken up with analysis of the question of whether there is issue

preclusion based on what was litigated and decided in this Court and the United States Court of Appeals for this circuit.  The irreparable harm that will result if there is no issue preclusion and, therefore, no injunctive relief, is presumed as obvious.  Thus there is no analysis in the appellate opinion of the second factor in the traditional four part analysis, the factor of irreparable harm that will result if the injunction is not granted.  However the opinion is an affirmance of this Court's holding in *Thomas v. Albright, supra.*  And in the *Thomas v. Albright* opinion the question of whether or not there was irreparable harm if an injunction does not issue to prevent relitigation of an issue already litigated and decided in this Court was specifically addressed and articulated.    In its analysis of the standard four factors for injunctive relief, this Court said, in *Thomas v. Albright*, speaking of the factor of irreparable injury to the moving party claiming the issue and claim preclusion: "The injury …, by having to endure wasteful relitigation in state court of an issue already finally decided by this Court is clearly irreparable," citing precedents from the 6th, 9th, and 7th circuits.  *Id.* at 123.  This Court, in that opinion, went on to say, citing a case from the Northern District of Texas, that "Additionally, the potential for nullification of the Court's judgment in the underlying matter is sufficient alone to constitute irreparable injury…."  *Loc. Cit.*  Our Court of Appeals, in affirming *Thomas v. Albright*, it seems, made this controlling precedent in the present situation.

IF PRECLUSION, THE FIRST TWO FACTORS ARE SATISFIED

Accordingly, it is apparent that if there is issue and/or claim preclusion here, then the first two factors of the traditional four factor analysis essential to decide whether injunctive relief, whether temporary or permanent, is something to which the moving party is entitled, are present and the final two factors may then be taken up.  In fact under

the holding of our Court of Appeals for this circuit, since it is controlling law that if there

is issue and/or claim preclusion, the moving party is entitled to the injunctive relief

because the right to enjoin the precluded claims and/or issues is the likelihood of success

on the merits, then the showing of irreparable harm need only be slight in any case.

*Cityfed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Circ.

1995). These points that we have just elucidated are also are controlling authority for this

Court, including that the right to the issue and/or claim preclusion equates to a likelihood

of success on the merits.

Thus, it is incumbent upon the plaintiffs to show the issue and or claim preclusion

that applies in the instant case and that is addressed in this motion.  We will now proceed

to show that preclusion in connection with the first two factors of the traditional four

factor analysis that is used in this circuit in analyzing motions for preliminary injunctive

relief.  Then we will take up the final two factors of the traditional four factor analysis for

injunctive relief.  In making these analyses, we would ask the Court to keep in mind that

though Vo, the plaintiff against these three present plaintiffs in the Superior Court

litigation, was not a party to the suit which the present plaintiff Hoai successfully

prosecuted in this Court against Sun, he was a privy with Sun.  In keeping that in mind

we would ask the Court to also keep in mind the controlling authority of the opinion of

the United States Supreme Court in *Montana v. United States,* 440 U.S. 147 (1979),

wherein it was said: "A fundamental precept of common-law adjudication, embodied in

the related doctrines of collateral estoppel and res judicata, is that a "right, question or

fact distinctly put in issue and directly determined by a court of competent jurisdiction …

cannot be disputed in a subsequent suit between the same parties or their privies . . . ."

Southern Pacific R. Co. v. United States, 168 U.S. 1, 48 -49 (1897). *Id.* 440 U.S. at 153. Thus the question of privity between Vo, as the plaintiff in the Superior Court litigation suing the three present plaintiffs, and Sun, as the unsuccessful defendant in the PMPA case that Hoai prosecuted in this Court must be examined.

THE PRECLUDED ISSUE: OWNERSHIP OF THE SUN FRANCHISE

The first preclusion that these present plaintiffs claim and the one that they address in the present motion is the issue of the ownership of the Sunoco franchise in question, which was located at 2305 Pennsylvania Avenue SE in Anacostia in Washington D.C. during the time at issue. It is the position of these plaintiffs that this issue was litigated and decided during the case which the present plaintiff Thanh Vong Hoai (Hoai) brought against Sun Refining and Marketing Company, Inc.(Sun) in this Court under the Petroleum Marketing and Practices Act (PMPA) 15 U.S.C. § 2801 *et seq.* CA No. 87-2456-LFO. After an initial stay in that litigation in this Court, Hoai was able to reverse on an interlocutory appeal under the collateral order doctrine (*Hoai v. Sun Refining and Marketing Co., Inc.*, 866 F.2d 1515, 275 U.S.App.D.C. 397 (D.C.Circ. 1989)). After that interlocutory reversal, upon remand, Hoai moved for partial summary judgment on the issue of Sun's liability for illegally terminating his, Hoai's, Sun franchise in violation of the PMPA. Hoai won that motion and it was ruled in this Court that Sun had illegally terminated the franchise of Hoai, not that of anyone else. The memorandum opinion setting out that decision is reported as *Hoai v. Sun Refining and Marketing Co., Inc.,* on Lexis-Nexis at 1990 U.S.Dist. Lexis 13015. We attached a copy of it to our motion for a TRO as Attachment D. Thus it was clearly decided after litigation that Hoai owned the franchise from Sun when it was illegally terminated under

federal law.  Does this preclude Vo from claiming in the Superior  Court litigation that he and not Hoai owned the franchise?  That is the question upon which the right of the present plaintiffs to bar litigation of the ownership issue in the present Superior Court litigation depends.  For, despite the fact that that litigation began almost twenty (20) years ago, that issue has never been decided.

### PRESENT PLAINTIFFS' POSITION ON PRECLUSION OF THE OWNERSHIP ISSUE

The position of these three present plaintiffs is simple and it is based upon that partial summary judgment.  That PMPA litigation involved only the present plaintiff Hoai and Sun and not the two other present plaintiffs in this litigation and not the plaintiffs in the Superior Court action who sued the three present plaintiffs.  Those plaintiffs in the Superior Court action are Thanh Van Vo and the company, Suntech, Inc.  Suntech, Inc. was formed in Thanh Van Vo's attempts to take Hoai's franchise from Hoai and has since ceased to exist.  The PMPA suit conclusively led to a decision, after the ownership of the franchise was fully litigated, by necessary implication and based on privity, that the Sun franchise belonged to Hoai and not to Vo.  If the franchise belonged to Vo then this Court could not have ruled, as it did, that it was illegally terminated by Sun as being the franchise of Hoai.  Either it was not transferred to Vo or it was transferred to Vo as Vo claims in his Superior Court action against these three plaintiffs.  If it was transferred to Vo as Vo claims in his Superior Court action, then it could not have been ruled in this Court that Sun illegally terminated a franchise belonging to Hoai in violation of a franchisor's obligations under the PMPA.  But it was ruled in this Court that Sun illegally terminated the franchise of Hoai, not of Vo.  So Vo's claim in the Superior Court are barred by the doctrines of *res judicata* and collateral estoppel.  The

issue of who owned the franchise cannot be relitigated and must be enjoined from being relitigated. It is the right of these plaintiffs to have their injunction.

It is true that the two present plaintiffs John D. Hemenway and David Hemenway were not parties to the PMPA case of Hoai against Sun. They could not have been in a case that was limited to a single claim, one under the PMPA. The PMPA only grants jurisdiction, in a suit brought under it, to franchisees to sue franchisors. But the Hemenways had agreed to help Hoai and were thus in privity with him. It is that privity with Hoai in fact, that led to their being sued by Vo along with him. In any case the Hemenways have no desire to deny that the issue of ownership was fully litigated in the PMPA case that Hoai successfully litigated against Sun in this Court and they join in ths complaint precisely because, among other things they wish to have any potential relitigation of the issue of the ownership of the Sun franchise enjoined.

It is also true that Thanh Van Vo, the plaintiff in the Superior Court action that these present plaintiffs seek to enjoin in order to prevent relitigation of issues already decided in this Court, was in privity with Sun during the events at issue as that term is defined in controlling authority. The same is true for the company he formed in his attempt to take the franchise from Hoai. No one, of course, including those who represented him in the Superior Court action, has seen Vo for years. The present attorney who purports to represent him in that action, has had to acknowledge that he has been unable to communicate with Vo for several years. This is the second time, in the twenty year history of his case, that Vo has disappeared while supposedly prosecuting his claims against these present plaintiffs. But when he was with us as a prosecutor of his claims against these defendants he clearly was in privity with Sun.

THE ISSUE LITIGATED IN PRIVITY BETWEEN SUN AND VO

The first three attachments to the earlier TRO motion of these plaintiffs, A, B and C, all show that privity.  Sun defended in its answer by asserting its privity with Vo; see Attachment A to the TRO motion previously filed.  It submitted a sworn affidavit from in-house attorney Jeffrey Wagner attesting to Sun's privity with Vo, see Attachment B to the TRO motion previously filed.  It filed additional briefs attesting to its privity with Vo, one of which is excerpted as Attachment C to the TRO motion.

Sun's answer in the PMPA case in this Court wherein it was successfully sued by Hoai illustrates the assertion of that privity between Sun and Vo as arising as soon as the issues were joined in the pleadings. Specifically, these plaintiffs point to paragraph 37 of Hoai's PMPA complaint in the case in this Court and Sun's response to it in its answer. Paragraph 37 of the PMPA complaint read as follows, referring to the initial hearing for a TRO requested by Vo against these three present plaintiffs:

> 37) In an illogical leap based upon nothing but untruthful representations of Vo's then counsel, the [Superior TRO] Court found that Vo was a tenant of Sun, which the evidence was clear and uncontested, was totally unknown to Sun.  Hoai PMPA complaint, page 8

Here is the correlative paragraph 37 from Sun's answer in the Hoai v. Sun PMPA case:

> 37. The Superior Court found that there had been an Agreement for Sale of the Sun franchise from Mr. Hoai to Mr. Vo and that Sun had ratified this Agreement.  The remaining allegations contained in Paragraph 37 of the Complaint are denied.  Sun answer, Att. A to TRO motion, pp. 5-6.

It can be seen that this answer is not truly responsive to the allegations of the complaint, but rather an attempt to divert.  Yet in diverting Sun brought directly into issue the question of whether Vo rather than Hoai owned the franchise in question at the

crucial point and did so in privity with Sun so as to relieve Sun of the charge of illegal termination under the PMPA. This assertion made by Sun in paragraph 37, as it turns out, was determined in the PMPA litigation to be false. It is but one of a number of false assertions attempted by Sun in collusion with Vo, some of which Sun is still maintaining in its filings in the Superior Court litigation; but this particular falsehood was laid to rest by the litigation in the federal courts and is no longer available to Sun or Vo. They made it together, have maintained it together and were in privity in doing so. That it turned out to be shown to be false does not alter the fact that it was asserted, litigated and decided upon.

Sun did not rest with making this false assertion in paragraph 37 of its answer to Hoai's PMPA complaint we hasten to add. Sun went on to emphasize this assertion in its affirmative defenses. But since it is an assertion that was made, litigated and decided the additional assertion of it in affirmative defenses only established the preclusion presently claimed more emphatically. Sun's fourth affirmative defense asserted as part of its answer was:

> The claims against the defendant are barred by the accord and satisfaction by and between plaintiff and Thanh Van Vo which was ratified by the defendant. Sun answer, Att. A to TRO, p. 8.

That the franchise had been transferred to Vo was thus asserted in the answers proper to the allegations of the complaint and as an affirmative defense. Therefore, the privity between Vo and Sun was an essential element of Sun's unsuccessful defense of Hoai's claim of illegal termination by Sun in this Court from the outset of that PMPA litigation. Sun was the controlling figure, of course, because it was the franchisor and was sued as such under the PMPA. But, since it was the franchisor, it was the controlling figure

enabling Vo's continuing assertions of this privity in the Superior Court litigation which he, Vo, initiated against the three present plaintiffs in the Superior Court.

In paragraph 33 of its answer to the Hoai complaint in the PMPA case that Hoai successfully prosecuted against Sun in this Court, Sun said the following, referring to Vo as the plaintiff in the Superior Court litigation:

> 33. The defendant admits that the Superior Court granted a Temporary Restraining Order on August 29, 1986 directing that the plaintiff return the occupancy of the Sun station to Thanh Van Vo. [emphasis added]   The remaining allegations contained in Paragraph 33 of the Complaint are denied.   See Sun's answer to Hoai's PMPA complaint, Att. A to the TRO motion, page 5.

As with the allegations of and response to paragraph 37 of Hoai's PMPA complaint this was somewhat unresponsive.   Here is what paragraph 33 of Hoai's PMPA complaint said:

> 33) Instead of obeying this agreement of settlement, however, the man Vo trumped up a sham complaint and TRO on the 28th and took plaintiff into Superior Court on a TRO hearing that was blocked out a day in advance but noticed only an hour or so before.   Hoai PMPA complaint, p. 8

Thus, as with the allegations of paragraph 37 of the complaint, Sun went out of its way and instead of confining itself to answering the allegations directly, asserted a positive defense.   And, also as with the allegations in its responses to paragraph 37 of the complaint, Sun went on to assert affirmative defenses corresponding to the affirmative assertions in the paragraph of the answer proper.   In the case of the affirmative assertions of paragraph 33 of its answer to the PMPA complaint, Sun asserted two corresponding affirmative defenses.

Sun's First Affirmative Defense was:

> The claims alleged herein have previously been adjudicated in

the Superior Court of the District of Columbia and by other courts of competent jurisdiction and are barred by the doctrine of <u>res judicata</u>. Sun answer to Hoai's PMPA complaint, Att. A to the TRO motion, p. 7

Sun's second affirmative defense was:

The claims are barred by the doctrine of collateral estoppel. *Id.*

Thus it was Sun's argument and contention, at the point where issues were joined in the case in this Court in which it was sued by Hoai under the PMPA that it had contracted with Vo to give him the franchise by ratifying a contract between Vo and Hoai by which Hoai transferred the franchise to Vo and that when Hoai had reoccupied the franchise, the Superior Court had "restored" the franchise to Vo as its proper owner in privity with Sun and that the matter had been adjudicated by the Superior Court, establishing that privity and Hoai was, therefore, foreclosed from making his PMPA claim against Sun for an illegal termination of Hoai's franchise.

After the complaint and answer were filed and the issues joined, Sun filed a motion to dismiss. We have already submitted the first two pages and the final page of the support memorandum for that motion as Attachment C to the TRO motion previously filed. In that motion, as evidenced by the support memorandum, Sun continued to litigate the issue of the ownership of the franchise as belonging to Vo based on the privity between Vo and itself. On page 1 of Attachment C to the TRO motion we see Sun describing Vo in his Superior Court complaint as "seeking reinstatement" in the franchise, as if Vo were the franchisee. On page 2 Sun speaks of the TRO in the Superior Court as having "restored the status quo ante" and then describes how the previous status of Vo as its franchisee was done "by reinstating Thanh Van Vo with possession of the

Sunoco station and directed [sic] that Sun continue to supply the plaintiff [Sun's franchisee Vo] with petroleum products."

THE PREEMPTIVE DEFINITIONS OF THE PMPA

This description, by virtue of the preemptive language of the PMPA, which is quite clear, cannot be anything other than a description of a franchisee. A major part of how the PMPA preempts state law (including, by definition, the law of the District of Columbia, see 15 U.S.C. § 2801 (19)) is by its basic definitions, contained in the first section of the PMPA as codified, 15 U.S.C. § 2801. The term "franchisee" is defined at 15 U.S.C. §2801 (4) as follows: "The term `franchisee' means a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment or distribution of motor fuel." [emphasis added] So it can be seen that it was not necessary for Sun to have "authorized" Vo to sell Sun gasoline, trademarked as such and wind up making Vo its franchisee; it need only have permitted him to sell its gasoline to do so and thus enter into privity with him. Sun clearly did that and litigated that it did so.

Another part of the preemptive power of the PMPA is the extensive definition of "franchise" contained in 15 U.S.C. § 2801(1). The PMPA definition eliminates the concept of a gas station as anything apart from a "franchise" where the sale of branded motor fuel from a refiner is concerned, so that there are no more "Sunoco stations" in law, only Sunoco "franchises." This is because the definitions of the PMPA specify three components of operating a major oil company station as we traditionally know such entities, the use of the trademark, i.e., Sunoco or Exxon, the leasing of the premises on which the station operates, and the supplying of the motor fuel. Everything is defined so

as to center around those three components.  They are the franchise.

Moreover, under the definitions of the PMPA what we traditionally know as a gas station is not the physical station but the agreement between the oil company, called a "refiner" in the PMPA definitions, and the operator, known as a "retailer" in the PMPA definitions.  Thus, 15 U.S.C. § 2801(1) specifies: "(1)(A) The term `franchise' means <u>any</u> <u>contract</u> — **** (ii) between a refiner and a retailer,…."  [emphasis added]    So the contract is the franchise.  There is no more gas station as we knew it, at least under the preemptive and governing federal law.    The definition of the term "franchise" goes on past the point where we ended the quote above with the ellipsis to specify that a franchise is a contract:

> Under which a refiner…authorizes or permits a retailer…to use, in connection with the sale…of motor fuel…, a trademark which is owned or controlled by such refiner….

Once again we see the language "authorizes or permits."  So Sun needn't have officially authorized Vo to have made him their franchisee in the stead of Hoai, albeit illegally, they need only have permitted him to act as such and to, therefore, have been in privity with him even in the traditional and strictest sense of that term.

Nor need that agreement of permission or authorization have been in writing under the basic definitions of the PMPA.  The definition of 15 U.S.C. § 2801(10) specifies: "The term `contract' means any oral or written agreement."  So for their to have been privity between Vo and Sun here, even in the strictest traditional sense, as we say, there need not have been anything between them in writing prior to the "Consent Order" which became the focus of Hoai's PMPA case against Sun and which ultimately became the lynch pin around which it was decreed that the franchise belonged to Hoai

and not to Vo so that Sun was found to have illegally terminated the franchise of Hoai

under the PMPA.

But the definition of "franchise" under the PMPA does not stop there.  It goes on,

in subsection (B):

> (B) The term "franchise" includes —
> (i) any contract under which a retailer…is authorized or
> permitted to occupy leased marketing premises, which premises
> are to be employed in connection with the sale…of motor fuel
> under a trademark which is owned or controlled by such
> refiner…;
> (ii) any contract pertaining to the supply of motor fuel which is to
> be sold,…—
> > (I) under a trademark owned or controlled by a refiner;

By studying this language carefully one can see, as Judge Oberdorfer did when he

granted Hoai summary judgment on the issue of liability as we discuss further below, that

there are three factors or elements that make up a franchise under the preemptive

definitions of the PMPA.  One factor is a lease for the premises.  Another is the supplying

of the motor fuel.  By the use of disjunction in subsection (B) above the "occupying of

leased marketing premises" and the "supply of motor fuel" are in the alternative.  This is

so that if, as is often the case, the franchise owner owns the premises or leases the

premises from some person or entity other than the refiner or a distributor of the refiner,

the contract for the supply of motor fuel still allows the operation to be defined as a

franchise.  The common factor is the third factor or element, namely, the use of the

trademark.  Since the franchise is defined as the contract, whether the marketing premises

are leased to the franchisee or not, if the motor fuel supplied is supplied pursuant to a

contract under which it is marketed under the refiner's trademark it is still a franchise.

The significance for the present case is that these three elements, or two, if there

are only two, are the franchise; there is no more "gas station" as a legal entity where a major oil company trademark is involved.  Where, as was the case with Hoai's franchise from Sun, all three elements are present, leased marketing premises under a contract, a supply of motor fuel under a contract, and both of the latter require the use of the refiner's trademark, for promoting the premises and selling the fuel, respectively, there is nothing else.  The contract of franchise with the three elements is the business.  There are no other parts to it.  There is no right of possession or occupancy apart from the franchise as thus extensively and preemptively defined.

Correspondingly, as Judge Oberdorfer was to rule, basing his opinion on reported cases interpreting the language quoted rather than his own analysis of the defining language in the statute, the interruption of any single of the three elements by the refiner terminates the franchise.  So even by orally permitting Vo to occupy the station or by knowingly supplying Vo rather than Hoai with motor fuel to be sold under the Sun trademark, Sun was defaulting on its obligation to Hoai and contracting with Vo and thereby entering into privity with Vo.

THE INTERLOCUTORY APPEAL

When Hoai first filed his PMPA case in this Court Judge Oberdorfer, to whom it was assigned, did not reach the above language and, indeed, did not reach the PMPA at all.  Instead, in response to a dismissal motion immediately filed by Sun, he stayed the case on general principles of comity and federalism because of the ongoing litigation in the Superior Court that had been stayed there pending the outcome of the federal litigation on the federal claims.   Hoai was then granted an interlocutory appeal under the collateral order doctrine and won a reversal in the opinion that we have cited.

Although Judge Oberdorfer initially did not get to the PMPA, we have set out the definitions above and gone into some detail on the PMPA because it enables one to understand what then happened in the United States Court of Appeals for the District of Columbia circuit on the interlocutory appeal.  In demolishing the res judicata and estoppel arguments of Sun the Court of Appeals for this circuit also, by necessary implication, abolished the argument that the franchise had ever belonged to Vo.  In fact the U. S. Court of Appeals did this so thoroughly that Hoai was then able, upon remand, to win against Sun on the issue of its liability, the illegality of its termination of Hoai, by summary judgment motion.  As we have emphasized, if Sun illegally terminated a franchise belonging to Hoai, it cannot have belonged to Vo.

In its brief for the appellee in that interlocutory appeal Sun continued its misrepresentation and argument that the private agreement it had entered into in writing to continue Vo as its franchisee in lieu of Hoai was an order of the Superior Court in the sense of a judgment of the Superior Court.  Even though the so-called Order of the Superior  Court said it did not apply to Hoai it, as a practical matter, gave Hoai's franchise to Vo.  Sun argued that the temporary restraining order in the Superior Court "reinstated Mr. Vo" in the franchise and that the Superior Court "directed" that Sun "continue to supply petroleum products" to Vo at the franchise, making clear that Sun considered Vo the franchisee from before Vo's filing his suit in the Superior Court.  That is what Sun contended in its appellee's brief for the appeal.

At the oral argument on the interlocutory appeals which led to the opinion in *Hoai v. Sun Refining and Marketing Co., Inc.* 866 F.2d 1515, 275 U.S.App.D.C. 397 (D.C.Circ. 1989) Sun's counsel persistently pursued his argument that the Superior Court

had created a res judicata restoring Vo to the occupancy of the franchise repeatedly during his argument time and was repeatedly rebuffed.  Counsel for Sun pointed out several times that Hoai's PMPA complaint was what he called a "collateral attack" upon the consent order which Vo and Sun had entered into between themselves privately, without any notice to any other parties as the TRO in the Superior Court expired without any notice to any of the present plaintiffs, including Hoai, and which Vo and Sun then had endorsed by a Superior Court judge-in-Chambers, again without any notice to these present plaintiffs, including Hoai.  Vo and Sun did this under a Judge-in-Chambers procedure of the Superior Court, which, at that time, did not require any other parties to be notified.  Not too long later the Superior Court procedure for a Judge-in-Chambers was modified to eliminate this unconstitutional feature.  The lack of notice was taken note of by Judge Oberdorfer when he granted summary judgment to Hoai on liability.

The reported opinion at 866 F.2d 1515, 275 U.S.App.D.C. 397 (D.C.Circ. 1989), characterized Sun's argument about res judicata and collateral estoppel as follows: "Sunoco claims that such considerations of comity and federalism justify the District Court's stay in the instant case, because Hoai's claim is based on the legality of a consent order ratified by the Superior Court."  *Id.*, 866 F.2d at 1518.  It then went on, as its very first substantive point leading it to dispose of the notion that there was any preclusion involved by pointing out that the consent order was not a judgment of the Superior Court but merely its ratification of a private agreement, viz:

> First, Hoai has not sought to attack any <u>judgment</u> of the Superior Court.  The Superior Court merely ratified a <u>voluntary agreement between Vo and :Sunoco</u>.  The consent order <u>did not represent an exercise of the Superior Court's independent judgment</u> ….  Rather, Hoai's <u>sole complaint involves Sunoco's agreement to continue supplying gasoline to Vo rather than to Hoai</u>, …. [Emphasis

added] *Id.*, 866 F.2d at 1519.

Thus, in a ruling controlling upon this Court, the Court of Appeals held that the continuing possession of the franchise by Vo was not a judgment but a private decision by Sun and that it was a continuing possession, leaving intact Sun's contentions of privity with Vo though casting doubt upon its legality as having been decided upon by the Superior Court. The Court of Appeals noted that Sun's decision to supply motor fuel to Vo, which, as we have seen, is one of the three essential components of a franchise under the PMPA, was a focus of Hoai's complaint. As we noted above, the giving of any one of the three essential components to someone other than the legitimate franchisee terminates the franchise of the legitimate franchisee. This point was to be made by Judge Oberdorfer in granting summary judgment on the issue of liability to Hoai on Hoai's PMPA claim.

## REINFORCEMENT BY OUR COURT OF APPEALS

The United States Court of Appeals for this circuit also found the actions of Vo and Sun in entering into the Consent Order and then having it endorsed without notice to Hoai or the other two present plaintiffs to be a purely private act in the other federal claim case in which Hoai was a plaintiff. In that case Hoai and the other two present plaintiffs pursued a 42 U.S.C. § 1983 claim against Vo, Sun and others involved for using the processes of the Superior Court to have their private agreement which they labeled a Consent Order endorsed by a judge of the Superior Court and then pretending that it was an order of the Superior Court. At that time, it should be noted, the case law that the District of Columbia was a municipality for purposes of 42 U.S.C. § 1983 had not developed and it was not clear that the District of Columbia could be so sued. These

three present plaintiffs lost that case on motion precisely because they alleged no involvement of any governmental entity.  In *Hoai v. Vo*, 935 F.2d 308, 314, 290 U.S.App.D.C. 142 (D.C.Cir.1991) our U. S. Court of Appeals noted that the facts as alleged in that case did not show any state action or action under color and authority of state law but purely private acts by Vo and Sun.  In fact, the Fifth Circuit, in following that holding characterized it as one "concluding that when private parties abused D.C. Court procedures, their actions cannot be proscribed to the state."  *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994).

## FURTHER LITIGATION ON REMAND: PRIVITY

Upon remand, Sun continued to advocate its privity with Vo on behalf of itself and Vo.  Soon after the case was returned to this Court from the Court of Appeals Hoai filed a motion for summary judgment on the issue of liability based in large part upon the opinion from the Court of Appeals.  Ultimately the motion was granted in the opinion from Judge Oberdorfer of October 1, 1990.  See Att. D to the TRO motion.  In that motion Hoai argued successfully that Sun's claims of res judicata and collateral estoppel had been eliminated by the opinion of the Court of Appeals, thereby eliminating any claim that the station franchise had ever belonged to Vo rather than Hoai.  Hoai also successfully argued that there could be no "accord and satisfaction" as Sun claimed in its answer as set out above in that the Petroleum Marketing Practices Act specifically allows franchisors to require months of notice and a thorough vetting of a prospective transferee followed by approval before a franchise can be transferred, particularly where such requirements are imposed also by local statute, as here by the District of Columbia in its Retail Service Station Act (RSSA).  Sun had such requirements in its franchise agreement

with Hoai.  It acknowledged that even though it claimed to have "ratified" the "one dollar contract" by which Vo purported to have acquired the franchise from Hoai, Vo had never met the precedent conditions set out in its franchise agreement with Hoai as empowered by the PMPA and as virtually the same precedent conditions were required by the RSSA. Hoai had contended throughout that this "one dollar contract" was a classic mafia-style extortion that he was forced into under threats of death and there was evidence presented that he had informed Sun of its true nature soon after he was compelled to sign it.

In its opposition to Hoai's successful summary judgment motion on liability, Sun ignored what the Court of Appeals had actually held and continued to claim that the consent order in the Superior Court had compelled Sun to restore the franchise to Vo. Sun further argued that the TRO also compelled it to continue to let Vo have the franchise, as if a TRO could be the basis for a res judicata and a collateral estoppel and that Vo had been its franchisee from the beginning of the operation of the franchise.  Sun asserted: "… Mr. Vo had been operating the station since it opened on April 10, 1986, until he was forced out by Mr. Hoai;…"  Sun thus continued to assert its privity with Vo as superior to its actual contract of franchise with its legitimate franchisee.

Sun then filed its own cross-motion for summary judgment against Hoai.  In its support memorandum for that motion, Sun continued to advocate its privity with Vo.  On page 1 of the memo, Sun asserted, speaking of Hoai and Vo: "During this period they both became aware that a franchise was available for the Sunoco station located at 2305 Pennsylvania Avenue, S.E."  This was a falsehood based on false testimony from Vo who claimed to have much experience in managing gas stations, which was exposed as false by Hoai and Hoai's counsel.  But it indicated Sun's contention of privity with Vo during

the PMPA litigation.  Hoai, by contrast, had been trained by Phillips 66 as a service station employee and manager when he first had to come to this country, and had managed a large number of owned stations for Sun itself as an employee and then had owned and run other franchises, including a Sun franchise in Prince George's County after he left Sun's employee.  (Sun went to great lengths and engaged in a good deal of misrepresentation as to Hoai's management of owned stations while he was a Sun employee but was caught out in their falsehoods quite dramatically at trial.)

Vo was their real franchisee from the beginning, Sun contended in the PMPA litigation.  On page 2 of this support memo Sun asserted: "The facts indicate that Mr. Hoai never intended to operate the station under the franchise, but that he entered into these agreements as a matter as an accommodation to Mr. Vo."  This was such an outrageous falsehood, based solely on the say-so of Vo which was contradicted by the actual records and testimony of Sun's own Area Representative, that Sun footnoted it and cautioned: "This is a strong inference…."  But it illustrates Sun's continuing assertions in the PMPA litigation of its privity with Vo.  In its statement of facts allegedly not in dispute Sun spoke of the Superior Court's TRO "to immediately <u>return</u> possession of the station to Mr. Vo." [emphasis added] and Mr. Vo's continuing occupancy of the station.

In the PMPA litigation Sun put forward in support Vo as its witness and managed him and his interests in the litigation.  They deposed him in the offices of their counsel and put forward extracts of his testimony in that deposition as the first exhibit to their cross motion for summary judgment.  We attach it as Attachment A to this support memorandum.  We attach it not for its veracity, because in fact most of it is untrue, but rather to show that Vo participated fully, managed by Sun, in the litigation of the issue of

the ownership of the Sun franchise during Hoai's PMPA case against Sun.  Very little of what Vo ever said turned out to be true and most of his representations were decisively disproved.  For example, he claimed to have managed a service station franchise in Virginia owned by a man named Harry Gray and his two grown sons.  When the present plaintiffs checked out that story they were told that Vo had hung around the Gray service station franchise and ultimately, because of Vo's behavior and attitude they had had to run him off.  These plaintiffs put into evidence an affidavit from one of the Grays.  Vo claimed to have managed a station for a fellow Vietnamese, Gin Ham.  These plaintiffs deposed Gin Ham who confirmed that Vo's representations were a fabrication.  Vo claimed to have been a "pilot major" in the military of the late lamented Republic of South Vietnam who served during the Vietnam War, piloting a helicopter.  All such pilots were trained in this country in one place.   Several checks by these plaintiffs with the military authorities have revealed that no one named Thanh Van Vo or any variant on that name's order was ever trained there.  Vo told the Sun area representative as well as Hoai that he owned a large construction firm that generated very good profits.  No such firm that Vo owned ever existed.

We would draw special attention to the claims in this extract of Vo's testimony about Vo's lending money to Hoai.  Investigation uncovered that most of this testimony was false.   Vo was not the source of the funds.  The funds came from a man named Thach, one of the third-party defendants in the Superior Court litigation who claimed, falsely, to own the McLean Bank but who successfully led many Vietnamese to believe that he owned that bank and became known as "Thach the banker."  The $15,000.00 amount that Vo mentions in his testimony was supposedly being lent to Hoai and his

wife, who had experience in such businesses, to capitalize the purchase of the food business in Arlington that Vo mentions in his testimony. Hoai did not know until it was too late that the husband and wife, Minh and Luu, who were operating the food business and claimed to be selling it to Hoai and Hoai's wife, were in cahoots with Vo and Thach, all part of what we have called the aspiring and would-be Vietnamese ethnic mafia. In the case of the food business they induced Hoai and his wife to start operating the business and operate it for months, putting Hoai capital into purchasing inventory, eventually building up an inventory with a value of some $45,000.00. Then Minh and Luu refused to sell, claiming as an excuse that they could not get a lease and then some young Vietnamese toughs, called "cowboys," driving cars with Texas license plates, showed up and physically drove the Hoais from the shop, taking the inventory so that the Hoais lost their investment of more than $45,000.00 in the inventory and were then pressed to repay the $15,000.00 that they had not been able to use to buy the business so that they would have an income stream to repay it. The Hoai's did not know that this was all part of a coordinated scheme.

In the case of the gas station franchise it worked like this: knowing that the Hoais were tying up funds in purchasing inventory for the ongoing food business, and knowing also that Sun had informed Hoai that Hoai needed $70,000.00 in capital to be eligible for the franchise, Vo volunteered to lend Hoai half of that amount. Hoai obtained commitments for the other half from relations, particularly his wife's family. But the "loan" from Vo was a sham. Vo obtained money from Thach to pay the early amounts as Vo asserted that he, Vo, had paid them. He explained this to Hoai that he knew that the Hoais would be generating money from the food business. Vo then claimed to have put

the $35,000.00 he promised into a bank account which Thach had set up for the gas station franchise.  Vo and Thach then insisted that for reasons of "security" they would have the only access to and signature authority with regard to the franchise's bank account.   They put a small amount of money in the account and then insisted that they would take exclusive control of the franchise's daily income, which they did.  Soon the first check that Vo wrote for an amount of around $10,000.00 for gas delivered by Sun was returned for insufficient funds, showing that the purported loan was a sham.  In the Superior Court litigation these plaintiffs obtained the bank records from the account which prove that the supposed "loan" was a sham and have repeatedly introduced copies of them in filings in the Superior Court litigation.  The judges of the Superior Court have just as repeatedly refused to pay any attention to this proof of the scam.

The point is that this testimony, regardless of its falsity, demonstrates from Vo's perspective the privity between himself and Sun.  This extract from the deposition of Vo as put forward by Sun in the PMPA litigation is but one of 18 exhibits that Sun filed as attachments to its cross-motion for summary judgment to "prove" that the franchise belonged to Vo and not to Hoai, all to no avail.  Because Vo's claim in the Superior Court was stayed pending during the completion of Hoai's PMPA case, it is as if the complaint of Vo there were brought later than the PMPA case for purposes of preclusion.

PRIVITY IN THE LAW: THE EXPANDED CONCEPT

We have set out the privity between Vo and Sun as presented in the PMPA case under the traditional understanding of that term.  But the concept has been expanded by controlling case law.  In *McLaughlin v. Bradlee*, 803 F.3d 1197, (D.C.Cir. 1986) our Court of Appeals pointed out that the doctrine of issue preclusion "is no longer restricted

to those who were parties to the first proceeding or their privies,…" *Id.*, at 1204  "The

doctrine of issue preclusion is intended to free courts and parties from the onerous and

unnecessary task of relitigating issues that have already been decided in a full and fair

proceeding." *Loc. Cit.*  The *McLaughlin* court cited the lead case of *Parklane Hosiery*

*Co. v. Shore,* 439 U.S. 322, at 327-328, 99 S.Ct. 645, at 649-50, 68 L.Ed. 2d 552 (1979)

on this point.  Here are some considerations drawn from *Parklane Hosiery Co. v. Shore*

that support collateral estoppel in the present case:  The application of collateral [439

U.S. 322, 332]   estoppel will not here reward a plaintiff who could have joined in the

previous action, since Vo could not have joined in the PMPA action even had he so

desired.  There is no unfairness to Vo in applying collateral estoppel in this case.  In light

of the seriousness of Hoai's allegations in the PMPA case that Sun had illegally

terminated Hoai's franchise by colluding with Vo in a private act to give Hoai's franchise

to Vo and not only the foreseeability but certainty that Vo would follow his claims

already pending that he was entitled to the franchise because of his, Vo's, relationship

with Sun, Vo and Sun working together had every incentive to litigate the question of

Vo's being entitled to possession of the franchise fully and vigorously and did so.   The

decision in the PMPA case was not inconsistent with any actual binding decision.

Finally, should Vo's case go forward, there will be no procedural opportunities available

to Vo (and Sun for that matter) that were not available to Sun working with Vo in this

Court and the United States Court of Appeals for this circuit that might be likely to cause

a different result.  Therefore, under controlling precedent none of the considerations that

would justify a refusal to allow the use of collateral estoppel are present in this case.

Since Sun and Vo acting in privity received a "full and fair" opportunity to litigate their

claims in the PMPA action, the contemporary law of collateral estoppel leads inescapably to the conclusion that Vo is collaterally estopped from relitigating the question of whether he rather than Hoai owned the Sun franchise.  Here is an applicable and long established definition of privity from our Court of Appeals:

> [T]he word ["privity"] designates a person so identified in interest with a party to a former litigation that he represents precisely the same legal right in respect to the subject matter involved.  *First National Bank of Holdenville, Okla. V. Ickes*, 154 F.2d 851, 853 n.9 (D.C.Circ. 1946) (quoting 2 Bouvier's Law Dictionary 2722 (3d rev. ed. F. Rawle 1914))

Under controlling precedent persons are in privity who "claim an interest in the subject-matter affected by the judgment *through or under* one of the parties, i.e., either by inheritance, succession or purchase."  [emphasis added]  *Gill & Duffus Services, Inc. v. A. M. Nural Islam*, 675 F.2d 404, 406 (D.C.Circ. 1982).  With the law having moved beyond traditional concepts of privity it is clear that there is privity here between Vo and Sun that is sufficient to require preclusion on the issue of ownership of the franchise.

## NOT ONLY LITIGATED BUT DECIDED

Judge Oberdorfer's opinion held that the franchise belonged to Hoai and was illegally terminated by Sun.  Analyzing the essential contention that Vo was the possessor of the franchise and not Hoai, he rejected all claims by Sun that Sun made during the litigation that the franchise had been in anyway transferred to or belonged to Vo.  Early in his opinion he pointed out that "Hoai … entered into a franchise agreement with Sunoco…."  See Attachment D to the TRO motion, page 3, reported at 1990 U. S. Dist. LEXIS 13015.  He then pointed out that "the agreement leased to Hoai (and only Hoai) a service station at 2305 Pennsylvania Avenue, S. E., in Washington, D. C., and authorized him to sell Sunoco branded motor fuel."  *Id.*  Later in the opinion Judge Oberdorfer held:

"As already indicated, the reciprocal rights and duties of Sunoco and Hoai were established by the franchise agreement into which they entered on March 27, 1986, and by the Act." The "Act" reference is to the PMPA. *Id.* at p. 5. Later, also on p. 5, he noted: "The franchise relationship between Hoai and Sunoco was also governed by the Act, whose provisions apply despite agreements between the parties or state laws to the contrary." Earlier, in relation to the Act, Judge Oberdorfer had noted, speaking of Vo's complaint against these three plaintiffs in the Superior Court, which was also originally against Sun: "Vo's complaint conspicuously failed to mention the Act." *Id.* p. 3. He then noted also: "On August 29, 1986, also without reference to the Act, the Superior Court issued a Temporary Restraining Order…." *Id.*, at p. 4.

On page 6 Judge Oberdorfer describes Hoai's contentions as follows:

> Hoai contends essentially that Sunoco's agreement evidenced by the Consent Order to supply motor fuel to Vo instead of Hoai (the franchisee) and to permit Vo's occupancy of premises which Sunoco had leased to Hoai constituted termination. According to Hoai, that termination was not based upon grounds specified in the Act nor was it accompanied by the notice required by the Act. *Id.* p. 6.

He then set out Sun's contentions:

> Sunoco contends that there was no termination at all. The Consent Order did not terminate the franchise, but rather recognized the continuing legal vitality of the franchise agreement by providing that Sunoco would resume supplying motor fuel to Hoai when and if the Vo-Hoai dispute was resolved by them, and Hoai came into possession of the premises. *Id.*

Since the Court of Appeals had ruled that the Consent Order was not a judgment of the Superior Court but a private act, Judge Oberdorfer then ruled that that private act terminated Hoai's franchise and did so illegally under the PMPA. He further ruled that the Consent Order itself was "technically deficient." It did not, he observed, include

reasons for terminating Hoai's franchise; it did not include a summary of Hoai's rights under the PMPA; and, it was not delivered directly to Hoai. Judge Oberdorfer found these shortcomings to be "clear violations of 25 [should be 15] U.S.C. § 2804(c)." He pointed out that the notice requirement of the PMPA "must be strictly complied with," citing *Khorenian v. Union Oil Co. of California*, 761 F.2d 533, 535 n.1 (9th Cir. 1985).

In so ruling in favor of Hoai, Judge Oberdorfer focused on the three essential components of a franchise that are preemptively defined in the PMPA as we have set them out above. He did not reach the basic definitions themselves in his consideration. Rather he cited the secondary source of cases that had focused on the three factors as they are set out in the clear language of the PMPA definitions:

> Courts have treated three elements as the essential components of the franchise agreement: "[T]he contract to use the refiner's trademark, the contract for the supply of motor fuel, [and] the lease of the premises." May-Som Gulf, Inc. v. Chevron U.S.A., Inc., 869 F.2d 917, 929 (6th Cir. 1989); See Sen. Rep. No. 731, 95th Cong., 2d Sess. 17 (1978), reprinted in 1978 U.S.Code Cong. & Ad. News 873 ("Senate Report"); Fresher v. Shell Oil Co., 846 F.2d 45, 46-47 (9th Cir. 1988) (per curiam). When a contract concerning any of these three components is materially breached, courts have found termination under the Act. See, e.g., May-Som Gulf, 869 F.2d at 922, Fresher, 846 F.2d at 46-47; Barnes v. Gulf Oil Corp., 795 F.2d 358, 363 n. 5 (4th Cir. 1986). [footnote omitted] They draw this conclusion from the legislative history which specifically notes that the provisions of the Act may not be circumvented by a termination or non-renewal of the real estate or motor fuel supply agreement which thereby renders the trademark license useless. Senate Report at 29; 1978 U.S.Code & Ad. News at 888.

Based on this analysis, Judge Oberdorfer then held:

> In light of these principles, Sunoco plainly terminated Hoai's franchise. Sunoco may have breached its lease to Hoai by permitting Vo to occupy the premises instead of Hoai. It certainly breached its agreement to supply motor fuel by supplying motor fuel to Vo instead of Hoai. This breach effectively terminated Hoai's franchise. This termination occurred [footnote omitted] at the latest on September 8,

> 1986 when, free from the compulsion of the TRO, Sunoco
> discontinued its sale of motor fuel to Hoai and commenced (or
> resumed) supplying motor fuel to Vo at the premises leased by
> Sunoco to Hoai.

Thus the issue of the franchise being owned by Hoai and not by Vo was not only litigated in the federal courts, it was decided that Hoai was the owner of the franchise, and, by necessary implication that Vo was not the owner of the franchise. If Vo had had any ownership of the franchise Hoai could not have won his PMPA case against Sun. Sun advocated, in cooperation with Vo, that Sun could not have illegally terminated a franchise belonging to Hoai because of rights that Vo had to occupy the franchise and have its supply of motor fuel. Sun lost and the issue of ownership was decided. Vo had no ownership in the franchise under the preemptive prescription of the PMPA.

VO'S COMPLAINT: THE OBJECT OF THE CLAIMED PRECLUSION

Having shown how the issue of who owned the Sun franchise was litigated and decided in this Court and the Court of Appeals, we need to examine Vo's complaint in the Superior Court and show that it does indeed threaten relitigation of that issue. In making such an examination we need to set a framework by first examining what the PMPA has to say about the transfer of franchises. As we have seen Vo has contended that the franchise was transferred to him, that he bought it. Can he have bought it if this Court and the United States Court of Appeals have already made rulings that it belonged to Hoai when it was illegally terminated by Sun? Judge Oberdorfer did not reach the law governing the transfer of franchises under the PMPA but it is a necessary implication from what he did decide that if there had been any legitimacy to the claims of Vo to have acquired the franchise he surely would have.

THE PMPA AND TRANSFERS OF FRANCHISES

In this area of the transfer of franchises to new franchisees the PMPA is partially preemptive but leaves much to the wording of the contract of franchise provided that it in turn conforms to local statutes regulating franchises. The PMPA is preemptive in the sense that if the franchise agreement does conform to local statutes regulating the transfer of franchises, and provided that the terms of the franchise agreement are reasonable within the PMPA's prescription, then the parties are free to negotiate and decide on terminology, but, correspondingly, if the franchise agreement is within the prescription set out by the PMPA then it governs and is as enforceable as if it were part of the PMPA to the extent that the contract of franchise sets out conditions.

The provisions of 15 U.S.C. § 2806(a) make it clear that as far as termination and non-renewal of service station franchises, and as far as notice of termination or non-renewal, the PMPA is absolutely pre-emptive of state law. However, 15 U.S.C. § makes it clear that the provisions of a franchise agreement which "authorize" a transfer govern and that the PMPA neither authorizes or prohibits the transfer of the franchise provided that it is authorized by the terms of the franchise agreement. The only restriction on this freedom of the parties to set up the authorization terms for transfers in the franchise agreement (which, as we have seen, is the franchise) is that state law which permits transfers of franchises governs to the extent that it conflicts with the provisions of the franchise agreement. Thus the preemptive federal statutory law of the PMPA empowers the transfer provisions contained in a franchise agreement, but not if there is state law that applies specifically to service station franchises and conflicts with the language in the franchise agreement which speaks to transfer of the franchise. The actual language concerning the transfer of franchises is:

### § 2806. Relationship of this title to State law

*****

(b)  Nothing in this title authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise.

THE TRANSFER PRESCRIPTION OF THE SUN FRANCHISE

With this federal law which is preemptive in part, albeit indirectly, as a background, we examine the pertinent provisions of Hoai's franchise with Sun, which we attach as Attachment B to this memorandum.  These pages are taken from the copy of the franchise which was an attachment to Hoai's PMPA complaint and thus was the copy litigated upon in the PMPA case of Hoai against Sun.  The authorizing provisions of the franchise as referenced in the PMPA section quoted are contained in Paragraph 19 of the GENERAL PROVISIONS of PART II of the franchise which is at the fourth page of Attachment B.

The Franchise, which is also the Franchise Agreement, defines what the PMPA defines as a "franchisee" as a "Dealer."  That is done on the very first page of the Franchise in the first line of text, where it speaks of the Franchise as being "made and executed by the herein named Company and Dealer…."  Then, immediately below that first block of text, where the form of the Franchise lists "**DEALER:**" the name of the present plaintiff Hoai is typed in

Thus Paragraph 19, "**SALE AND ASSIGNMENT**", in subparagraph a. specifies: "Subject to the following provisions, Dealer may make a sale of Dealer's business:". There then follows a series of seven numbered sub-sub paragraphs setting out in great detail what must be done before a franchise can be transferred.   In analyzing them it is

important to keep in mind that unless contravened by District of Columbia law governing service station franchises, they are empowered by the PMPA in § 2806(b) as set out above.

The conditions and restrictions in these sub-sub paragraphs are extensive, detailed and elaborate and they truly hedge in what a Franchisee or Dealer must do before a franchise can be transferred. The very first thing to note in them for present purposes is that sub-sub paragraph (1) is that the Dealer cannot transfer any part or parcel of the business to someone who is not a party to or a signatory on the Franchise without triggering the elaborate provisions of all seven sub-sub paragraphs. It is important to keep this in mind in reviewing Vo's complaint for the purposes of preclusion on the issue of ownership. The purported transfer of any part of the business, not just the attempted transfer of one of the three principal components of the Franchise, triggers all the requirements of all the sub-sub paragraphs.

The second sub-sub paragraph establishes precedent conditions of notice to the refiner which, it is clear from his complaints, Attachments E and F to the TRO motion previously filed, Vo did not fulfill in his attempts to buy the franchise for one dollar. Sixty (60) days prior to the effective date of the transfer of any part of the business, Hoai was required to notify Sun in writing of the prospective transfer, giving the name and current address of Vo together with the purchase price and all terms and conditions of the sale. One can only imagine how the one dollar price would have gone over at Sun with its officials had this precedent condition been fulfilled. Perhaps the terms and conditions would have included the penalty of breaking Hoai's legs if he did not turn the franchise over to Vo, the condition that two Sun officials testified that they were aware of.

Sub-sub paragraph (3) imposes upon the Dealer and any proposed transferee a requirement that Sun be allowed at least sixty (60) days from receipt of the required notice of the intended sale with all required documents and information in which to examine and analyze the qualifications of the proposed transferee such as creditworthiness, business experience and other reasonable criteria, in order to approve or disapprove the proposed transfer.  Again, it is evident from Vo's complaints that either this requirement was ignored by Vo or, which was the testimony of Sun at the TRO, that he was examined and found wanting.   It seems likely that such things as falsely having claimed to have been a manager at several franchises, to have owned franchises, to have owned a non-existent construction company and false claims to have been an officer and helicopter pilot would be disqualifying factors on a reasonable basis.

Sub-sub paragraph 7 makes the transfer claimed by Vo one that is fraudulent with regard to Sun.  We note that as part of Sun's switching loyalties from its legitimate Dealer  to Vo, whom they knew had threatened to break their Dealer's legs, they claimed this fraudulent transaction excused them from liability to Hoai under the PMPA.

THE LOCAL STATUTORY LAW THAT PERMITS TRANSFERS

But, as set out in 15 U.S.C. § 2806(b) and as we have noted, the provisions of the franchise governing transfer of the franchise cannot stand if they contravene any "applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise."  It is to be noted that this refers, not to any concept of Landlord and Tenant law locally, such as "wrongful eviction," but rather to state law which specifically allows the transfer or assignment of service station franchises and does so irrespective of any language in a franchise to the contrary.  Thus it refers to

statutory provisions aimed at that specific target.  The District of Columbia, which is defined by the PMPA as a state for these purposes, has such a statute, the District of Columbia Retail Service Station Act, (RSSA) codified at D. C. Code § 10-201 *et seq.*

What is permitted by way of the transfer of a franchise in this local statute of the District governing service station franchises, including their transfer, not only does not conflict with the requirements for transfer contained in the Sun franchise, it imposes conditions that are more demanding and rigorous and absolutely forbids the type of action that was brought by Vo in the Superior Court and is still pending there.  For example, D. C. Code § 225(b) provides that: "No retail dealer shall sell, assign, or otherwise transfer a marketing agreement or any interest therein unless he furnishes prior written notice to the distributor of his intention to make such a sale, assignment or other transfer.  Such notice shall be sent to such distributor by registered or certified mail and shall include the prospective transferee's name and address, a statement of the prospective transferee's financial qualifications, a statement of the prospective transferee's business experience during the previous 5 years, and a statement of the prospective transferee's ability, character, and credit history."   This is more accelerated and rigorous than the notice requirements in the Sun franchise set out in the attachment. It is clear that Hoai could not possibly have supplied this statutorily required information on Vo to Sun without engaging in fraud or putting forth information that Sun could not possibly accept under any standard of reasonable business practices.  How, for example, would you attest to the character of a man who has threatened your life and taken over your business with a phony loan scheme?

If Vo and Hoai had complied with D. C. Code § 10-225(b), which Vo's complaint

clearly shows did not happen, D. C. Code § 10-225(c) gave Sun the right to analyze the information and disapprove of Vo. Vo's complaint indicates that Sun did disapprove of him. This requirement that Sun be allowed to analyze and, if it had reasonable basis for doing so, disapprove of an applicant for transfer of the franchise, is the same in the RSSA as in the Franchise. Nor does Vo's complaint indicate adherence to D. C. Code § 10-225(d), which requires that the proposed transferee agree in writing to the refiner that he will abide by the Franchise.

Finally, we would note that Vo's complaint is in violation of D. C. Code § 10-226(b). That section states: "No prospective transferee shall have a cause of action against a distributor as a result of the distributor's disapproval of a proposed sale, assignment, or transfer of a marketing agreement." Thus, Vo's complaint is not only barred by the preclusion claimed herein through the preemptive operation of the PMPA, it is specifically, as originally filed to include Sun as a defendant, barred by the local statutory law to which the PMPA defers on the particular subject of transfer of a franchise. The fact of the matter is that if, instead of making its private deal with Vo that turned out to be in violation of federal law, Sun had simply invoked the controlling statute, it could have gotten rid of Vo's complaint and reinstated its legitimate dealer despite the erroneous TRO granted by a judge who paid no attention to either federal or state controlling law and injected a clearly erroneous concept into the matter so as to override the actual controlling law. As Attachment B to the TRO motion shows Sun's legal advice on these matters was completely incompetent; it simply accepted the legal advice of the lawyers for the miscreant Vo without even looking into the law. For almost twenty years it, and the defendants, have inflicted needless enormous damage on these

three plaintiffs in a matter that should have been dismissed on motion almost twenty years ago.

## VO'S COMPLAINT

Attachments E and F to the previously filed motion for a TRO are the Complaint and  First Amended Complaint that Vo filed against these three defendants and Sun in the Superior Court.  The major difference between the two is that at the TRO hearing on the original Vo complaint (Which, interestingly enough, had no request for injunctive relief even though injunctive relief was granted.) the TRO judge interjected into the case a charge by Vo which Vo and his lawyers did not have in the original complaint, the tort of wrongful eviction.  In fact the TRO judge departed from her role as a jurist and insisted that Vo go after these three plaintiffs for wrongful eviction so that she could find against them on that charge.  By ignoring the PMPA, and the Franchise of Hoai whose terms the PMPA empowered, and ignoring  as well as the RSSA, she was able to find, astonishingly, that Hoai, assisted by the Hemenways, had wrongfully evicted Vo from Hoai's own franchise, even though Vo himself had not initially made any such contention.  The record is devoid of any indication that the TRO judge, the Honorable Annice Wagner, had any knowledge of the actual law governing service station franchises, federal or local, or that she cared if there was any such law.  Her avoiding of the PMPA, as Judge Oberdorfter was to note, was conspicuous.   She decided to advocate for Vo with what she knew.  She had been a "People's Advocate" before going on the bench, that is, an attorney paid by the government to represent poor tenants against landlords.  She stuck with what she knew and advocated it, leading to Judge Oberdorfer's remark about her ignoring of the PMPA being conspicuous.  It was this advocacy of

Judge Wagner that Vo insert the charge of wrongful eviction against these three plaintiffs into his complaint that led to its being amended (Which amendment Judge Wagner made clear would be granted.) that led to the First Amended Complaint, Attachment F.

But, in both versions of the Vo Superior Court complaint, the failure of Vo to make out a legitimate claim of any possessory interest in the franchise in light of the law that we have set out and the decisions already made in the federal courts is clear.  In both complaints paragraph 14 alleges that Hoai signed all his interests in the franchise over to Vo in a written agreement, i.e., that by that agreement Vo came to own the franchise. The federal courts have ruled that Vo did not come to own the franchise.  The complaint, it should be noted, makes no allegation anywhere that this purported transfer of the franchise complied with the controlling law imposing requirements of 60 days notice with all documentation and information and another period of time for Sun to analyze Vo and reject him if he does not meet reasonable standards, quite apart from the issue preclusion but also strengthening of the issue preclusion.

Speaking to the Amended and Operative Complaint, Attachment F to the TRO motion: The allegations of Count I, Breach of Contract claim that Hoai breached his contract to sell the station to Vo.  In the federal courts it was tried and decided that there was no contract to sell the franchise to Vo.  By preemptive law as set out above any interest in the franchise, much less "all" of Hoai's interest  would be a transfer of the franchise.  There is no "interest in the station" apart from the franchise.  Count I could not be tried without relitigating the issue of whether Vo or Hoai owned the franchise.

Count II for Civil Trespass cannot be tried without relitigating the issue of who owned the franchise, Vo or Hoai.  Hoai and the Hemenways working with him obviously

cannot have trespassed on his own franchise.  Count III for civil assault would require relitigation of the ownership issue because it alleges that David Hemenway's behavior was in aid of wrongful seizure of the franchise by Hoai and the Hemenways.  It was Hoai's franchise.  To prove wrongful seizure and assault as alleged would require relitigation of the issue of who owned the franchise.

Count IV for conversion would require relitigation since Hoai and the Hemenways had every right to sell the inventory of Hoai's franchise.  Count V for Lost Profits would require relitigation of the ownership issue because the profits of Hoai's franchise are Hoai's profits.  Count VI, Tortious Interference with Advantageous Business Relationship, would require relitigation of the ownership issue because the outcome of the Hoai PMPA litigation established that Hoai owned the franchise when it was illegally terminated by Vo and Sun interfering with Hoai's business relationship with Sun.  Vo, it has been ruled, had no advantageous business relationship with Sun.  Similarly Count VII, Tortious Interference with Contract, would require relitigation of the ownership issue since Vo and Sun had no legitimate contract.  Their contract was found to be illegal as a matter of preemptive federal law.

Count IX, Wrongful Eviction, would require relitigation of the ownership issue because it would require a showing that Vo could legitimately possess the premises with some rights therein.  But we have seen that any such alleged rights would have to be a franchise that belonged to Vo and not to Hoai.  Count X, Civil Conspiracy, would require relitigation of the issue of ownership in order to show that Vo had a right to keep the alleged conspirators from the premises.  Count XI would require relitigation to show that Vo had a contract making him the franchisee.

Therefore, the defendants should be enjoined from allowing any prosecution of Vo's amended complaint.

## THE OTHER TWO FACTORS

No interested party, particularly not one of these defendants, is injured by having to abide by rulings on an issue already fully and fairly litigated and decided. The courts are clogged enough without having to relitigate issues needlessly. The Public Interest is not served by courts and judges relitigating issues and particularly not by the avoidance of controlling and preemptive federal law.

Respectfully submitted,

/s/

Laurence A. Elgin    Bar # 159582
Suite 900 South Building
601 Pennsylvania Avenue, NW
Washington DC 20004-3615
(202) 628-1114
(202) 628-6798 - fax

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.*    )
    Plaintiffs,    )
          )
v.          ) CIVIL ACTION NO.  1:06-cv- 00210-RJL
          )
          )
The SUPERIOR COURT of the  )
DISTRICT of COLUMBIA, *et al.,* )
    Defendants.   )

## ORDER

The Court, having considered the Motion of the Plaintiffs for preliminary and permanent injunctive relief to enjoin relitigation of the issue of ownership of the Sun Franchise on Pennsylvania Avenue SE in Washington, D. C. as previously decided in the Court and the United States Court of Appeals for the District of Columbia Circuit, and the opposition thereto, now hereby ORDERS:

That all of the Defendants, and particularly the defendant Superior Court of the District of Columbia and the defendant the Honorable Herbert B. Dixon, Jr., are enjoined temporarily and permanently from allowing any relitigation of the said issue of ownership of the said franchise as presently contemplated in the First Amended Complaint of Thanh Van Vo in the subject litigation presently in the Superior Court of the District of Columbia as C,A, No. 7075-86, and that the said complaint or any other complaint or document attempting to relitigate the said issue of ownership as between Thanh Vong Hoai and Thanh Van Vo be precluded and estopped from this day forth.

_____
Richard J. Leon, United States District Judge

copies to:  Laurence A. Elgin, Esq., Ste 900 South Bldg., 601 Pennsylvania Avenue, NW, Washington DC 20004-3615; Office of the Attorney General, District of Columbia, Att: Shana Frost, Esq., Nicole Lynch, Esq., 441 Fourth Street, NW, 6th Floor South, Washington DC 20001