HOAI, et al. v. The Superior Court of the District of Columbia, et al.
CIVIL ACTION NO. 1:06-cv- 00210-RJL

ATTACHMENT B

places Temp Cl.

420 - 1 - T.F.

Date: March 27, 1986

Duns No: 0004-4180-14

Division: 750

# DEALER TRIAL FRANCHISE

## PART I

## COVER PROVISIONS

TRIAL FRANCHISE is made and executed by the herein named Company and Dealer for purposes of stating the terms and itions by which Company will make available for sale, Company's branded motor fuels to Dealer, and Dealer will operate Dealer's ess, including the resale of Company's branded motor fuels to the public, at the Premises described below. This Trial Franchise itutes a "trial franchise" as that term is used in and defined by Title 1 of the Federal Petroleum Marketing Practices Act, 15 C. §2801, et seq., hereinafter referred to as "the Act".

PANY: SUN REFINING AND MARKETING COMPANY

PANY'S ADDRESS: 1801 Market Street
Philadelphia, PA 19103

LER: THANH VONG HOAI

MISES' ADDRESS: 2305 Pennsylvania Avenue, S.E.
Washington, D.C. 20020

E OF MOTOR FUEL FRANCHISE: RETAIL GASOLINE SALES: Full and Self Service
BUILDING USE: Conventional 3-Bay Service
Canopy and Kiosk

M:
TERM OF THIS TRIAL FRANCHISE IS ONE YEAR, BEGINNING ON April 10, 19 86, AND ENDING ch 31, 1987. COMPANY MAY ELECT NOT TO RENEW THIS TRIAL FRANCHISE AS OF THE DATE LAST ABOVE ED BY PROVIDING DEALER WITH WRITTEN NOTICE IN ACCORDANCE WITH THE PROVISIONS OF SECTION 104 OF THE THE PROVISIONS OF SECTION 102 OF THE ACT, LIMITING THE RIGHT OF COMPANY TO FAIL TO RENEW A FRANCHISE ATIONSHIP, ARE NOT APPLICABLE TO THIS TRIAL FRANCHISE. IN ADDITION, COMPANY MAY TERMINATE THIS ATIONSHIP PRIOR TO THE DATE LAST ABOVE STATED IN THE EVENT OF A VIOLATION OR BREACH OF THIS TRIAL NCHISE RELATIONSHIP, OR OF THE TERMS AND CONDITIONS CONTAINED IN THIS TRIAL FRANCHISE, OR FOR ANY ON ALLOWED BY SAID ACT.

T:
r shall pay to Company rent for said Premises, in monthly installments in accordance with the following schedule:
the period April 10 1986 through ~~March 31~~, 1987, Four Thousand Five Hundred Eighty Dollars ($4,585.00) per month. April 9, 1987

monthly installment is due and payable in advance, without demand or notice, on or before the fifth (5th) day of the month. shall be prorated on a daily basis for periods of less than one (1) month.

S AND DAYS OF OPERATION:
r will operate Dealer's business and the Premises in the manner required by this Trial Franchise during the following hours per d days per week:

24 hours a day/7 days a week

_______ to _______ Weekdays/Saturdays _______ to _______ Holidays

_______ to _______ Sundays

0016

ANY'S EQUIPMENT:
e by Dealer in promoting and selling Company's branded motor fuels, Company loans to Dealer, for the term of this Trial ise, the following equipment which is or will be installed on said Premises by Company:
Single Retros Leaded, 6 Retros Blended, 2 - Single Retros, Diesel, 2 - Sunoco Diamond Set Sunoco Letters

UNDERLYING LEASE: NOT APPLICABLE
Company's right to grant possession of the Premises to Dealer is subject to an underlying lease which contains an initial term of ______ (______) years, from ______ to ______ with ______ (______) year renewal options, which lease might expire or nonrenew at the expiration of the initial term or any renewal option thereof.

PERSONAL SUPERVISION:
This Trial Franchise is made on the condition and understanding that Thanh Vong Hoai will personally manage the daily operation of Dealer's business. Prior written consent of Company is required in the event the above named individual desires to cease personal management of Dealer's business. Said consent of Company shall not be unreasonably withheld.

COLLATERAL DEPOSIT:
Terms and conditions governing collateral deposits listed below are set forth in Part IV Collateral Deposit Provisions.

Federal Identification or Social Security No.: 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
State Code No.: 16

Cash Portion of Deposit Only: Five Thousand ------------- Dollars ($ 5,000.00 )

Plus an additional amount to be accumulated from time to time at the rate of one-half ( ½¢ ) cents per gallon on all deliveries of motor fuel until a total of Twenty Five Thousand --------- Dollars ($ 25,000.00) has been accumulated.

Other agreed arrangements for accumulation of cash deposit: None

Collateral Other Than Cash: None

CREDIT CARD IMPRINTER:
Dealer acknowledges receipt of Two ( 2 ) Credit Card Imprinter and Mount Box unit(s) and agrees to pay Company in advance a rental at an annual rate of Forty Dollars ($ 40.00 ) per unit, effective the first day of the month following installation and extending to the next June 30th. Subsequent annual rental charges will date from July 1st for each succeeding year. Installation and maintenance costs of said units shall be paid by Company.

Dealer agrees not to remove said unit(s) from the Premises where installed, and to pay Company One Hundred Thirty Two Dollars ($ 132.00 ) per unit in the event said unit(s) are lost or destroyed. Dealer agrees to return said unit(s) to Company upon request and hereby gives Company the right to remove the same at any time without notice and, in either event, Company shall refund any unearned prepaid rental.

Company reserves the right at all times to change the foregoing rental upon giving Dealer thirty (30) days' prior written notice.

PARTS OF DEALER TRIAL FRANCHISE:

Part I Cover Provisions
Part II General Provisions
Part III Lease Provisions
Part IV Collateral Deposit Provisions
Part V Credit Card Acceptance Provisions
Part VI Maintenance Provisions
Part VII Daily Recordkeeping and Inventory Control Provisions

The Provisions above constitute Parts of this Trial Franchise, and are incorporated therein and made a part thereof for all purposes.

NOTE TO DEALER: This is a binding legal document containing several Parts. You should carefully read each Part before signing in the space provided below.

EXECUTED the ______ ( 8th ) day of April, 1986

WITNESSES: [signature]

DEALER: [signature]
THANH VONG HOAI

[signature]

COMPANY:
BY: [signature]
Title: DIVISION SALES MANAGER

SUN 420 - II

# DEALER FRANCHISE

# PART II

# GENERAL PROVISIONS

PREMISES AND EQUIPMENT

a. Dealer, being in possession and control of the Premises and Equipment, shall keep the same in good order and condition at all times, and shall notify Company of any need for repairs of Company's Premises and Equipment in accordance with Part VI Maintenance Provisions. Notification by Dealer to Company of a need for repair, and the assumption by Company of repair shall not relieve Dealer of liability to Dealer's employees, invitees, customers and the general public for loss, injury and damage arising because of a state of disrepair to the Premises or Equipment.

b. Company shall have ingress and egress to the Premises exercisable at any time, and from time to time, for purpose of inspecting the Premises and Equipment. This right of inspection includes, but is not limited to, reading meters and gauging tanks, taking samples of motor fuels, and examining systems associated with the storing and dispensing of motor fuels, and to adjust, exchange, remove, discontinue use of, repair or add to any of Company's Premises and Equipment, including Company's brand identification, as Company ·ay deem necessary or desirable. All of the foregoing shall . without liability to Dealer, Dealer's employees and re-presentatives, for any loss or damage, except only for loss or damage solely caused by Company's negligence occurring in the course of such activity.

c. Dealer shall strictly comply with Part VII Daily Record-keeping and Inventory Control Provisions relating to underground storage of motor fuels.

d. Dealer shall strictly comply with Part III Lease Provisions.

PRICES

Dealer agrees to pay Company's Dealer prices in effect at the time and place of delivery for motor fuels and other products purchased by Dealer from Company. Company reserves the right at any time, and from time to time, to change its prices and to change the method of calculating such prices and values for products covered hereunder.

TERMS OF PAYMENT

. Dealer shall pay cash at the time of delivery for all products purchased by Dealer from Company, unless Company, at its option, establishes credit terms for Dealer.

. All credit terms and methods of payment shall be deemed a part of this Dealer Franchise, and may be amended or terminated at any time and from time to time by Company, upon notification thereof to Dealer. Company may suspend deliveries of products to Dealer in the event Dealer does not comply with credit terms and methods of payment determined by Company. The right to amend and terminate credit terms and methods of payment and suspend deliveries of products to Dealer shall be in addition to, and not in ·stitution for, other rights and remedies available to ·npany.

c. Company shall make diligent efforts to invoice accurately, to provide an account statement, and to correct errors when discovered. In the event an overbilling occurs, Company will promptly credit Dealer's account, and if an underbilling occurs, Dealer shall pay Company such additional amounts upon receipt of corrected invoices or statements of account.

d. All unpaid accounts owing to Company by Dealer shall bear interest from the due date until paid at rates established by Company or by law. Also, checks or drafts returned unpaid by Dealer's bank for any reason shall be assessed and Dealer shall pay a returned check charge at rates established by Company.

e. Dealer shall provide Company, at Dealer's expense, with financial statements and other information relative to Dealer's credit standing, when requested from time to time by Company. Dealer represents that such information is prepared in accordance with generally accepted accounting principles and practices, consistently applied, fairly and accurately reflects Dealer's financial position, and may be relied upon by Company in doing business with, and in extending credit to, Dealer.

4. RIGHT OF OFFSET; SECURITY INTEREST

a. Dealer grants Company the right, in the event Dealer fails to pay any and all sums owed to Company when due, to offset and apply sums held by Company and owing to Dealer. This offset right and application of funds shall be in addition to, and not in substitution for, other rights and remedies available to Company by law and other provisions of this Dealer Franchise.

b. To secure the payment of accounts owing by Dealer to Company, Dealer shall deposit with Company cash, stocks, bonds or other things of value acceptable to Company, in amounts determined by Company, pursuant to Part IV Collateral Deposit Provisions. Company, at its sole discretion, may require Dealer, from time to time, to execute and deliver financing statements, security agreements or other documents.

5. USE OF COMPANY NAMES; INDEPENDENT DEALER RELATIONSHIP

a. Dealer, as an independent businessperson, shall operate Dealer's business under Dealer's name, which shall be prominently displayed at the Premises together with the words "independent franchise dealer". Use of Company's brand identification as hereinafter defined and credit card system in connection with Dealer's business shall be limited to advertising to Dealer's customers that Dealer offers for sale Company's branded motor fuels and accepts Company's credit cards. Company's brand identification is not licensed by this Dealer Franchise to Dealer. Dealer shall not employ Company's brand identification as a part of a corporate or partnership name. Dealer's use of Company's brand identification and credit card system shall cease immediately upon termination or nonrenewal of this Dealer Franchise. Dealer does not, and shall not have any claim, right, ownership or other proprietary interest in Company's brand identification and credit card system.

Copyright 1981 Sun Refining And Marketing Company

NOTICES

Any notices required by, or otherwise given in connection with, this Dealer Franchise shall be in writing and signed by the party giving such notice. Any notice directed to Company shall be mailed or delivered to Company's address stated in Part I Cover Provisions, and notices directed to Dealer shall be mailed or delivered to Dealer at the Premises.

16. NON-WAIVER

Should either Company or Dealer at any time waive or fail to enforce any provision of this Dealer Franchise (including all parts, amendments and ratifications and addendum thereto), such waiver or failure to enforce shall not be construed as a waiver or relinquishment of that party's right thereafter to enforce any such provision.

17. ENFORCEMENT; APPLICABLE LAW; RENEWAL, NONRENEWAL AND TERMINATION OF THIS DEALER FRANCHISE

a. Company has the right to enforce and require specific performance of all provisions of this Dealer Franchise including, but not limited to, Company's right to seek injunctive relief or any other rights or remedies available to Company.

b. This Dealer Franchise is subject to and governed by the Act, which is made part of this Dealer Franchise for purposes of expressing the grounds upon which it may be terminated and nonrenewed by Company. The Company's right to terminate or nonrenew under the Act shall be in addition to, and not in extinguishment of, all other rights and remedies provided in favor of Company by applicable law and this Dealer Franchise. Therefore, should Dealer fail to substantially comply with, or violate, any requirement imposed upon, or promise made by Dealer in this Dealer Franchise, Company may nonrenew or terminate this Dealer Franchise.

c. Prior to the end of the term of this Dealer Franchise, Company may determine to renew and continue its franchise relationship with Dealer on the basis of proposed changes and additions to the provisions hereof (including, but not limited to, changes in the rates and amounts of rent to be paid by Dealer for the Premises), and shall advise Dealer of same. All such changes and additions proposed by Company shall be the result of determinations made by Company in good faith and in the normal course of business. Should Dealer and Company fail to agree upon such changes and additions, Company shall have the right, upon notice to Dealer, to nonrenew this Dealer Franchise and the franchise relationship with Dealer as of the end of the term stated in Part I Cover Provisions. Should Dealer and Company agree upon such changes and additions, then Company agrees to renew this Dealer Franchise and continue the franchise relationship with Dealer, subject to and in accordance with the agreed changes and additions and the execution by both parties of a renewal Dealer Franchise.

d. In the event Company should violate any substantive provision of this Dealer Franchise and not promptly correct same, Dealer may terminate this Dealer Franchise with Company at any time upon 90 days' prior written notice to Company. Said written notice must specify the particular reason or reasons which give rise to such termination in order to be effective.

e. Upon the effective date of the termination or nonrenewal hereof,

(1) All unpaid accounts owed by Dealer to Company, shall be due and payable in full, and shall bear interest from such date until paid at the rates established by Company's credit terms with Dealer;

(2) Dealer shall cease the use of Company's brand identification and credit card system, and shall forthwith return the same to Company, together with all of Company's loaned Equipment, in good order and condition, at Dealer's expense;

(3) Company shall repurchase from Dealer all Company branded motor fuels at Dealer's cost therefor; the amount thereof to be paid to Dealer or applied to Dealer's unpaid account with Company, as determined by Company.

18. SURVIVORSHIP

a. In the event of death or incapacity of Dealer (for more than three (3) months, preventing, or likely to prevent, Dealer from continuing the active operation of the business and Premises throughout the remaining term of this Dealer Franchise in the same manner and to the same extent as existed prior to such event), this Dealer Franchise and the franchise relationship between Company and Dealer will continue in effect, provided that Dealer, or Dealer's legal representative, promptly make arrangements on behalf of Dealer satisfactory to Company, to continue the operation of the franchise business in the same manner and to the same extent as existed prior to such event.

b. For purposes of the foregoing, the term "Dealer's legal representative" means a guardian, executor or administrator appointed by a court. Where there is no such appointed legal representative, and Dealer is deceased or otherwise unable to act on Dealer's own behalf, then for purposes hereof the term means Dealer's spouse or other relative(s) acting on behalf of Dealer or Dealer's estate; provided, however, that Company shall have the right to determine and be satisfied with respect to the authority of any person or persons so acting on behalf of Dealer's estate; provided, further, that in appropriate circumstances Company, on its own, may institute legal proceedings for purposes of having a guardian or administrator appointed to represent Dealer's estate.

19. SALE AND ASSIGNMENT

a. Subject to the following provisions, Dealer may make a sale of Dealer's business:

(1) For purposes hereof, a "sale of Dealer's business" includes: (a) any reorganization of Dealer's business, such as incorporation or the formation of a partnership or other business entity subsequent to the date of this Dealer Franchise whereby another person, not previously a party hereto, acquires rights with respect to Dealer's business or its operation; (b) any transfer or assignment of an interest in Dealer's business or any part thereof or an assignment or subletting in whole or in part of the Premises to any person, firm or corporation not a signatory party hereto. The term "Dealer's business" includes purchasing and reselling of Company's branded motor fuels and the use and possession of the Premises. A change in the marital status of Dealer, if an individual, and granting of a lien or security interest in Dealer's business for financing purposes, shall not constitute a sale of Dealer's business.

At least sixty (60) days' prior to the effective date of a sale of Dealer's business, Dealer shall notify Company in writing of such sale. The notice to Company shall include the name and the current address of the purchaser(s), together with the purchase price, if any, and all other essential terms and conditions of the sale. Copies of all documents (including the proposed sale contract) that will be used in connection with the sale shall also be provided to Company. Dealer represents to Company that all information supplied to Company with respect to a sale of Dealer's business is true and correct.

(3) Upon receipt of Dealer's notice given pursuant to preceding paragraph, Company shall thereafter have at least sixty (60) days' time to conduct an examination of the purchaser's credit standing, financial condition, business suitability to function as a franchisee of Company and to evaluate the proposed sale of Dealer's business. In this respect, Dealer and purchaser(s) shall provide Company with all information as Company requests for purposes of making its examination. Dealer shall bear the cost of the examination of the purchaser's credit standing. Such examination, and any disapproval or conditioned approval made by Company, shall be in accordance with, and based upon, reasonable and objective business practices and standards. Company shall not be held liable for any losses caused Dealer by such disapproval or conditioned approval.

(4) If, in Company's opinion, based upon objective and accepted business practices, such person does not have sufficient credit standing or business experience to function as a dealer in the manner required by this Dealer Franchise, then Company shall notify Dealer in writing of its opinion and may refuse to permit the contemplated sale of Dealer's business, or by such writing may condition its approval upon a revision of credit terms, upon execution by such party of a Trial Franchise (as that term is used in the Act) as a substitute for this Dealer Franchise and upon the attendance and successful completion by such party of Company's dealer training school.

(5) If, based upon Company's examination, such person acquiring an interest in Dealer's business does have sufficient credit standing and business experience to function as a dealer in the manner required by this Dealer Franchise, then Company shall approve the assignment without condition, except Company shall have the right to require such person to execute a Trial Franchise (as that term is used in the Act) as a substitute for this Dealer Franchise and to require such person to attend and successfully complete Company's dealer training school.

(6) Each actual or contemplated sale of Dealer's business, shall be made subject to the foregoing provisions of this Dealer Franchise. An assignment of this Dealer Franchise, whether or not made in the manner permitted by these provisions shall not alter or discharge Dealer's obligations hereunder to Company, except as agreed to beforehand in writing by Company, or when the sale of the Dealer's business is made to Company.

(7) Should Dealer complete a sale of Dealer's business in whole or in part and fail to notify Company as above required, or make a sale or assignment which has been disapproved by Company or fail to provide Company complete information as requested by Company, such action or failure, as case may be, shall be treated for all purposes as fraud.

b. Company may assign this Dealer Franchise to any distributor, jobber, refiner or other "franchisor", as that word is used in the Act subject to the following:

(1) Assignee shall agree in writing with the Company to perform and comply with all of Company's obligations hereunder.

(2) Company shall notify Dealer in writing of the name and the address of assignee and the effective date of assignment.

(3) Such assignment when made in the manner above provided shall not be treated as either a termination or nonrenewal of this Dealer Franchise, or of any of Dealer's rights as a "franchisee" under the Act, but this Dealer Franchise and Dealer's rights shall continue in full force and effect. Assignee shall succeed to all of the rights and privileges provided in favor of Company under this Dealer Franchise and the Act.

20. REPRESENTATIONS OF DEALER

a. Dealer represents the following to Company:

(1) Dealer is entering into and signing this Dealer Franchise of Dealer's own free will and choice, and is not acting under influence of any threat or coercion by Company or its representatives.

(2) There have been no promises, claims or representations made to Dealer by Company or its representatives of any kind (including for purposes of illustration, promises concerning price, quality or quantity of products and services sold or supplied by Company, condition of, future repairs to, or replacements of, Equipment or Premises, or present or future market conditions and competitive activities) which are not contained in this Dealer Franchise or in another written document signed by, or furnished to Dealer by, Company as a part of the franchise relationship.

(3) Dealer has employed, or has had sufficient opportunity to employ, legal counsel for the purposes of examining and explaining this Dealer Franchise to Dealer.

(4) Dealer has carefully read and examined this Dealer Franchise, has had sufficient opportunity to do so, and understands Dealer's obligations and responsibilities as a franchisee.

(5) Dealer is signing this Dealer Franchise for purposes of operating a first class branded motor fuel outlet and purchasing from Company and reselling to the motoring public Company's branded motor fuels.

(6) Dealer has no intention or plan, at the time of signing of this Dealer Franchise, to transfer or assign this Dealer Franchise or Dealer's business.

(7) There are no other persons who have any interest in Dealer's business, or who will act in the capacity of a Dealer hereunder, who are not named herein as a Dealer, except as disclosed in writing to Company.

(8) Dealer has, or will promptly obtain, training and education sufficient to operate Dealer's business in accordance with the standards and practices normally expected of first class branded motor fuel operators.