UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THANH VONG HOAI**, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **SUPERIOR COURT OF THE** ) <br> **DISTRICT OF COLUMBIA**, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 06-0210 (RJL) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A
PRELIMINARY AND PERMANENT INJUNCTION**

*Introduction*

Once again, Plaintiffs appear before this Court seeking what this Court previously described as truly extraordinary relief.[1] Plaintiffs cannot meet the legal standard that would entitle them to such relief. Indeed, while offering no additional evidence to support their arguments, Plaintiffs seek to cast an even wider net of injunctive relief, which essentially comprises all the relief they seek in their Complaint, *i.e.,* an order requiring the District of Columbia judiciary to enforce in a Superior Court case a supposed order by Judge Oberdorfer in a case involving different parties and a different claim. In their previous application for a temporary restraining order, Plaintiffs sought to enjoin the actions of just one judge; now, Plaintiffs ask this Court to enjoin the *entire* District of Columbia court system. Such a remedy simply is not permitted by facts, law

---

[1] The opinion of this Court is shared by others. *See, e.g., Panhandle Eastern Pipe Line Co. v. Thornton*, 267 F.2d 459, 460 (6th Cir. 1959) (an injunction against a judge is a "drastic and extraordinary remedy" that is "reserved for really extraordinary causes.").

or common sense. Defendants therefore request that the Court deny Plaintiff's Motion for a Preliminary and Permanent Injunction.

### *Legal Standard*

In order to obtain a preliminary injunction, plaintiff must satisfy *each* prong of the following four-part test: (1) there is a substantial likelihood of success on the merits; (2) plaintiff will suffer irreparable harm should the relief be denied; (3) an injunction would not substantially injure other interested parties; and (4) the public interest will be furthered by the issuance of the requested order. *Mova Pharmaceuticals Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) ("A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (*citing Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (a preliminary injunction is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998), a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995). As set forth below, Plaintiffs cannot meet any of the four factors of the test for injunctive relief and therefore their Motion must be denied.

*Argument*

I. **Plaintiffs Are Unable to Show Likelihood of Success on the Merits**

Plaintiffs assert that they are entitled to injunctive relief "based on the *res judcatae* and collateral estoppel or claim and issue preclusion to which they are entitled because of rulings and holdings in this Court and the United States Court of Appeals for this circuit." Pls.' Mot. at 1. While Plaintiffs merge together the concepts of claim and issue preclusion in their Memorandum in Support of Their Motion, the doctrines are distinct. As set forth below, Plaintiffs cannot succeed on their claim that either *res judicata* or collateral estoppel apply. Without such a showing, Plaintiffs cannot maintain their action under the alleged exception to the Anti-Injunction Act, 28 U.S.C. § 2283, which permits a federal court to enjoin a state court to protect or effectuate its own judgment. Because Plaintiffs cannot show that they fall within any exception to the Anti-Injunction Act, Plaintiffs are precluded from seeking an injunction against the District of Columbia court system.

    A. *Plaintiffs Have Not Demonstrated That* Res Judicata *Should Apply to the Superior Court Action*

Plaintiffs' contention rests on their unsupported assertion that *res judicata* applies to the lawsuit currently pending in the Superior Court of the District of Columbia before Judge Herbert B. Dixon. In order for *res judicata* to apply, Plaintiff must show the following four factors: (1) identity of parties or their privies in each suit; (2) that the judgment at issue was rendered by a court of competent jurisdiction; (3) that the judgment was final and on the merits of the case; and (4) that there is an identity of causes of action in each suit. *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 n.21 (D.C. Cir. 1985).

3

In this case, there is no dispute that Judge Oberdorfer had jurisdiction over the Petroleum Marketing Practices Act (hereinafter "PMPA") suit between Plaintiff Hoai and Sunoco, or that the judgment in that case was final and on the merits. Plaintiffs have not shown – nor can they show – (1) privity of parties or (2) an identity of causes of action.

"'Privity is a term with different meanings in different contexts . . . the concept of 'privity of parties' for *res judicata* purposes is not the same as the concept of 'privity of contract.'" *Phil Crowley Steel Corp. v. Sharon Steel Corp.*, 702 F.2d 719, 722 (8th Cir. 1983). Indeed, our Circuit has noted that privity is a "compendious term that may mislead more than it enlightens." *Gill & Duffus Servs., Inc. v. A.M. Nural Islam*, 675 F.2d 404, 405-406 (D.C. Cir. 1982).

Privity has generally been found to "designate[] a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jefferson Sch. of Soc. Science v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963). "The 'orthodox categories' of privies are 'those who control an action although not parties to it . . .; those whose interests are represented by a party to the action . . .; [and] successors in interest.'" *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989), quoting *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326 (1955); *see also Novak v. World Bank*, 703 F.2d 1305, 1309 n.11 ("In most situations where privity has been held to exist, one or more of the following three relationships between the privies are present: concurrent relationship to the same right of property; successive relationship to the same right of property; or representation of the interests of the same person.") (quoting 1B J. MOORE & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.411[1] at 1255 (2d ed. 1982)).

4

Plaintiffs seek to contend that the purported existence of some type of contractual agreement between Thanh Van Vo, a party in the Superior Court action but not the PMPA case, and Sunoco, whereby Sunoco supplied motor fuel to Vo, creates privity between Vo and Sunoco for purposes of *res judicata*. They offer no law in support of their assumption, and instead appear to take the approach that if they make the assertion that Sunoco was in privity with Vo enough times in their brief, then it will simply become true.

Plaintiffs attempt to establish privity with a handful of arguments that quite simply ignore the law cited here. They assert that Sunoco's answer in the PMPA case established privity between Vo and Sunoco because Sunoco ratified an agreement for sale between Vo and Hoai. Pls.' Mem. in Supp. at 15-16. That Sunoco agreed to supply fuel to Vo as the new owner of the service station simply reflects that Sunoco had a contractual agreement with Vo, not that Sunoco and Vo shared the same legal rights. Similarly, Plaintiffs point to an Affidavit from Jeffrey Wagner that also does not demonstrate that Sunoco and Vo shared an identity of interests. If anything, Sunoco's contractual relationship with Vo demonstrates fundamentally divergent interests – Sunoco is a supplier of fuel, Vo was the receiver. The interests of each are distinct, and one cannot play the role of the other.

Indeed, there can be no doubt that Vo did not have the same legal rights vis-à-vis Hoai under the PMPA as those rights that Sunoco enjoyed.[2] As Judge Oberdorfer held in

---

[2] Indeed, it should be noted that the Hoai parties added numerous additional parties to the Superior Court case and have made no argument whatsoever as to how any these parties are in privity to Sunoco or Hoai. These additional third-party defendants include Thach Duy Nguyen; Minh Van Nguyen; Nguyen Thi Bach Luu; "John Do, Richard Ro, Nguyen Tu Lo and Carl Ko;" My-Linh Soland; Michael S. Arif; David C. Roseman; Millard F. Ottman, Jr.; Jones, Day Reavis and Pogue; Suntech Sunoco, Inc.; Thoi Van Vo; Hung

5

the opinion which Plaintiffs seek to apply to the Superior Court action, Sunoco had a franchise agreement with Hoai, which Sunoco breached. *See Hoai v. Sun Refining & Marketing Co.*, 1990 U.S. Dist. LEXIS 13015 (D.D.C. Oct. 1, 1990). Vo had no interest in or right to Sunoco's franchise agreement with Hoai. Moreover, there is no evidence to show that Vo in any way controlled or even could possibly control Sunoco's litigation with Hoai in federal court.[3] Finally, Vo could not be said to be a successor in interest to Sunoco's franchise agreement with Hoia – Vo could not step into the shoes of Sunoco, own Sunoco's trade mark or supply motor fuel to service station owners. Thus, Plaintiffs have not established that Sunoco and Vo are privies and therefore *res judicata* cannot apply.

Moreover, Hoai's co-plaintiffs in the present case, John and David Hemenway, similarly do not share privity under the legal definitions set forth above. Thus, Plaintiffs' assertion that "the Hemenways had agreed to help Hoai and were thus in privity with him" is an unsound conclusion without any legal basis. Similarly, Plaintiffs' claim that "the Hemenways have no desire to deny that the issue of ownership was fully litigated in the PMPA case that Hoai successfully litigated against Sun in this Court and they join in ths [sic] complaint precisely because, among other things they wish to have any potential

---

Thi Nguyen Vo; Phuly Hoa Vo; and "First Name Unknown Ly." Ex. 1 (Answer, Counter-Claim and Third-Party Claim at ¶¶ 77-91).

[3] Plaintiffs try to establish identity between Sunoco and Vo with statements such as "Sun put forward in support Vo as its witness and managed him and his interests in the [PMPA] litigation. They deposed him in the offices of their counsel and put forward extracts of his testimony in that deposition as the first exhibit to their cross motion for summary judgment." Pls.' Mem. in Supp. at 28. Plaintiffs then take the next few pages to accuse Vo of lying. It should be noted that Vo had no "interests" to be "managed" in the PMPA litigation as Vo was not a party to the contract between Hoai and Sunoco. Moreover, Plaintiffs are simply taking normal litigation activity, such as the location of a deposition and the use of a deposition transcript in support of a motion, and inflating it into conjecture to support otherwise unsupportable arguments and conclusions.

relitigation of the issue of the ownership of the Sun franchise enjoined," reflects a convenient way of ignoring controlling law in an apparent attempt to sidestep actually having to prove and defend against claims asserted in the Superior Court case.  Pl.'s Mem. at 14.  Put simply, Plaintiffs cannot waive the privity requirement in order to have a claim decided their way against other parties to a lawsuit.

Plaintiffs also cannot show an identity of causes of action.  The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action."  *U.S. Indus.*, 765 F.2d at 205, citing *I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983).  "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"  *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002) quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984).  The Court will therefore consider "a transaction or series of transactions and give[] 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *U.S. Indus.*, 765 F.2d at 205, quoting Restatement (Second) of Judgments § 23(2) (1982).

In the case before Judge Oberdorfer, Hoia proceeded solely under the PMPA, specifically "alleging that Sunoco terminated [Hoai's] Dealer Trial Franchise Agreement in violation of the Act."[4]  *Hoia*, 1990 U.S. Dist. LEXIS 13015 at *1.  In his Memorandum Opinion, Judge Oberdorfer considered whether Sunoco had materially breached its agreement with Hoia, and concluded that Sunoco had done so by supplying motor fuel to

---

[4] Trial franchise agreements are covered by 15 U.S.C. § 2803 of the PMPA.

Vo instead of Hoai, thereby terminating Hoai's franchise agreement under the terms of the PMPA. *Id.* at *14-15.

Despite Plaintiffs' self-serving, conclusory arguments attempting to establish the existence of identity of claims, *see* Pls.' Mem. in Supp. at 44-45, the claims in the Superior Court case are multiple and varied, extending well beyond the claims in the PMPA case. In the Amended Verified Complaint in the Superior Court case, Vo asserts causes of action against the Plaintiffs here for breach of contract (Count I), civil trespass (Count II), civil assault (Count III), conversion (Count IV), lost profits (Count V), tortious interference with advantageous business relationship (Count VI), tortious interference with contract (Count VII), money lent (Count VIII), wrongful eviction (Count IX), civil conspiracy (Count X), and declaratory judgment and injunction (Count XI). *See* Am. Verified Compl. (Ex. F to Pls.' T.R.O. Mot.). The facts Vo alleges in support of these claims involve discussions between Vo and Hoai over negotiations and purchase of the Sunoco franchise and an agreement between Vo and Hoai relating to that purchase. *See generally id.* Vo also alleges actions by the Hemenways which he claims resulted in Vo's eviction from the premises. *Id.*

It is clear that with respect to Vo's claims against Hoai and the Hemenways, there is no identity of claims. Most of the facts leading to the claims Vo asserts have nothing to do whatsoever with Sunoco's franchise agreement with Hoai. Rather, Vo's facts address an alleged agreement between Vo and Hoai, and a breach of that agreement. None of the facts asserted by Vo in the Superior Court arise from a common nucleus with those alleged in by Hoai in support of his claims against Sunoco in the case before Judge Oberdorfer. Indeed, in his Memorandum Opinion, Judge Oberdofer notes the dispute between Hoai and Vo as an aside, stating that "[w]hatever may be the ultimate resolution of the dispute between Vo and

8

Hoai, it is undisputed that Sunoco supplied motor fuel to whomever was occupying the station from April, 1986 until August 25 of that year." *Hoai*, 1990 U.S. Dist. LEXIS 13015 at *2.

Similarly, there is no identity of claims in the Hoai parties' Superior Court case against Vo and Sunoco. In their cross-claim and third-party claim, Hoai and the Hemenways assert causes of action against Vo, Sunoco and a myriad of other third-party Defendants for breach of settlement contract (Count I), fraudulent inducement/fraud and deceit (Count II), conspiracy to commit fraud (Count III), tortious taking/theft/illegal conversion (Count IV), battery and threatened assault (also numbered as Count IV), trespass (Count V), malicious breach of contract (Count VI), illegal conversion of property and theft of money (Count VII), tortious interference with contract (Count VIII), tortious interference with business relationship (Count IX), conspiracy to damage business, business reputation and business relationship (Count X), violation of Virginia conspiracy statute (Count XI), slander (Count XII), "violation of civil rights laws, conspiracy, color of D.C. law" (Count XIII), and violation of the PMPA (Count XIV).[5]  Ex. 1, ¶¶ 192-275.

The facts alleged in support of these claims are set forth in excruciating detail in ¶¶ 92-191, and consist of discussions and negotiations between Vo, Hoai and other individuals not a party to the PMPA suit; Hoai's employment history; alleged false representations made by all third-party defendants; bad checks; threats of bodily harm; "cowboy" and "mafia" tactics; and so on. None of the facts alleged by the Hoai parties in the Superior Court case have anything to do with the sole claim Hoai brought before Judge Oberdorfer in the PMPA case: *i.e.* whether Sunoco breached its franchise agreement with Hoai.

---

[5] This final count appears to be the only one in which *res judicata* should apply.

It is plain that there is no identity of claims between the Superior Court case and the PMPA case, nor is there privity of parties. Thus, Plaintiffs cannot show that *res judicata* applies to the Superior Court case and therefore cannot demonstrate likelihood of success on the merits on this argument.

      B. *Plaintiffs Cannot Show That Collateral Estoppel Applies to the Superior Court Action*

As already noted, Plaintiffs' arguments shift between claim and issue preclusion as if the concepts were the same. While the doctrines share similarities, they are different. Claim preclusion is broader in that it refers to the preclusive effect of a judgment on a subsequent claim, whereas issue preclusion concerns the effect of a prior judgment on an issue of fact or law in a subsequent case. *See, e.g. Carr v. District of Columbia*, 646 F.2d 599 (D.C. Cir. 1980). The D.C. Circuit has set forth the following factors that must be met prior to binding a party under collateral estoppel:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

The first prong of the test requires that the same issue "must have been actually litigated, that is, contested by the parties and submitted for determination by the court." *Otherson v. Department of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983); *see also Connors v. Tanoma Mining Co.,* 953 F.2d 682, 684 (D.C. Cir. 1992) (the party seeking to preclude relitigation of an issue has the burden of showing that the same issue is actually and necessarily determined in the prior litigation).

Plaintiffs seek to argue that "[i]f the franchise belonged to Vo then this Court could not have ruled, as it did, that it was illegally terminated by Sunoco as being the franchise of Hoai." Pl.'s Mem. in Supp. at 13. Plaintiffs' assertion is not supported by a plain reading of Judge Oberdorfer's Memorandum Opinion in the PMPA case, which makes clear that Judge Oberdorfer was not deciding the issue of actual ownership of the service station; the only issue decided by Judge Oberdorfer was whether Sunoco breached its franchise agreement with Hoai. In his Memorandum Opinion, Judge Oberdorfer noted that "[t]here is pending an unresolved dispute between Hoai and Vo as to which of them was entitled to possession [of the service station] and was in fact in possession from April through August 25, 1986." *Hoai,* 1990 U.S. Dist. LEXIS 13015 at *1-*2 (citing Superior Court case). Judge Oberdorfer continued, noting that *"[w]hatever may be the ultimate resolution of the dispute between Vo and Hoai*, it is undisputed that Sunoco supplied motor fuel to whomever was occupying the station from April, 1986 until August 25 of that year." *Id.* at *2 (emphasis added). Thus, Judge Oberdorfer focused on purely the contractual issue in front of him and the existing parties to the contract – Hoai and Sunoco. Whether Vo was actually entitled to the service station by way of some agreement between Hoai and Vo was certainly not an issue that Judge Oberdorfer needed to consider – nor should have considered – in the federal court action brought under the PMPA.[6]

---

[6] Plaintiffs attempt to argue that the language of the PMPA itself necessarily preempts litigation on the issue of ownership. *See* Pls.' Mem. at 19-22. In fact, the PMPA supports the obvious conclusion from the plain language of Judge Oberdorfer's opinion that on discrete issues. The term "franchise" under the PMPA is simply the contract at issue. 15 U.S.C. § 2801(1). A "franchisee" is "a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel." *Id.* § 2801(4). The "ownership" that Plaintiffs wish to establish is not discussed by the PMPA, only the contract and the rights under the contract.

11

In addition to being actually litigated, the issue sought to be precluded must have been actually decided. *Otherson*, 711 F.2d at 273, citing *Montana v. United States,* 440 U.S. 147, 153 (1979). Judge Oberdorfer did not actually decide the issue of ownership in his opinion, and instead made clear that the underlying dispute between Hoai and Vo was not relevant to a decision on whether Sunoco violated its agreement with Hoai when he noted that:

> It may well be that Hoai's failure to maintain himself in possession of the leased premises made it impossible for Sunoco to continue to sell to him and for him to honor the obligations imposed upon him by various covenants in the franchise agreement. It may be that this inability was "so serious" a violation "as to undermine the entire relationship" and warrant termination. It may, indeed, be that his absence from the premises, through no fault of Sunoco, violated his franchise agreement and would therefore have justified termination of the franchise under 25 U.S.C. § 2802(2)(A) . . . in September, 1986 or before, even though, as Hoai vociferously contends, his absence was coerced by Vo's violence or the threat of it.

*Hoai,* 1990 U.S. Dist. LEXIS 13015 at 16-*17. Noting all these possibilities, Judge Oberdorfer did not need to make any conclusions as to these separate issues in reaching the basic finding that "Sunoco failed to provide Hoai with the notice required by the Act to effect a lawful termination." *Id.* at 17. Thus, the issue of possession or ownership was not decided by Judge Oberdorfer, only the issue of breach of the franchise agreement.

Plaintiffs seek to assert that the District of Columbia Circuit "abolished the argument that the franchise ever belonged to Vo." Pls.' Mem. at 23. In fact, the Circuit noted that in the case before Judge Oberdorfer "Hoai's *sole complaint* involves Sunoco's agreement to continue supplying gasoline to Vo rather than to Hoai, *not the Superior Court's resolution of the dispute between Vo and Sunoco or between either of those*

*parties and Hoai.*" *Hoai v. Sun Refining & Mktg. Co., Inc.*, 866 F.2d 1515, 1519 (D.C. Cir. 1989) (emphasis added). Later in its opinion, the Court again referred to the pending Superior Court action and the suggestion made by Judge Weisberg that the parties sever out the PMPA claims and return to Superior Court to address the non-PMPA issues. *Id.* at 1519-1520. Thus, rather than "abolish the argument that the franchise had ever belonged to Vo," the Circuit Court expressly noted that those issues were separate from the PMPA case before Judge Oberdorfer.

Finally, the party against whom issue preclusion is invoked must have been fully represented in the prior action – issue preclusion does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim. *Montana*, 440 U.S. at 154. Rather, issue preclusion may be used in an offensive manner, where a plaintiff seeks to preclude a defendant from relitigating issues that the defendant litigated and lost against another plaintiff, or in a defensive manner, where the defendant seeks to preclude a plaintiff from relitigating an issue that the plaintiff litigated and lost against another defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

Here, neither of the scenarios are present as the Hoai parties seek to assert a supposedly-decided issue against Vo and numerous other parties that were not involved in the PMPA suit, nor involved in any other litigation addressing the same issues where a conclusion was reached.[7] In other words, and as demonstrated *supra,* Plaintiffs cannot demonstrate sufficient privity to demonstrate that collateral estoppel should apply. Thus,

---

[7] It should be noted that the D.C. Circuit has held that a court should "disallow[] preclusion where its use would create perverse incentives or unfairness," as would result here. *Union Pacific R.R. Co. v. Surface Transp. Bd.*, 358 F.3d 31, 38 (D.C. Cir. 2004), citing *Parklane*, 439 U.S. at 331.

13

Plaintiffs cannot rely on collateral estoppel to succeed on the merits of their underlying claim.

## II. Plaintiffs Will Not Suffer Irreparable Harm.

Plaintiffs here utterly fail to show that they face the imminent threat of irreparable harm necessary for the grant of emergency injunctive relief. At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed*, 58 F.3d at 747 (*citing Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (*quoting Sampson v. Murray*, 415 U.S. 61, 88 (1974) and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and *great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. *See also Sampson*, 415 U.S. at 88–90.

Plaintiffs have argued that if they are forced to relitigate claims that should be precluded by collateral estoppel or *res judicata*, they have automatically established irreparable injury. *See* Mem. in Supp. of Pls.' Mot. at 9-12. Plaintiffs have offered no other argument as to how or why their particular circumstances would result in irreparable injury if an injunction is not granted. In other words, Plaintiffs' only argument in support of their

burden of proof on the second prong of the injunction test rests on the assumption that they have proven the first.

Because Plaintiffs have not shown that they are likely to succeed on the merits of either their collateral estoppel or *res judicata* arguments, they necessarily cannot show irreparable injury as they have advanced no additional argument supporting an alleged injury other than the need to relitigate claims or issues allegedly already decided.[8]

### III. Plaintiffs Cannot Show That Other Interested Parties Will Not Be Substantially Injured

Plaintiffs address one-half of the factors they must prove to establish their right to an injunction in one three-sentence paragraph headed simply "the other two factors." Plaintiffs blithely assert that "[n]o interested party, particularly not one of these defendants, is injured by having to abide by rulings on an issue already fully and fairly litigated and decided. The courts are clogged enough without having to relitigate issues needlessly." Pls.' Mem. in Supp. at 46.

First, Plaintiffs' assertion reflects Plaintiffs' myopic assumption that they have already prevailed on their collateral estoppel and *res judicata* arguments. As demonstrated above, Plaintiffs have not done so. Thus, by resting their argument of no substantial injury on their supposition of victory, Plaintiffs fail to meet their burden with respect to the third prong of the injunctive relief test.

Moreover, it goes without saying that the interests of the District of Columbia court system in hearing cases properly brought before it are quite strong. If a dissatisfied litigant could simply go across the street to federal court to obtain an order stopping the local court from ruling in a case in which the litigant was actively involved, it would

---

[8] Indeed, Plaintiffs cannot set forth any other argument to demonstrate irreparable injury because such a result is protected by the appellate process. Plaintiffs are free to appeal any final ruling from Judge Dixon.

15

violate the principles of comity. Particularly where the issues that Plaintiffs vociferously contend have been decided clearly have not.

Finally, Plaintiffs' assertion completely ignores the interests of Vo – the party that brought the Superior Court lawsuit – and whatever third-party defendants remain in the Superior Court case that Plaintiffs had sued. Plaintiffs simply ignore these other individuals and make no argument whatsoever as to the potential adverse effect they would suffer by the extraordinary relief Plaintiffs request here.

### IV. Plaintiffs Cannot Demonstrate That An Injunction Is Within the Public Interest

Plaintiffs argument that "[t]he Public Interest is not served by courts and judges relitigating issues and particularly not by the avoidance of controlling and preemptive federal law." Pls.' Mem. in Supp. at 46. Plaintiffs ignore the actual test for injunctive relief, which requires Plaintiffs to show that the public interest will be *furthered* by the issuance of the requested order. *Mova Pharmaceuticals*, 140 F.3d at 1066. Plaintiffs have not established how enjoining the entire District of Columbia court system for their own personal benefit furthers any general public interest.

Moreover, once again, Plaintiffs bootstrap their argument on the false conclusion that they have prevailed in their initial argument that *res judicata* and/or collateral estoppel apply. Plaintiffs have not done so, and instead fail to recognize that the clear public interest here is to let the local court of the District of Columbia handle cases brought before it without the unnecessary involvement of the federal court.

### *Conclusion*

Plaintiffs have not met their burden in that they have not established any of the four factors that would justify an injunction against the Honorable Herbert B. Dixon, the

Honorable Eric T. Washington, the Superior Court of the District of Columbia, the Board of Judges of the Superior Court, the District of Columbia Court of Appeals and the Panel of Judges of the Court of Appeals. Accordingly, Plaintiffs' Motion should be denied.

                                    Respectfully submitted,

                                    ROBERT J. SPAGNOLETTI
                                    Attorney General for the District of Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General
                                    Civil Litigation Division


                                    _/s/  Nicole L. Lynch_____
                                    NICOLE L. LYNCH (471953)
                                    Chief, Section II


                                    _/s/  Shana L. Frost_____
                                    SHANA L. FROST (458021)
                                    Assistant Attorney General
                                    441 4th Street, NW, 6th Floor South
                                    Washington, DC 20001
                                    (202) 724-6534
                                    Fax:  (202) 727-3625
                                    shana.frost@dc.gov