# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.*     )
        Plaintiffs,     )
                )
v.                  ) CIVIL ACTION NO. 1:06-cv- 00210-RJL
                )
                )
The SUPERIOR COURT of the     )
DISTRICT of COLUMBIA, *et al.,*     )
        Defendants.     )

### PLAINTIFFS' REPLY TO THE OPPOSITION OF THE DEFENDANTS TO PLAINTIFFS' MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

### THE STANDARD AND THE FOCUS

A case from our Court of Appeals that is cited by the defendants in their opposition, *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C.Cir. 1998) makes the point that the underlying legal conclusions, when a preliminary injunction is sought, are reviewed by the Court of Appeals *de novo*. This is always true, of course, for questions of law. On this point, *Mova Pharmaceutical* cites in turn *Cityfed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 758,746 (D.C.Cir. 1995), one of the principal cases cited by the plaintiffs in support of their motion. Curiously, although the defendants have a section on page 2 of their opposition brief entitled "***Legal Standard***" they do not mention this actual standard. Instead they seem to indicate that the standard is that preliminary injunctions should be issued "sparingly," because interim injunctive relief is an "extraordinary" form of judicial relief. This is not a standard of review or analysis; but it does resemble a precaution issued by the Supreme Court which, as we point out below, must be balanced by the fundamental principle that relitigation of issues

1

already decided must be avoided.  This confusing assertion of a principle of consideration as a standard of review seems to be an emotional pitch rather than a reasoned analysis.

We trust the Court will actually focus on the law as presented with the actual standard in mind.  This proper standard is, for example, particularly applicable in deciding whether the issue that is sought to be precluded is the same as the issue that was decided previously.  *Connors v. Tanoma Min. Co., Inc.*, 953 F.2d 682, 684 (D.C.Cir. 1992), citing, *inter alia*, *Jack Faucett Assocs. v. AT&T,* 744 F.2d 118, 126 (D.C.Cir. 1984).  In fact, in such cases discretion is narrower than in the types of situations that the defendants here have selected in their illustrative cases, as will be discussed below.

WE REPEAT: THE THREAT OF RELITIGATION IS IRREPARABLE INJURY

We bring this up at the outset because there are invitations in the opposing brief to ignore the law, attempted diversions from it, if you will.  One such, certainly, is the representations about what must be found in this instance under the factor of "irreparable injury," one of the traditional four factors, as the parties agree, used in this circuit in analyzing a request for preliminary injunctive relief.  We specifically addressed this issue in moving for this injunction at pp. 9-10 of the support memorandum and showed that under controlling authority in this circuit it seems that being compelled to have to relitigate an issue already decided is irreparable injury.  One need not go beyond showing that relitigation will be necessitated if the preclusion sought is not enforced, contrary to the assertions by the defendants on pp. 14-15 of their brief.  In that earlier briefing of the issue we noted the citation of the well-known case of *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) in the opinion by our Court of Appeals in *Thomas v. Powell*, 247 F.3d 260, 345 U.S.App.D.C. 398 (D.C.Cir. 2001),

*cert. den.* 122 S.Ct. 347, 151 L.Ed.2d 262 (2001),  At 486 U.S. 150-151 in *Choo* one can see that once an issue is decided in a federal court and an attempt to relitigate it is made and opposed, it is a question of law that is decided without an irreparable injury analysis.

The defendants, in their argument that plaintiffs have shown no irreparable injury, have significantly twisted what was said in support of the motion.  They have done this instead of examining the authority put forward by the plaintiffs and dealing with it.  Thus, the defendants represent that the argument of the plaintiffs must fail because the plaintiffs have "offered no other argument…."  In other words, mere authority will not do, if that authority supports a single, valid, winning argument.  One must have "other arguments," not just mere authority.  This is not rational argument.

Then, after that difficult to parse argument, relating to another segment of the opening brief of plaintiffs, defendants make the further puzzling argument: "In other words, Plaintiffs' only argument in support of their burden of proof on the second prong of the injunction test rests on the assumption that they have proven the first."

This distortion of what has been argued and said appears, as noted, to be a play for an emotional bias with the hope that the Court will join in the irrationality, like some character in a Camus play or novel.  Thus we see the citation of cases that are extremely inapposite.  One of them, certainly, is *Cobell v. Norton,* 391 F.3d 251, 258 (D.C.Cir. 2004).  This was one of the many cases of the same name (at least VIII which came to be designated by Roman numerals because of their number) in a complex of litigation in which Indian tribes were going after the misuse and waste of their considerable funds.  In the case in question from that complex the tribes were seeking to nothing less than to have the Department of Interior disconnect its entire computer system from the Internet.

This is hardly the equivalent of seeking to enjoin relitigation by virtue of issue preclusion, of which, we have more to say below.  The one is highly extraordinary; the other, by contrast, has been fairly common for several hundred years.

And defendants throw in *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) as cited in *Cobell, supra*.  *Mazurek* involves an attempt by a licensed female physician in Montana, along with some doctors, to enjoin that portion of a recently enacted state law which forbade anyone other than licensed physicians in the state to perform abortions.  Again, this is hardly comparable to garden-variety attempts to enjoin relitigation of issues or claims believed to be precluded by decisions already made.  See the further discussion on relitigation injunctions below.

### THE RELITIGATION EXCEPTION

The relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, is a provision that has been the subject of hundreds if not thousands of injunctions against relitigation of issues and claims decided in the federal courts for over 200 years, with a brief gap from 1941 to 1948.  In fact the body of law allowing such injunctive relief grew to such size and substance that, as is well known, when the Supreme Court reduced the scope of that body of law drastically in its well-known decision in *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, in 1941, Congress then reenacted the law in 1948 to include the "relitigation exception" and, as is frequently noted in cases, made clear that it intended the body of law before *Toucey* to be reinstated, which it has been.   There is nothing extraordinary about seeking to enjoin relitigation of an issue that has been decided.  Courts are routinely named as defendants in such litigation.

It is true that injunctions against relitigation should be applied "carefully" but there is a counterbalance to that carefulness in the requirement that they be in fact applied, a counterbalance omitted by the defendants in their brief.  In *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court quoted the RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982): "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between parties on the same or a different claim."

This requisite balancing is set out in MOORE'S FEDERAL PRACTICE (3D) at § 131.24 [6] speaking of claim preclusion, as follows:

> In *Brown v. Feisen*, the Supreme Court cautioned against misuse or casual application of the claim preclusion doctrine: [footnote: **Caution against use of claim preclusion doctrine.** Brown v. Feisen, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ("[R]es judicata shields the fraud and the cheat as well as the honest person."
>
>> Because res judicata may govern grounds and defenses not previously litigated… it blockades unexplored paths that may lead to truth.  For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person.  It is therefore only to be invoked <u>after careful inquiry</u>.  [emphasis added by present plaintiffs]
>
> The Supreme Court's admonition for "careful inquiry" before application of the claim preclusion does not, however, imply that the lower courts have discretion in its application.  There is no general equitable principle that will permit a court to refuse application of the claim preclusion doctrine on the grounds of unfairness or injustice to a party.  The Supreme Court, in *Federated Dep't Stores, Inc. v. Moitie*, made this crystal clear. [Footnote: **Court may not refuse application of claim preclusion doctrine on grounds of unfairness or injustice to party.**  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 395-398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (erroneous conclusion does not bar res judicata)

Plaintiffs submit that this goes even more strongly for issue preclusion than for claim preclusion.  MOORE'S then goes on to say:

> The Supreme Court reversed, and in so doing emphatically rejected any such grounds for refusing to apply the doctrine [footnote: 452 U.S. at 401]:
>
>> `Simple Justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied.  The doctrine of res judicata serves vital public interests beyond any judge's ad hoc determination of the equities of a particular case. [Precisely what the defendants are seeking here, ad hoc without bothering to study carefully and apply the law.]  There is simply `no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'  [Comment in brackets added by present plaintiffs]
>
> The Court also disposed of the public policy argument by stating: "public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. [footnote: **Court settled public policy argument.** 452 U.S. at 401 ("[P]ublic policy dictates that there be an end to litigation," quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931).]

Thus, it is clear that with regard to another one of the four traditional factors in analyzing a request for injunctive relief as applied in this circuit, it is the argument of the defendants in their opposition that is extreme.  The plaintiffs do not "bootstrap" their argument.  *Mova, supra*, is irrelevant here.  The defendants have failed to adequately research the controlling law.  Plaintiffs do not seek to "personally enjoin the entire District of Columbia court system for their own personal benefit."  This is another cry to a perceived bias designed to prevent careful consideration of the controlling law, which is what the Court asked be put forth at the TRO hearing.  Plaintiffs have set out the law and ask it to be considered.

DOES THE ANTI-INJUNCTION ACT APPLY TO THE DISTRICT?

Parenthetically we note here that though a large body of law has developed concerning preclusion because of the Anti-Injunction Act which has resulted in the enjoining of courts at the state level being well-known and not all that extraordinary (despite the comments at the TRO hearing), it is not clear that the Anti-Injunction Act applies to the District of Columbia.  At least two judges of this Court have rendered opinions assuming it does apply.  They are: 1) *Kaempfer v. Brown*, 684 F. Supp. 319 (D.D.C. 1988) Pratt, J., and 2) *In Re National Student Marketing Litigation*, 655 F. Supp. 659 (D.D.C. 1987) Parker, J.

But the most recent decision by our United States Court of Appeals touching upon that question casts doubt on that assumption.  As we noted in making this motion, the two judge majority of the panel in *Thomas v. Powell*, 247 F.3d 260 (D.C.Cir. 2001) mentioned the Anti-Injunction Act but specifically declined to decide whether it applies to the District of Columbia.  The dissenting judge on the panel, Judge Sentelle, specifically held that the Anti-Injunction Act does not apply to the District of Columbia, relying on his opinion in a dissent in an earlier case, *United States v. Mills*, 964 F.2d 1186, 1198 (D.C.Cir. 1992)  and the statutory language of the Court Reform Act of 1970.

As a result, what *Thomas* seems to establish is that it makes no difference whether the Anti-Injunction Act applies to the District.  The analysis is the same.  What the large body of law that has developed under the Anti-Injunction Act over more than 200 years does is to give us guidance as to the application of preclusion between the two systems at issue here regardless of whether that Act applies to the District.  The assumption by the defendants here that it does not apply is just another indication of their failure to respond

to the authority and reasoning put forward by the plaintiffs and deal with it in a rational fashion and their failure to be careful in their research in the same way that the Court must be careful in its analysis under the authority set out above.

THE INJUNCTION <u>IS</u> SUCCESS ON THE MERITS

The defendants seem to agree that the granting of the injunction sought would be success on the merits and thus agree with the argument of the plaintiffs in the opening brief of this motion on that point. Their argument is that plaintiffs have no chance of success on the merits because they are not entitled to an injunction. Thus, rather than address the factor of likelihood of success on the merits as a factor they finesse to the underlying issue of entitlement to the injunction. We agree that that is the issue. We do not agree with the attempt to confuse this issue with regard to the failure of the defendants to clearly identify what the plaintiffs seek by way of injunctive relief.

There is no claim by the plaintiffs in any filing that the PMPA complaint against Sun in which Hoai succeeded is the same as the complaint or the counter and third-party claims.[1] Plaintiffs have made clear that they do not seek claim preclusion; their motion is for issue preclusion. The defendants base part of their argument in opposition on an attempt to muddy the waters about this. Throughout the plaintiffs have clearly stated that the "issue" of ownership of the franchise was litigated and decided in the PMPA suit by Hoai against Sun in this Court. They have clearly stated that the decision by Judge Oberdorfer that the franchise belonged to Hoai as the franchisee so that the giving of it to Vo by Sun was an illegal termination of a franchise belonging to Hoai rather than Vo is

---

[1] Defendants seize upon the plaintiffs' use of the Latin phrase *res judicatae* to claim that the plaintiffs are seeking claim preclusion. We would point them to the decision of our U.S. Court of Appeals in *I.A.M. National Pension Fund, Benefit Plan v. Industrial Gear Manufacturing Company*, 723 F.2d 944, 946-47 where the Court of Appeals refers to claim preclusion and issue preclusion as aspects of *res judicata*. In other words defendants indulge in semantic games *in lieu* of addressing the issues.

the issue.  Plaintiffs have consistently argued that the decision in this Court upon this issue of ownership precludes the portions of the "claim" of Vo in his complaint in the Superior Court that assert a right to ownership of that franchise or any portion of it.

Once again, the defendants seek to muddy the waters.  If they wished to concede that the likelihood of success on the merits is determined by whether or not the plaintiffs are entitled to the injunctive relief that they seek they could have simply said so. Plaintiffs agree that the real issue is the question of whether or not they are entitled to an injunction against relitigation of an issue decided in the PMPA case.

INJURY TO OTHER INTERESTED PARTIES

Thus we can see that with regard to three of the four standard factors for analyzing a preliminary injunction request in this circuit, the decision regarding those factors is no different from the overall decision of whether these plaintiffs are entitled to the injunction against relitigation of the issue of the ownership of the Sun franchise that they seek.  Those three factors are 1) likelihood of success on the merits, 2) irreparable injury and 4) public interest.  But what about the third of the traditional four factors, 3) that the injunction would not substantially injure other interested parties.  We submit that the answer is the same with regard to that factor.  If Vo is not entitled to relitigate the issue of the ownership of the Sun franchise, then neither is any one else.  He is the only one with almost complete identification of interest with Sun in that he is the only one who purported to be the franchisee of Sun and who entered what was de facto a franchise agreement with Sun.  He sought by his lawsuit to compel Sun make him its franchisee and they then entered a voluntary agreement with him to deprive their legitimate franchisee of his franchise and give it to Vo, becoming his partner in the business of the

franchise.  If these plaintiffs are entitled to an injunction against Vo relitigating the issue of the ownership of the franchise, then they cannot be denied that right because someone else other than Vo might derive some benefit from that and be harmed if the injunction is granted.  The whole controversy depends upon Vo's not having a right to litigate when to do so would fall afoul of the prohibition against relitigating an issue already decided.

The defendants have a section in the opposition on page 15 that is entitled **Plaintiffs Cannot Show That Other Interested Parties Will Not Be Substantially Injured**.  But when one reads the argument it does not concern other parties interested in the Superior Court litigation at all, not any of Vo's cohorts in his would-be ethnic mafia, not even Sun when it decided to join forces with that group by giving the franchise to Vo illegally.  No, the sole "other interested party" that the defendants claimed will be injured is themselves.  They will be injured, it is argued, if they are enjoined from relitigating the ownership issue or allowing it to be relitigated.  This is a distortion of a tautology.  Of course when a court  is enjoined from proceeding to allow the relitigation of an issue that has already been decided in another court in another litigation it is thereby deprived of the right to litigate that issue.  To turn again to the case law under the Anti-Injunction Act, whether it applies to the District or not: for over 200 years state courts have been enjoined from allowing the relitigation of precluded issues.  Have they been "injured" by such preclusion?  No.  This is an argument that, stated clearly, falls by its own weight.

The simple fact of this injunction request is that the traditional four factor analysis is not of much help because the request resolves into the question of whether or not the plaintiffs are entitled to the issue preclusion which they seek, the preclusion of relitigation of the issue of the ownership of the Sun franchise in question back in 1986.

LACK OF SAME PARTIES NOT THE ISSUE

One of the arguments that the defendants make in their opposition is that the parties in the Hoai PMPA case and in the Superior Court litigation are not identical. That goes without saying because, as we have pointed out previously, the PMPA only creates jurisdiction for a franchisor to sue a franchisee. Here the identity of interest involved revolves around the fact that Vo's complaint in the Superior Court claims that he is the franchisee, as we shall elucidate further below. When Hoai, as the franchisee, sued Sun in this Court it was confirmed that he, Hoai, was the franchisee, even though Sun defended by claiming that it had been compelled, in effect, to give the franchise to Vo by an order of the Superior Court, and that, moreover, Vo had been the legitimate owner of the franchise by virtue of his relationship with it, Sun, and with Hoai. Vo participated in that PMPA litigation in cooperation with Sun, Sun delivered him the motor fuel of the franchise, knowing that he had excluded Hoai from the station. Sun did so originally while urging Hoai as its dealer to get Vo out and get back into his station. When Hoai in fact did just that Sun switched sides and continued to give the supply of motor fuel to Vo at the station. As a concomitant of that Sun when it switched sides to collude with Vo, gave the occupancy of the premises to Vo. Throughout, Sun let Vo occupy the premises and sell the supply of motor fuel it was giving him under its trademark. So it goes without saying that the parties are not the same in the two suits. That is not the issue.

On pages 1, 6, and 8 the defendants argue that the parties are not the same. They would seem to know that this is not determinative, however, because, on page 13 of their brief they point out one of the famous Supreme Court decisions that broke the "mutuality" requirement, as it was called, that the parties be the same. They cite

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).  And

indeed, in *Parklane Hosiery* the Supreme Court broke the doctrine of mutuality under

which the parties had to be the same in the two litigations.  *Id.* 439 U.S. at 329-333.  It

did so with regard to what is called offensive non-mutual collateral estoppel.  It did so in

extensive reliance upon the fact that it had already broken that doctrine of mutuality for

what is called defensive collateral estoppel in an earlier case.  *Blonder-Tongue Labs, Inc.*

*v. University of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

The defendants only include half of the picture.  The fact that the parties are not the same

is not determinative.  Under the particular facts of this case it is not even relevant.

   We point out that in patent litigation, new parties, strangers to prior litigation,

cannot sue a patent holder and seek to prevail on an issue determined in the prior

litigation about the validity or ownership of the patent simply because they were neither

party to the prior litigation or in privity with any of the parties to the prior litigation.  The

same is true in bankruptcy law.  A party that is a stranger to the previous litigation cannot

sue the bankruptcy estate on an issue already determined despite the fact that the new

party was not a party to that prior litigation or a privy to some party that was a party to it.

This is because there is a *res* that places the stranger to the earlier litigation in the

position of having an identical interest to the party that did litigate.  That is the case here.

As we have shown in the opening brief, by the pre-emptive definitions of the PMPA a

gas station service station franchise is a federally created *res*.  It is no longer the corner

gas station that it once was.

A COMMON NUCLEUS OF FACT: ONE SERVICE STATION FRANCHISE

As we have mentioned, the defendants have tried to spread confusion about the preclusion that is sought in this motion. Plaintiffs claim that the single issue of who owned the Sun service station franchise at time of the events in the spring and summer of 1986 leading to the events in the Superior Court of late August and early September of that year is the issue that is precluded. There was only one Sun franchise involved and the question of its ownership is the only issue. Therefore, the arguments of the defendants at pages 7 through the top of 14 of the defendants' brief are not only silly and arrogant, they are irrelevant. On page 7, at the outset of this irrelevance, the defendants cite a case and, in the cite, note that case as citing another case, *I.A.M. National Pension Fund, supra*. We would strongly urge them to read that opinion more carefully. It makes very clear that when, as is not the case here, a <u>claim</u> already litigated and won is advanced as precluding a similar claim, then a nucleus of operative facts is necessary to establish the similarity of the claims. But when an <u>issue</u>, as <u>is</u> here the case, is claimed to have already been litigated and decided so as to preclude its relitigation, a common nucleus of operative facts is not relevant. *Id.* 723 F.2d at 946-947. What matters is that the particular issue has been decided, whether or not there is a common nucleus of operative facts. The description in *I.A.M.* is as thorough an analysis as we have of the whole picture of *res judicata* and its "aspect[s]" of claim preclusion and issue preclusion.

THE HEART OF THE CASE

Having shown a tendency toward misrepresentation of the law and a scattered quality to the arguments of the defendants, including a good bit of irrationality, we approach the heart of this case, which would seem to be questions of identity of interest

and privity or other special relationship.  Fortunately for plaintiffs the Supreme Court has continued to expand the concept and reach of *res judicata* in both of its aspects, claim preclusion and issue preclusion.  One of the most helpful cases in this regard is *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed. 2d 258 (1999).  In that decision a unanimous court established that privity is no longer confined to just privity but also includes "some other special relationship."  Further, we know now from that case that one fact that establishes either privity or that other relationship is one that is present here, namely, that in the pleadings the party to the litigation that went first purported to assert claims on behalf of a non-party, as here Sun purported to assert claims on behalf of the non-party Vo in its pleadings in the PMPA case.  *Id.* 119 S.Ct. 1184-1185.  See Attachments A, B, and C to plaintiffs' motion for a preliminary injunction.

It is also the case here that, since Sun did purport to represent the interests of Vo in the PMPA case, as its pleadings and filings plainly show, its forwarding of the claim that Vo had a legitimate possessory interest in the franchise were rejected by Judge Oberdorfer.  The outrageous assertions by the defendants notwithstanding, it remains the case that when Sun represented that it had not terminated Hoai's franchise illegally under the PMPA because the components of the franchise belonged to Vo, it lost and so, by necessary implication it was decided that no possessory interest belonged to Vo.  Thus Judge Oberdorfer's decision did "purport" to bind Vo to the extent that he necessarily repudiated the concept that Vo had a legitimate possessory interest in the franchise.  *Id.* Vo and Sun cannot possibly be held to be "strangers" in the matter of the one franchise. *Id.*  Again, we see that the defendants seek to have the Court ignore the controlling law.

14

The defendants want the Court to be led down the rosy path by a series of assertions about the elusive and difficult nature of privity. But the Supreme Court has spoken. We would hope that the Court would consider its authority controlling. Further, Vo can well have expected, when he participated as he did in the battle of Sun against Hoai in the PMPA case (in which he was represented by counsel) that if Sun lost its claim that it did not violate the PMPA and terminate Hoai illegally because of its agreement to let him have the components of the franchise, he would be bound by Sun's loss. *Id.*

Our U.S. Court of Appeals, citing *Parklane, supra*, 439 U.S. at 331, has pointed out that, in order for issue preclusion not to apply here, there would have to be unfairness to Vo or some "creation of perverse incentives." *Union Pacific Railroad Company v. Surface Transportation Board*, 358 F.3d 31, 38 (D.C.Cir. 2004)  On page 13 of their brief, note 7, the defendants cite this and pronounce that these things "would result here." This seems to be a figment of their imagination as they do not point to any unfairness that would result to Vo or any perverse incentives. There is not a hint of the creation of either here, just the raw accusation by the defendants, who seem to think that that is all that is necessary.

Through Sun's representation of him, Vo had every opportunity for a full and fair hearing of his claims. *Id.* They did not prevail. Sun's litigation was so vigorous that when they lost they refused to obey this Court. Hoai had to go to Philadelphia and attach their main bank account before they would pay, and then, only after a judge in the Eastern District of Pennsylvania denied with celerity their attempt to quash the attachment. Sun's attorney, who was involved in the original decision to become Vo's partner in the Consent Order after the TRO rather than simply invoke the PMPA and the

Retail Service Station Act and defeat Vo's claim, fought all the way and gave Vo far more representation than Vo otherwise could have afforded. Sun's counsel bragged on the record about the hundreds of thousands in fees he was making in the case. So there was no incentive for Sun as Vo's representative not to litigate on Vo's behalf.

The defendants were quite right to cite Judge Prettyman's well known opinion in *Jefferson School of Social Science v. Subversive Activities Control Board,* 331 F.2d 76, 83 (D.C. Cir. 1963). Vo was so identified in interest with Sun in the PMPA case that it represented exactly the interests of Vo in that litigation, just as the communist front school with Jefferson's name represented the evasive factotum it set up in *Jefferson.* Sun's entire case rested upon its identity with Vo. It lost the case. We also thank the defendants for citing local law, *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989). It is the case that Sun and Vo fit in this instance into one of the "orthodox categories" of privies, namely, according to the Supreme Court's opinion — representation. The link between Sun and Vo, through what amounted to a franchise relationship was as close if not closer than the limited partner and former limited partner links in S*mith.*

There was more than just representation in the relationship between Vo and Sun. Sun had no chance to defeat Hoai's PMPA claim unless it could prove that its switching of sides from backing its dealer to backing his oppressor gave effective ownership of the franchise to Vo and that Sun had been compelled to make Vo its dealer. Vo had no chance to get any gain out of the PMPA litigation unless he could establish the legality of Sun's having made him effectively its dealer. Vo knew that unless the latter occurred he could not pursue Hoai in the Superior Court litigation. Vo had every incentive to pursue Sun's claims against Hoai in the PMPA action because he knew that they were his only

16

hope of pursuing Hoai and the Hemenways successfully on every count save one of his Superior Court complaint.

RESOLUTELY IGNORING THE CONTROLLING LAW: IT CONTINUES

It would be difficult to rebut every one of the misleading assertions of the defendants in their opposition but one that must be replied to is the assertion that the speculations of Judge Oberdorfer, in the course of his opinion granting summary judgment to Hoai against Sun, did not decide the issue of ownership.  At page 12 of the opposition it is stated that:

> Judge Oberdorfer did not actually decide the issue of ownership in his opinion, and instead made clear that the underlying dispute between Hoai and Vo was not relevant to a decision on whether Sunoco violated its agreement with Hoai when he noted that:
>
>> It may well be that Hoai's failure to maintain himself in possession of the leased premises made it impossible for Sunoco to continue to sell to him and for him to honor the obligations imposed upon him by various covenants in the franchise agreement.  It may be that this inability was "so serious" a violation "as to undermine the entire relationship" and warrant termination.  It may be indeed that his absence from the premises, through no fault of Sunoco, violated his franchise agreement and would therefore have justified termination of the franchise under 25 [sic] U.S.C. § 2802(2)(A)…in September, 1986 or before, even though, as Hoai vociferously contends, his absence was coerced by Vo's violence or the threat of it.

This lengthy quote is followed by conclusions which do not follow from it and that indulge in irrelevancy and include serious misrepresentations:

> Noting all these possibilities, Judge Oberdorfer did not need to make any conclusions as to these separate issues in reaching the basic finding that "Sunoco failed to provide Hoai with the notice required by the Act to effect a lawful termination."  *Id*. at 17. Thus, the issue of possession or ownership was not decided by Judge Oberdorfer, only the issue of the breach of the franchise agreement.

With all due respect, one wonders if the defendants are not in denial about what "termination" means. Breaching a franchise agreement can and in this instance it was ruled it did, constitute a termination of a franchise. In fact, as we pointed out in the opening brief, by the preemptive definition of the PMPA, the franchise is the agreement.

Therefore, the concluding statement above, "Thus, the issue of possession or ownership was not decided by Judge Oberdorfer, only the issue of the breach of the franchise agreement" is a statement that makes no sense. It does not follow from what went before and it ignores the controlling and preemptive nature of the PMPA that Congress intended that Act to have. As Judge Oberdorfer pointed out at the outset of his opinion and as we noted in our opening brief, the franchise agreement in question, which is, by preemptive definition of federal law, the franchise, was between Sun and Hoai and Hoai only, no one else. This was a finding and holding that Hoai owned the franchise, by itself. It was a holding necessary to Judge Oberdorfer then finding, later in his summary judgment opinion giving Hoai summary judgment on the issue of liability that Sun had illegally terminated Hoai's franchise. If Judge Oberdorfer had not noted at the outset that Hoai was the only person on the Contract of Franchise as the franchisee he could not have found that Sun had illegally terminated a franchise belonging to Hoai.

Speaking of "collateral estoppel" specifically, the Supreme Court has said: "that doctrine makes conclusive in subsequent proceedings … determinations of fact, and mixed fact and law, that were essential to the decision. Commissioner v. Sunnen, 333 U.S. 591, 601-602; Tait v. Western Maryland R. Co., 289 U.S. 620; The Evergreens v. Nunan, 141 F.2d 927, 928." *Yates v. United States,* 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds *Burks v. United States*, 437 U.S. 1, 7

(1978). If Judge Oberdorfer had not found that Hoai owned the franchise he could not have found that Sun had illegally terminated the franchise of Hoai. But he did so find and finding that Hoai owned the franchise, even had it not been found explicitly as it was, was necessary to Judge Oberdorfer's final decision on the merits that Sun was liable for illegally terminating the franchise of Hoai. The statements to the contrary by the defendants in this case are irrational and nonsensical. Under the controlling law the statements that Judge Oberdorfer "only" ruled on a contract brief are little more than fanciful doubletalk.

The opinion of Judge Oberdorfer, as we set out in our opening brief points out that the franchise, under the preemptive law of the PMPA, consists of three principal elements, the supply of motor fuel, the lease of the premises, and the right to operate the premises and sell the fuel under the trademark of the franchisor. Simply put, we repeat, there is no way that Vo could have had any right to do any of these things and so establish that right now in prosecuting his claim in his amended complaint, which, after nearly twenty years, he has never proceeded upon, without relitigating the issue of the ownership of the franchise. To pursue all of the counts except one, which concerns some alleged loans to Hoai, Vo must relitigate the precluded issue of ownership. Plaintiffs have not sought to enjoin that one count, only those that would require relitigation of the issue of ownership. Plaintiffs would be perfectly content to have this Court simply enjoin relitigation of the issue of ownership in blanket form, without enjoining specifically the claim of Vo in his present amended complaint. Let Vo go forward then with all of the other counts outside of the loan count and pursue them to conclusion without relitigating the issue of ownership of the franchise.

Let us see how that would fare.  Take, for example, Count II, which is entitled "Civil Trespass."  Let Vo go forward and prove that Hoai, assisted by the Hemenways, who were employed by Hoai, was trespassing upon the leasehold that was an essential part of the franchise that was owned by Hoai and that the Hemenways were joining Hoai in the trespassing by Hoai upon his, Hoai's, own franchise.  The plaintiffs are perfectly willing to let Vo go forward and attempt to prove this nonsensical notion.

Or let us take Count I, "Breach of Contract."  We have shown that by the preemptive force of what the PMPA empowers, Sun's franchise agreement with Hoai as thus empowered, and by the local statute governing service station franchises, that the franchise could not have been transferred without 90 days advance notice in writing and an opportunity for Sun to check out Vo and his qualifications, such as his business experience, credit worthiness, etc.  It is a matter of record that Hoai, assisted by the Hemenways, re-entered his station at the insistence of Sun, on penalty of losing his franchise if he did not re-enter it.  It is a matter of record, acknowledged in testimony at the TRO and in numerous filings including Vo's complaint that Hoai and the Hemenways re-entered the station bearing a document entitled as a Notice to Surrender the Premises that was signed by Sun's then Area Representative, Ernest Peele.  At that point, of course, Sun was still backing its legitimate franchisee and dealer, not the thug and brigand, Vo.  There are statements in the record in the proceedings in the defendant Superior Court that police officers, who gave those statements, soon came to the scene and that all was peaceful as the Vietnamese who were there (Vo being absent in Toronto on other business, whose exact nature he has refused to disclose) left and Hoai and the Hemenways took back over Hoai's franchise.  This is so despite characterizations by

counsel for Sun and Vo over the years, supported by affidavits from Vo (who was not there) and Vo's cousin that the taking back of the franchise was by force. It is a matter of record that at the TRO hearing Ernest Peele, Sun Area Representative at the time, testified that Sun had examined Vo's qualifications and found them wanting. It also is a matter of record at the TRO hearing that Ernest Peele testified that when Sun and Hoai resisted the idea about Vo's becoming the franchisee, there was talk from Vo to Hoai about breaking Hoai's legs. That there had been this kind of threat of violence and that it was known to Sun was also testified to by Harold Vaughn, a Sun Vice President, who was deposed in the PMPA case.

As Vo's complaint shows, he was perfectly aware that he had not fulfilled the precedent conditions required by the franchise agreement between Sun and Hoai. His complaint makes clear that he was suing Sun to compel Sun to have to give him the franchise despite his, Vo's, not having fulfilled the precedent conditions and despite Sun's not having found him to be a suitable transferee of the franchise. We leave out the local Retail Service Station Act because Vo paid no attention to it, nor did Sun. The "one-dollar" contract under which Vo claimed his right to own the franchise had attached to it a copy of the franchise agreement between Sun and Hoai only and claimed that by virtue of attaching the franchise agreement to the "one-dollar" contract Vo was acquiring the station from Hoai. So, by all means let Vo go forward with this count, only let him do so without relitigating the issue of who owned the franchise. Let's see how far he gets with the backing of these defendants. Will they ignore the law in order to exercise their concern for Vo? Could this be the reason that such relitigation should be enjoined?

How about Counts IV and V, conversion and lost profits?  By all means let Vo prove that Hoai and Hoai's assistants the Hemenways converted the property of Hoai's franchise, and that they together, the three of them, took their own profits so as to prevent Vo from having them.  But let Vo do this without in any way asserting that he owned the franchise and thus attempt to relitigate that issue.

But these are easy counter-examples to illustrate the *reduction ad absurbum* of following the arguments of the defendants to their logical conclusion.  Let us take Count III, Civil Assault.   This assault, it is alleged is also by all three of the present plaintiffs, although it is uncontested that John D. Hemenway was not there at the time and came later, after Vo and his gang of at least eight (one brandishing a long, thin knife) had re-entered the station, and trapped Hoai and David Hemenway inside the small station building, which Hoai and David Hemenway had locked and had called (It is a matter of record) 911 and stated that they were locked in the station building and were under assault.  Vo and his gang were trying to break in through the roof and the front.  So let Vo try his allegation, which is the integral opening of this count, that he was returning to the station "to reassert dominion and control over his property and right of occupancy."  Let Vo go forward with this count, only let him do so without attempting to establish that the franchise was his and not Hoai's.   Let him prove that the two, Hoai and David Hemenway, trapped inside the locked station building with Vo and his cohorts seeking to break in from two directions, when David Hemenway brandished an iron bar so as to be visible through the plate glass window to those trying to break in, were assaulting the eight or more coming in upon them "in aid of the wrongful seizure of the premises by

Hoai, John D. Hemenway, and David Hemenway. "  But let Vo do this without attempting to establish that he, Vo, rather than Hoai, owned the franchise.

The truth of the matter is that for fully 20 years these defendants have refused to deal with the reality of the PMPA, as Judge Oberdorfer noted was done early on, and also with the reality of the District's own RSSA, with all of the law controlling and governing service station franchises in the District of Columbia.  They now invite this Court to join them in that refusal to deal with the controlling law.  Vo has no possessory rights in, and never had any possessory rights in, the service station franchise on Pennsylvania Avenue SE that, at that time, was a Sun franchise.  It is not relevant to this motion, but at the TRO hearing the Court questioned whether the plaintiffs had any reason to believe that the defendants would not give them proper treatment.  Almost 20 years of completely refusing to acknowledge and apply the controlling law has been illustrated as being still the intent of the defendants as evidenced by the instant briefing.  That should answer the Court's inquiry.  There is a whole lot more, but that should prove the point for the present.

The contention that Hoai's PMPA case was a "sole" claim that simply decided a contractual breach and had nothing to do with claims of possession of the station illustrates the point better than any argument that plaintiffs can advance.  These defendants remain adamant in their refusal to take cognizance of the controlling law and apply it.  They invite the Court into their irrationality in support of that disregard.  We respectfully request the Court to examine the law carefully, to examine the request for injunctive relief carefully, to apply the law and, unless it can find some contention that

Vo can advance that he and not Hoai owned the Sun franchise, to grant the injunction permanently.

Respectfully submitted,

/s/

Laurence A. Elgin   Bar #159582
Counsel for Plaintiffs
Suite 900 South Building
601 Pennsylvania Avenue, NW
Washington, DC 20004-3615
(202) 628-1114
(202) 628-6798 – fax