# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THANH VONG HOAI, *et al.* | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.  1:06-cv- 00210-RJL |
| | ) |
| | ) |
| The SUPERIOR COURT of the | ) |
| DISTRICT of COLUMBIA, *et al.,* | ) |
| Defendants. | ) |

## PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

Plaintiffs, acting by and through counsel, hereby request that the Court issue

another preliminary and permanent injunction, this one to enforce rulings made in the

United States Court of Appeals and this Court in a prior proceeding brought successfully

by the present plaintiff Thanh Vong Hoai (Hoai) under the Federal Petroleum Marketing

Practices Act (PMPA) 15 U.S.C. § 2801 *et seq. CA No. 87-2456-LFO, Hoai v. Sun*

*Refining and Marketing Company, Inc.*, 866 F.2d 1515, 275 U.S.App.D.C. 397 (D.C.Cir.

1989).  In those Rulings the United States Court of Appeals held that Hoai might pursue

separately his claim in this Court under the PMPA and then pursue his non-federal claims

in the defendant Superior Court of the District of Columbia, where those claims were, at

the time pending along with a parallel PMPA claim.

Pursuant to a mandate from a judge of the Superior Court to split the federal

PMPA claim from the non-federal clams in the Superior Court litigation, the present

plaintiff Hoai had filed suit in this Court under the PMPA. His doing so was opposed by

Sun Refining and Marketing Company, Inc. (Sun).  Sun opposition resulted in this Court

staying Hoai's PMPA case, a stay which Hoai then reversed in an interlocutory appeal. As part of the interlocutory appeal Sun argued vigorously and extensively that Hoai should be required to pursue all of his claims in the Superior Court. Sun lost that argument and in the resulting decision the United States Court of Appeals adopted as part of its rulings the splitting of the claims between federal and non-federal originated by the judge of the Superior Court.

After this interlocutory victory by Hoai in the United States Court of Appeals the case was remanded back to this Court and Hoai won a summary judgment against Sun for illegally terminating his Sun franchise by methods that violated the PMPA. A trial was set on damages. During the pre-trial phase of that trial Sun filed motions which caused the Judge to whom the case was assigned, Louis F. Oberdorfer, to have to distinguish between what damages were available to Hoai under the PMPA with its phrase of "actual damages," as opposed to what damages might be available under separate tort-type claims such as those that were by that time stayed and pending in the Superior Court under the splitting of the claims imposed upon the plaintiff Hoai, first by the Superior Court and then ratified and adopted by the United States Court of Appeals. Judge Oberdorfer made the distinctions and found that Hoai would have to pursue all tort-type damages in separate claims. A trial was held on damages and Hoai won an award of damages in limited contract, followed by an award of counsel fees, expert witness fees and expenses to Hoai's experts.

Matters in the Superior Court were then reopened and Hoai sought to move forward with his two co-counter and third-party plaintiffs there, the Hemenways, who are the other two present plaintiffs. A judge of the Superior Court then refused to let Hoai

and the Hemenways move forward with their claims, and, without considering the claim of Hoai that it had already been ruled that he might pursue his claims separately, sought to prevent him from doing so by adopting, without analysis or reasoning or any consideration for Hoai's contentions that the separate pursuit of the federal versus the non-federal claims had already been decided upon in Hoai's favor, and granting without comment a request from Sun based on the contention unsupported by the record, that Hoai should have brought his non-federal claims in this Court.

The plaintiffs also request that this Court rule, in accordance with controlling Supreme Court precedent, if it feels it necessary to do so, on whether or not the attempt by the defendant Dixon as a judge of the Superior Court to prevent Hoai from proceeding against Sun on this non-federal claims is precluded by the earlier decision of another Superior Court judge that Hoai should split his claims between the federal courts and the Superior Court, pursue his claims in the federal court and then return and finish up his non-federal claims in the Superior Court.

Further details are given in the accompanying Memorandum of Points and Authorities in Support of this Motion.

Respectfully submitted,


/s/

Laurence A. Elgin    # 159582
Suite 900 South Building
601 Pennsylvania Ave., NW
Washington DC 20004-3615
(202) 628-1114
(202) 628-6798 – fax

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THANH VONG HOAI, *et al.* | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) CIVIL ACTION NO. 1:06-cv- 00210-RJL | |
| | ) | |
| | ) | |
| The SUPERIOR COURT of the | ) | |
| DISTRICT of COLUMBIA, *et al.,* | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR SECOND MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

### I. THE ISSUE DECIDED AND THE RIGHT RECOGNIZED

The Supreme Court, in the case of *United States v. Moser*, 266 U.S. 236, 242 (1926), considering issue and claim preclusion, ruled that a "…right distinctly adjudged in the original action cannot be disputed in a subsequent action .…" These plaintiffs seek to enjoin relitigation of a right granted to one of them by the United States Court of Appeals for the District of Columbia Circuit and ratified and confirmed by Judge Louis F. Oberdorfer of this Court. Even before the right was established by the United States Court of Appeals it had already been established by a judge of the defendant Superior Court of the District of Columbia. It was expressed originally and guaranteed by a judge of the Superior Court and then reestablished in the United States Court of Appeals for the District of Columbia Circuit and then elaborated upon further by this Court upon remand from an interlocutory appeal.. The latter two iterations of the right occurred in the Hoai case against Sun under the PMPA in this Court. CA No. 87-2456 The decision in the United States Court of Appeals was *Hoai v. Sun Refining and Marketing Co., Inc.* 866

F.2d 1515 (D.C.Cir. 1989).  The decision upon remand by Judge Louis F. Oberdorfer was

rendered after remand from the interlocutory appeal on May 1, 1991.  It was a decision

on a motion by Sun to limit the damages that Hoai might recover for Sun's illegal

termination under the Petroleum Marketing Practices Act (PMPA) 15 U.S.C. § 2801 *et*

*seq.*  The May 1, 1991 decision by Judge Oberdorfer is attached to the TRO motion

previously filed as Attachment H.  It is reported at 1991 U.S.Dist. LEXIS 5977.

      The right of which we speak is the right of one these present plaintiffs, Thanh

Vong Hoai, (Hoai) to proceed separately on his claims remaining in the Superior Court

complex of litigation that is the object of this suit for injunctive relief against Sun as one

among several third-party defendants in the Superior Court litigation.  It would seem

obvious that the other two present plaintiffs could proceed against Sun on their claims.

But, preliminarily at least, the defendant Dixon has cast doubt on the right of Hoai to

proceed, and has done so in a clearly erroneous preliminary decision, even though under

the doctrine of issue preclusion he is clearly barred from doing so.  Plaintiffs maintain in

this motion that the defendants, including the defendants Dixon and Superior Court, may

at this time be enjoined from going any further with applying that preliminary decision.

      In the appeal of Hoai's PMPA case against Sun the following was held:

> Finally, it appears that the Superior Court judge himself
> wished to simplify the case in his court by <u>separating out the federal
> claims</u>.  *Hoai, supra,* at 1519 (emphasis added).

This is not just a passing observation; it is a finding that was an essential component of

the decision.   It was a response to one of two principal thrusts of Sun's arguments to the

Court of Appeals that Sun pursued without success and it was the dominant thrust. Sun

was arguing that Hoai could not pursue his PMPA separately in the federal court but

should have been compelled to pursue all of his claims together in the Superior Court.

Sun put forward this argument vigorously, if in a somewhat loose fashion, by citing well

known cases about not pursuing federal claims separately in federal courts, but rather

having state courts decide them all together. Among cases Sun cited repeatedly for this

proposition were *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971)

and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed. 2d 1 (1987).

Judge Oberdorfer had stayed the case below based on arguments from Sun that

the claims could not be split between the two court systems. Hoai successfully reversed

that stay in his interlocutory appeal by defeating that argument and winning the point that

the claims could be split between the two court systems. Most of Sun's argument in its

briefing and at oral argument was that Hoai could not be allowed to pursue his causes of

action in a split basis in more than one court, that everything belonged in the Superior

Court and Hoa's proceeding separately in this Court should not be allowed. Sun lost.

The issue was decided. Hoai then pursued his PMPA claim separately in this Court —

successfully. Sun lost its argument and Hoai won the right to split the claims.

The United States Court of Appeals did not stop there, it went on to reaffirm that

a judge of the Superior Court had induced these plaintiffs to sever out their federal claims

from the subject litigation in the defendant Superior Court and try them separately in this

Court, reserving for these plaintiffs the right to try their non-federal claims back in the

Superior Court once matters in the federal courts had run their course:

> …on September 16, 1988, the Judge suggested that the issues arising
> out of the dispute between Hoai and Vo
>
>> could be severed out of this case and tried here <u>preserving all the
>> other issues that make this case more complicated</u> about the
>> behavior of Sun Oil and the franchise agreements and whether or

> not the franchise could be transferred in violation of the
> Petroleum Marketing Practices Act…..
>
> Transcript of Scheduling Conference at 24, *Vo v. Hoai*, Civ. No.
> 7075-86 (D.C.Sup.Ct. Sept. 16, 1988); *see also id.* at 27 ("Speaking
> only to the question of whether we can simplify the Superior Court
> litigation and expedite part of this case at least <u>without in any way
> depriving you [Hoai's counsel] of your right to litigate the rest of it,
> perhaps after the federal case runs its course</u>; is there any way you can
> think of to do that?").  Certainly the Superior Court did not appear to
> view the exercise of federal jurisdiction as an attack on its sovereignty
> or as lacking in "comity."
>
> Consequently, we find absolutely no basis for the application
> of *Younger/Pennzoil* equitable restraint in this case.  *Id.* at 1519-1520
> (emphases added)

Again we emphasize, these are not casual observations; these are rulings essential to the

decision of the United States Court of Appeals.  That they incorporate rulings and

promises of the Superior Court judge does not make them anything less than rulings.

They recognize that Hoai has the right to split his claims against Sun growing out of the

disputes between himself and Vo and try them separately, the PMPA case against Sun in

this Court, and his other, non-federal claims against Sun growing out of that same dispute

in the Superior Court.  The issue of whether or not the claims could be split was litigated

and decided in the federal courts—after it had already been decided, and the right to split

the claims created originally in the defendant Superior Court   That the claims could be

split between the federal and non-federal claims and tried separately in the two different

systems was thus decided in each system, and the decisions are in accord with each other.

As pointed out in our first request for preclusive injunctive relief, the terms

"franchisee" and "franchisor" are preemptively and strictly defined in the PMPA at 15

U.S.C. § 2801.  Only Hoai could sue Sun under the PMPA.  But the issue of the propriety

of trying the claims in the separate court systems and thus splitting the claims arose in the

PMPA case by Hoai against Sun and was decided.  It applies to all the present plaintiffs.

We attached as Attachment C to our TRO motion an extract from Sun's initial dismissal motion support memorandum in the PMPA case of Hoai against Sun which illustrated that that initial motion was based upon Sun's contentions that Hoai was trying to appeal an "Order" of the defendant Superior Court.  We showed at some length in our first motion for a preliminary and permanent injunction how the notion that the Consent Order upon which Sun based its misrepresentation that its private agreement with Vo was a court order because Sun and Vo induced a Superior Court judge to sign it under extremely constitutionally dubious circumstances.  As part of finding that Hoai and not Vo was the owner of the Sun franchise so that Sun was found to have illegally terminated the franchise of Hoai in violation of the PMPA, first the United States Court of Appeals and then Judge Oberdorfer of this Court, responding to the appellate decision upon remand, found that this Consent Order was no more than a private agreement.

We set out at length in our support memo for our first motion for a preliminary and permanent injunction aimed at avoiding relitigation of an issue already decided in this Court and the United States Court of Appeals how Sun raised that argument that the present plaintiff Hoai was attacking a judgment of the Superior Court that gave the franchise to Vo and how that argument was refuted.  However, there was another argument with which Sun supplemented its original dismissal motion against Hoai in the PMPA case.  It is that second argument that is the focus of this second motion for preliminary and permanent injunctive relief.  That argument was inserted by Sun into the PMPA litigation in this Court when Sun filed a supplemental brief in support of its original motion to dismiss Hoai's complaint.   This second argument became part of the

interlocutory appeal and ultimately became the most litigated part of the appeal.

We attach the brief that introduced this argument on March 28, 1988 as Attachment A to this memorandum.   The supplemental brief was occasioned, as Sun's counsel explains in the brief, by the fact that the present plaintiff Hoai had filed a Motion for Correction of the Record and Petition for a Rehearing or a Rehearing En Banc in the defendant D. C. Court of Appeals in the related litigation in the D. C. Municipal Courts.

Counsel for Sun argues in this supplemental brief, on page 1: "The plaintiff [Hoai] cannot contest the Consent Order issued by the Superior Court in the District Court [referring to this Court], particularly in view of the fact that he is raising these same issues on appeal and has a trial on the merits pending in the Superior Court." (Emphasis added)  With this sentence Sun injected into the PMPA case the issue that the claims could not be split as the Superior Court had mandated.  It argued that because Hoai had brought up his PMPA claim in the D.C. Court of Appeals, he could not pursue it in the federal courts, that he could not split his claims between the two court systems.

Sun continued the argument vigorously from that point forward and into the interlocutory appeal by Hoai which resulted in the argument being decisively repudiated. So the issue of splitting or not splitting the claims between the two systems was litigated and decided in favor of splitting the claims by the United States Court of Appeals for the District of Columbia Circuit in recognition of the splitting of the claims in the first instance by the judge of the defendant Superior Court.  The right to return and finish up their remaining claims once matters were wound up in the federal courts was reserved to Hoai and to his co-counter and third-party claimants, the Hemenways.

In particular this supplemental brief by Sun noted that the same PMPA claims that

were then being litigated in this Court were injected by Hoai into the Superior Court litigation in the motion and petition in question. *Id.*, As they continue to do, the defendant District of Columbia Court of Appeals refused to take any cognizance of the controlling authority of the PMPA and what it authorizes, much less the District of Columbia's own Retail Service Station Act (RSSA) D. C. Code § 10-201 *et seq*. But that is irrelevant to the present motion for preclusive injunctive relief. The point is that the issue was raised, litigated and decided in these federal courts. The claims could be pursued separately in the two separate systems even though they were and are related and grow out of the same set of operative facts. In this brief Sun refers to the separate pursuit of the claims as "utter folly," *viz.*: "This is illustrative of the utter folly of this <u>multi court attack</u> which has been mounted on behalf of Mr. Hoai." *Id.* p. 2 (Emphasis added).

Sun, in this supplemental brief, then goes on to attack further the splitting of the claims between the federal forum and the municipal forum, arguing that the PMPA claim cannot be pursued separately in this Court but must only be pursued in the municipal courts of the District: "This latest pleading by counsel for plaintiff clearly demonstrates that he is attempting to litigate these interests simultaneously in both the local and the federal forums." *Id.* To emphasize the point that the plaintiff Hoai cannot be allowed to pursue claims separately in different courts, Sun goes on to argue:

> This is a loose cannon attempting to ignite a litigation explosion on behalf of one party which could do serious damage to the legal system if left unchecked. *Id.* p.3

Leaving aside for the moment the somewhat "over-the-top" nature of this hyperbolic rhetoric, this piece of argument makes clear that Sun is on the attack against Hoai being allowed to pursue separate claims arising from the same nucleus of operative facts in

different forums.  Sun makes this clear in its concluding sentence of this supplemental brief: "The plaintiff has a legitimate forum in the Superior Court, not in this Court."

This shift in emphasis in the argument in the case as represented by Attachment A had an effect.  When Judge Oberdorfer made his decision on Sun's Rule 12(b) dismissal motion in the case he denied a dismissal, but then decided, as Sun had urged in its supplemental memorandum, to stay the case in this Court in order that all of Hoai's claims might be tried together in the Superior Court.  See Attachment B to this memorandum, a copy of Judge Oberdorfer's May 26, 1988 Order in the PMPA case and Attachment C, the July 13, 1988 Order making corrections to the May 26, 1988 Order.

Upon a motion filed by Hoai to make some corrections in this Order, which Hoai contended arose from misunderstandings by Judge Oberdorfer of what had occurred in the Superior Court litigation and, in at least one instance, a misunderstanding of the law, some corrections were made in the May 26, 1988 Order in an Order of July 13, 1988.  As can be seen Hoai was arguing that it was not as clear as it might have been that his PMPA claims could be pursued in the Superior Court and Judge Oberdorfer noted that but ruled, nonetheless, that all claims should be tried together there until it was determined whether or not Hoai could pursue his PMPA claim to a conclusion in the Superior Court.  Only if he could not do so did Judge Oberdorfer believe that Hoai should be allowed to then continue in this Court.  At the time of Judge Oberdorfer's May 26, 1988 Order and its July 13, 1988 correction, the Superior Court had not yet decided itself that the claims of Hoai and the Hemenways could be separated and tried separately in the two systems.  It was in a later conference in the Superior Court the following September that the Superior Court judge first decided to separate the claims into two components, D. C. and federal,

with the federal claims to be tried first in the federal courts and then, after being stayed
while the federal claims proceeded to their conclusion, the remaining, non-federal claims
would be tried back in the Superior Court.

So when Sun initially shifted its argument in May of 1988 to emphasize that Hoai
should be required to pursue all of his claims in the Superior Court and not be allowed to
separate them, the Superior Court itself had not yet decided, as it was to do in September
of 1988, that Hoai should pursue his federal claims in the federal courts, along with his
co-counter and third-party plaintiffs and then return to the Superior Court to finish up
what was left after the federal claims, thus split out, were concluded.  But by the time
Hoai's PMPA case was argued and decided in the United States Court of Appeals, with
the argument on December 12, 1988, and with the decision then coming on February 7,
1989, the Superior Court itself wanted the claims split up and tried in the two different
systems, with the federal claims in the federal courts going first.

In the intervening period Sun kept up and amplified its argument that Hoai should
not be allowed to try his federal PMPA claim in the federal courts separately from the full
body of his claims in the Superior Court, where, as the Court of Appeals was to note, he
had filed the PMPA claim against Sun as part of the total body of third-party claims
against Sun in order to protect himself in case he was not allowed to pursue the PMPA
claim separately in the federal courts.  Sun took no note of the fact that the Superior
Court along the way, in September of 1988, decided itself that it wanted the claims tried
separately in the separate systems, not only for Hoai but for all three of the present
plaintiffs.  Sun continued its briefing and arguing as if the Superior Court decision had
never been made, which is one of the reasons that the United States Court of Appeals had

12

to make the decision that it did and incorporate as an essential part of that decision the right of Hoai to pursue his claims separately and rule on that issue all over again.

After Hoai noted his interlocutory appeal in the PMPA case, Sun, over a certificate of service of July 21, 1988, filed a motion in the United States Court of Appeals for the District of Columbia Circuit to dismiss Hoai's interlocutory appeal.  In briefing this motion to dismiss the appeal Sun argued strenuously that the appeal should not be allowed and that Hoai should be compelled to pursue all of his claims first in the Superior Court.  Sun filed its appellee's brief in the interlocutory appeal over a certificate of service dated November 23, 1988.  Most of the 20 page brief was a tour through federal law on abstention and comity arguing repeatedly that Hoai ought to have to finish every thing up in the Superior Court.  The September ruling from the bench in the Superior Court, though it was made over two months before, was never mentioned.  On page 19 of its brief, Sun summed up its argument:

> Wise judicial economy and conservation of judicial resources would suggest that this dispute be heard in one court.  That court is the superior court where it has been pending since August 28, 1986 and which now has every conceivable party potentially before it.

Thus Sun carried its argument that Hoai should not be allowed to split his claims into the oral arguments before the United States Court of Appeals, where it was to lose.  We attach that motion for dismissal of the interlocutory appeal brief as Attachment B.

We attach a transcript of the oral argument before the United States Court of Appeals panel as Attachment C to this memorandum.  In the oral argument on the interlocutory appeal, as can be seen, at page 5-A, Sun opened with its argument that the PMPA suit by Hoai was a collateral attack on an order of the Superior Court, once again arguing that the private agreement between Sun and Vo which they had a Superior Court

judge sign without any notice to Hoai and with language that it did not affect Hoai or anyone other than Sun and Vo was an "order" of the Superior Court.  By page 7 of the transcript the Court of Appeals panel had made it clear it did not think much of that argument and moved on to the heart of the matter, Sun's contentions that under cases such as *Younger, supra*, and *Pennzoil, supra*, as well as under other Supreme Court authority, Hoai had to try all his cases in the Superior Court and cannot be allowed to pursue his PMPA claim in the federal courts.

The Court of Appeals then made clear its position from which it did not vary through pages of the transcript, despite Sun returning to its argument that Hoai could not proceed separately in the federal court on his PMPA claim again and again:

> You can't ride, the District Court can't ride this horse between Younger, Pennzoil and Colorado or Cone up and make up this new notion based on, well, maybe it is offensive to the Superior Court.  He is coming here, a different set of parties, suing Sun under Federal statute, he may or may not win, claiming that, claiming damages for improper termination of the relationship, which is in fact true, it is properly in the Federal court, and Cone says it is the highest burden and that the intermediate position that the Chief Justice espoused, without a majority, was rejected.  Cone and Colorado are the law, and it is the highest burden, the highest burden in the world, exceptional circumstances to throw someone out in Federal court, and this is not a Younger case.  See p. 7.

This clear message did not stop Sun's counsel from repeating his argument based on ignoring what the Court had just said about *Younger, Pennzoil, Colorado* and *Cone* as well as a few others, over and over again.  From page 7 through most of page 15.  At each reiteration Sun's contentions were more vigorously repudiated.

Right away Sun returned to the Consent Order in the Superior Court, pointing out that Hoai's entire PMPA complaint "is predicated entirely upon that consent order."  The Court of Appeals corrects that assertion by Sun's counsel: "Predication upon the

termination of his [Hoai's] relationship with Sun." *Id.* Sun's counsel fires back: "Because of the consent order." The Court of Appeals responds: "So what?" *Id.*

After Sun returns to its argument for not allowing Hoai to proceed in federal court, the Court of Appeals points out: "I gather from the record that the Superior Court Judge has said publicly he decided over here and it would go away from him, so it doesn't sound as though there is any great tension between the two jurisdictions." Sun then raises the possibility that 'the Superior Court goes one way and the District Court goes another way,…" The Court of Appeals responds: "The Superior Court apparently is perfectly willing to wait." Thus the Court of Appeals accepted Sun's argument and made it clear that whatever the federal courts decided, which became clear when it issued its opinion, if it preempted something that the Superior Court might want then to do, it preempted it. *Id.* at page 11.

At page 12 the Court lets counsel for Sun know precisely what it thinks of his arguments:

> The trouble is that there is not, as you seem to be suggesting, nothing more left it this, as I hear you and as I read your stuff, that there is just kind of this loose – you take <u>Younger</u> to an utterly ridiculous extreme, this notion of comity and off-Federalism means whatever the District Court feels like, if I can find a way to send the case out of here and give it some kind of State-like court, that is what the Supreme Court means to happen. That is not the law.

Finally, at the end of the colloquy, during Hoai's rebuttal, it was made clear that, with proceedings in parallel in the two systems, whichever Court finished first, its decision would pre-empt or preclude decisions in the other system, so that, with the federal courts going first, it was contemplated and thus incorporated in the federal decisions that there would be preemption and thus preclusion. See pp. 15 through 19.

15

Thus, the issues decided in the opinion of the United States Court of Appeals that we have reviewed above, earlier in the brief, were made with Sun having fully argued its position, albeit with "stuff" that was "loose" so that the opinion, when it was handed down in February of 1989, did decide the issues as fully argued, including whether the issues arising out of the dealings with Hoai's Sun franchise, including his disputes with Vo over the franchise and his disputes with Sun over its dealings with Vo over the franchise, could proceed in parallel in the two systems. It was decided that the federal courts would go first and then matters would return to the D. C. municipal courts where those issues that remained would be tried there at that later time, and that all issues that were decided in the federal courts would not be relitigated in the D. C. municipal courts.

The colloquy at oral argument makes clear the plain language of the decision itself. The issue of whether the claims of Hoai might be split and might move forward on parallel tracks with the claims in the federal court going first and then the remaining claims going forward in the D. C. courts afterwards was decided in the opinion on February 7, 1989. Among other points made in the decision was that the decision of the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) involved a federal about water rights. In that statute, the Court of Appeals noted, unlike in the PMPA, Congress "had explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy for favoring resolution of those rights in a single, comprehensive forum." *Hoai v. Sun, supra*, 866 F.2d at 1520. The Court of appeals then found that: "No such policy is implicated in the case at bar, and the mere desire to resolve all issues involving related facts in one court does not justify depriving Hoai of his

federal forum." That desire thus repudiated, of course, had been advocated by Sun and shared with Sun by Judge Oberdorfer in his decision that was reversed in the February 9, 1988 opinion. By necessary implication the splitting of the claims thus upheld and adopted was a complete plan not only that the claims might be split and tried in parallel, but that the federal claims might go first until resolved and then the remaining claims growing out of the same facts be resolved in the D. C. municipal court system.

## II. AFTER THE INTERLOCUTORY APPEAL: SUMMARY JUDGMENT LEADS TO DECISION ON WHAT IS TO BE SEPARATED OUT, THE TORT TYPE DAMAGES

As we set out in our earlier briefing on the subject of the first preliminary and permanent request for injunctive relief, after the United States Court of Appeals reversed Judge Oberdorfer's stay in *Hoai v. Sun, supra*, and the matter was remanded back down to this Court, Hoai immediately moved for summary judgment on liability. Judge Oberdorfer then invited Sun to file a cross motion for summary judgment, which Sun did. Judge Oberdorfer then granted Hoai's motion for summary judgment and denied Sun's. Judge Oberdorfer's decision on the cross motions for summary judgment in which he granted Hoai's motion for summary judgment on the issue of liability and denied Sun's motion is attached to our TRO motion and memo as Attachment H. It was rendered on October 1, 1990 and is reported in LEXIS-NEXIS at 1990 U.S. Dist. LEXIS 13015.

After Hoai was granted summary judgment against Sun on the issue of liability Sun made a number of motions to limit his damages. In his PMPA claim Hoai had claimed punitive damages and also tort-type damages under his PMPA claim, the law on that point not being clear. Because the law on the subject was not clear, Hoai claimed that the types of claims that he had pending and stayed back in the Superior Court were "subsumed" as "actual damages" by the use of that phrase in the PMPA. He did this in

reliance upon the fact that if such damages were not "subsumed" under the PMPA's "actual damages," then he had them pending as separate claims back in the Superior Court, where the case had been stayed, pending the resolution of matters under the federal claims in these federal courts. He had been promised that by the Superior Court judge who compelled him to separate out his federal claim and try it in this Court.

In the May 1, 1991 opinion Judge Oberdorfer ruled out the tort type damages. He also denied punitive damages. It is his decision on tort-type damages that is significant for present purposes. Addressing Hoai's argument about the PMPA subsuming and incorporating tort-type damages in its "actual damages" phrase, Judge Oberdorfer held:

> This argument is imaginative, but it has little basis in the Act. The Act does not prevent terminated franchisees from suing franchisors under state law. See, e.g., O'Shea v. Amoco Oil Co., 886 F.2d 584 (3d Cir. 1989); Bellmore v. Mobil Oil Corp., 783 F.2d 300, 303 – 06 (2d Cir. 1986). The Act's preemption provision is broad but not that broad. It provides that

> No State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) or to any nonrenewal (or the furnishing of any notification with respect thereto) of any franchise relationship unless such provision of such law is the same as the applicable provision of his subchapter.

> 15 U.S.C. § 2806(a) This provision "neither expressly nor impliedly preempted state law relating to any aspect of the termination or non-renewal of petroleum franchises. Rather it preempts only state (actions) as to grounds for, procedures for, and notification requirements with respect to termination and non-renewal." Bellmore v. Mobil Oil Corp., 783 F.2d 300, 304 (2d Cir. 1986) (footnote omitted). None of the tort claims of enumerated by Hoai have anything to do with the "grounds for, procedures for, and notification requirements with respect to termination and non-renewal." Id. at 304. Nor do they in any way "conflict with Congress' objective of establishing `a single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises.'"

Barnes v. Gulf Oil Corp., 795 F.2d 358, 364 (4th Cir. 1986) (quoting
Senate Report at 19). As a consequence, the Act's preemption clause
does not bar a terminated franchisee like Hoai from bringing any of
the tort claims he has enumerated, and Hoai's theory that tort
damages are subsumed by the Act because the Act subsumes tort
claims collapses. Hoai cannot be awarded damages for tort claims
unless he pleads and proves the claim and the damages.

Just prior to the passage quoted above Judge Oberdorfer had set out the claims

that Hoai had "enumerated": "Thus, Hoai seeks the damages he could have recovered

had he claimed damages for abuse of process, wrongful eviction, intentional infliction of

emotional distress, conspiracy to interfere with contract, waiver, estoppel, and breach of

trust." *Id.* These enumerated claims did overlap to some degree with the actual claims

that Hoai, at that point, had and pending back in the defendant Superior Court. There

action had been stayed until the federal cases, including Hoai's PMPA claim, had run

their course in accordance with the plan to split the claims between the two systems

which had originally been fostered by a Superior Court judge and then ruled upon again

by the United States Court of Appeals for this circuit as set out above. The actual counter

and third-party claims outstanding in the Superior Court at that time, where they had been

stayed in order to let the federal claims proceed in this Court and run their course, were as

follows: COUNT ONE – BREACH OF SETTLEMENT CONTRACT, COUNT TWO – FRAUDULENT

INDUCEMENT/FRAUD AND DECEIT, COUNT THREE – CONSPIRACY TO COMMIT FRAUD,

COUNT FOUR -- TORTIOUS TAKING/ THEFT/ ILLEGAL CONVERSION, COUNT FOUR [THERE

WERE TWO FOURS BY MISTAKE] – BATTERY AND THREATENED ASSAULT, COUNT FIVE –

TRESPASS, COUNT SIX – MALICIOUS BREACH OF CONTRACT,  COUNT SEVEN – ILLEGAL

CONVERSION OF PROPERTY AND THEFT OF MONEY,  COUNT EIGHT – TORTIOUS

INTERFERENCE WITH CONTRACT, COUNT NINE – TORTIOUS INTERFERENCE WITH

BUSINESS RELATIONSHIP, COUNT TEN – CONSPIRACY TO DAMAGE BUSINESS, BUSINESS

REPUTATION AND BUSINESS RELATIONSHIP, COUNT ELEVEN – VIOLATION OF BUSINESS

CONSPIRACY STATUTE, COUNT TWELVE – SLANDER, INTERPLEADER AND CROSS-CLAIM, BREACH OF CONTRACT – SUNOCO.

There is considerable overlap between these counter and third-party claims, many of which included Sun either by direct allegations within the particular count or by allegations incorporated into the count wherein the prayer included Sun.  Thus, Hoai had brought separately, along with the other two plaintiffs herein, some of the precise claims enumerated in the PMPA suit as he was testing just what the PMPA damages included as well as other claims, stayed and pending the outcome in the federal courts.   He was testing what was subsumed under and incorporated into the PMPA damages.

It should be noted that then as now these claims that were pending in the Superior Court had not been litigated.  In fact there had been very little discovery because of Vo's obstruction of discovery and because the Superior Court judges, with one notable exception, refused to do anything to compel Vo to cooperate in discovery.  Superior Court judges had refused to allow the deposing of many of the other players in the aspiring ethnic mafia.  Many of the third party defendants had not had time to be the object of discovery before the stay which Judge Weisberg wanted imposed when he decided that the federal claims should be split out and tried separately in the federal courts in order to seek to simplify the case, was imposed.

It is somewhat puzzling that Judge Oberdorfer went on in subsequent comments seemingly unaware that the claims of these plaintiffs in the complex of litigation had been split between the two systems by a judge of a Superior Court, where the non-federal claims were stayed and pending.  The Court of Appeals, in reversing his initial stay, had addressed the argument that all the claims should be tried in the Superior Court and repudiated that concept.  But he himself on one occasion told a story about having

overlooked something even more egregious. In any case he never addressed and ruled upon the question of the splitting of the claims as an issue. He did go on at some length about Hoai not having brought any pendant claims but that is not the same as the issue of whether the claims could be split.

What is clear is that he ruled that the PMPA "actual" damages would be severely limited and that other types of damages, including particularly tort-type damages, could be tried against Sun if they were brought separately. Judge Oberdorfer emphasized this on the following page of his May 1, 1999 decision when he said: "By contrast, because the Act does not bar plaintiffs like Hoai from bringing tort claims under state law, there is no reason to think that the Act subsumes the damages from any tort claim." *Id.*, p. 6 Thus Hoai is free in the Superior Court, unless the Superior Court allows relitigation of the issue of whether the claims can be split between the two systems. Allowing Hoai and the Hemenways to pursue what was left after the federal litigation had run its course had already been decided in both systems. These plaintiffs were free to pursue Sun and all the other third-party defendants that Hoai and the Hemenways had sued in the above counts that had been stayed and pending, with possibly one exception. They would only not be free to pursue their claims that had been stayed against counter and third-party defendants, including Sun, if the Superior Court were to ignore the rulings of which we speak, which is what happened.

### III. BACK IN THE SUPERIOR COURT

By December 31, 1997, all matters in the federal courts on the federal claims that had been split out to be tried separately had run their course. This included fee litigation and all appeals. At that point the present plaintiffs moved for a lift of the stay in the

Superior Court.  The motion was not opposed but there was some delay in granting it.
On March 4, 1997, an Order lifting the stay was signed in chambers by the defendant
Dixon and was docketed and mailed out to counsel on March 12, 1997.

The present plaintiffs began immediately to prepare a comprehensive motion to
apply the issue preclusion which they allege resulted from the decision by Judge
Oberdorfer of October 1, 1990, against the claims of Vo in his amended complaint which
was still pending in the Superior Court at that point.  As pointed out in the first
preliminary and permanent injunction request by these present plaintiffs, they claim that
Judge Oberdorfer's decision, in granting partial summary judgment to Hoai on the
question of Sun's liability to Hoai under the PMPA, in which he ruled that Sun illegally
terminated a franchise belonging to Hoai decided the issue of the ownership of the
franchise.  It was owned by Hoai and not by Vo.

Therefore, the present plaintiffs argued in their comprehensive motion to dismiss
Vo's complaint in the Superior Court could not be litigated without litigating the issue of
ownership already conclusively decided and has to be dismissed.  That motion to
preclude Vo's complaint as attempting to relitigate the issue of ownership, with its
supporting memorandum and proposed Order and numerous attachments, was filed in the
Superior Court on May 2, 1998.  It was not only a motion to dismiss Vo's complaint, but
also, in the alternative, to render judgment on the pleadings in favor of the present
plaintiffs and to award them damages for wrongful involvement in litigation.  A copy of
that motion and its support memorandum, without the attachments, was attached to the
TRO motion of these plaintiffs as Attachment G and is incorporated by reference.  The
motion was opposed and Reply brief was filed but to this day the completely briefed

motion has been ignored by the defendants.  Not one of them has deigned to pay it the slightest bit of attention.  This was a pattern which the defendants began before the stay. Even after Hoai has won his PMPA case, the defendants continue to ignore the statutory law governing service station franchises.

In the meantime, however, before the present plaintiffs could complete their motion with its lengthy memorandum setting out the details of the complex of litigation in both courts that they felt was necessary to give the defendant Dixon a clear and comprehensive picture of what had transpired and why the believed that they were entitled to the preclusion on ownership, Sun filed a motion.  Sun, at that point, was a third-party defendant in the Superior Court litigation.  Originally, when Vo and his company Suntech, sued, they sued all three present plaintiffs and Sun.  But Sun, when it switched sides and entered the private agreement with Vo and then, along with Vo, had that private agreement endorsed by a Superior Court judge, entitling it a Consent Order, was then sued by these three present plaintiffs as a third-party defendant. That was after, over the objection of these plaintiffs, Sun obtained dismissal as a defendant to Vo's complaint.  In Hoai's win under the PMPA in this Court it was found that this private agreement by which Sun betrayed its dealer and switched sides violated federal law.

The motion that Sun filed was a motion for summary judgment in which Sun asked to be dismissed from the Superior Court litigation as a third-party defendant. Sun's motion was filed on April 3, 1998.  See Attachment I to the TRO motion.  If the Court will examine the motion's support memorandum it will find it conspicuously fails to mention in any way that the claims in the litigation had been split by mandate of a judge of the Superior Court and also by the United States Court of Appeals for the

District of Columbia Circuit.  It fails to mention that, after Sun had argued vigorously that the claims in the case should not be split but should all be tried in the Superior Court as part of a single case, the United States Court of Appeals had decided that argument against Sun.  The memorandum in support of the Sun motion, it will be noted, near its end, on page 12, mentions an "interlocutory appeal," but never gives the citation of the decision in the Federal Reporter.  In that reported decision, *Hoai v. Sun Refining and Marketing Co., Inc. supra*, Sun lost.  Sun's entire contention in this summary judgment motion, Attachment I to the TRO motion, was repudiated and repudiated emphatically.

There are those who would consider this a lack of candor with a court.  In fact an attorney, as an officer of the court, is generally required, it is said in the rules of professional conduct, to reveal to the court if there is contrary authority within the jurisdiction to the position that the attorney is taking, it the opponents do not raise it.  One would have to say that that requirement applies *a fortiori* when the reported contrary authority is in the very case that the attorney is referring to and in which the same attorney took the same position that he is presently representing to a court and lost.  At the time Rule 3.3, CANDOR TOWARD THE TRIBUNAL, section (a) read as follows:

> A LAWYER SHALL NOT KNOWINGLY:
>
> **(1)** MAKE A FALSE STATEMENT OF MATERIAL FACT OR LAW TO THE TRIBUNAL;
> * * *
> **(2)** FAIL TO DISCLOSE TO THE TRIBUNAL LEGAL AUTHORITY IN THE CONTROLLING JURISDICTION NOT DISCLOSED BY OPPOSING COUNSEL AND KNOWN TO THE LAWYER TO BE DISPOSITIVE OF A QUESTION AT ISSUE AND DIRECTLY ADVERSE TO THE POSITION OF THE CLIENT; …

Plaintiffs point this out in connection with the description of the filing of this motion by Sun strictly to draw a comparison between the sort of misrepresentation that was engaged

in by Sun and how the defendant Dixon responded to it in contrast to how a similar pattern of misrepresentation was dealt with in the United States Court of Appeals, particularly as set out in Attachment C.  The contrast is startling and illustrates why these plaintiffs sincerely believe, in answer to the query put forward by the Court both at the TRO hearing and the hearing on the first preliminary and permanent injunction hearing, why they will not receive proper analysis and treatment from the defendant Dixon.

Whereas at the colloquy in the United States Court of Appeals, the law clearly had been researched by Judge Edwards, as the judge taking the lead on the panel, and it was applied to rebuke counsel for Sun and repudiate his misrepresentations, and his "loose" "stuff", the opposite was the case as between counsel for Sun and the defendant Dixon and this initial summary judgment motion by Sun and what then ensued illustrate the point quite dramatically.

Here is one example of what we mean:  In that very same passage on page 12 of Sun's support memorandum, Sun quotes from the reply brief filed by the present plaintiff John D. Hemenway and the undersigned on behalf of Hoai in the successful interlocutory appeal in the PMPA case of Hoai against Sun in this Court:

> …if the court does dissolve the stay below, the subsequently filed suit against Sun in the Superior Court under the PMPA will be withdrawn by simple modification of the complaint, as urged by the Superior Court judge.

If Sun at this point had chosen to honestly represent what had occurred in the PMPA case, even had it referred to the reported opinion in *Hoai v. Sun Refining and Marketing Company, Inc., supra*, Sun would have pointed out that the "modification of the complaint" referred to was, as the words clearly indicate, the modification of the Superior Court counter and third-party claims to eliminate the PMPA count, which is in fact what

happened.   After the Oberdorfer initial stay was reversed, Hoai in fact dropped his

PMPA count from the Superior Court counter and third-party claims just as he said he

would, and pursued the PMPA claim, successfully, as it turned out, against Sun in this

Court.  We attach a copy of the counter and third-party claims which these plaintiffs filed

on July 24, 1989 at the specific request of Judge Weisberg of the Superior Court to,

among other purposes, eliminate the federal claims that by then were going forward in

this Court and the United States Court of Appeals.  Judge Weisberg was the Superior

Court judge who is referred to in *Hoai v. Sun Refining and Marketing Company, Inc.,*

*supra*, in the passage quoted above from that opinion about the splitting of the claims at

Judge Weisberg's request, a request that these plaintiffs could hardly refuse to obey.  We

file as Attachment D, the praecipe correcting errata in that filing and the corrected

version as July 31, 1989.  By this time the case was for a period before Judge Kennedy.

It would be relevant here to look at the exchange that took place during the

colloquy in the United States Court of Appeals on this point of what had been the PMPA

count in the Superior Court counter and third-party claims before the federal counts were

amended out of those counter and third-party claims at the request of a judge of the

Superior Court.  At pages 8 through 12 of Attachment E there is an exchange between the

United States Court of Appeals and Sun counsel in which the same counsel for Sun goes

back and forth with the Court of Appeals about the PMPA claim being at that point

pending in both the Superior Court and this Court.  That parallel bringing of the PMPA

claim only was solely because, as the Court of Appeals noted several times, Hoai had

been forced to bring the PMPA claim in the Superior Court in order to protect himself

because of Judge Oberdorfer's inappropriate stay of the PMPA proceedings in this Court.

Sun counsel knew perfectly well that PMPA count was a single count in the Superior Court case, brought only reluctantly by Hoai in the Superior Court because of Oberdorfer's stay, whereas in the PMPA case in this Court it was the only claim.  He also knew that Judge Weisberg had instructed these plaintiffs to split their claims between federal and non-federal claims.  Further, because of the exchange between the Court of Appeals and the undersigned in the rebuttal portion of appellant's oral argument before the Court of Appeals, at pages 15 through 19 of Attachment C, it can be seen that Sun counsel that filed the motion for summary judgment knew full well that there would be an interaction between the two litigations in the two systems in which there would be preemption. He knew as well that what was not tried in federal court first would be tried subsequently in the Superior Court if what had been ruled was followed.

Counsel for Sun knew that unless something interrupted these present plaintiffs, including Hoai, from trying whatever was left in the Superior Court once matters in the federal courts had run their course, Sun would be held liable in the Superior Court under Hoai's separate tort claims pending there which had been stayed for the tort damages that Judge Oberdorfer had ruled must be tried in separate claims.  In moving for summary judgment as he did, counsel for Sun engaged in serious misrepresentation for the specific purpose of preventing what had been ruled from being followed.

His representation about what the undersigned and present plaintiff John D. Hemenway had promised was misleading and a falsehood and he knew it.  His request of the defendant Dixon that the defendant Dixon force the undersigned and John D. Hemenway to honor what he misrepresented about what had actually happened in the United States Court of Appeals was an invitation to join in a falsehood and cover-up.

Unfortunately for the present plaintiffs (and the undersigned) it was an invitation which the defendant Dixon accepted and has steadfastly refused to correct even though it led the defendant Dixon into clear error and to working a manifest injustice upon the present three plaintiffs and their counsel.  This Court has asked why these plaintiffs do not wish to entrust what has already been decided in the federal courts to relitigation by Judge Dixon.  This example is but a small part of the reason that these plaintiffs have for not trusting Judge Dixon working in concert with Sun's counsel, as we shall show further.

The misrepresentation in the summary judgment motion did not stop with the omissions and misrepresentations about the United States Court of Appeals proceedings. As the Court can see by comparing the long quote above from Judge Oberdorfer's opinion of May 1, 1991 and the memorandum of law filed by Sun in support of this summary judgment motion, Sun completely omits any mention of what Judge Oberdorfer actually held.  In fact, Sun fills 12 pages in its memo with irrelevant and detailed accounts of cases having no applicability to the Superior Court litigation had it been honest and not sought to mislead in this motion but never once mentions Judge Oberdorfer's decision of May 1, 1991, *supra*, which contains much controlling precedent having a preclusive effect.  This is the same technique of irrelevant "loose" "stuff" accompanied by misrepresentations of the law that was repudiated as a technique of argumentation by the United States Court of Appeals in the colloquy attached.

Thus where Judge Oberdorfer ruled in the long quote above that the PMPA controls not by controlling termination and non-renewal directly as such but rather by controlling the procedures of termination and non-renewal, by controlling the way that those procedures must be implemented by a franchisor, including the notification of

terminations and non-renewals, Sun makes a very different representation of what was

held. It is a conscious misrepresentation. Sun bases its entire thesis in its memorandum

in support of this summary judgment motion on the assertion that the PMPA is so

completely preemptive of terminations and non-renewals that counts such as conspiracy

to interfere with a business relationship by Hoai against Sun must be precluded —

precisely the opposite of what Judge Oberdorfer held. Look at the quote above.

    Another example of the essentially dishonest and misleading nature of this filing

is the quote from Judge Weisberg that is included on page 2 of the Sun support

memorandum. Sun was able to use this quote but somehow forgot completely that it was

Judge Weisberg who compelled the present plaintiffs to split up their claims and try the

federal claims in this Court and the United States Court of Appeals. It is true that Judge

Weisberg made plain his contempt for the plaintiff Hoai and the WASP's assisting Hoai

quite clear as well as his dislike for them. In particular he could not handle the fact that

Hoai was actually accusing thugs of being thugs. He stoutly resisted any discovery

attempts by these plaintiffs to establish that thugs were indeed thugs. At one point, in

Rodney King fashion, he uttered a plea to the effect of `Can't we all just be

businessmen?' He particularly found it offensive when these plaintiffs tried to establish

that Vo was a liar by calling Vo a liar. Judge Weisberg did not like that. He also stoutly

refused to apply the PMPA, the RSSA, or any controlling law. When he had to rule on

the Rule 12(b)(6) motion against Vo's complaint that these plaintiffs had filed in this

Court while the Superior Court litigation was removed to this Court, he avoided the

controlling law like the plague, saying that any application of it would have to await

further discovery, then he blocked the further discovery and refused to let these plaintiffs

have any.  It should be noted that Hoai won in this Court on the very law that Judge
Weisberg refused to apply, the same law that these plaintiffs kept trying to get applied in
the Superior Court with such persistence that Judge Weisberg attacked counsel and John
D. Hemenway in the passage quoted by Sun counsel for vigorously seeking justice.  How
dare they?  Judge Weisberg made it clear that he would punish counsel and John D.
Hemenway if they continued to pursue the rights of Mr. Hemenway and the other two
present plaintiffs in his court, that he wanted them to go over to the federal courts and
simplify matters and then come back and finish up what was left.  Somehow counsel for
Sun couldn't bring himself to mention the latter part of Judge Weisberg's utterances.  He
could not point to Judge Weisberg's having enunciated a law of the case about splitting
the claims that had then been incorporated into a ruling of the United States Court of
Appeals in a reported case.  This was plainly an attempt to vilify counsel and John D.
Hemenway and appeal to a camaraderie offensive to the Rule of Law.  It worked.  It
worked even though at that point, as the Superior Court litigation resumed, counsel and
John D. Hemenway had been proved right about the PMPA and Judge Weisberg had
been shown to have assiduously avoided controlling law.

Judge Weisberg particularly didn't like the litigation to be complicated.  The fact
that it is complicated was of little importance to him.  This is why he split the claims in
the case and sent the present plaintiffs to this Court.  We would point out, in this regard,
that from the beginning the judges of the defendant Superior Court made the case more
complicated than it ever had to be by avoiding completely the law controlling gas station
franchises and their transfer and injecting issues into the case that did not belong.  From
the outset they treated Hoai and the Hemenways, who have already turned out to be right

on a major part of their contentions, with contempt for vigorously advocating their rights and attempting to expose the thug and liar Vo for what he was. Nothing advocated by these plaintiffs in the defendant courts to date has ever been taken seriously or allowed to see the light of reasoned study and the application of controlling law.

There is, in connection with this last, another serious misrepresentation in this support memorandum of Sun's that must be pointed out. On page 12, after Sun's referring to "the lawful termination by the Sun Company, Inc., of a franchise under siege." (Which these plaintiffs would maintain is a highly misleading assertion.) Sun then says: "All else, including the conspiracies, the extortion, and the mafia and the cowboys, claimed by counsel for Mr. Hoai, were never established, never proved, and in fact never existed. These allegations were asserted time and time again in the U.S. District Court, but not one scintilla of evidence was ever produced." This is misleading. As we have shown in the first request of these plaintiffs for temporary and permanent injunctive relief, Sun put forward as its principle defense in the PMPA action that the franchise effectively belonged to Vo, that Vo was the actual owner and operator of the franchise from the outset, that it had been compelled to give the franchise to Vo by the defendants and in every way put forward the interests of Vo.

Sun's advocacy of the interests of Vo, of course, related to its defense against liability to Hoai. Once Sun lost on the issue of liability to Sun under the PMPA by virtue of Judge Oberdorfer's decision and opinion of October 1, 1990, Vo's interests ceased to have anywhere near the same significance for Sun. Nonetheless, Sun continued to advocate the interests of Vo in some respects, particularly as it thought that advocating Vo's contentions might help Sun and, correspondingly, harm Hoai's counsel or make

them look bad.  This was particularly true with regard to the last quoted falsehood.  Thus, in Sun's opening statement of the PMPA case trial on damages, Sun counsel stated, as he listed to the jury who his witnesses were going to be and what they would say:

> THEN, WE WILL ASK MR. VO TO TESTIFY, THANH VAN VO TO TESTIFY, WHO WAS OPERATING THE STATION DURING THIS EIGHT-MONTH PERIOD OF TIME.  HE WILL TELL YOU THAT HE LOST MONEY DURING THAT PERIOD.
>
> HE WILL TELL YOU THAT HE DID HAVE SOME PRIOR SERVICE-STATION EXPERIENCE, BUT DURING THAT PERIOD IN THIS STATION HE LOST MONEY.   Trial transcript, PMPA case, opening, October 7, 1991, p. 79

But, in fact Sun never did put Mr. Thanh Van Vo on the stand.  Why did Sun chicken out?  Sun chickened out for the very simple reason that by that time counsel for Sun knew that he would face convincing proof that Vo was a liar.  That was particularly so about Vo's claimed experience in service stations.  When Sun persisted in their plan to put Vo on the stand, the present plaintiff Hoai, who was represented in that case by the undersigned and the present plaintiff John D. Hemenway, made it clear that they would put numerous witnesses on the stand who would tear the lies of Vo to shreds.

One of these witnesses was a Vietnamese American franchise owner named Gin Ham.  To illustrate our point we attach as Attachment E the deposition taken of Gin Ham by Hoai during the PMPA case.  It is not a very long deposition and the Court can easily see that, far from being an experienced manager of the station in question, Vo was a man who hung around the station as a customer and who falsely claimed to a Snap-On Tool truck driver that came to the station that he, Vo, worked for Gin Ham, when such, in fact, was not the case.  In other words, Vo was a hustler who hustled the situation to get some Snap-On tools by falsely claiming that he worked for Gin Ham, the owner of the Texaco

franchise.  See pages 14 through 17, culminating with Gin Ham's statement:

> I told him, you know, please, you, don't come here and bother me,
> and say you work for me or something like that, you know.  I don't
> like it, see.

And see pages 24-27 where counsel for Sun walks all over his own hearsay objections.  It should be noted that the effort on cross-examination by counsel for Sun to "prove" that Vo had worked for Harry Gray, who sold the Texaco franchise to Gin Ham, is pure speculation.  In fact, plaintiffs will not burden the Court with it at this time, but they did obtain from one of Harry Gray's two sons, who helped their father in running the station, a sworn statement that, as with Gin Ham after Gin Ham purchased the franchise, Vo was a man who hung around to the point of being bothersome.  This is but one example of many pieces of evidence that the plaintiff Hoai was ready to bring forward in the PMPA case to destroy the false statements of Sun about Vo and his experience.  But, because Sun chickened out in using Vo, no doubt because he was a liar and a hustler, there was no need for Hoai to use the evidence.  So the assertions by Sun in the summary judgment motion back in the Superior Court in this regard are, once again, purposefully misleading. There was much more evidence to be brought forward about the true nature of Vo and much already in the record in the Superior Court, but the defendants have assured over these twenty years, that it is not paid attention to.  In fact, in the PMPA case the final, uncontested testimony before the jury was that Vo, when he began to hang around Hoai and eventually took over Hoai's franchise with the mafia-style tactics complained of, did not even know how to measure the oil with a dipstick until taught how to do it by Hoai.

It should be noted that Sun did not always embrace the hustler Vo in this fashion. Until their lawyers got into it, Sun stood with their dealer Hoai and kept urging him to get

Vo out of the station.  When Hoai did just that, they stood with Hoai at the TRO hearing where the undersigned represented all defendants.  At that hearing, as the transcript shows, Ernest Peele, then Sun Area Representative, stood with Hoai and testified that Sun had vetted Vo as a potential transferee and found him wanting.  The Ham deposition shows why.  Peele also testified that he had been assured by Vo that Vo had no part in the ownership of the franchise and no claim in that regard and was only helping Hoai with a friendly loan.  This was all verified in a deposition of Peele in the PMPA case.  Both Peele and also Harold Vaughn, a Sun VP testified that Sun knew about Vo threatening violence and bodily harm to Hoai when, to their surprise, the lawyers took over and made the illegal deal to give Hoai's franchise to Vo in the private agreement which the lawyers termed a "Consent Order" and which the lawyers had signed by a Superior Court judge.

We have previously pointed out that had Sun simply continued to stand with their own dealer and invoked the language of their franchise agreement about the providing of notice and the opportunity to vet a potential transferee and the similar provisions of the District of Columbia RSSA, *supra*, they would have defeated Vo's complaint with ease. Certainly, through the ironclad language of the RSSA they could not be sued by Vo and only had to say so.  In the PMPA case Hoai deposed Sun's local counsel and the head of their legal department in Philadelphia, one Zulli, who made it clear that they, like the Superior Court, paid no attention to the RSSA.  The Gin Ham deposition attached makes clear just how completely Sun's position, had they stuck with their own dealer instead of switching sides, would have swiftly gotten them out of the case.

What we have shown shows also that had Sun done that and compelled the defendants to not ignore the PMPA and RSSA for twenty years, Hoai too would have

likely been out of the case as a defendant in short order.  As it happened bad legal advice, or the lack of good legal advice, has created unnecessary harm and suffering to the present plaintiffs for twenty years.  Even after Hoai's prevailing in this Court on the PMPA claims against Sun, far from letting that simplify the case as contemplated by Judge Weisberg, the defendants continued to ignore the PMPA and the RSSA and thus continued to "complexify" the case needlessly for another span of years up to the present time.  The ready reception by the defendant Dixon of the same kind of loose and irrelevant and even more misleading argumentation than that Sun put forth to the United States Court of Appeals, where it was properly dealt with, illustrates why there should be no consideration of comity toward such treatment.

Sun's motion for summary judgment consisted of 18 pages, including the proposed order of two pages.  As can be seen, it was filed less than a month after the stay was lifted.  Significantly, the defendant the Honorable Herbert B. Dixon granted it on April 22, 1998.  This turned out to be significant because the 3rd of April 1998 was a Friday.  Under Superior Court Rules there were allowed ten days for the present plaintiffs to respond to the Sun motion plus 3 days for service by mail.  Thus the ten days were up on Friday, April 17 and, because under Superior Court Rules the additional three days for service by mail don't count the weekend days, the time to respond to the Sun motion was up on the same day that the Order granting Sun's motion was signed.  It appears that Judge Dixon never saw the oppositions that were filed at that time because his Order, a copy of which is Attachment J to the TRO motion, says that there was no opposition.  In the Order it is to be noted, he did hand write in that it let Sun off the hook with regard to Hoai's claims and not to those of the Hemenways.  The defendant Dixon was sufficiently

interested in granting what Sun's counsel wanted that he did not wait until the opportunity to respond on the part of the present plaintiffs had lapsed.

Sun's counsel also accelerated this process improperly under the procedures for a hearing that the Superior Court then had. He scheduled the motion for a day so close that effective opposition could not be presented. This was in violation of rules then in effect. He falsely represented that he had consulted with the undersigned as opposing counsel about his motion and he assumed, incorrectly, that a summary judgment motion is an ordinary motion. The undersigned sent him a letter about these deficiencies immediately upon receiving his summary judgment motion, Attachment F. In it the undersigned pointed out that Sun was specifically ignoring that Judge Oberdorfer had held that Hoai could pursue non-federal claims separately. The letter was sent on April 9, 1998.

Counsel for Sun then agreed to a motion by the present plaintiffs Hoai and David Hemenway to straighten these matters out, Attachment G. In this motion the counsel for Hoai and David Hemenway set out the violations of the Superior Court Rules in the way that the motion for summary judgment had been set for hearing and stated that counsel for Sun had agreed to move the hearing to conform with the rules and pointed out that the present plaintiffs would be filing oppositions, two in number. This consent motion got lost either in the Clerk's Office or the Judge's chambers, it is not clear which. Counsel for Hoai and David Hemenway was tracking the matter and realized that the motion had gotten lost. On April 24, 1998, counsel for Hoai and David Hemenway faxed a copy to the clerk of defendant Dixon. Attachment H  In the meantime the defendant Dixon signed the order that his friend Gordon Forester, counsel for Sun, wanted, without waiting to see if these plaintiffs, as third-party plaintiffs against Sun in the Superior Court

proceedings at that point, had filed timely oppositions, which they, did in fact do. Attachment J to the TRO motion.  The Order is altered by hand to speak of no opposition and only apply to Hoai as a third-party plaintiff and not to the Hemenways.  Sun has stayed in the proceedings before the defendant Dixon.  Sun has continued to be noticed and to attend conferences before the defendant Dixon that the latter has called since he reactivated matters upon the retirement of Judge Wagner (She who created this mess in the first place and began the ignoring of Hoai and his rights).  The defendant Dixon tried to get the plaintiffs to "go away" and forget about the abuses that they have suffered.

We speak of counsel for Sun and defendant Dixon as being friends because they have conspicuously exhibited that friendship in meetings in the defendant Dixon's chambers.  See Attached Statement under Penalty of Perjury of the plaintiff Hoai, Attachment I.  Sun's counsel is the only counsel in these proceedings with whom the defendant Dixon is on a first name basis.  Defendant Dixon is a frequent attendee of bar functions and counsel for Sun has been an officer of the Bar, even its president.  There is nothing inherently wrong with Bar socializing and fraternizing, of course, but here it seems to have had a very unfortunate and discriminatory effect.  The Rule of Law and access to the justice system by a little brown man have gone by the boards as a result.  A camaraderie between members of the Bar establishment has resulted in a situation where they simply cannot "see" the oppression of the rights of someone like the plaintiff Hoai. The pattern of misrepresentation and lack of requisite candor by the counsel for Sun has greatly aggravated the situation and to some degree created it.  But the reaction to these efforts by the defendant Dixon has hardened into illegal further violation of the federal rights of these plaintiffs and into illegal discrimination against Hoai, harm that would

have been avoided if the defendant Dixon's reaction to the misrepresentations and

"loose" "stuff" of counsel for Sun had been like that of the United States Court of

Appeals as set out in Attachment C.

The oppositions filed in responses to the summary judgment motion of Sun made

it clear that Sun had claimed a claim preclusion to which it was not entitled and that did

not in fact exist, whereas the plaintiffs Hoai and David Hemenway did have an issue

preclusion that the defendant Dixon was ignoring.  Attachments J and K.  They were

ignored by the defendant Dixon.  Thereafter present plaintiff filed a number of motions to

reconsider and supplemental briefs, all pointing out that counsel for Sun had substantially

misrepresented matters, that there was no claim preclusion such as claimed by defendant

Dixon's friend, the counsel for Sun because the United States Court of Appeals had ruled

that the claims might be split and that the splitting of the claims had originally been

imposed upon the complex of litigation by anther judge of the Superior Court, Judge

Weisberg.  One such supplemental brief pointing out the splitting of the claims by Judge

Weisberg was filed in this case as Attachment K to the TRO motion.  All of this was

briefed a number of times.  But it was ignored.  No hearing was ever held, though one

was set and then cancelled.  The defendant Dixon never paid any attention to the

preclusion to which these plaintiffs claim they are entitled to pursue their counter and

third-party tort claims, including their third-party claims against Sun and Vo and others in

the Superior Court according to the opinion of the United States Court of Appeals.

There came a point in 1998 when the defendant Dixon basically put the case on

hold, canceling all hearings, he did nothing for years, declining to rule on the many,

many outstanding motions of these plaintiffs for years.  Then, in 2005, when the TRO

judge of the Superior Court who essentially created the whole mess by which these plaintiffs could get no attention paid to their case began, Judge Dixon ordered a status conference and tried to persuade these plaintiffs to quietly go away. They declined and ultimately came to this Court, realizing that the chances of their rights ever being paid attention to in the Superior Court and the District of Columbia Court of Appeals absent this present suit were between slim and none.

There is no indication whatsoever in the record that the defendant Dixon ever squarely addressed the preclusion advanced by these plaintiffs based on the rulings of the United States Court of Appeals reaffirming the splitting of the claims imposed upon this case by Judge Weisberg. In fact the record in the Superior Court shows that the defendant Dixon did not even order the files of the case from archives until June 25, 1998, in an Order docketed on June 29, 1998. That was over two months after he had granted summary judgment to his friend Gordon on April 22, 1998 in a position from which he never thereafter varied and which he clearly never seriously reconsidered. Thus he made his decision basically before he could even have seen any opposition to the misrepresentations and "loose" "stuff" of the counsel for Sun and could not possibly have studied what Judge Weisberg said in the files of the Superior Court case. Nor is there any evidence that the defendant Dixon studied what the United States Court of Appeals said in *Hoai v. Sun Refining and Marketing Company, Inc., supra.* He appears to not even have studied that opinion.

### III. CONTROLLING AUTHORITY

In the TRO motion the present plaintiffs prominently mentioned the case of *Parsons Steel, Inc.  v. First  Alabama Bank,* 474 U.S. 518, 88 L.Ed.2d  877, 106 S.Ct.768

(1986).   In discussing that holding and its application here we want to point out at the outset that there is a very significant difference between the facts in *Parsons Steel* and this case as there is between much of the other precedent that we shall be discussing and this case.  That difference is that in those cases there were parallel proceedings with the same or similar claims, not split claims.  That is an important difference that largely amplifies the arguments that we make in favor of the present plaintiffs.  There is a difference between the situation where state and federal proceedings are going forward in parallel with the same or similar array of claims and it is just a matter of which system moves more quickly and a situation such as the present one, where the claims have been split and it has been held and decided that one system will go forward and finish first and then the other will take up what is left.

It is also important to note that the principle holding of *Parsons Steel* is that where a <u>prevailing</u> party in a federal case decides to allow a state court to decide upon whether a <u>defense</u> with which it prevailed in the federal court can be applied as a defense in the state court on the basis of preclusion, that prevailing party cannot wait until the state court has ruled on its claimed preclusion adversely to it after a trial and jury verdict and then ask the federal court to enjoin the unfavorable result.   *Parsons Steel* has been taken to mean that where the injunction is sought at an early stage it often may be obtained.

Here matters in the Superior Court, despite the enormous passage of time, are still at a very early stage.  Because of the improper favoritism shown to Vo at the outset, the desire to not embarrass the judge who indulged in that favoritism, the unconstitutional Judge-in-Chambers by which Vo was allowed, in collusion with Sun, to "extend" the

TRO in violation of federal law without any notice to Hoai that he was being deprived of his franchise, despite the bond imposed upon Vo as a condition of his TRO that was not paid, despite the suppression of the discovery of these plaintiffs and all the other things that have gone on, the case has never progressed beyond its earliest stages.  In fact most of the mistreatment which these plaintiffs point out in their complaint retarded the development of the case.  There has been little interest among the defendants either in realistically dealing with the flawed claims of Vo or in allowing these plaintiffs to prove their case.  It is the denial of the benefits of the defendant courts to a mere Vietnamese and the elevation of what amounts to Bar politics above the Rule of Law of which the plaintiffs claim.  Meaningful access to the justice system for all litigants is of the essence of the Rule of Law.  Keeping the case of certain defendants and counter and third-party claimants from advancing is a denial of justice and of federal rights.  It cannot be credibly argued at this stage in this case that has so long been delayed, with so many of these plaintiffs' motions, including dispositive ones, having been fully briefed and yet never being ruled upon, literally for years, that these plaintiffs have had any "bite at the apple" of applying the preclusion sought in this motion.  All their efforts in that regard have been completely ignored.

This is significant because the law that has developed following the decision of the Supreme Court in *Parsons Steel* has emphasized that if the state court resolution of the claimed preclusion issue against the party claiming it is to prevent an injunction based on the federal court victory, the preclusion claimed by the victorious party in the federal proceeding must be faced and resolved against the party claiming it.  In the *Parsons* decision, Justice Rehnquest addressed the fact that Congress specifically adopted the

dissenting opinion of Justice Reed in the famous case of *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941) when it reenacted all the prior case law and repudiated the majority opinion in that decision. The majority opinion had cut back the relitigation exception to the general bar of the Ant-Injunction Act, 28 U.S.C.§ 2283. Justice Rehnquist wrote for the unanimous court, referring to Congress' adoption of the Reed dissent in *Toucey*, that for the injunction to be available the party or parties seeking the injunction against relitigation must have sought the injunction "before there was any resolution of the res judicata issue by the state court." *Id.* 474 U.S. at 524.

There is not a shred of evidence in the present case that the defendant Dixon ever even faced the res judicata issue raised by these plaintiffs, namely the question of it having been ruled that Hoai might proceed with his tort type claims separately in the Superior Court. The Defendant Dixon did what his friend, the counsel for Sun, asked before the time in which oppositions were allowed to be filed had passed. The defendant Dixon never looked back. There is no evidence whatsoever that he ever faced the preclusion claimed by these plaintiffs on the separation of claims, much less analyzed and rejected it. He cancelled a hearing on the claims of these plaintiffs, refused to rule in any way on any of their submissions on the point and, instead, stalled the case until Judge Wagner retired, and then tried to dump it. Thus, the present plaintiffs did not fight out the claim of preclusion in the local court, lose, and then seek to enjoin it. To the contrary, their attempts to even launch such a fight were completely ignored. Only when the defendant Dixon sought to dump their case altogether rather than pay any attention to their claims of preclusion did they come to this Court.

There is another aspect of the controlling authority of the unanimous opinion in

*Parsons Steel* that should be considered here. In the remand in that case the Supreme Court pointed out that it should be up to the United States District Court in the first instance to determine whether a "state court judgment is not entitled to preclusive effect under Alabama law." *Id.*, at 526  Thus, if the Anti-Injunction Act does apply to the District of Columbia, this court may consider whether somehow the defendant Dixon's decision to grant the claim preclusion he was asked to apply by Sun's counsel before the time to oppose had even run is entitled to preclusive effect under D.C. law.

This raises some interesting questions. As we have pointed out at the time that the defendant Dixon decided to grant Sun's request without allowing the time for oppositions to be filed to run, the file of the case had not been returned from the archives where it had been placed during the stay while matters proceeded in the federal courts. It was to be over two months before the files were retrieved. So he could not have read at the point where he decided in favor of Sun what Judge Weisberg had said, unless, of course, he had bothered to read the opinion of the United States Court of Appeals in *Hoai, supra.* There is no indication that he has ever read that opinion; certainly he was not advised of it by his friend, the counsel for Sun. When he was advised of it repeatedly by these plaintiffs, he ignored it, along with everything else they filed. Did he just not bother and was negligent, or did he join with his friend, the counsel for Sun, and deliberately sandbag these plaintiffs? Either way there is not a shred of evidence in the facts of this litigation to support consideration of comity toward these defendants.

If this Court wishes to consider preclusion under District of Columbia law it must ask itself what grounds there would be for a judge of the Superior Court to deny the rights granted to these plaintiffs when Judge Weisberg compelled them to separate their

claims and go try the federal claims in this Court first and then return to the Superior Court to finish up what was left there. As we have seen that separation of the claims was taken recognition of the by the United States Court of Appeals for the District of Columbia Circuit and, after vigorous argument by Sun against it being allowed, was ruled upon there, as we can read in the Federal Reporter. Under what doctrine of the law of the District of Columbia could this Court ignore what Judge Weisberg imposed, inducing the present plaintiffs to proceed in this Court, a decision which was then further ruled upon with approval by the United States Court of Appeals, and hold that it had no preclusive effect upon the defendant Dixon and that it allowed him to ignore it and do what counsel for Sun requested without considering either the earlier ruling by Judge Weisberg or the authority then put forward by these plaintiffs?

There is another very serious problem with the defendant Dixon's having granted the request of the counsel of Sun for the summary judgment in question without allowing or considering any opposition, another problem for the defendant Dixon's decision in favor of Sun that has been created by the Supreme Court. In what is perhaps the leading Supreme Court decision since *Toucey, supra*, on the relitigation exception to the Anti-Injunction Act, the Supreme Court said: "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in the state proceedings actually have been litigated in the federal court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). We ask the Court to note that the entire summary judgment motion and memo of Sun at issue, Attachment I to the TRO motion, is premised on the opposite notion to what the Supreme Court held in *Chick Kam Choo*. It is premised not on the notion that the

issues claimed by Hoai in his tort type claims were actually litigated in this Court, but rather on the notion that they should have been litigated in this Court.  The Supreme Court is controlling authority in this jurisdiction and counsel for Sun cited a lot of authority, but he, again, neglected to cite the controlling authority in this jurisdiction.

Thus the decision of the defendant Dixon to help out his friend the counsel for Sun is not binding under federal law, under D. C. law of preclusion or any other law. This court is required to enjoin its application and to set it aside and to enjoin the defendants to rejoin Sun to the litigation in the Superior Court as a third-party defendant and let Hoai and the Hemenways proceed against Sun for its torts against Hoai and the Hemenways in cooperation with Vo and his cohorts.  In connection with this particular request for an injunction against relitigation of the issue of proceeding on the separate claims in the defendant courts for those damages that were not allowed under the PMPA against Sun and the other counter and third-party defendants we have shown but one of the many violations of the rights of these plaintiffs by the defendants.  There are many more.  But this one particular violation, consisting of the elevation of what might be called "bar politics" above the Rule of Law should now, after all these years, be stopped.

As we have pointed out, counsel for Sun had a choice, back in 1986, to advise his client of the Retail Service Station Act and its blanket prohibition against individuals such as Vo suing franchisors for refusing them the transfer of a franchise, or, he could have advised Sun to invoke its own franchise agreement as empowered by 15 U.S.C. § 2806(b).  Whether from dereliction or ignorance, he did neither.  If he had Sun could have been out of the case within a year.  If that had been done Hoai and the Hemenways also would have likely been out of the case within a year.  Instead Sun chose to engage in

an illegal act and to prolong matters for 20 years while doing enormous damage to its own dealer and two parties who happened to seek to assist that dealer, initially with Sun's support.  As we have seen the litigation reached a point where, because of a friendship between Sun's counsel and the defendant Dixon, the matter was prolonged from the conclusion of the proceedings in the federal courts, which were done by 1998, until the present day.  Sun lost one case in the federal courts and had to pay a judgment and a large counsel fee under the fee-shifting provisions of the PMPA.  It has cost Sun an enormous amount in fees to opposing counsel and to their own counsel.  It could have cost them a whole lot less if they had made use of controlling law in the first instance instead of engaging with the defendants in an exercise to avoid that controlling law.

        If the Rule of Law is elevated above Bar politics and the law is applied, it is likely to cost Sun a whole lot more.  But as Judge Edwards pointed out in the colloquy, Attachment C, that's what happens when you do stupid things.  He also pointed out, when Sun counsel went into his litany about the persistence of these plaintiffs and the number of suits that Hoai has filed, that that's what people do until they get justice.  He pointed out that that's what the civil rights struggle was about.  As for the plaintiff Hoai: he escaped a country where, as can be seen from his statement, there was a struggle to achieve the Rule of Law.  He escaped because he was our ally and he had to when our Congress pulled the plug on him and his comrades in arms.  He expected to find the Rule of Law here in our nation's capital.  This Court should do everything within the Rule of Law to help him in that quest.

        Respectfully submitted,

/s/

Laurence A. Elgin     # 159582
Suite 900 South Building
601 Pennsylvania Ave., NW
Washington DC 20004-3615
(202) 628-1114
(202) 628-6798 – fax

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.*                     )
               Plaintiffs,                     )
                                 )
v.                                                      ) CIVIL ACTION NO.  1:06-cv- 00210-RJL
                                 )
                                 )
The SUPERIOR COURT of the                 )
DISTRICT of COLUMBIA, *et al.,*              )
               Defendants.                     )

## ORDER

THE COURT, having considered the second motion of the plaintiffs for a temporary and permanent injunction, this one to enjoin the defendants from allowing the relitigation of the issue that the claims of the plaintiffs might be split between the federal courts and the defendant District of Columbia municipal courts, and the opposition thereto and the reply to that opposition and the oral argument upon the same, and, having considered also the need of this court to protect and effectuate its judgments, now hereby

DECIDES AND DECREES, that the plaintiffs may split their claims between the two systems and that, further,

IT IS ORDERED that the defendants not allow any further litigation of the issue of splitting the claims of these plaintiffs, especially the plaintiff Hoai, and that any attempts to prevent them from doing so be, and the same hereby, are

ENJOINED temporarily and permanently from being further litigated and, to the extent decided by the defendant Dixon, are enjoined from being applied any further to the proceedings in the defendant courts to hinder all of the, including particularly the plaintiff Hoai from pursuing their non-federal claims in the defendant courts because of any

pursuit of their federal claims separately in the federal courts.


_____
Richard J. Leon, *United States District Judge*



copies to:  Laurence A. Elgin, Esq., Ste 900 South Bldg., 601 Pennsylvania Avenue, NW, Washington DC 20004-3615; Office of the Attorney General, District of Columbia, Att: Shana Frost, Esq., Nicole Lynch, Esq., 441 Fourth Street, NW, 6th Floor South, Washington DC 20001