Attachment C

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

- - - - - - - - - - - - - - - - - - - :
                                      :
THANH VONG HOAI,                      :
                                      :
            Appellant,                :
                                      :
       v.                             :   No. 88-7136
                                      :
SUN REFINING AND MARKETING COMPANY, INC., :
                                      :
            Appellees.                :
                                      :
- - - - - - - - - - - - - - - - - - - :

Monday, December 12, 1988

Washington, D.C.

The above-entitled matter came on for oral argument, pursuant to notice, at 11:00 a.m.

BEFORE:

    CHIEF JUDGE WALD, and CIRCUIT JUDGES EDWARDS and D.H. GINSBURG

APPEARANCES:

    LAURENCE A. ELGIN, ESQ., 8929 Sleaford Place, Annandale, Virginia 20008; on behalf of Appellant

    J. GORDON FORESTER, JR., ESQ., Pohoryles & Greenstein, P.C., 1920 N Street, N.W., Washington, D.C. 20036; on behalf of Appellees

- - -

# C O N T E N T S

ORAL ARGUMENT OF                                          PAGE

Laurence A. Elgin, Esq.,
    on behalf of Appellant                                 3

J. Gordon Forester, Jr., Esq.,
    on behalf of Appellees                                 6

Laurence A. Elgin, Esq.,
    on behalf of Appellant -- Rebuttal                    15

- - -

P R O C E E D I N G S

    THE CLERK: No. 88-7136, Thanh Vong Hoai, Appellant v. Sun Refining and Marketing Company, Inc.

    Laurence A. Elgin, Esq., for appellant; and J. Gordon Forester, Jr., Esq., for appellees.

    THE COURT: Mr. Elgin.

    ORAL ARGUMENT OF LAURENCE A. ELGIN, ESQ.,

    ON BEHALF OF APPELLANT

    MR. ELGIN: Good morning, Your Honors. My name is Laurence Elgin, and I am counsel of record for the appellant-plaintiff, Thanh Vong Hoai.

    This is an appeal of a collateral order under the Cone dictrine, as already recognized by the Court, the collateral order in question being a stay of a proceeding in the District Court pending the resolution of related litigation in the Superior Court of the District of Columbia, but related only in the sense that one of the parties was sustained at the time, and that the incidents which led to the case in the Superior Court eventually resulted in the cause of action in the United States District Court under the Federal Petroleum Marketing Practices Act.

    In ordering the exercise of appeal, this Court framed the central issue as a serious question as to the legality of the District Court's stay, citing Cone Hospital, which we have also cited extensively in our brief, and the Court noted

further no showing of exceptional circumstances to justify the District Court's stay of its proceedings pending disposition of State litigation. The exceptional circumstances raised appears to come, of course, from the Cone case, and particularly from its drawing on the Colorado River case, which also has been used extensively in the briefs.

I would like to draw the Court's attention to the mention of that phrase "exceptional circumstances" in the Cone case, at page 25 of 460, U.S., where the Supreme Court observed that "we emphasize that our task in cases such as this is not to find some substantial reason for the exercise of Federal jurisdiction by the District Court, rather, the task is to ascertain whether there exists exceptional circumstances that clearest of justifications that can suffice under Colorado River to justify the surrender of that jurisdiction."

I would suggest to the panel that, from the outset, for some reason which is not clear to us, certainly in this case, that burden has been improperly reversed in this proceeding. There seems to have been a continual demand upon my client, the plaintiff-appellant, to show why he should be able to try this case of Federal rights under Federal statute in the United States District Court.

Now, we submit that the circumstances that are required, the exceptional circumstances showing a clear justification, simply have not been presented here, even though the

1  defendant-appellee Sunoco has been invited to so present them.

2  This in part, though it would be unjustified in any
3  case, seems to stem from an incorrect characterization which
4  we could not get corrected, despite our best efforts, concern-
5  ing the relationship of the two cases. My client, I emphasize,
6  was not in an adversarial position to Sunoco when the case in
7  the Superior Court began. Indeed, they were co-defendants,
8  and my client had been told, as had his then attorney, Mr.
9  Hemenway, who sits here helping me today, that Sunoco was
10 going to stand behind its dealer. The cause of action which
11 has brought us into the Federal court did not exist until a
12 number of days later after the filing on August 28, 1986, the
13 Superior Court case.

14 Indeed, an adversarial relationship in the court, in
15 the Superior Court, did not exist until after the stay in this
16 case. My client refrained from filing suit against Sunoco
17 until he had no choice but to do so in order to protect himself
18 in case the error that we believe existed in the stay could not
19 be corrected. And as Your Honors know from reading our brief,
20 we feel that Cone is very clear on that point, that it is what
21 goes on in the stay that is entered that is determinative. One
22 cannot bootstrap by creating a situation where the other party,
23 to defend itself, must then create the adversarial relationship
24 and then use the adversarial relationship to support one's
25 argument.

1    In fact, much is made in the opposing briefs of the
2    fact that -- which is incorrect, they claim that we did not
3    oppose the exit by dismissal of Sunoco from the Superior Court
4    proceeding. In fact, I filed a brief on behalf of my client,
5    and so did Mr. Hemenway on behalf of himself pro se, which we
6    joined, and our position -- we could do no more than we did,
7    because our position was very simple. The whole issue of a
8    wrongful eviction, which is a tort, which can only apply to a
9    landlord, which was introduced into the case, created a situ-
10   ation where if Sunoco was let out, since they were the only
11   true landlord, we felt that our client had to be let out as
12   well.
13            Do I have any time left for rebuttal?
14            THE COURT: I think you do. Five minutes.
15            MR. ELGIN: That is all I want.
16            THE COURT: Okay.
17            Mr. Forester?
18            ORAL ARGUMENT OF J. GORDON FORESTER, ESQ.,
19                    ON BEHALF OF APPELLEES
20            MR. FORESTER: May it please the Court:
21            The complaint filed in the United States District
22   Court in this case is, pure and simple, a collateral attack on
23   the consent order issued by the Superior Court on September 8,
24   1986. Therefore, this case is above or beyond the issues set
25   forth in Moses H. Cone Hospital.

1       As pointed out in the Colorado River case --

2       QUESTION: Is that a consent order between -- it was

3  between the plaintiff in the Superior Court, with Mr. Vo and

4  son, correct?

5       MR. FORESTER: That's correct.

6       QUESTION: Well, it is hard for me to understand why

7  this proceeding down below, which is by Mr. Hoai, on the

8  grounds that he was illegally terminated, his franchise, is a

9  collateral attack upon the Superior Court consent order.

10      MR. FORESTER: Because, Your Honor, he contends, both

11 in the lower court and in the Superior Court and in the D.C.

12 Court of Appeals, that that consent order terminated his fran-

13 chise. That is the gravamen of the complaint below, which is

14 contained in the Appendix. The whole case below --

15      QUESTION: If I understand it correctly, he is just

16 saying that that was in effect, that consent order was in ef-

17 fect a de facto termination of his franchise, which it may or

18 may not have been. But what he is contending down below here

19 is that, you know, when there are Federal statutes, however it

20 was accomplished, the termination was illegal.

21      QUESTION: Let's assume that it has the consequence

22 of saying something negative about what happened in Superior

23 Court. So what?

24      MR. FORESTER: But, Your Honor --

25      QUESTION: Does that strip the Federal court of

1   jurisdiction?  And under what doctrine?

2          MR. FORESTER:  Your Honor --

3          QUESTION:  You can't ride, the District Court can't

4   ride this horse between Younger, Pennzoil and Colorado or

5   Cone up and make up this new notion based on, well, maybe it is

6   kind of offensive to the Superior Court.  He is coming here, a

7   different set of parties, suing Sun under a Federal statute,

8   he may or may not win, coining that, putting damages for im-

9   proper termination of the relationship, which is in fact true,

10  it is properly in the Federal court, and Cone says it is the

11  highest burden and that the intermediate position that the

12  Chief Justice espoused, without a majority, was rejected.  Cone

13  and Colorado are the law, and it is the highest burden, the

14  highest burden in the world, exceptional circumstances to

15  throw someone out in Federal court, and this is not a Younger

16  case.

17         MR. FORESTER:  Yes, Your Honor.

18         QUESTION:  But how can you get involved?

19         MR. FORESTER:  Because, Your Honor, this complaint,

20  if you read the complaint, it is predicated entirely upon that

21  consent order.

22         QUESTION:  Predication on the termination of his re-

23  lationship with Sun.

24         MR. FORESTER:  Because of the consent order.

25         QUESTION:  So what?

1    MR. FORESTER: Because, Your Honor, that same com-
2    plaint is still pending in the Superior Court.
3    QUESTION: He is suing for damages. He is not con-
4    testing, as I understand, whether or not the District Court's
5    temporary restraining order and approval of the consent decree.
6    This happens all the time. This is one of the major affirma-
7    tive action cases, and the Supreme Court says, hey, parties can
8    do things on their side and then you have to pay double, be-
9    cause they did some dumb things. So what? The Superior Court
10   had a consent decree before it and they approved it, and he is
11   saying that if my relationship with Sun got terminated and
12   violated the Federal statute, and I want to go for damages,
13   and I am properly in Federal court for that.
14   MR. FORESTER: And also --
15   QUESTION: The Superior Court is not purported to deal
16   with the issue of the Federal Petroleum Marketing Act claim.
17   It was not the claim before them.
18   MR. FORESTER: Your Honor, it is the claim before
19   them now. If I may --
20   QUESTION: After he was here and improperly sent
21   away from here.
22   MR. FORESTER: Yes, Your Honor, but he was not in a
23   position in the Superior Court at that time to even file a
24   third-party complaint because he had a motion to dismiss pend-
25   ing, which was only decided on July 26, 1988. He then filed

1   his third-party complaint, as he says, to protect his position
2   in Superior Court. Nevertheless, that --
3           QUESTION: That protects his position here, because
4   the District Court Judge has said I am not going to hear your
5   case.
6           MR. FORESTER: And as Judge Oberdorfer said below,
7   he was -- the complaint was dismissed in Superior Court against
8   Sun without prejudice, but they could be reinstated, as Judge
9   Oberdorfer pointed out.
10          QUESTION: Counsel, what's the doctrine? I can't
11  find it in the Supreme Court opinion. What are you relying on?
12          MR. FORESTER: We are relying on Pennzoil --
13          QUESTION: Someone comes into Federal court, they
14  have got a cause of action. There isn't any dispute about
15  that, it is properly recognizable in Federal court. Jurisdic-
16  tion is properly here and I don't see any claim about that.
17  The only question is can a Federal judge, under some doctrine,
18  say "I'm not going to let you try your case here, even though
19  you are properly before me." It isn't Younger-Pennzoil, it
20  doesn't fit that at all, and he didn't even claim he dismissed
21  them, which is what Younger-Pennzoil is, is dismissal, so it
22  is not that.
23          What is the exceptional circumstance that Colorado
24  River and Cone would allow you to cite, to say there are ex-
25  ceptional circumstances here that would justify throwing this

person out of Federal court?

MR. FORESTER: Your Honor, I'm sorry you reject that this is a Pennzoil-Younger situation.

QUESTION: Well, I reject it not only on the factorial analysis that is required, but the District Court didn't even purport to invoke it, because there is no dismissal. Younger-Pennzoil is not a stay.

MR. FORESTER: I know it is not a stay, but he gave more than a stay, Your Honor, to protect their statute of limitations here, because if he had dismissed and, as he said, come back after this has been decided in the Superior Court, if there is anything left. They are protected to do that. He gave them more than they could get in Pennzoil.

Your Honor, as the Court said in Colorado, in the absence of weightier considerations of constitutional adjudication and State-Federal relations, we do have State-Federal relations here. This very consent order he took to the D.C. Court of Appeals, then he comes back -- it is pending now in the Superior Court.

QUESTION: I gather from the Superior Court Judge that -- I don't think this is wrong --

MR. FORESTER: I'm sorry?

QUESTION: I gather from the record that the Superior Court Judge has said publicly he waited for a week if it was decided over here and it would go away from him, so it doesn't

1  sound as though there is any great tension between the two
2  jurisdictions.
3           MR. FORESTER: Well, there may not, but suppose
4  there are two inconsistent holdings, suppose, for example, the
5  Superior Court goes one way and the District Court goes another
6  way, we would --
7           QUESTION: The Superior Court apparently is perfectly
8  willing to wait.
9           MR. FORESTER: Your Honor, the claim pending in the
10 Superior Court, which is contained in the Supplemental Appendix,
11 is precisely the same claim pending here.
12          QUESTION: Where was that brought first?
13          MR. FORESTER: Where was that brought first?
14          QUESTION: Yes.
15          MR. FORESTER: Your Honor, this case has been pending
16 since 1986.
17          QUESTION: Where was that claim brought first?
18          MR. FORESTER: It was brought first in --
19          QUESTION: In Federal court.
20          MR. FORESTER: The suit was filed under the --
21          QUESTION: The Federal claim was brought here first,
22 and that is one of the factors in Cone and Colorado River.
23 That claim was brought here first. The points were even co-
24 extensive initially. There was a forced co-extension.
25          MR. FORESTER: But, Your Honor, that case --

1   QUESTION: And now, as of now, they can file a fourth
2   co-extension.
3   MR. FORESTER: That case was pending since August of
4   1986 in Superior Court. The fact that he contends that Sun and
5   Mr. Hoai were co-defendants is of no significance, because
6   they were still parties in the same action. By the way, he
7   says that they were dismissed over their objection. Your
8   Honor, the record shows, and in the Appendix is the order they
9   submitted in Superior Court, which was without opposition of
10  the other defendants.
11  QUESTION: The trouble is that there is not, as you
12  seem to be suggesting, nothing more left in this, as I hear you
13  and as I read your stuff, that there is just kind of this loose
14  -- you take your argument to an utterly ridiculous extreme,
15  this notion of comity and off-Federalism means whatever the
16  District Court feels like, if I can find a way to send the case
17  out of here and give it some kind of State-like court, that is
18  what the Supreme Court means to happen. That is not the law.
19  MR. FORESTER: And that was not the case here, Your
20  Honor. That was simply not the case here. It was very clear
21  to Judge Obderdorfer that this same case was pending in the
22  Superior Court.
23  QUESTION: Colorado River and Cone say that that
24  parallel circumstance itself is not a justification for a stay
25  or a dismissal of a claim that is properly in Federal court.

1  That is exactly right. You nailed it. That is exactly what
2  the District Court said, they look alike, so I am not going to
3  do it. Cone and Colorado River say that is wrong.
4         MR. FORESTER: Your Honor, Colorado River also sus-
5  tained the dismissal based upon wise judicial administration,
6  use and proper use and conservation of judicial resources.
7  That certainly is a factor here, as I pointed out in Part 3 of
8  my brief. I think, Your Honor, when you consider the number
9  of cases, the number of courts that have heard this dispute
10 over these two gentlemen over this gas station, from the
11 Eastern District of Virginia to the Fourth Circuit to the
12 Supreme Court on certiorari, to the Superior Court to two
13 interlocutory appeals to the D.C. Court of Appeals, to two
14 cases here, once where they removed the Superior Court to this
15 -- I'm sorry, the District Court below, and then it was re-
16 manded and, secondly, initiating a suit here. That alone,
17 under Colorado River, was sustained what Judge Oberdorfer did
18 below to give --
19        QUESTION: I think you got it wrong. If Judge
20 Oberdorfer had not done it in the first place, we would have
21 avoided some of this jumping around. That is exactly what the
22 Supreme Court is saying, the fact that there was a parallel
23 course is not a reason to send it to the State, and there was
24 a Federal statute in Colorado River authorizing the pursuit of
25 State claims in State courts. That is not true here, counsel.

1    MR. FORESTER: Your Honor --

2    QUESTION: All of this didn't take place before in

3 the Superior Court. This took place after, in the Superior

4 Court. Everything took place before Judge Oberdorfer ruled

5 below.

6    MR. FORESTER: I think also this case is controlled

7 by the Mark Feldman and Pat Hickey case, in which this Circuit

8 Court was reversed by the Supreme Court, saying District Courts

9 cannot sit in judgment on local court decisions, and that --

10    QUESTION: Judge Oberdorfer is building off of

11 Feldman-Rucker?

12    MR. FORESTER: Pardon?

13    MR. FORESTER: Judge Oberdorfer was purporting to

14 invoke the Feldman-Rucker doctrine?

15    MR. FORESTER: Judge Oberdorfer didn't cite it, but

16 it was cited in the Pennzoil case, in the concurring opinion by

17 Justice Marshall, and it is certainly relevant here. It is the

18 precise same situation, because you still have, Your Honor --

19 but I can't give you the --

20    QUESTION: Counsel, we don't have Feldman-Rucker or

21 its application before us.

22    MR. FORESTER: Your Honor --

23    QUESTION: And it wasn't the majority opinion in

24 Pennzoil.

25    MR. FORESTER: Your Honor, there were still eight

1  Justices who ruled in favor of the Pennzoil case.

2              QUESTION: Okay.

3              MR. FORESTER: The difficulty is you still are cre-

4  ating -- not you, Your Honor -- this Court would create this

5  conflict between the two courts, because it -- I beseech you,

6  please look at his complaint filed in the District Court,

7  which is in his Appendix, which comes right down to the point

8  on suing on what the Superior Court said in their consent

9  order, and you simply can't do that.

10             QUESTION: Very well.

11             THE COURT: Thank you, Mr. Forester.

12             Mr. Elgin, you have your rebuttal time.

13          ORAL ARGUMENT OF LAURENCE A. ELGIN, ESQ.,

14              ON BEHALF OF APPELLANT -- REBUTTAL

15             MR. ELGIN: I don't need the whole five minutes, but

16 I do want to make two brief points.

17             One, let us assume hypothetically that the two par-

18 ties, Sunoco and Gulf, who was a plaintiff in Superior Court,

19 had entered into an agreement that had not been incorporated

20 in any way in a consent decree of the court, we would have been

21 entitled to this cause of action and they cannot take that

22 cause of action away from my client by simply embodying it in

23 a consent order, without notifying him, whether that consent

24 order is appropriate or not.

25             At the present time, the consent order has long since

1  expired and is moot and, as has been pointed out, we are only
2  going for damages, so that is merely a red herring.
3          QUESTION: What is the gist of the cause of action
4  that is left across the street?
5          MR. ELGIN: Well, the main --
6          QUESTION: From the original one, never mind what
7  happened subsequent to Judge Oberdorfer's stay here.
8          MR. ELGIN: The man, Vo -- we maintain is a pre-
9  emptive strike and is a sham pleading -- sued my client --
10         QUESTION: I know how it started. I wondered, with
11 all of the events that have happened since the end of the
12 franchise, as it were, what is the cause of action over that?
13 It isn't Vo suing to get possession of the station or anything?
14         MR. ELGIN: No, because Sunoco now has another person
15 in the station.
16         QUESTION: Right. So, what is the gist of the cause
17 that is over there across the street?
18         MR. ELGIN: Well, Vo's cause of action in his original
19 complaint was largely based on conversion theory. He then, at
20 the suggestion of the TRO judge, re-did the complaint and got
21 it accepted, and the gravamen of his present complaint is this
22 wrongful eviction business. The standing counterclaim which
23 we filed over there, which will be replaced by the one, has no
24 Federal actions or anything else.
25         QUESTION: Suppose Vo should win his lawsuit, just

1  suppose he should win across the street, he can get some kind
2  of damages for wrongful conversion?
3       MR. ELGIN:  Suppose that Vo should win, you mean?
4       QUESTION:  Yes, suppose the plaintiff should win.
5       MR. ELGIN:  Yes, he is asking for damages.
6       QUESTION:  He would get some kind of damages for
7  having had the station taken away from him in the past for a
8  certaion period of time, correct?
9       MR. ELGIN:  Yes, as it stands, his damages would be
10 for wrongful eviction.
11      QUESTION:  Okay.  Whatever they were, I am just try-
12 ing to get the cause of action.
13      MR. ELGIN:  Civil conspiracy.
14      QUESTION:  I am trying to parse out whether or not
15 there is inconsistency or not.  Whereas, if that went along
16 across the street and the action downstairs went along, then
17 your client would be suing Sun Marketing to get back damages
18 it alleges come from an illegal termination of the franchise,
19 correct?
20      MR. ELGIN:  Yes, it would be the relatively narrow
21 point specified by the stateute.
22      QUESTION:  Is there any inconsistency in what would
23 happen in the two suits if they both were conducted on parallel
24 tracks?
25      MR. ELGIN:  It does seem to me that a decision in our

1  favor in the Federal court would undoubtedly impact on what

2  the Superior Court would decide. I mean it would be res

3  judicata on that point. It might preempt -- I mean it is clear

4  that, under the decision of the D.C. Court of Appeals in the

5  Davis v. Gulf case, that in the area of termination Federal law

6  preempts. There is no question about that, so whatever pre-

7  empted it would preempt it and it undoubtedly would preempt

8  some things.

9        We have been strung with a case in the Superior Court

10  in a few attempts to sort of venture in the area of the

11  Petroleum Marketing Practices Act just incidentally, without it

12  even being at issue, frankly shows a great lack of knowledge of

13  the statute. It is going to be a painful educational process.

14        QUESTION: Well, is it fair to say that we generally

15  rely on whichever of the two suits gets there first probably

16  will preempt the other suit?

17        MR. ELGIN: Well, I would say if there is a termina-

18  tion, of course, it is going to preempt questions of is this

19  $1 contract -- we probably wouldn't have to go into extortion

20  and all of that, so it would be -- of course, that is why we

21  chose to come into the Federal court, we saw a clean shot, and

22  it seems to me my client is entitled to that.

23        The third point I want to make is on the Feldman-

24  Rucker doctrine. If I am not mistaken, in the categorization

25  that was made by the Supreme Court in Colorado River and Cone,

1   that is related to the Younger doctrine, and in all of those

2   cases, including the one involving contempt and so forth -- I

3   just want to state this for the record -- it is clearly --

4   and Pennzoil v. Texaco is clearly in this mold in that the

5   trial was completed, it was a question of staying execution of

6   judgment -- they go to the question of actually interfering

7   with the administration by the courts of the state of its

8   judicial system. There is no question of that here. It does

9   not even come close.

10  Thank you.

11  THE COURT: Thank you. The case is submitted.

12  [Whereupon, at 11:30 a.m., the case in the above-

13  entitled matter was submitted.

14  - - -