*Attachment 1*

*FILED w/*
*CORRECTING*
*PRAECIPE*
*JULY 31, 1989*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

THANH VAN VO, d/b/a          )
            Plaintiff,       )
v.                           )          Civil Action No. 7075-86
                             )          Civil I-Judge Weisberg
THANH VONG HOAI, ET AL       )
            Defendants.      )

AMENDED ANSWER, COUNTER-CLAIM AND THIRD PARTY CLAIMS AMENDED AND
FILED PURSUANT TO THE URGING OF THE COURT

I. ANSWER TO THE COMPLAINT OF VO -- ALL DEFENDANTS

1. To the extent that it is not a legal conclusion, defendants admit the allegations of paragraph 1 of the amended complaint.

2. Defendants believe that the plaintiff Vo has a residence in Virginia, they deny that he ever did any legitimate business under any name but state affirmatively that he seized the gas station franchise of defendant Hoai by a scheme of fraud and extortion involving threats of murder in which others, such as one Thach were involved. Although defendants admit that plaintiff sold or had others sell gasoline or supplies at the alleged location which was in fact that franchise of the defendant Hoai, the defendants deny that plaintiff ever did so legitimately or as anything other than an intruder and "mere scrambler" by illegal means. We demand strict proof.

3. Admit.

4. Admit that defendant Hoai is a resident of Virginia but deny the remainder as embodying an incorrect legal conclusion. Defendant Hoai was forced to sign a document under ongoing

-1-

threats of murder and physical harm to himself and his family following a scheme of deception and fraud. Further he denies that anything was transferred in any legitimate fashion by the document referred to for this and other reasons, including federal and local statutes. We demand strict proof.

5. Admit that John D. Hemenway is a resident of the District of Columbia and has been an attorney at various times for the defendant Hoai. Deny that Hemenway ever acted as an actor on his own account and state affirmatively that the same is a trumped up and false charge without foundation in law or fact and that defendant John D. Hemenway acted at all times throughout the events in question as an attorney in a proper fashion.

6. Admit that David Hemenway is a resident of the District, a law school graduate and not a member of the bar. Deny that he was ever anything other than an agent of Hoai and that he acted on his own account during the events in question and state affirmatively that the same is a false and baseless charge designed to deny defendant Hoai effective assistance.

7. Admit the loan of the money but deny that it was in any way as stated and deny that it was a personal loan in the way it is stated but state that was rather a loan that had been offered long before for the purpose of paying some salary remaining over from a prior business of the defendant Hoai which he had closed down and sold the assets of. Defendant Hoai was to be free to use the loan for personal needs for himself and his family while between closing one business and starting a new one. Vo had said

-2-



he controlled a large construction business which gave him excess amount of money from its profits and revenues in amounts of $100,000.00 and over which he was free to lend to fellow Vietnamese businessmen such as defendant Hoai. When defendant Hoai asked plaintiff for this small loan for these purposes, however, plaintiff kept promising to bring the money over to defendant Hoai's house and loan it but then not showing up. After several of such false unkept commitments, plaintiff did show up and loan it.

8. This paragraph and the insinuations of its allegations are either denied as false or denied as misleading half-truths. Defendant Hoai states affirmatively that he told plaintiff of his plans to apply for the Sunoco franchise on Pennsylvania Avenue and of his plans to apply for it, having previously been a Sunoco dealer in Greenbelt, Maryland, and knowing a number of people in that company. He never in any way offered or promised to secure the station in any way for plaintiff or that he was interested in doing anything other than operating the station for his own account. He stated that he had available through his mother-in-law and her family approximately half of the approximately $70,000.00 in capital he had been told by the Sunoco area representative was necessary to operate the station, but he never said that he was not financially able to meet the requirement of additional capital and made it clear to plaintiff, whom he did tell of his plans, that he felt he had other sources of the additional capital needed. He states affirmatively that

plaintiff insisted on providing capital through a friendly loan between Vietnamese businessmen and actively discouraged him from pursuing other sources of the other half of the capital that he had been told he needed.  Defendant Hoai denies any preference for operating a grocery business and states affirmatively that the use of his capital up to $49,000.00 as it eventually became, for a grocery business was something he was deceived and defrauded into by plaintiff working in concert with others for the purpose of taking his capital, which they did, by the taking of the inventory of that grocery business by fraud and ongoing threats of violence. Plaintiff admits that the loans profferred by Vo were at no interest, but only for a year or so, after which time it was understood that to the extent drawn upon they would be paid by paying the interest at some figure around 10 percent and then the principal as the business progressed.

9. Denied.  This entire paragraph is an outrageous series of falsehoods made up after the fraud and the threats of violence and death to attempt to justify the actions of the plaintiff and those acting in concert with him.  We demand strict proof.

10. Admit to the meeting with Peele, deny the rest which is either deliberately misleadingly ambiguous and therefore ought to be interpreted against the pleader or simply outrightly false as that falseness was confirmed by the testimony of Mr. Peele himself as known to plaintiff before he drafted this.

11. Admit to the leaving of the meeting, and that Vo returned with the cashier's checks, admit that they were

-4-

purchased by Vo but state affirmatively that they were not purchased with money from Vo's account at the bank in question or from Vo's funds but with funds provided by another acting in concert with Vo. We demand strict proof.

12. Deny as outrageously false. We demand strict proof.

13. Admit that a franchise agreement was entered into but deny that it was a trial franchise agreement though entitled as such. It is a matter of federal statutory law that a dealer who has previously been a dealer for the same oil company as defendant Hoai had been here, cannot be a trial franchise dealer regardless of the title on the agreement. Defendant Hoai states affirmatively that as a result of this agreement he was a franchisee not a trial franchisee. We demand strict proof.

14. Admit signing a document cast as an agreement under duress but deny that it or defendant Hoai signed over anything and state affirmatively that as a matter of pre-emptive federal law regarding termination that document was invalid and also invalid under local statutes. Deny that there was any further consideration and state that such a contention was never raised in the initial complaint or at the start of the case and that the same was raised only after the defendant Hoai rescinded the contract in question for failure to provide the only consideration recited in it. Since it is a matter of record that plaintiff treated this other amount separately at the time and not as consideration in any way for the alleged transfer of the station rights defendant Hoai states affirmatively that that is

the case.

15. Deny.  We demand strict proof.

16. Deny that they were purchased on Vo's account at the bank in question.  Admit their delivery to Peele by Hoai after Vo gave them to Hoai, representing that he was lending money to Hoai, but deny that Peele had any knowledge or belief that Vo would operate the station and state affirmatively that the opposite was the case. By his testimony Peele has stated that Vo and Hoai assured him together that Vo was making the loan as a friendly gesture between fellow Vietnamese businessmen and had no equity interest, direct, indirect, hidden or otherwise, in the station.  Demand strict proof.

17. A license such as alleged may have been issued but if so the representations made in obtaining it were false.

18. Deny.  Deny that Vo paid for the tools he got and state positively that he obtained some by fraud and deceit and never paid for them.  State that defendant Hoai initially paid for the liability insurance and then sought reimbursement from the station account which plaintiff had improperly and fraudulently taken exclusive control of.  The bulk and indeed almost all of the funds that went through this account were not plaintiff's but were indeed the station's own proceeds.  Deny the rest of this.

19. Deny.  Demand strict proof.

20. Deny.  Demand strict proof.

21. Admit that defendant Hoai retained the defendant Hemenway as his counsel, as he is entitled to do.  Deny any

-6-

scheme in any pejorative sense. Admit that the Hemenways met with Hoai to discuss ways in which the latter might effect his right to his possession of his franchise.   Deny any dispossession was contemplated or took place other than in a strictly legal manner. Demand strict proof.

22. Deny any such statements as are alleged in the last paragraph and state affirmatively that the conversation could not be known to plaintiff unless he had eavesdropped in any case.

23. Admit.

24. Without knowledge as to whether Vo was actually out of the city at the time and demand strict proof thereof.  Deny the rest. State affirmatively that David Hemenway raised a bar inside a locked building that was under siege by plaintiff and six others, one of whom had displayed and brandished a knife and others of whom had disappeared out of sight to the rear of the building and were attempting to find ways to break in from the rear and roof.  Deny anything wrongful.  Demand strict proof.

25. Admit the first sentence but deny that Vo ever purchased any product for the station except with its own proceeds which were not his.  Deny removal of cash except in lawful fashion as needed to operate the station.  Deny removal of business records.  Deny the rest.  State affirmatively that plaintiff was mere intruder in the station by fraud and violence and had no right to control it as he did.  Demand strict proof.

26. Deny in its entirety.  Admit that Ernie Peele rightfully certified that defendant Hoai was the legitimate and sole

franchisee and occupant of the station.   Demand strict proof.

27. Admit the judge signed order, a matter of record, deny insinuations and statements about failure to return property. State affirmatively that there is absolutely no proof of the allegations of insinuations of theft or conversion and the same are outrageous falsehoods made up by plaintiff.

28. Admit.

29. Deny.  Demand strict proof.

30. Requires no answer as already answered.

31. Deny.  Demand strict proof.

32. Requires no separate answer.

33. Deny.  Demand strict proof.

34. Deny.  Demand strict proof.

35. Requires no separate answer.

36. Deny.  Demand strict proof.

37. Requires no separate answer.

38. Deny.  Demand strict proof.

39. Deny.  Demand strict proof.

40. Requires no separate answer.

41. Deny.  Demand strict proof.

42. Deny.  Demand strict proof.

43. Requires no separate answer.

44. Deny.  Demand strict proof.

45. Deny.  Demand strict proof.

46. Deny.  Demand strict proof.

47. Deny.  Demand strict proof.

48. Requires no separate answer.

49, 50.   Deny.   Demand strict proof.

51, 53, 56 and 59 require no separate answer.

52, 54, 55, 57, 58, and 61 are denied.

60. Admit that plaintiff has attempted to bring out the truth and assert his lawful rights continuously throughout despite lies by plaintiff and outrageous misrepresentation by his counsel, and bias and error throughout.

Respectfully submitted.

THANH VONG HOAI and DAVID HEMENWAY

By: _____
       Laurence A. Elgin #159582
       4816 Rodman Street, N.W.
       Washington, D.C.  20016
       (202) 628-1114


       _____
       John D. Hemenway #379663
       4816 Rodman Street, N.W.
       Washington, D.C.  20016
       (202) 244-4819 or 371-6710
       appearing pro se

## II. AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

61. The plaintiff has failed to state a claim upon which relief can be granted with regard to all claims against all defendants.

### SECOND AFFIRMATIVE DEFENSE

-9-

62. The contract of transfer of business interest alleged by plaintiff Vo and which underlies all of his claims, was exacted by fraud and duress, including threats of murder and physical violence against the defendant Hoai by plaintiff and one Thach.

## THIRD AFFIRMATIVE DEFENSE

63. Accord and satisfaction.   The plaintiff Vo entered an agreement to settle the matter of these claims by abiding by the word of Sunoco area representative Ernie Peele as to who was the rightful possessor of the gas station franchise and business in question and defendants acted in reliance on that agreement, which was knowingly agreed to by plaintiff through counsel and later acknowledged in the record in writing by his counsel in this Court. Mr. Peele then decided in favor of defendant Hoai as the only legitimate franchisee of the station that Sunoco could recognize. Plaintiff, however, did not abide by that decision of Mr. Ernie Peele and did not honor the settlement agreement but instead filed this suit and by so doing breached that agreement.   No count in the complaint can be prosecuted by plaintiff without breaching this agreement and hence plaintiff is bound by contract not to pursue these matters.

## FOURTH AFFIRMATIVE DEFENSE

64. Fraud in the inducement.   Plaintiff engaged in fraudulent inducement in order to get defendant Hoai to enter the alleged contract of transfer.

## FIFTH AFFIRMATIVE DEFENSE

-10-

64. Fraud in the factum. Plaintiff engaged in fraud and deception in forcing defendant Hoai out of his station, in maintaining control of the station bank account and excluding defendant Hoai from the operation, control and finances of his own franchise, in keeping Hoai from being in the station and hiring and managing his employees and otherwise.

## SIXTH AFFIRMATIVE DEFENSE

65. Estoppel. Plaintiff is estoped by his acts in agreeing to abide by the aforesaid decision of Sunoco area representative Ernie Peele from bringing this complaint. Further, he is estopped because he knew of the need for prior approval of the alleged transfer of business interest and yet proceeds based upon an alleged agreement and allegations that show that he knowingly avoided getting and/or did not get that prior approval.

## SEVENTH AFFIRMATIVE DEFENSE

66. Failure of consideration. The contract under which plaintiff claims his causes of action recites a consideration of one dollar. There was no other consideration cited and despite the Court's pre-judgmental attempts to rule otherwise in violation of the parol evidence rule, it is a matter of record that there was no other consideration in contemplation of the parties for the gas station at the time. It is a matter of record that plaintiff did not consider the alleged other consideration he now recites at the time to be consideration for his alleged purchase of the defendant's Hoai's business in the gas station for one dollar but rather considered it a loan,

-11-

albeit an extortionate one.    The one dollar was never given to defendant Hoai by plaintiff as recited in the contract.    Therefore, the only recited consideration in the contract and the only consideration within the contemplation of the parties failed and the contract was not valid or enforceable.    The counts based upon it are therefore invalid.

## EIGHTH AFFIRMATIVE DEFENSE

67. Rescission.  The Defendant Hoai, without acknowledging its validity, and reserving his rights in that regard, formally rescinded his alleged contract with plaintiff because plaintiff failed to give him the only consideration recited and within the contemplation of the parties, the one-dollar.  Therefore the counts based on the validity of this contract are invalid.

## NINTH AFFIRMATIVE DEFENSE

68. Illegality.  The contract alleged, and Vo's claim to and occupancy of the station and franchise were illegal as being in violation of applicable federal and local statutes, namely the federal Petroleum Marketing Practices Act, 15 U.S.C. 2801, et seq., and the D.C. Retail Service Station Act.  Therefore, all the counts which rely upon it in any way are invalid.  There was an invalid termination effected by the purported transfer, if treated as valid under local law and as a transfer it was invalid under that local law.

## TENTH AFFIRMATIVE DEFENSE

69. Failure to perform conditions precedent.   There was a failure to carry out neccessary conditions precedent imposed by

-12-

law and statute, federal and local, and in the franchise contract as sanctioned by both federal and local law.   These conditions included most particularly the failure to notify Sunoco and get Sunoco evaluation of the creditworthiness and business experience of plaintiff at the expense of defendant Hoai.   Therefore the contract claimed under is invalid.

## ELEVENTH AFFIRMATIVE DEFENSE

70.  Illegality.   The contract under which plaintiff sues requires defendant Hoai to first transfer his franchise and gas station business to the plaintiff and then to notify Sunoco and get that company's permission as the franchisor.  Yet the contract of franchise and lease between defendant Hoai and Sunoco, which the plaintiff Vo and his lawyer, the third-party defendant Arif drafted and forced upon defendant Hoai clearly states that the same is illegal and a violation of the franchise that is agreed to be treated as fraud.  Therefore the "one-dollar contract" purports to make the defendant Hoai perform an illegal and fraudulent act or acts which the plaintiff well knew was illegal and fraudulent and therefore the "one-dollar" contract is void.

## COUNTER AND THIRD PARTY CLAIMS

### III.JURISDICTION, VENUE AND PARTIES

-13-

## JURISDICTION

71. Jurisdiction is conferred on this Court by the statutes alleged by plaintiff and also Sections 18.2-499 and 500 of the Code of Virginia.

## VENUE

72. The franchise contract between defendant Hoai and third-party defendant Sunoco was negotiated and entered into in Alexandria, Virginia, though it concerned a business in the District of Columbia, which it affected and impacted upon. The alleged contract of transfer claimed by plaintiff as transferring the station business from defendant Hoai to plaintiff was a document executed in Virginia though the threats used to make defendant Hoai sign it were employed in both Virginia and the District of Columbia. The contract concerning a food store by which plaintiff and others acting in concert with him appropriated and converted to their own use the $49,000.00 of capital funds that defendant Hoai had through his wife's family was negotiated, and the deceit used to induce plaintiff and his wife to enter into it, was practiced largely in Virginia though it occasionally involved phone calls between the District of Columbia and Virginia. The contract of loan which defendant Hoai was induced into on the grounds that he was to receive $30,000.00 but which resulted instead in his being given $15,000.00 and then being tricked and forced into turning it over to the third-party defendants Minh and Luu was pursuant to acts and representations

-14-

in Virginia with some phone calls between the District and Virginia
involved. However all of these actions were designed to affect and
did affect the defendant and counter and third-party plaintiff's
attempt to operate his Sunoco franchise in the District of Columbia
on Pennsylvania Avenue, S.E.

72 (A). There were confrontations in the District of Columbia
between defendant Hoai on the one hand and the plaintiff and the
third-party defendant Thach on the other in which plaintiff and
Thach threatened to kill or physically harm defendant Hoai and/or
his family as there were also in Virginia. The threats to kill the
defendant and counterclaimant David Hemenway by Thach, Vo and Ly
and others were in the District. The location of one of the two
business interests of which plaintiff was defrauded and extorted
is in the District (the gas station) and the other is in Arlington
County, Virginia. But the entire scheme engaged in by Vo, Thach,
Arif, Minh and Luu -- to draw out defendant Hoai's capital from its
source and then seize it along with the Sunoco franchise and the
interest in the Vietnamese specialty food store business in
Arlington, Virginia -- was designed to impact upon defendant Hoai's
operation of his Sunoco franchise in the District of Columbia and
it did have that impact and deprived him of that business.

## PARTIES

### 1. COUNTERPLAINTIFFS

### THANH VONG HOAI

73. Counterplaintiff THANH VONG HOAI ("HOAI") is a citizen of the United States who resides at 927 N. Highland St., Arlington, Virginia and did so reside at all times pertinent hereto. He did business at the gas station in question in the District until intimidated by threats of murder and violence from plaintiff and third-party defendant Thach from coming to that site.

74. Counterplaintiff JOHN D. HEMENWAY is a long time resident of the District of Columbia and a member of its bar in good standing. He participated in meetings in Virginia as alleged herein and took part in the events at the gas station on August 25 and 26, 1986, as alleged herein as newly-retained counsel for counterplaintiff Hoai.

75. Counterplaintiff DAVID HEMENWAY is a resident of the District of Columbia and the son of JOHN D. HEMENWAY. He had met and become acquainted with HOAI and helped to persuade his father to help Hoai as an attorney. Throughout the events alleged herein he acted to help the defendant Hoai as the latter's friend and agent and also to help his father if he could.

### 2. COUNTERDEFENDANT AND THIRD-PARTY DEFENDANTS

### THANH VAN VO

76. Counterdefendant THANH VAN VO ("VO") is an adult resident of Virginia who resides at 2242 Senseney Lane, Falls Church, Virginia, and did so reside at all times pertinent hereto.

## THACH DUY NGUYEN

77. Third-Party Defendant THACH DUY NGUYEN ("THACH") is a Virginia resident who resided at 6123 Greeley Boulevard, Springfield, Virginia, at all times pertinent hereto.

## MINH VAN NGUYEN

78. Third-Party Defendant NGUYEN VAN MINH ("MINH") is a resident of Virginia who presently resides at 4102 North River Street, Arlington, Virginia, and who prior thereto and during most of the time pertinent hereto lived at Apartment 105 E, 3709 S. George Mason Drive, Falls Church, Virginia.

## NGUYEN THI BACH LUU

79. Third-Party Defendant NGUYEN THI BACH LUU ("LUU") is a resident of Virginia who presently resides at 4102 North River Street, Arlington, Virginia and who prior thereto and during most of the time pertinent hereto lived at Apartment 105 E, 3709 S. George Mason Drive, Falls Church, Virginia.

## JOHN DO, RICHARD RO, NGUYEN TU LO AND CARL KO

80. Third-Party Defendants JOHN DO, RICHARD RO, NGUYEN TU LO, and CARL KO, address and real names presently unknown, a/k/a as the "Cowboys," are aliens, permanent residents and citizens of the United States, some of whom, plaintiff has it on information and belief, reside in Texas and others in the Arlington area who make up a gang of ethnic Vietnamese "toughs" whom the above defendants used in intimidating plaintiff and use in intimidating others in the Vietnamese community in their attempt to become "like the Italian Mafia" in the events described below.

## MY-LINH SOLAND

81. Third-Party Defendant MY LINH SOLAND is an adult citizen of the United States who held herself out at the pertinent times to practice law in the Commonwealth of Virginia, City of Alexandria, with offices at 109 South Fairfax Street in that city and also claimed to defendant Hoai that she could prosecute matters in the District of Columbia. At the time that she was retained by plaintiff, unbeknownst to him and without revealing the fact to him, she also on her own and through the attorney with whom she held herself out as a partner had for some time represented the defendants MINH and/or LUU and continued to do so without informing plaintiff until several months later when events revealed the double representation and agency.

## MICHAEL S. ARIF

82. Third-Party Defendant MICHAEL S. ARIF is an attorney who resided at 2300 24th Road, Arlington, Virginia throughout the time during which the events complained of occurred.

## SUN REFINING AND MARKETING COMPANY

83. Third-Party Defendant Sunoco is a major oil company whose headquarters are in Philadelphia, Pennsylvania, and which is incorporated in Delaware and registered to do business in both the Commonwealth of Virginia, where most of the events complained of herein took place and the District of Columbia, where others of the events complained of took place and where the service station franchised and leased by it to the plaintiff is located.

-18-

Its resident agent in the District of Columbia is CT Corporation Systems, whose address for such resident agency is 1030 15th Street, N.W., Washington, D.C., and in Virginia its registered agent is Edward R. Parker, Jr., whose address is 5511 Staples Mill Road, Richmond, Virginia 23228.

## THOI VAN VO

84. Third-Party Defendant Thoi Van Vo, who resides at 2248 Senseny Lane, Falls Church, Virginia 22043, is Vice-President of Suntech Sunoco, Inc., and is believed to be a full brother by blood of the plaintiff Vo. He participated in the events of August 25, 26, 1986, at the gas station.

## HUNG THI NGUYEN VO

85. Third-Party Defendant Hung Thi Nguyen Vo is the Treasurer of Suntech Sunoco, Inc., and resides at 2242 Senseney Lane, Falls Church, Virginia 22043. She is believed to be the wife of plaintiff. She participated in the events of August 25, 26, 1986, at the gas station.

## PHULY HOA VO

86. Third-Party Defendant Phuly Hoa Vo, whose residence in August, 1986, was believed to be at 112 Maple Drive, Mechanicsburg, Pennslvania 17055, is now believed to have moved to the Metropolitan Area. He participated in the events at the gas station of August 25, 26, 1986. He is believed to be a cousin or other blood relation of the plaintiff.

-19-

### (First Name Unknown) LY

87. Third-Party Defendant LY took orders from plaintiff and third-party defendant Thach during the events of August 26, 1986. He carried a long, thin-bladed knife, with which he was seen to break and enter the cashier's booth on that morning.   He then participated in the six or seven person assault on defendants Hoai and David Hemenway that morning after they had barricaded themselves inside a locked office in the locked main building of the station while they dialed 911 for police assistance.   He is believed to be a resident of Northern Virginia.

### IV. FACTS

88. During the events complained of herein, third-party defendant Sunoco first encouraged defendant and counter and third-party plaintiff Hoai, who had previously been their employee for a number of years, to apply for a lease and franchise, (formerly "dealership,") then, after a thorough procedure of evaluating him against other applicants, granted him a lease and franchise, entering into a lease and franchise with him and doing so in the Commonwealth of Virginia, the agreement being for the lease and franchise of the Sunoco station on Pennsylvania Avenue, S.E., in the District of Columbia.

89. Counter and third-party plaintiff Hoai had previously been a dealer of Sunoco's for two years more or less in Greenbelt, Maryland and, therefore, under the terms of the Petroleum Marketing Practices Act (PMPA) 15 U.S.C. 2801 et seq.

by statute cannot have been and was not a trial franchisee in his franchise with Sunoco at 2305 Pennsylvania Avenue, S.E. despite the title on the franchise agreement and was in fact a regular franchisee or dealer under the terms of the statute.

90.   Third-party   defendant   Sunoco   adduced   and   then acknowledged,   through   its   regional   supervisor,   that   the relationship of counterdefendant VO to counterplaintiff Hoai was purely represented by counterdefendant VO to be that of a lender and not that of one who had in any way a partnership or equity interest in the franchise in question.

91. As events in question developed, third-party defendant Sunoco acknowledged in May, June, July and August of 1986 that counterplaintiff Hoai was being improperly excluded from the station which they owned and of which they have maintained throughout he was at the time the franchisee.

92.   During  these  months  third-party  defendant  Sunoco encouraged counterplaintiff Hoai to take steps to help himself to stop the usurping activity of plaintiff and secure his lease and franchise from the ongoing intrusion.  Sunoco was on notice as to and  acknowledged  to  counterplaintiff  the  ongoing  threat  of extortion including threats of death and violence.

93.   Nonetheless, when plaintiff did so act to stop the racketeering activity and collection of an unlawful debt, instead of  standing  by  and  supporting  plaintiff,  as  promised,  this third-party defendant then made an agreement deal with the

-21-

counterdefendant VO in condonation of what was known to this defendant to be VO's extortionate and fraudulent pattern of behavior and in violation of its franchise agreement with counter and third-party plaintiff Hoai in order to "keep pumping gas."

94. But plaintiff remained the named franchisee and lessee of the third-party defendant SUN OIL AND REFINING COMPANY for seven months thereafter more or less though his franchise had de facto been terminated and interfered with by the plaintiff and the third-party defendant Sunoco, after which Sunoco sent a letter to counterplaintiff HOAI that he was not going to be kept as a lessee and franchisee because during the time in which Sunoco conspired with VO to keep him out of the station he had not pumped enough gas or in the alternative, he had not kept proper storage records. Both tasks had been made impossible by the actions of Sunoco in concert with counterdefendant Vo in violation of their contract with counterplaintiff.

95. The four (4) counter and third-party defendants Vo, Thach, Minh and Luu, assisted by Arif and Soland, sought to take over and to acquire by illegal means both the gasoline station franchise and lease of the counterplaintiff Hoai with the Sun Oil and Refining Company ("Sunoco"), located at 2305 Pennsylvania Avenue, S.E., Washington, D.C., by extortionate methods, using deceit and threats of violence, and to acquire the capital of the counterplaintiff by inducing him to enter into another business, the Mekong Food Service Center, a Vietnamese specialty food and

-22-

gift shop located in the Mekong Center Building at 3107 Wilson Boulevard, Arlington, Virginia, by deceit and then forcibly taking and converting to their own use the inventory, worth over $49,000.00, at cost, and the ongoing business as built up by plaintiff, simultaneously preventing him from being able to operate his gas station business.    96. These same four (4) defendants named in 95. above acquired this business and control of the same and seized this second business and its inventory from the plaintiff, respectively, through a pattern of deceit and threats of force and violence.

97. The anonymous defendants DO, RO, LO and KO, the "street muscle" gang, many of whose members live in, and many of whose activities are centered in Arlington, Virginia, also known as the "Cowboys," were employed by and associated with the aspiring organized criminal enterprise of the 4 defendants set out above as its "street muscle", since they aspired to have their association, as counter and third-party defendants Vo and Thach informed the plaintiff, become a Vietnamese version of the Mafia.

## THIRD-PARTY DEFENDANT SOLAND

98. MINH and LUU conspired with Vo and Thach to deprive the counterplaintiff of counsel and prevent him from petitioning for the redress of his grievances as set out herein by continuing to retain and use the services of the plaintiff's supposed then attorney, third-party defendant Soland from sometime in June of

1986, when she was hired by counterplaintiff, until sometime in August even while they were conspiring and concerting together with the other counter and third-party defendants as set out herein and acting in the pattern of activity set out herein to deprive plaintiff of his effective capital and businesses, interfere with his contract with Sunoco and his business and economic relationships and threatening him with violence.

99. At the time that the third-party defendant SOLAND did undertake to represent plaintiff in June of 1986 she did not reveal to plaintiff that she was representing the third-party defendants MINH and LUU who were part of the group engaged in the activity that harmed the counterplaintiff as alleged herein.

## Relevant Business Background of Counterplaintiff Hoai

100. Counterplaintiff is a man experienced and trained in the gas station, auto repair, and related businesses, to wit:

A) In June, 1975, upon first coming to the United States as a refugee from his native Viet Nam, plaintiff worked as a service station attendant at a Phillips Petroleum Company "Phillips 66" station in Strout, Oklahoma from July, 1975 until May, 1976, at which time plaintiff moved to Northern Virginia.

B) In 1976, in the summer, plaintiff worked as the manager of a Mobil service station in Merrifield, Virginia for approximately one year and a half, starting with the management of a single station and rising to management responsibility over 4 stations in Fairfax County by the end of the year and a half.

C) In 1978 plaintiff began work for the third-party defendant Sunoco in Northern Virginia as manager of a single station in Falls Church, Virginia; within 2 or 3 months he was promoted to area manager with supervisory responsibility for five stations in Northern Virginia and nearby Maryland.

D) In 1979 plaintiff went to work for himself as an independent Texaco dealer, subleasing a station.

E) In 1980 plaintiff returned to Sunoco as a dealer, owning a dealership in a station in Greenbelt, Maryland, which he continued until 1982.

F) Commencing in 1982 plaintiff ran an auto repair, auto body shop and car wash in Washington, D.C., as the President of a corporation owned by his mother-in-law, the Capitol Hill Car Wash, Inc.   He ran the business until 1985, drawing out a salary and expenses in a business that was a "break even" proposition.

G) In 1983, while running the Capitol Hill Car Wash, the plaintiff commenced another business, also owned by his mother-in-law, at the same neighborhood, for the conversion of "stock" vans into custom recreational vehicles. After almost two years, plaintiff moved the site of this "van conversion" business to Springfield, Virginia, where he continued to run it for 4 or 5 months, at which time, finding it to be non-profitable, he and his mother-in-law closed this business in January of 1986.

H) In the meantime, in 1985, the business of the car wash having dropped off in 1984 and 1985, plaintiff and his mother-in-law closed the Capitol Hill Car Wash business.

I) In January and February of 1986, plaintiff continued his search for new business and work opportunities, which had begun as the decisions to close down the car wash and van conversion businesses were being made.

101. By contrast the plaintiff Vo had no experience in such businesses though he has in a related proceeding in the United States district court for the District of Columbia lied under oath and stated on the record falsely that he managed the Gray's Cherrydale Texaco station in northern Virginia, which

-26-

counterplaintiff, the plaintiff in that proceeding immediately proved to be false by deposing the present owner of the station and interviewing the son of its former owner who contradicted directly the statements of plaintiff Vo.

### The Sunoco Station at 2305 Pennsylvania Ave., S.E.

102. In February of 1986 counterplaintiff, while looking for new business opportunities, observed that the Sunoco station at 2305 Pennsylvania Avenue, S.E., in Washington, D.C., had a "For Lease" sign on it with a telephone number to call in order to inquire into the lease and franchise. That telephone number was the number of Mr. Ernie Peele, the then Sunoco area manager, 737-7622. Upon telephoning Mr. Peele, plaintiff learned that the station was owned by Sunoco and that it was closed after termination of the previous franchisee and that Sunoco was looking for a lessee-franchisee to operate it.

103. When plaintiff communicated with Ernie Peele, the Sunoco regional manager for retail distribution in this area, Mr. Peele responded positively to plaintiff's inquiry into the possibility of taking over the lease and franchise for the station although Sunoco had between 16 and 18 applications, for which a review had to be conducted to see who was the most qualified.

104. From February 14 until two or three weeks later, at the very end of February or the beginning of March or thereabouts of 1986, plaintiff kept in touch with Mr. Peele of Sunoco weekly by

telephone.   During this period Mr. Peele informed plaintiff that the location was a very important one for the Sunoco company because of the high volume of gas that could be generated from the heavy traffic at the location on Pennsylvania Avenue and the need for great responsibility because of its location.

105.   Two or three weeks after February 14 or 16 or thereabouts, 1986, Mr. Peele called counterplaintiff and told him that because of the number of applications and the qualifications of the applicants, he was having to do a lot of work to review the applications and pick the best qualified applicant.

106. At this time Mr. Peele informed counterplaintiff via telephone that in order to take over and operate the lease and franchise, counterplaintiff would need to have access to available capital in the amount of seventy-one thousand dollars ($71,000.), broken out as follows, as written down by counterplaintiff at that time:

1. For purchase of gasoline and diesel fuel     $20,000.

2. For purchase of Tires, Batteries &

       Auto accessories (TBA)                      10,000.

3. For equipment                                  15,000.

4. For operating capital                          15,000.

5. For franchise deposit                           5,000.

6. For first month's rent in advance               2,000.

7. For insurance                                   3,000.

-28-

8. For utilities, etc.                                    1,000.

TOTAL                                                    71,000.

107. To this counterplaintiff replied that he had available to him capital of $35,000. To this Mr. Peele replied that seventy thousand dollars ($70,000.) would be enough capital and that if counterplaintiff could come up with another thirty-five thousand dollars in capital that would be enough. Plaintiff replied that he thought he could find how he could come up with another thirty-five thousand dollars ($35,000.) in a week or so.

108. During this conversation Mr. Peele informed plaintiff that Sunoco would be making a check on him and his credit and his prior standing during his service with the company.

109. At the time counterplaintiff had access to, and the availability of, thirty-five thousand dollars ($35,000.) in capital for investment in reasonable business opportunities through commitments from his wife's family. Therefore he needed to borrow or otherwise obtain an additional thirty-five thousand dollars ($35,000.) in order to meet the requirement which Mr. Peele had specified on behalf of Sunoco as being what counterplaintiff would need during the start-up period.

### The Involvement of Defendant Vo

110. Immediately after this conversation in early March in 1986, the counterplaintiff HOAI began discussions with the counterdefendant VO concerning the latter's helping him acquire the gas station lease and franchise with the necessary funds as specified by Sunoco.

-29-

111. Counterplaintiff had met counterdefendant VO and had become acquainted and received offers of financial assistance from him as a fellow Vietnamese businessman so that he was a natural person to turn to under the circumstances.

112. They met through the mother-in-law of counterplaintiff in 1979 in Northern Virginia at the House of counterdefendant VO's uncle-in-law, where counterdefendant VO and his wife lived at that time. They talked on the telephone or met each other once or twice a year on the street after that until 1985.

113. Throughout this period the counterdefendant VO claimed to the counterplaintiff that he, VO, operated and owned a large construction firm in the Washington, D.C. area. VO claimed that this was a large construction firm which employed over 80 people.

114. This claim to own and operate a large construction firm employing over 80 people was and is a deceit and fraud practiced upon the counterplaintiff, and upon others. VO did not have such a business then and has never had such a business and does not have such a business now. He well knew that he had no such firm but so represented in order to make plausible a further representation concerning the availablity of funds that such a business, if successful, would generate, as set out below.

115. In November of 1985, while counterplaintiff was operating the van conversion business aforesaid, he was approached by VO who again told counterplaintiff about the big construction company, saying that any time counterplaintiff

-30-

needed a big office or building he, VO, could build it
Plaintiff told him he did not need that.

116. Counterplaintiff said that his van conversion
was not making a profit and that "we will probably have
it down." (translation into English).    Counterdefendan
at that time that he had lots of money from his cor
business, that he employed over 80 people in it and
construction business had over $500,000. worth of co
equipment and that if plaintiff "needed anything, let m
I will try to do for you." (translation into English).

117. This was false.

118. In February of 1986, on about the 15th o:
telephoned counterplaintiff at home, indicating he had l
Hoai had closed down the van conversion business and
surprise despite having been told by Hoai that that'
meant to do.    At this time, in light of VO's pri
November, Hoai asked VO to lend him for use wh
businesses, the amount of $2,000. to which VO replied:
I'll give it to you right away; I stop at your home t
give to you." (Translation into English.)

119. That night counterplaintiff waited at h
defendant VO but the defendant VO never showed up.

120. Based upon information and belief and tl
behavior of VO and the other counter and third-part
counterplaintiff alleges that VO did not have $2,00(

as a personal loan at that time, or, in the alternative, if VO had $2,000., VO did not intend to give it to counterplaintiff as a loan right away as he stated he would. The statement was designed to cause the plaintiff to rely upon the promised immediate loan to his detriment in order that the plaintiff would then be more vulnerable to the activity which ensued.

121. During this same conversation on the telephone between the counterplaintiff and VO on or about February 15th or 16th of 1986, VO inquired of the counterplaintiff what business he intended to go into next, to which counterplaintiff replied that he was not yet able to say but that he was going to take his time and be careful before selecting a new business. In response to this VO repeated that he owned a large construction company and had much money as a result of the business of that company and that the plaintiff should come to him if the plaintiff needed help when the plaintiff undertook a new business.

122. After not showing up at counterplaintiff's house to bring the $2,000. as promised on the night of the phone conversation on or about February 15th or 16th, VO did not contact or communicate with counterplaintiff for twelve days or so, at the end of which time VO again telephoned the plaintiff. This was on or about the 28th of February or 1st of March, 1986. When VO called counterplaintiff on this occasion he affected a genial manner and inquired as to how the search for a new business was going. The counterplaintiff responded to this

-32-

inquiry by asking of VO where the $2,000. loan that he had promised was and what had happened when VO had promised to fulfill his pledge of bringing the money over on the night of their previous conversation, stating that if VO could not keep his word and make the loan of $2,000.00 as promised, then counterplaintiff would go to someone else and obtain the needed loan.   To this VO replied that, no, he would make the loan as promised and he would bring the money over that very night.   123. Counterdefendant VO, however, did not bring over the promised loan of $2,000. that night as he had committed he would.   124. Two or three days later, in the first week of March, VO did come to counterplaintiff's house and brought $1,500. in cash and gave it to plaintiff in response to the request for a loan of $2,000. with the understanding that it was a loan for an indefinite period to be repaid after the plaintiff started up his new business and was drawing income from such new business.

125. It was at this time, when counterplaintiff received the $1,500. loan in cash from VO, that counterplaintiff had just learned from Ernie Peele, the Sunoco area manager, the amount of start-up capital that he would need to start up the gas station lease and franchise on 2305 Pennsylvania Avenue, S.E. in the District of Columbia and it was at this time that Hoai began to talk to VO about the additional funds that he would need to obtain and operate the gas station lease and franchise in light of the earlier offers of help from VO.

-33-

126. On this occasion counterplaintiff specifically spoke to VO of the need for total capital of $71,000. according to Ernie Peele and his available capital of approximately $35,000. and, therefore, of his need for an additional $35,000. or so in order to start up the Sunoco lease and franchise.

127. VO said to counterplaintiff in response to this statement by Haoi of his need for the additional $35,000. that such a loan would be "no problem; call Ernie Peele and tell him you have the money." (Translating from Vietnamese.)

128. VO claimed to HOAI at this time that his construction business, RV Construction, generated this kind of money, one hundred thousand dollars $100,000., and he needed to do something with the money. VO at this time urged HOAI to accept a line of credit for $100,000. which he, VO, would provide. But HOAI stated to VO that he only wanted as much money as he needed through a line of credit from VO, namely, $35,000..

129. Counterplaintiff HOAI then asked VO about interest and monthly payments, to which VO replied that it was a loan, "does a friend help friend," (translating from Vietnamese) and that he would require no payment at all in the first year while Hoai was getting the gas station business going. If, VO said, after the first year he, VO, did not need the money, counterplaintiff could just pay him the interest at 10 or 12 percent.

130. All of these representations by VO during this conversation referred to in early March, when he delivered the one thousand and five hundred dollars ($1,500.) in cash to plaintiff, were fraud and deceits practiced by VO upon the plaintiff. VO had no construction company of any such size that generated any such amount of cash. VO had no ability to furnish any such line of credit. VO knew these were misrepresentations and he knew that he was not making a loan to help a friend with any intention of forebearing on the collection of it for one year and just collecting interest thereafter. Vo knew full well that his intent was to "set up" counterplaintiff to make the latter vulnerable to subsequent fraud and extortion in order that VO and the other, third-party defendants could take over the business or businesses that the plaintiff acquired and/or started up and the assets that the plaintiff would put into them.

131. With regard to the gas station business in particular, counterplaintiff, as is seen from the allegations above, had extensive experience, qualifications and capabilities that made him suitable to obtain such a lease and franchise from a major oil company and operate such a station. VO had none and, as subsequent events were to show, had very little ability to operate such a lease and franchise even when he acquired it by fraud and extortion.   Third-party defendant Sunoco violated its procedures and statutory requirements in accepting defendant VO and his lack of qualifications when it decided to join in the

-35-

takeover of plaintiff's business and interfere with its contract with counterplaintiff.

132. Nonetheless, on the occasion of this visit by VO to the house of HOAI, HOAI and counterdefendant VO agreed orally upon a line of credit in the amount of $35,000. to be extended by VO to HOAI under the following conditions: A) Interest would be paid on moneys extended under the line of credit at the rate of twelve per cent (12%); B) no payment of interest or principle would be paid until after the station had operated for one full year in order that it be firmly established and prospering, and C) after one year, interest and principle to be paid back at a reasonable rate according to the revenues of the gas station business.

133. These negotiations aforesaid went on from February of 1986 until this time early in March and there was further discussion between counterplaintiff and VO up until March 21, 1986, by which time the two parties reached an agreement.    The negotiations took place in Arlington County, Virginia, at the home of HOAI.  Some negotiations took place on the telephone between the homes of the counterplaintiff and counterdefendant.

134. During these negotiations between plaintiff HOAI and defendant VO from February of 1986 until March 21, 1986,    HOAI introduced VO to the regional manager for Sunoco, Mr. Ernie Peele. During his conversations with counterplaintiff HOAI and VO, Mr. Peele stated to Hoai that the lease from Sunoco for the gas station franchise at 2305 Pennsylvania Avenue, S.E.,

-36-

Washington, D.C., could not be assigned or sold without the prior written consent in writing of the Sunoco company and that the same was true for the Sunoco franchise that went along with it, as the two were interconnected.

135.   On   March   21,   1986,   counterplaintiff   HOAI, counterdefendant VO, and Mr. Ernie Peele met together at the Howard Johnson Motor Hotel on Route 1 in Alexandria, Virginia.  At this meeting VO stated to Ernie Peele that he, VO, was the owner and operator of a substantial construction company and that he, VO, was making a personal loan to HOAI in the form of a line of credit in the amount of thirty-five thousand dollars ($35,000) as set out above under the conditions set out above and no others.  He also stated to Ernie Peele that he had other substantial business interests, including a gas station.

136. At the meeting on March 21, Ernie Peele questioned VO and Hoai together regarding the possibility of hidden interests that VO or others might have in the Sunoco lease and franchise, if it were granted to HOAI.  VO denied there was any hidden interest on his part, or that of anyone affiliated with him.

137. Ernie Peele asked VO whether he was the partner of plaintiff in the gas station, and whether he had any ownership or agreement that he would have such an interest or whether he was just lending the money to his friend, HOAI.  VO replied that he had no partnership, ownership and expected none; he was only loaning money to a friend.

-37-

138. After this questioning of VO, Ernie Peele indicated that plaintiff HOAI would be accepted by Sunoco as a lessee and franchisee, whereupon defendant VO excused himself for 2 and 1/2 hours and returned after that time with two certified bank checks, one for $5,000. and the other for $2,000. for the initial deposit on fuel, tires, batteries and accesories under the franchise and lease agreement and for the first month's (April's) rent under the terms of the lease and franchise agreement. Vo represented that this was part of his loan to Hoai. VO handed these two checks to HOAI who then gave them to Ernie Peele. Mr. Peele then gave a receipt for the payment of these two amounts to plaintiff HOAI as the franchisee, made out as such. Later counterplaintiff learned that these funds did not come from the account of Vo in the bank on which the checks were drawn as Vo then and subsequently represented.

139. In this meeting between VO and HOAI Ernie Peele, VO represented to both Hoai and Peele that he was lending the $35,000. supplementary capital to HOAI under the terms of the oral loan agreement as set out above, namely, 12% interest with no repayment of principle or interest during the first "start-up" year of the operation of the gas station by HOAI and a reasonable and non-pressing schedule for repayment thereafter if necessary.

140. This representation was a deception.

-38-

140 (A). During these weeks while counterplaintiff was negotiating with Sunoco and keeping plaintiff informed, counterplaintiff and his wife were approached by the third-party defendants Minh and Luu who beseeched them to purchase the oriental specialty food store business on Wilson Boulevard in Arlington, Virginia in the Vietnamese mini-mall of stalls and stores known as the Mekong Center.

141. Counterplaintiff and his wife were reluctant to become involved in another business while taking on the gas station franchise. But Minh and Luu persisted and beseeched them with misrepresentations concerning the credit of the business and, with the assistance of the third-party defendant Thach, whom they claimed and who held himself out as an owner and high officer of the McLean Bank of McLean, Virginia, a misrepresentation that the buyout of this specialty food store business could be financed with bank loans against inventory on a leveraged buyout basis.                142. These representations were all false. Thach was not a banker, the business had negative credit ratings with the necessary oriental food suppliers and the entire thing was a scheme to get plaintiff and his wife into the business and into the responsibility for carrying it on when its inventory was unsellable and its credit gone so that counterplaintiff and his wife would have to use up their capital as available to counterplaintiff in purchasing inventory for that business under the illusion that the sales of the business would generate

-39-

revenues that in a short while could be fed back into the gas station business to aid in its start up.

143. Unbeknownst to counterplaintiff, the counterdefendant Vo and the third-party defendants Minh, Luu and Thach were all working together behind the scenes and were coordinating a scheme to deprive counterplaintiff and of his available capital from his wife's family, tie it up in the inventory of the food store and then, using threats of death and violence, take the gas station and the food store and its inventory from Hoai and his wife.

144. Vo participated in this with regard to the food store by encouraging counterplaintiff to go into that business and assuring plaintiff that he, Vo, would provide his promised capital to get the service station started up until the revenues from the food store could be fed back into the service station.

145. Minh and Luu helped interfere with counterplaintiff's franchise contract and business relationship with Sunoco at a meeting with Ernie Peele, Thach and Vo on June 5, 1986, by making false and derogatory remarks about Hoai designed to assist the other third-party defendants and Vo in those efforts.

146. Minh, Luu and Vo all combined to give the false impression to counterplaintiff that Thach was a powerful banker who would make the necessary financial arrangements and whose advice counterplaintiff should follow.

147. Counterdefendant Vo misrepresented to counterplaintiff Hoai that he was lending $35,000., $40,000., and then $100,000. to Hoai for the gas station franchise business. He falsely claimed he was doing this by putting the claimed loan money into the gas station's bank account. But he insisted on opening the bank account for the station at a bank of his choosing, the McLean Bank. What he did was open the account for his name and signature only without at first revealing to Hoai that that was his intention. Then he insisted on controlling the account exclusively in order, as he falsely claimed, to protect his "loan." As part of this he insisted on collecting the station's proceeds and depositing them in the station account and refused to let Hoai see any statements or other evidence of the account.

148. In reality counterdefendant simply "salted" the bank account with a few thousand dollars not from his account which counterplaintiff, on information and belief, believes came from one of the third party defendants. Then he put daily proceeds of the station into this account and claimed he was loaning counterplaintiff money falsely.

149. Counterdefendant Vo had no experience in operating or knowledge of how to operate a gas station so this scheme did not work for long. One of the first two checks in large amount to Sunoco for the necessary product to sell in the station was returned within two weeks of the opening of the station for insufficient funds in the station account.

150. When counterplaintiff then questioned the existence of the claimed loan and the backing of the counterdefendant Vo he obtained unsatisfactory answers from both. Counterplaintiff then informed Vo and Thach, who had begun to take a hand with Vo in trying to usurp the management of the station, that counterplaintiff was arranging to pay back any money that they had put up and get them out of the station.

151. Whereupon Vo and Thach first demanded $230,000.00 from the counterplaintiff and then threatened him with murder and violence to himself and his family.

152. In the meantime the two, Vo and Thach, had driven off or deceived into leaving the employees that counterplaintiff had begun to hire for the station and had replaced them with people they controlled.

153. Eventually they brought in the "cowboys" and others to hang around the station and make it clear to plaintiff that he would be in danger by insisting on coming to his business.

154. Vo and Thach increased the threats and pressure through the cowboys until it was clear to Hoai that he could not return to the station without risking his life or grave bodily harm.

155. In the meantime, Vo, Thach, Minh and Luu, with the assistance of Arif forced counterplaintiff to sign over the station business to Vo for one dollar for fear of his life.

156. In the meantime Vo, Minh, Luu and Thach engaged in a series of deceits. Playing on the fear in Hoai and his wife that they had engendered, they forced Hoai in desperation to "borrow" what they represented to him was going to be $30,000. so that he would not need the falsely promised bank loan to finance the food store business because he could use the $30,000. to "complete" the purchase of that business, as evidenced by a multi-year lease, from Minh and Luu and have some operating capital.   Vo and Thach represented that they were doing this to "help" him and "settle" the dispute over the gas station.

157. They had Hoai sign a $30,000. note.   Then they took $15,000. from the station account and gave it to him but only at the home of Minh and Luu where they deceived him into handing it over within a minute to Minh and Luu.   Hoai did not know that this was planned beforehand as a concerted scheme.

158. Minh and Luu had initially held out to all the customers and other stall operators commencing March 10, 1986, that counterplaintiff and his wife were the owners of the specialty food store business, promising formal documents, especially a lease, later.   But later they refused to provide the lease, denied the agreement that they had made with counterplaintiff and his wife and tried to tell plaintiff that he was only a management trainee. When plaintiff and his wife protested this arrangement, Minh and Luu arranged for the replacement of one set of locks and then the next day, May 28,

-43-

1986, came to the store with Thach and four of the "cowboys" while the counterplaintiff was hiding in the store next door out of fear and his wife was staying at home for the same reason.

159. Minh, Luu and Thach broke the other set of locks, forced the door, and took the inventory of counterplaintiff and his wife for the business, in which the counterplaintiff and his wife had invested over $49,000.00 of their capital. Minh and Luu then sold the inventory, the business as built up by counterplaintiff and his wife and converted the proceeds to the use of themselves and third-party defendant Thach.

## MY LINH SOLAND

160. Third-party defendant Soland in April had a blurb in a Vietnamese language advertising newspaper (The Vietnamese Washington Post) a congratulatory message to MY LINH SOLAND for passing the Virginia bar examination.    She importuned the counterplaintiff's mother-in-law, Mrs. Phan Van Anh, whom she and the other defendants knew was part of successful overseas Chinese trading and merchant family, for business.

161. Counterplaintiff first called SOLAND on the morning of May 28, 1986, after he and his wife had been locked out of their Mekong Center food business the evening before and the defendants MINH, LUU and THACH, assisted by "cowboys" and a fraudulent use of the police similar to that attempted in the gas station, had defrauded and extorted him and his wife of his Mekong Center food store business interest and inventory.

162. The defendant SOLAND was associated in her practice of law with the offices of a Virginia attorney named Herman W. Lutz, whose offices are at 109 S. Fairfax Street, Alexandria, Virginia. She held herself out to the counterplaintiff and his wife as being free to represent them in the matter of their problems with defendants MINH and LUU, counterdefendant VO and THACH in connection with the fraud and extortion of the Mekong Center food store business and in the matter of their problems with THACH and VO in connection with the Sunoco lease and franchise, as supported also by MINH and LUU in their actions on June 5, 1986.

163. While defendant SOLAND was holding herself out, and unbeknownst to counterplaintiff, from some time in April or so, she was, with the lawyer Lutz, with whom she had office space, and on whose letterhead she appeared, representing the defendants MINH and LUU. She never revealed this to plaintiff until forced to do so by events revealing this dual agency to the counterplaintiff. That did not happen until August of 1986.

164. When counterplaintiff called SOLAND on the morning of May 28 he called her at the offices of the lawyer Lutz. This call was made at the suggestion of Mr. Tung of the Saigon Market.

165. Later, in connection with the gas station meeting on June 5, as set out above, the mother-in-law of counterplaintiff called the defendant SOLAND because she had read of her in the message in the Vietnamese language paper. The counterplaintiff had then called home and his mother-in-law told him that the defendant SOLAND wanted him to call her at her office.

-45-

166. When the counterplaintiff first called the defendant SOLAND on May 28th, at the suggestion of Mr. Tung, he told defendant SOLAND about what had happened at the Mekong Center food store and she agreed to represent him and his wife in connection with this matter. He and his wife went to the office of defendant SOLAND in the offices of the lawyer Lutz and she agreed to represent the counterplaintiff and his wife in connection with the Mekong Center fraud and extortion but said that the plaintiff and his wife could pay her later.   That same day defendant SOLAND agreed to write a letter to MINH and LUU.

167. Later, when they received the letter which third-party defendant SOLAND drafted as a result, counterplaintiff Hoai and his wife were surprised to see that she wrote it on plain stationery for the signature of the counterplaintiff and his wife.   They received it the following day from Mr. Tung of the Saigon Market. On this occasion in her office the defendant SOLAND undertook to discuss the matter with the defendants MINH and LUU and she said that she was a very good lawyer and that she would make the defendants MINH and LUU vacate the Mekong Center and pay back the fifteen thousand dollars and put plaintiff back in the Mekong Center food store until everything was straightened out and the lease he had wanted was signed and then he could pay the defendants MINH and LUU and have the business.

168. From May 29 until June 11, 1986, counterplaintiff Hoai kept calling Soland at her office with Lutz every day, asking her what she was going to do. SOLAND told counterplaintiff that she was his lawyer and it wouldn't even require court action for her to get the defendants MINH and LUU to return the Mekong Center food store. She used a Vietnamese expression, she would "tear MINH's face off." This was a fraud and a deceit. In reality defendant SOLAND and/or the lawyer Lutz were representing the defendant MINH and/or the defendant LUU during this period.

169. In the meantime on June 5, 1986, about 9 AM, the mother-in-law of the counterplaintiff again called the defendant SOLAND and explained briefly to her about the gas station situation and asked her to represent the counterplaintiff in the conference at the gas station scheduled for later that morning. The plaintiff's mother-in-law told the defendant SOLAND that she, the mother-in-law, Mrs. Phan Anh, would pay the fee. Defendant SOLAND asked the plaintiff's mother-in-law to formally retain her over the phone. Counterplaintiff's mother-in-law did and the defendant SOLAND agreed to represent the counterplaintiff at the meeting scheduled for 10 AM. Counterplaintiff Hoai paid Soland by check on his personal account later that same day after the meeting at the gas station.

170. Counterplaintiff went to the June 5, 1986, meeting by subway and met Soland, Peele and Vo there.

-47-

171. Before they left the gas station Ernie Peele said, in front of the police officers who were summoned and the counter and third-party defendants SOLAND, THACH and VO, that the counterplaintiff was the franchisee and lessee of the station as far as Sunoco was concerned. He said also that counterplaintiff was the legal owner of the business. Ernie Peele said to the counterplaintiff in front of the police and in front of the defendants THACH and VO that this was the counterplaintiff's station, he was the legal owner of the business and that the third-party defendant SUNOCO had leased it and franchised it to the counterplaintiff, that he wanted to see counterplaintiff in the station from now on every day and to see the counterplaintiff running his business.    THACH and VO pointed to the one dollar contract to which Ernie Peele replied that it was not valid as far as Sunoco was concerned because it had not been cleared with Sunoco first as was required and that he could not accept it and if THACH and VO had any claim they would have to settle it between themselves and the counterplaintiff.

172. After the police left, the defendants VO and THACH remonstrated with Ernie Peele, claiming that the counterplaintiff had lied to him and asking him why he believed the counterplaintiff and so forth. Ernie Peele told them again that they would have to settle any such claims between themselves and the counterplaintiff. He repeated to the counterplaintiff in front of the defendant SOLAND that he wanted to see the

-48-

counterplaintiff in the station, that the counterplaintiff was the manager of the station, that he did not want him leaving it again.

173. SOLAND then talked to the counterplaintiff in Vietnamese and contradicted this advice. She told the counterplaintiff that she would not be his lawyer unless he left, that he would be killed if he tried to run his gas station and so on. She told him that she would go into the court the next day and get VO and THACH thrown out of the gas station "by the law," or in any case, no later than Monday, that she could do this in the District of Columbia as well as Virginia and even in Maryland, that she was a very strong lawyer and VO and THACH could not escape her.

174. This was all a fraud and a deceit, misrepresentations designed to induce counterplaintiff to rely upon them to his detriment, which he did. Defendant SOLAND was trying to further frighten counterplaintiff not help him as his attorney. Threatening to not represent him unless he disobeyed Ernie Peele's requests and instruction was advice designed not to help him save the station but to lose it to these defendants who were there, including her clients, MINH and LUU.

175. Counterplaintiff got in the car of defendant SOLAND and the latter drove it about ten or fifteen feet across the gas station lot when suddenly she stopped the car and said that she had forgotten something and said: "let me go inside." She asked

-49-

the counterplaintiff to stay in her car and went back inside. About this time defendants MINH and LUU, who had been sitting in their car on the gas station lot, left their car and went inside the station where a conversation ensued between the MINH, LUU, SOLAND, THACH and VO and Ernie Peele. Counterplaintiff could see the people talking. He could see SOLAND gesturing.

176. SOLAND came back out from the gas station and got back into the car. She told the plaintiff that the defendants THACH, VO, MINH and LUU had talked "very bad" about him to Ernie Peele. Then she said to the plaintiff that he still had "his life and his gas station" and he should go home. They left in her car.

177. SOLAND drove counterplaintiff home and then counterplaintiff and his wife drove to her office and gave her a check for $500. for each case as an initial retainer, or a total of $1,000.. At that time SOLAND had drawn up a form retainer agreement for the work on the gas station problem and another one for the work on the Mekong Center food store. In them she undertook to represent the plaintiff with regard to the two problems as separate undertakings, each at $100. per hour. Both plaintiff and his wife signed these retainer agreements.

178. In addition, VO and THACH and ARIF engaged in many acts and representations designed to damage plaintiff's business and business reputation with the defendant SUNOCO. This included such things as the imposition of the parking of forbidden vehicles on the lot and the business of trying to impose a hot

-50-

dog trailer upon the plaintiff at his station against his will, the manipulating of the gas station bank account to cause the check for the initial gasoline delivery to be dishonored, the interference with the United States mail to prevent the plaintiff from receiving the registered or certified letter from defendant SUNOCO, false representations about plaintiff's business habits and abilities, his absenteeism to SUNOCO, members of the Vietnamese community, to business associates such as the plaintiff's longtime insurance man, and many other such things.  Once, while with one of his small children, counterplaintiff was physically blocked on the sidewalk by three "cowboys" who confronted plaintiff and threatened him with bodily harm, justifying their acts with false stories from Vo and Thach.

179. For example, at the meeting on the fifth of June referred to above, the defendant THACH, supported by VO, told the lie to Ernie Peele that the plaintiff had stolen one hundred thousand dollars ($100,000.) from the sister of defendant THACH.   Another example is in connection with recordkeeping.  THACH and VO operated out of a briefcase, literally, and kept no records or kept records of such a primitive nature in this and any other of their "scams" or enterprises that they can be said literally to ignore the ordinary prudent requirements of business recordkeeping in all that they do.  Yet throughout this pattern of racketeering activity and up to this day, they attempt to cover this up by accusing plaintiff with groundless accusations of theft or destruction of records which never existed.

180. The defendants MINH and LUU joined in and supported these lies to damage the plaintiff's business and business reputation and good will in connection with the gas station fraud and extortion on June 5, 1986, and also in connection with the fraud and extortion of the Mekong Center food store business whereby the plaintiff was defrauded and extorted of his capital for the gas station business.

181. The defendant ARIF participated in this campaign of lies and slander to damage the business and the business reputation of the plaintiff in connection with his fraudulent representation of defendant THACH as a "banker" which was central to the scheme of fraud and extortion.   This was in addition to his central participation · in the acts of fraud and extortion themselves. Later, on July 14, the defendant ARIF was specifically put on notice by the defendant SOLAND at a meeting in his office that at that time the defendants VO and THACH were threatening to kill the plaintiff and yet ARIF continued to lie and cover up his knowledge of the fraud and extortion.

182. Subsequently, in the last part of August and continuing through September and October, VO, THACH and ARIF, at a time when plaintiff was attempting action to recover his business, did commit further acts to damage and disrupt counterplaintiff Hoai's business and contractual relationships with Sunoco.

183. Sunoco joined in these just before September 8, 1986, when it entered an agreement with the counterdefendant Vo to deprive counterplaintiff completely of the use and benefit of his franchise and lease for seven months more or less and destroy the contract and the business relationship between counterplaintiff Hoai and Sunoco.

184. These same counter and third-party defendants then misrepresented or failed to represent to a judge of this Court the true nature of the situation and persuaded that judge, without any notice whatsoever to plaintiff, to embody that agreement in what purported to be an "extension" of the then expiring TRO obtained by plaintiff against the defendants and counterclaimants herein a few days before. Sunoco and Vo did this with the cooperation and assistance of Arif and Thach all in concert to damage and destroy counterplaintiff's contractual relationship with Sunoco and also his business and economic relationships with Sunoco.

185. After counterplaintiff discovered the dual agency and conflict of interest of Soland in August he retained as new counsel defendant and counterclaimant John D. Hemenway and with the assistance of counsel and defendant and counterclaimant David Hemenway, attempted to regain the possession of his gas station business peacably by simply entering it and asking the intruders to leave. As a result of this, Vo, through Arif as his attorney, agreed to abide by the decision of Sunoco's Ernie Peele as to who was the legitimate franchisee and possessor of the station.

-53-

186. This was on August 25, 1986 that the agreement was made between the attorney Arif for plaintiff Vo and the attorney Hemenway, later made a defendant, for the defendant Hoai. Ernie Peele, the Sunoco representative, was scheduled to come to the station the following day and it was agreed that the parties would abide by his decision on that day as to who was Sunoco's franchisee and the legitimate possessor of the station. The next day Ernie Peele came and listened to both sides and, after listening, declared that Sun recognized counterplaintiff as the only dealer and possessor of the station franchise. Acting in reliance on this agreement to abide by Ernie Peele's decision, counterplaintiff restaffed the station and began to operate it. Instead of complying with the agreement to settle the matter thus entered into, however, the plaintiff VO immediately set to work to go into court and reopen the settled matter, which he did on the 28th of August of 1986. This agreement was recorded on audio tape by attorney Hemenway at the time and was referred to in several places by third-party defendant ARIF in the affidavit he submitted on the 28th when his client requested a TRO.

187. On that same day, early in the morning when only defendant Hoai and defendant David Hemenway were in the station, the plaintiff and the third party defendants Ly, Phuly Hoa Vo, Thach, Hung Thi Nguyen Vo, and others comprising a party of 6, crashed a van through the temporary ribbons blocking the entrances to the station, broke into the cashier's cage at the

-54-

pumps with a knife, and screamed at the counterclaimants Hoai and David Hemenway that they would kill them. The latter had retreated within the block walls and thick glass plate windows of the office in the main building of the station and dialed the police 911. Vo and his colleagues then attempted to break into the building from the rear and the roof to get at the defendants Hoai and David Hemenway.

IV. COUNT ONE -- BREACH OF SETTLEMENT CONTRACT

188. Counterclaimants repeat and incorporate herein by reference the allegations of paragraphs 71 through 187 above.

189. Plaintiff, acting through his attorney Arif, and Hung Thi Nguyen Vo, his wife and the treasurer of Suntech Sunoco, Inc. and in the presence of Thach, agreed on Monday, August 25, 1986, when counterplaintiff entered the station with his attorney and his attorney's son, that the parties would settle their dispute by abiding by the word of Sunoco representative Ernie Peele, who, it was understood between the parties, would be at the station the following day, as to who was the franchisee of Sunoco and the rightful possessor and operator of the station.

190. In reliance on this promise counterplaintiff incurred expenses and effort and partially performed in restarting his operation of the station.

191. Evidence of this agreement, which was oral, is contained in a tape recording of the conversation at the station on that Monday and has been admitted to and acknowledged on the

-55-

record by defendant Arif in an affidavit accompanying the original verified complaint in this case and dated August 28, 1986, page 5, paragraph 30, 31 et seq.

192. However, knowing of this agreement as they did so, the defendants Vo, Thach, and Arif, nonetheless, ignored it and instead of abiding by the word and decision of Ernie Peele as agreed, filed the instant suit.

193. A settlement agreement is enforceable like any other contract and settlements are favored by the law.

WHEREFORE all three defendants and counterplaintiffs in this Count One pray that all of the counter and third-party defendants named in the preceding paragraph be enjoined by preliminary injunction and permanent injunction from proceeding any further with this law suit in violation of the aforesaid agreement and that the counterclaimants receive their damages for the breach to the date of the entry of the injunction, including reasonable attorney's fees for the counterplaintiff's having had to engage counsel in order to fight this suit so brought in violation of the settlement agreement between the parties. These costs and fees and damages to counterplaintiffs have mounted at this time to over $220,000. and are still accumulating.

And the three counterclaimants pray for such other relief as to the court shall seem just and proper.

## V. COUNT TWO

## FRAUDULENT INDUCEMENT/FRAUD AND DECEIT

194. Defendants incorporate here by reference all of the assertions and statements made in the answers and affirmative defenses above and all of the allegations of paragraphs 71 through 193 above.

195. Plaintiff never had the $35,000. cash on hand which he represented to defendant Hoai that he had as part of $100,000. cash he had on hand from his, the plaintiff's "construction business."

196. Plaintiff had no construction business as he claimed, that generated large amounts of cash that he could invest. He did not place the money he represented in the station bank account as a "loan". From others he supplied a relatively small amount of cash for deposits to induce counterclaimant Hoai to go forward as if plaintiff were making the promised loan and then by deceit took control of the stations proceeds and used them to give a false illusion that he was lending money into the business to support it as promised.

197. By a series of frauds and deceits some of which are set out above plaintiff gained control of the station finances, business licenses, personnel, etc. and tricked counterplaintiff out of his own business. When counterplaintiff discovered the fraud plaintiff and third-party defendant Thach demanded huge exorbitant sums from defendant Hoai and threatened to kill and maim him.

-57-

198. Plaintiff made these and other fraudulent representations to the defendant Hoai in order to fraudulently and deceitfully induce him to proceed with the acquisition of the gas station franchise in order that plaintiff might carry out an intent to deprive defendant of his business opportunity and seize it from him by fraud, coercion, threats of force and violence, deceit and duress.

199. As stated above plaintiff and counterdefendant was aided in this fraud and deceit by Thach, by the cowboys, by Arif, Soland, Minh, and Luu and his wife, Hung Thi Vo, the treasurer of the Suntech Sunoco company he incorporated, and by Sunoco at some time shortly before the date September 8, 1986.

200. Whereupon, because of these fraudulent inducements, defendant-counter claimant Hoai suffered damages from the fraudulently induced agreement that was never intended to be honored in the amount of $30,600,000. being the full value of the franchise he was thus defrauded out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because ofthe gross and wanton nature of the fraud.

201. Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

## VI. COUNT THREE

### CONSPIRACY TO COMMIT FRAUD

202. The contents of COUNT TWO above are incorporated herein by reference and to them is added the following paragraph:

203. The said defendants conspired to commit the fraud alleged, wherefore the same damages are prayed for.

## VII. COUNT FOUR

### TORTIOUS TAKING/ THEFT/ ILLEGAL CONVERSION

204. Defendants incorporate here by reference all of the assertions and statements made in the answers and affirmative defenses above and all of the allegations of paragraphs 71 through 193 above.

205. Counterdefendant Vo has no legitimate claim to or ownership over the franchise and/or lease in question.

206. Counterdefendant Vo took the same from defendant Hoai by false representations, threats of violence, trickery and coercion.

207. Counterdefendant Vo had full knowledge of but failed to comply with the conditions precedent of the franchise agreement he was purporting to buy for one dollar, namely, that he be presented to third-party defendant Sunoco 90 days in advance of any proposed transfer and his business experience and credit worthiness and financial standing be checked out by Sunoco at the expense of Hoai.

208. These provisions are fully in accord with similar provisions in the governing local statute and are hence binding and enforceable by force of federal statutory law. Plaintiff not

only failed to comply with these requirements but deliberately tried to get around and avoid them because he did not have any business experience that would have qualified him to purchase the station and because he did not have the credit and was holding out as his "banker" the man Thach who was not a banker but a fake.

209. Counterdefendant Vo knew or his attorney who drafted the unconscionable one dollar contract, defendant ARIF knew, and Vo is charged with the knowledge, since the Sunoco franchise agreement with Hoai was an attachment to the "one dollar contract" that VO and ARIF drafted and forced upon defendant Hoai, that what he proposed in his complaint as the true version of these events, is a fraud by terms of the franchise agreement and that therefore the one dollar contract as VO and ARIF drafted it is void for illegality.

210. In this tortious conduct plaintiff was assisted by Thach, Arif, Minh, Luu, the cowboys, his wife, Hung Thi, and Thoi Van Vo.

211. Plaintiff stole and destroyed the business license and occupancy permit of the defendant Hoai, destroying them and replacing them with another obtained under false pretenses.

212. Whereupon, because of this tortious taking, theft, or tortious conversion, defendant Hoai was injured in the amount set out in Count Two above which is hereby incorporated by reference including punitive damages and the prayer for both consequential

and punitive damages in the amount of $30,600,000. and $20,000,000.

## VIII.  COUNT FOUR
### BATTERY AND THREATENED ASSAULT

213. Counterclaimants Hoai and David Hemenway incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

214. On several occasions in April and May of 1986, the plaintiff, in the home of the aforesaid Thach Duy Nguyen, threatened to kill defendant Hoai if he did not sign the aforesaid alleged and fraudulent contract of sale.    There also these conspirators told the defendant Hoai that they were going to become the Vietnamese version of the Italian Mafia and urged him to join with them before he made it clear he was not interested in their crooked schemes.

215. Subsequently, in the offices of opposing counsel Arif, which is on the 4th or 5th story of an office building, plaintiff threatened to throw defendant Hoai out of the window if he would not lie to the lawyer and falsely confirm that he had entered voluntarily into the contract in question.

216. Such threats were made by Vo and Thach or one of them separately against defendant Hoai on other occasions, over the phone, in restaurants, or during car rides, sometimes directly or indirectly.

217. At the gas station on August 26, 1986, as aforesaid, Vo, Thach, Ly, Phuly Vo, Hung Thi Vo and Thoi Van Vo made the assault described above. These assaults were aided and abetted and engaged in also by the cowboys and aided and abetted by Arif.

218. Whereupon, because of these assaults and batteries, defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

219. Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

## IX. COUNT FIVE

### TRESPASS

220. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

221. Against the will of the defendant Hoai, as frequently expressed, plaintiff trespassed upon and usurped defendant's gas station franchise leasehold, the same being absolutely unique, refusing to leave when asked to do so and refusing defendant Hoai entry to his own business by threats of violence by a gang of "toughs."

222. Wherefore, because of these threats of violence, defendant Hoai had this trespass forced upon him, enabling the theft of his business.

223. Whereupon, because of these trespasses, defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

224. Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

## X. COUNT SIX

### MALICIOUS BREACH OF CONTRACT

225. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

226. Plaintiff agreed to loan defendant Hoai $35,000. for one year for the specific purpose of starting up the Sunoco station in question, with interest at 12% commencing in the second year, to be paid back in the second year along with principle as the business began to turn a profit.

227. Plaintiff maliciously and wilfully breached this contract for the specific purpose of harming defendant Hoai and taking over his business illegally by providing only a very small part of the money, encouraging defendant to tie up his matching capital in another business in the amount of $49,000.00 and then conspiring with the aforesaid Thach Duy Nguyen and Minh Van Nguyen and Luu and Arif to make sure that that matching capital was taken by fraud and threats of force from defendant Hoai so that defendant Hoai might then be represented to this court as not having kept his part of the bargain.

228. Further, plaintiff maliciously and wilfully breached this contract by refusing to let defendant Hoai operate his lease and franchise from Sun Oil by deceit and threats of violence.

229. Whereupon, because of these malicious breaches of contract, defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise

-64-

he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

230.  Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

## XI. COUNT SEVEN

### ILLEGAL CONVERSION OF PROPERTY AND THEFT OF MONEY

231. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

232. By threats of violence and force mixed with fraud and deceit, plaintiff took from defendant the books of account and cash flow and receipts of the aforesaid franchise and illegally converted the cash flow to his own use, failing to account for or keep accurate records of the same.

233. Plaintiff used these proceeds to advance moneys to defendant Hoai for the alleged needs of plaintiffs co-conspirators Minh Van Nguyen and Luu Thi Bach Nguyen as if they were the personal funds of plaintiff, and then aided and abetted

thereby the plan of his co-conspirators to force defendant Hoai into a note for $30,000. when only $15,000. was so advanced.

234. Defendants assert on information and belief that plaintiff used these cash proceeds to pay the service station monthly rent to defendant Sun Oil and supplier bills and then, in concert with his attorneys falsely represented to this court that these payments were his personal funds.

235. Plaintiff, defendants assert on information and belief, failed to keep his personal funds separate from the funds of defendant's business which he stole, and commingled funds, failed to keep accurate records, and otherwise converted the funds of the business to his personal use.

236. Whereupon, because of these conversions, defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

237.  Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

## XII. COUNT EIGHT

### TORTIOUS INTERFERENCE WITH CONTRACT

238. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

239. By the acts referred to above plaintiff maliciously and willfully interfered with the contract of franchise and leasehold between the defendant Hoai and the Defendant Sunoco and in concert with Thach, Minh, Luu, Arif, Thoi Vo, Hung Thi Nguyen Vo,   and defendant Sunoco itself caused the defendant Hoai to lose the benefit of same.

240. Whereupon, because of this interference defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

-67-

241. Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

242. Defendant and Counterclaimant John Hemenway has suffered damages as a result of this interference in the amount of $10,000. and his son David in the amount of $10,000. and they pray for the same plus $50,000. in punitive damages each because of the flagrancy of the interference.

## XIII. COUNT NINE

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

243. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

244. By the acts referred to above plaintiff maliciously and willfully interfered with the business relationship of franchise and leasehold between the defendant Hoai and the Defendant Sun Refining and Marketing (Sun Oil) and caused the defendant Hoai to lose the benefit of same.

245. By the acts referred to above plaintiff maliciously and willfully interfered with the business relationship between the defendant Hoai and the Defendant Sunoco and in concert with Thach, Minh, Luu, Arif, Thoi Vo, Hung Thi Nguyen Vo, Roseman, Ottman and the Jones, Day firm and defendant Sunoco itself caused the defendant Hoai to lose the benefit of same.

-68-

246. Whereupon, because of this interference defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

247. Whereupon, counterclaimant Hoai claims against the defendants so named and all of them, jointly and severally, the aforesaid amount plus such other damages and further relief as to the court shall seem just and proper.

248. Defendant and Counterclaimant John Hemenway has suffered damages as a result of this interference in the amount of $10,000. and his son David in the amount of $10,000. and they pray for the same plus $50,000. in punitive damages each because of the flagrancy of the interference.

## XIV. COUNT TEN

### CONSPIRACY TO DAMAGE BUSINESS, BUSINESS REPUTATION AND BUSINESS RELATIONSHIP

249. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

-69-

250. After concerting with all the other third-party defendants named herein to see that the $35,000. capital which defendant Hoai had for the gas station start-up was fraudulently taken from him, plaintiff then falsely spread the story, including before this court, that defendant Hoai had never had the capital in the first instance.

251. By the acts referred to above plaintiff and all the third party defendants maliciously and willfully interfered with the business, business reputation and business relationships of defendant Hoai, damaging a unique business standing, reputation and good will attendant thereupon built up in the gas station and related automotive fields over a number of years, and took control of both businesses as described.

252. Whereupon, because of this damage conspiracy defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

-70-

253. Whereupon, defendant Hoai also suffered damages in the amount of an additional $3,000,000. for the loss of his and his wife's interest in the specialty food store business and the inventory that was lost there and the loss of business reputation.

254. So counterclaimant Hoai prays for and claims against the defendants so named and all of them, jointly and severally, the aforesaid amounts plus such other damages and further relief as to the court shall seem just and proper.

255. Defendant and Counterclaimant John Hemenway has suffered damages as a result of this interference in the amount of $10,000. and his son David in the amount of $10,000. and they pray for the same plus $50,000. in punitive damages each because of the flagrancy of the interference.Wherefore, defendant Hoai was damaged in the amount of $1,600,000.

### XV. COUNT ELEVEN

### VIOLATION OF VIRGINIA BUSINESS CONSPIRACY STATUTE

256. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 above.

257. Plaintiff entered into the aforesaid conspiracy with Thach Duy Nguyen, Minh Van Nguyen and Luu Thi Bach Nguyen and all the other named third party defendants, who joined the conspiracy late, to damage the defendant Hoai in his business, business reputation, trade and profession, which activity was carried out in Virginia to damage defendant Hoai's business and business

reputation in D.C. and also his business and business reputation in Virginia.

258. Plaintiff and the others maliciously and willfully so tried to harm the defendant Hoai's business, business reputation, trade and profession and induced others to do the same, all in violation of Section 18.2-500 of the Code of Virginia.

259. Whereupon, because of this damage conspiracy defendant-counter claimant Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years, plus an additional $20,000,000. in punitive damages because of the gross and wanton nature of the batteries and assaults involved and the anguish and mental suffering that was caused to him and to his family and he prays for the same against all the defendants named in this count jointly and severally and David Hemenway prays for $10,000. in damages against these same defendants and $100,000. in punitive damages.

260. Whereupon, defendant Hoai also suffered damages in the amount of an additional $3,000,000. for the loss of his and his wife's interest in the specialty food store business and the inventory that was lost there and the loss of business reputation.

261. So counterclaimant Hoai prays for and claims against the defendants so named and all of them, jointly and severally, the aforesaid amounts tripled plus attorneys fees in an amount in

-72-

excess of $500,000. in accord with such statute and such other damages and further relief as to the court shall seem just and proper.

262. Defendant and Counterclaimant John Hemenway has suffered damages as a result of this interference in the amount of $10,000. and his son David in the amount of $10,000. and they pray for the same plus $50,000. in punitive damages each because of the flagrancy of the interference.   They demand triple damages and attorney's fees.

## XVI. COUNT TWELVE

### SLANDER

263. Defendants incorporate herein by reference and repeat all of the allegations contained in 71 through 193 herein.

264. Having thus deprived defendant Hoai of his investment capital in concert with Thach and Minh through fraud, deceit and trickery, and falsely induced him to enter a note for money that defendant Hoai never received, plaintiff then proceeded to spread slander about defendant Hoai's business ability and financial condition, telling others that defendant Hoai had lost all his money through bad business judgment and ability when in fact plaintiff had assisted in taking it from defendant through deceit and coercion.

265. Wherefore defendant Hoai was injured in the amount of $6,000,000. over and above the damages set out in other counts.

266. Plaintiff then made up lies about the behavior of the defendants Hemenway and entered them in this law suit though not directly relevant, for the unrelated purpose of improperly harassing defendant Hoai by depriving him of counsel.

267. Whereby defendant John D. Hemenway was injured in his business reputation and reputation generally by being accused of criminal acts as was defendant David Hemenway.

268. Whereby defendant John D. Hemenway was injured in the amount of $6,000,000. by slander per se and David Hemenway in the amount of $4,000,000 and all three defendants and counterclaimants pray for these damages plus such other and further relief as may be proper and just.

## XVII. INTERPLEADER AND CROSS-CLAIM

269. The allegations of the complaint and of 71 through 193 above are herein incorporated by reference.

270. To the extent that the defendants may be guilty in any way of wrongful eviction as charged by plaintiff, they acted only as an agent for and at the urging of third-party defendant Sunoco, with whose knowledge and approval they acted at all times, as attested to by the certification of Sunoco's area representative on the notice to quit the premises.

271. Sunoco was the only true landlord during the events of which plaintiff complains, as a factual matter, and the defendants hereby interplead and cross-claim against Sunoco claiming that if they are liable in any way for moneys or other

damages to plaintiff then Sunoco is in turn liable to them in the same amount.

## XVIII. BREACH OF CONTRACT -- SUNOCO

272. The allegations of the complaint and of 71 through 193 above are herein incorporated by reference.

273. Third-Party Defendant Sunoco entered a franchise agreement with the defendant Hoai commencing in April of 1986 to operate as franchisee and lessee the gas station in question on Pennsylvania Avenue, S.E., Washington, D.C..

274. That franchise was renewable indefinitely each year unless Sunoco could cite a cause specified in federal statute to non-renew it.

275. Third-party plaintiff Hoai gave no such cause but on the contrary was forced from the station by the aforesaid actions of Vo.  He was forced to sign the illegal one dollar contract by threats of violence.

276. He notified Sunoco of the situation and they urged him to get the station back and resolve the conflict with Vo, the man who expelled him, getting his own lawyer to assist him in doing this, which Hoai did.

277. Sunoco ratified his dealership and agreement repeatedly, insisting that he was their dealer, that the franchise agreement was in force, and they told Vo that, informing the latter that his so-called contract of purchase of the business through them was no good because Vo had not come through Sunoco.

278. Sunoco signed a certification that Hoai was their dealer when he went to get the station back from Vo and told Vo that also on the following day.

279. Throughout this litigation up until quite recently Sunoco has continued to assert that Hoai was their dealer.

280. But Sunoco breached this contract and gave the station to Vo, destroying the dealership of Hoai.

281. Sunoco promised to John D. Hemenway and David Hemenway that if they would help Hoai get his station back, Sunoco would back them, but Sunoco failed to do so and instead made a deal with the intruder Hoai and switched sides in violation of this agreement.

Whereupon, because of this breach third-party plaintiff Hoai suffered damages in the amount of $30,600,000. being the full value of the franchise he was thus intimidated out of out of over a span of twenty years against Sunoco and John and David Hemenway each prays for $250,000. in damages against Sunoco.

Respectfully submitted.   THE JURY DEMAND CONTINUES.

Thanh Vong Hoai
David Hemenway

By Counsel

Laurence A. Elgin
2762 Woodley Place N.W.
Washington, D.C. 20008
202/ 628-1114
D.C. Bar No. 159582

-76-

*John D. Hemenway*

John D. Hemenway, pro se

## CERTIFICATE OF SERVICE

I hereby certify that I have served by United States mail, first class, postage prepaid, a true and accurate copy of the foregoing amended answer, affirmative defenses, counterclaim, third-party claims, interpleader and cross-claim, upon Robert Pleshaw, Esquire, counsel for the plaintiff and counterdefendant Thanh Van Vo, at his offices at Suite 800, 729 15th Street, N.W., Washington, D.C. 20005, this 24th day of July, 1989.

*Laurence A. Elgin*

Laurence A. Elgin

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | |
|---|---|
| THANH VAN VO, d/b/a<br>SUNTECH SUNOCO, Inc., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> )    Civil Action No. 7075-86 |
| v. | )    Civil I - Judge Kennedy <br> ) |
| THANH VONG HOAI, et al., | )    **PRAECIPE REGARDING ERRATA ON** <br> )    **AMENDED ANSWER/COUNTERCLAIM** |
| Defendants. | ) <br> ) |

## PRAECIPE

### (Regarding Errata On Amended Answer/Counterclaim of July 24,1989)

The Clerk and the Court will please note the filing of the amended complaint requested by Judge Weisberg before he left Civil I with a large number of the third-party defendants eliminated and several federal counts removed. This filing was accomplished on July 24th, 1989, the date it was served by mail on the plaintiff.

Unfortunately, the following errata were contained on that amended complaint. While not critical, they are corrected in the hope that, if noticed, they cause no one any inconvenience:

On page 15, paragraph "72." should read: "72 (A)."

"1.DEFENDANTS" should read "1.COUNTERPLAINTIFFS"

On page 20, para 87.,line 5, the first word is "participated".

On page 39, paragraph "140" should read: "140 (A)."

On page 44, para 159., read "counter plaintiff" without the space.

On page 55, para 193., "$220,000.00" was written as a result of a typographical error and this should read: "$520,000.00."

1

Top line of page 65 should read: "he was thus intimidated out of

over a span of twenty years,....."

Additionally, all parties should note that  when the case was removed for a time in the summer of 1987 to the United States District Court (for the District of Columbia Circuit) so that the District Court could consider the federal counts referred to above, the defendants entered a demand for a Jury Trial,(which cause was then remanded back to the Superior Court of the District of Columbia). That this continues to be the request of all of the defendants in the above-captioned matter is indicated by the filed copy of the Amended Answer and Counter-Claim of July 24, 1989, on which Counsel Laurence A. Elgin, acting for all defendants, noted in his handwriting that "THE JURY DEMAND CONTINUES" and for that reason all copies of the Amended Answer, as corrected by items on this Praecipe, will carry that notation.

Respectfully submitted,

John D. Hemenway #379663
4816 Rodman Street, N.W.
Washington, D.C.   20016
(202) 244-4819
appearing pro se and for
Defendant Thanh Vong Hoai

Laurence A. Elgin #159582
4816 Rodman Street, N.W.
Washington, D.C.   20016
(202) 628-1114
appearing for Thanh Vong Hoai and
David Hearn Hemenway, defendants.

2

CERTIFICATE OF SERVICE

I hereby certify that I have served by United States mail, all postage prepaid, first class, a true and accurate copy of the foregoing **Praecipe** containing corrections and a corrected copy of the amended answer, affirmative defenses, counterclaim, third-party claims, interpleader and cross-claim, with jury demand, together with a summons to all of the counterdefendants listed therein at their last known address, that is, to counterdefendants and third-party defendants as follows:

(1) **THANH VAN VO**(as stated below, personally to his attorney Robert Pleshaw); (2) **THACH DUY NGUYEN**; (3) **MINH VAN NGUYEN**; (4) **NGUYEN THI BACH LUU**; (5) **UNKNOWNS: JOHN DO, RICHARD RO, NGUYEN TU LO, AND CARL KO** (not served); (6) **MY-LINH SOLAND** (7) **MICHAEL S. ARIF**; (8) **SUN REFINING AND MARKETING COMPANY, INC.**; (9) **THOI VAN VO**; (10) **HUNG THI NGUYEN VO**; (11) **PHULY HOAI VO**; (12) **(First Name Unknown) LY**; and personally by messenger upon Robert Pleshaw, Esquire, counsel for plaintiff Thanh Van Vo at his offices at Suite 800, 729 15th Street, N.W., Washington, D.C. 20005 originally on July 24th, 1989, by mail, with copies of the amended answer and again, on July 31, 1989, copies of the amended answer containing these few corrections, by messenger.

John D. Hemenway

John D. Hemenway #379663
4816 Rodman Street, N.W.
Washington, D.C.   20016
(202) 244-4819
FOR ALL OF THE DEFENDANTS

3