Attachment J

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| THANH VAN VO | : |
|     Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 07075-86 |
| | :   Calendar I/ Judge Dixon |
| THANH VONG HOAI, et al. | : |
|     Defendants. | : |

THE OPPOSING MEMORANDUM OF POINTS AND AUTHORITIES OF THE THIRD PARTY PLAINTIFFS THANH VONG HOAI AND DAVID HEMENWAY TO THE MOTION OF THE THIRD PARTY DEFENDANT SUN REFINING & MARKETING COMPANY, INC.("SUN")FOR SUMMARY JUDGMENT

    It is a fundamental requirement of advocacy under all codes and sets of rules of professional conduct, including the Rules of Professional Conduct, and their predecessor Code in the District of Columbia, that counsel refrain from misrepresenting the law and the facts. Thus, presently, under the section entitled "**ADVOCATE**", which attempts to control misrepresentations by counsel, even while permitting effective and aggressive advocacy, Rule 3.3, entitled "**CANDOR TOWARD THE TRIBUNAL**" of the D.C. Rules of Professional Conduct specifies in section (a) that "**A LAWYER SHALL NOT KNOWINGLY: (1) MAKE A FALSE STATEMENT OF MATERIAL FACT OR LAW TO A TRIBUNAL**". Regrettably the opening of the support memorandum filed in support of this present motion makes several misrepresentations which, at the outset, distort the proper picture of the case and deflect from that which is at issue. They would include the following:

    A) That the complaint filed in this suit on August 26, 1986 alleged that the present plaintiff, Thanh Van Vo, was wrongfully evicted from the gas station franchise which, it has now been determined, did not belong to Thanh Van Vo, but rather the present defendant, Thanh Vong Hoai. This is a misrepresentation of the facts of this case. The original complaint did not contain such an allegation. That allegation was added later. It was not conceived of by the plaintiff. It was an allegation introduced into the case by the TRO judge, *sua sponte*. The controlling law, as it was expounded upon in the federal litigation, now reveals that concept to be inapplicable, but the law that makes clear that the tort of wrongful eviction is not relevant here to the case of the plaintiff has not yet been focussed upon in the

-1-

present case. The actual entry of the wrongful eviction count into this case formally did not occur until the order which was signed by Judge Bowers on March 24, 1987, many months after the original complaint was filed in August of the preceding year. It is important to understand this because, as set out in the memorandum in support of the motion of the defendants Thanh Vong Hoai and David Hemenway to dismiss the case of the plaintiff Thanh Van Vo against them which is being filed nearly simultaneously herewith, it was the unexpected injection of this issue of "wrongful eviction" into the case (an unjustified injection as it turned out, had the controlling law actually been considered) which caused so much confusion and error early in the case. Counsel were not prepared to argue an issue never pled and it is even debatable, since it was never pled, whether a TRO could have issued in support of that which had not been pled, even if the bond for the TRO had been paid, which it was not (See below.).

B) It is misleading to state that the TRO "issued". In fact the TRO never went into effect because the plaintiff, Thanh Van Vo, failed to fulfill the precedent condition of posting a bond as required. The plaintiff attempted to "pay" for the TRO with an NSF check drawn on the account of the gas station franchise which he was illegally occupying. He did not pay with cash, as the TRO required. Nor did he attempt to pay with a counsel's check, as his counsel led the TRO court to believe would be issued. Instead the plaintiff himself gave the Court an NSF check which he knew was not backed by funds. It was drawn on an account which the plaintiff had taken control of but which was in fact the business account of defendant Hoai's gas station franchise.

The plaintiff Vo had, in a hostile fashion, temporarily taken possession of Mr. Hoai's gas station franchise without authority to do so. It is a misrepresentation of law and fact to state that a TRO "issued" when the check tendered to pay for the bond to secure the TRO was not honored when presented. Mr. Vo failed to make this "bad check" which he knowingly issued good until long after the TRO would have expired in 10 days had it been valid. So that it is a misrepresentation to state that a TRO issued. A bond is a condition precedent to a TRO (or for that matter any other injunction) as counsel well knows, and while a TRO may be written it does not "issue" within the legal meaning of that term unless the necessary precedent condition of posting or paying the bond in an manner that

constitutes actual payment is fulfilled. To misrepresent this matter at this time is to perpetuate the initial deception attempted upon this Court when Mr. Vo issued the bad check. Mr. Vo knowingly issued an NSF check on an account which was not properly his in the first instance.

The law of the District is clear that an NSF check is not "payment" of anything. No check is payment of anything until it is presented and honored by the institution upon which it is drawn. Until then it is merely a promise to pay, conditioned upon the institution upon which it is drawn having funds in the account of the drawing party to pay it with when presented. Further, had the bond been paid (as it was not) and had the TRO, therefore, actually ever issued, it would not have lasted past the 10 days set in it and by the Rules, for the plaintiff chose not to have any follow-on hearing or seek a preliminary or permanent injunction, a burden which was clearly his. A TRO which is not turned into a preliminary or permanent injunction ceases to exist and it should not be intimated that it has an precedential effect.

C) It is misrepresentative to state that the plaintiff Thanh Van Vo and the third party defendant Sun "entered into a consent order". Courts enter orders; parties apply for orders, though they may do so by agreement. Parties agreeing to a proposed order reach an agreement and then attempt to have that agreement entered as a consent order. To represent that parties enter into a consent order is to imply the very thing that was rejected by the federal courts, namely, that the private act of the parties in reaching an agreement which they then embody in a consent order that they then seek represents an official act of the Court. That is not so as Sun well knows for it is precisely what the federal courts have now held in this case. *Thanh Vong Hoai v. Sun Refining and Marketing Company, Inc.* (CA DC 1989) 275 U.S.App.D.C. 397, 866 F.2d 1515. Precisely what is at issue in the present motion is whether the finding that that private act was an illegal act under a narrow federal statute pursuant to a claim brought by one of the three presently remaining defendants in this case while this case, in all its complexity, was pending, now operates as a *res judicata* to bar the continuation of the present suit against Sun as embodied in the present third party claims of the three defendants against Sun.¹ The PMPA only allows

---

¹It should be noted that the PMPA only authorizes an action by a franchise, which is what defendant Thanh Vong Hoai was here, against a franchisor, Sun in this instance. The third-party plaintiffs Hemenway could not have sued under the PMPA and were not parties to that federal cause of action. The plaintiff here, Vo, could not have been a made a defendant under Hoai's PMPA claim, and

franchisees to sue franchisors for violation of its provisions and it only specifically authorizes the bringing of such suits in a United States District Court. 15 U.S.C. 2805(a). Further, it is held by some but not all federal courts that the pre-emption by the PMPA of local law, whether statutory or case law, is very narrow by some federal courts and that was the position taken in Mr. Hoai's PMPA case after much argument over the point. In light of the law in this jurisdiction on claim and issue preclusion, it is important that it be represented accurately and with precision what the facts of the entry of the consent order are. The opinion holding this act to be an illegal act, which was rendered by the Honorable Louis F. Oberdorfer in the United States District Court for the District of Columbia when he granted partial summary judgment to Mr. Hoai against Sun on the issue of liability, leaving a trial on damages only, is reported by Lexis-Nexis at 1990 U.S.Dist. LEXIS 13015.

The parties Vo and Sun did not "enter into" the consent order of September 8, 1986; they entered into a private agreement and then, in a surreptitious fashion, made use of Judge in Chambers provisions which then existed in this Court to have that private agreement entered as a consent order. Those provisions of the rules of this Court were subsequently altered to prevent such actions as were taken by Sun and Vo in seeking that consent order. The accurate version of these events is well known to Sun and its counsel and yet the intimation that this order represented some official act of this Court continues.

D) Mr. Hoai did not file suit against Sun in the United States District Court for the District of Columbia on September 25, 1997. Mr. Hoai in fact filed his suit in federal court on September 5, 1987, which was a Saturday. (See attached front page of complaint with the stamp of the U.S. District Court.) It was labor day weekend and the case was not recorded as filed and docketed by the clerk's office in the U.S. District Court until the following Tuesday and Wednesday after the labor day holiday. In fact Sun is

---

was not a party in Mr. Hoai's federal PMPA case against Sun. The third party defendants other than Vo could not have been sued under the PMPA and were not party to that suit. It was the more dominant view in the federal courts at the time that Mr. Hoai brought his PMPA action in the federal court against Sun that state courts did not have jurisdiction over PMPA claims and that they could only be pursued in a federal court. See the annotations to 15 U.S.C. 2805(a) in USCS and USCA. See particularly *Rustom v Atlantic Richfield Company* (CD CA 1985) 618 F.Supp. 210 where it was held that a PMPA franchisee/ plaintiff was barred where he filed in a state court and then the case was removed to a federal court because a PMPA suit can only be brought in a United States District Court.

well aware of this actual date because, without checking the court file in the federal court Sun successfully amended its defenses late in the case and added a defense of statute of limitations attempting to argue from long-overturned and weak authority that the service date rather than the filing date which it never bothered to check created a bar under the statute of limitations set out in the PMPA. Sun lost that argument when the actual filing date was shown and the authority which it relied upon, the Criterion Insurance case, turned out to have been overturned by our court of appeals. It is indeed odd that it still continues to make this argument which it has lost long since.

It is important that these matters be accurately understood, as they are highly material to the actual controversy raised by the present motion.

The PMPA case which Mr. Hoai brought in the United States District Court against Sun was a reaction to the present suit filed against Mr. Hoai by Mr. Vo and the events that then ensued. As pointed out it was a narrow cause of action specifically prescribed by statute. All the other parties in the present litigation apart from Hoai and Sun could not have been included in the PMPA claim, either as plaintiffs or defendants. The only issue before the Court at this time is whether Mr. Hoai's successful prosecution of that narrowly prescribed claim bars the third party claims by the three third-party plaintiffs in this suit against Sun, as opposed to the other third-party defendants and the counter-defendant. Sun used every obstructionist tactic it could think of to delay the PMPA case, including, after a verdict had been rendered against it, after judgment had been entered on that verdict, and after all its appeals had been exhausted, refusing to pay the judgment. In fact, the "collateral matter" mentioned by Sun in its support memorandum was the proceeding when Mr. Hoai had to attach Sun's bank account in Philadelphia in order to compel Sun to pay the judgment against it. Judge Shapiro was greatly upset with Sun because one of the landmark Supreme Court cases repudiating the argument which Sun put forward in refusing to pay the judgment rendered against it had originated in her court and, as she put it in the telephonic hearing she conducted, in which she made clear that its foot dragging would no longer be tolerated, the 3rd Circuit had reversed her and then the Supreme Court had reversed the 3rd Circuit and affirmed the correctness of her opinion. Before her, Sun counsel in Philadelphia, from Piper, Marbury, were strangely

silent and did not attempt to justify their unsustainable position, attributing it entirely to Washington counsel. These dilatory tactics of Sun were perhaps best summed up by Judge (now Chief Judge) Harry Edwards in the colloquy from the bench during appellate argument which led to Hoai's interlocutory appellate victory cited above, when he characterized Sun's arguments as a lot of "loose" "stuff".

It is indeed unfortunate that Judge Weisberg did not bother to delve into the law and facts of this case and that, he instead, chose to divert himself with his perceptions of personalities. Most memorable was when the defendant Hoai was finally able to persuade his terrified mother-in-law to come to court to testify about a threat made against her when she and Mr. Hoai's young children were locked in a Vietnamese grocery by some of the thugs and they began to address her with a frightening familiarity inappropriate to young men addressing a grandmother in charge of her grandchildren in Vietnamese society. The good judge treated the concept of such apprehension with contempt. But then the idea that there were Vietnamese taking over businesses, issuing bad checks (like the one issued to this court out of the account of Mr. Hoai's gas station franchise) as their "financing" and otherwise behaving in a criminal manner was met with much contempt in this case. We would only hope now that it would be possible to deal with the actual legal issues of the complex case. Prospects for this would now seem particularly hopeful precisely because a single judge will be able to delve into the issues of the case and it will be more difficult for those seeking to create such diversions into personality, as is attempted here, to achieve their purpose.

The actual argument of the third party defendant Sun in this motion, that is, the argument after the attempt to prejudice the Court including the misrepresentations clarified above and the gratuitous and irrelevant smears, omits to address a very important point which is crucial to the consideration of all claims of direct estoppel, claim preclusion or *res judicata*. That is the issue of <u>parties</u>. As Judge Harry Edwards said, in describing the case in the federal court during colloquy: "He is coming here, a different set of parties..." Transcript of appellate hearing, *Hoai v Vo, supra*, p. 7. The parties in this case are not the same as the parties in the PMPA case. As we have pointed only Mr. Hoai and Sun can have been parties in that claim. Neither Mr. David Hemenway nor Mr. John D. Hemenway were parties in that case.

They made no claim in it and thus it cannot foreclose their claims here. Further, the business conspiracy claim and the joint tortfeasance claimed here is against a group of third party defendants and the counter defendant Vo. Sun is only one among many third party defendants in this case. Further, the allegations are that it joined in the activities of Vo and his henchmen and did so knowingly, including actions of conspiracy to commit fraud (COUNT THREE) in a pattern of fraud and deceit that long predated the single cause of action in which Sun illegally terminated Hoai's gas station franchise by the single act of the illegal agreement which was entered as a consent order. See also the count on the Virginia Business Conspiracy Statute. It is the law that one who knowingly joins a conspiracy becomes liable for the preceding acts of the conspirators. It was mandatory that Hoai bring his counterclaims under Rule 13 or lose them, which he did to the original complaint and then again to the amended complaint which added the wrongful eviction count against him. The same may be argued for his third party claims. He could not separate them out and bring them elsewhere, he had to bring it all in one package in this Court or fall afoul of Rule 13's compulsory counterclaim requirement.

Thus this complex of litigation in no way resembles *Stutsman*, the case primarily relied upon by Sun in bringing this motion. *Stutsman v. Kaiser Foundation Health Plan*, (DCCA 1988). *Stutsman* concerns a single plaintiff, one not involved in having been sued and tied up in counter and cross claims against co-ordinating parties involved in conspiratorial tortious activities. Mr. Stutsman filed suits over the death of his wife and nothing else, one defendant, one plaintiff, one cause, the death of his wife. In his first suit he tried to join to it, after it was filed, a wrongful death claim (it was for survival and loss of consortium) and that was denied. He then failed to appeal that denial and instead attempted to prosecute a separate suit for the exact same claim, wrongful death. That does not provide much guidance for the present situation. In Mr. Stutsman's case the only transaction was the death of his wife. He was the only plaintiff. Kaiser was the only defendant. Nobody had sued Mr. Stutsman. There were no counterclaims to be lost. There were no third party defendants. There were no causes of action which arose before the death of his wife, which Kaiser then joined with. There were no contracts, only torts. On page 369 of the *Stutsman* opinion it is well to consider the phrase "same parties" and on the

following page the phrase "might have been litigated" in the same proceeding. It is hard to see how the claims of the Messrs. Hemenway, and those of the numerous other third party defendants "might have been litigated" in a proceeding available only to Mr. Hoai against Sun.

Indeed, we can examine another of the authorities relied upon by Sun to see how the analogy it assumes by not representing the factual pattern correctly does not bear up here. For if the Court will read the complaint it will see that it complains of the gangster-like activities of Vo and his cohorts in taking over the station, in threatening Mr. Hoai and others, and of the activities of Vo and his cohorts in threatening the plaintiffs at the gas station franchise on August 26, 1986 and various other acts. The action of Sun and Vo in joining in the agreement which they then persuaded the court to enter as a consent order on September 8, 1986 was a separate act long after much of the tortious activity complained of had begun. Thus if we look at *Faulkner v. GEICO* (DC App 1992) 618 A2d 181, we see that the cancellation of the contract is a separate cause of action from the auto accident. So here the termination of the franchise is a separate action from the threats of mayhem, the conspiracy to destroy not only the gas station franchise business but Mr. Hoai's grocery business as well, the illegal takeover of the station by fraud and deceit, the extortionate acts, all are separate from that cancellation of the contract. Everything connected with the gas station franchise is not the same cause of action. That would be like saying that everything connected with GEICO is the same cause of action. We hate to keep pointing this out but if the Court will glance at the top of page 7 of the Sun brief it will see that this is precisely what Sun does claim. It leads the court to believe that "all actions of GEICO" were part of the same claim.

Interestingly enough, Sun, in this brief, also relies upon *Washington Medical Center v Holle* (DC App 1990) 573 A2d 1269. We say interestingly enough, because in that decision it was the case that a federal judge, (in that case a federal bankruptcy judge) had specifically ruled that the federal claims were separate from and not pre-emptive of the state claims. As here it seemed that the federal claims were redressable only in the federal court. Accordingly the plea of *res judicata* was denied in that case. Not that it is an exact parallel, but it is indicative.

This ties in with the fact that here Sun attaches and incorporates into this present motion its earlier dismissal motion in which it speaks much of federal pre-emption under the PMPA. It fails to reveal to this Court, however, the actual holdings of the federal case concerning the actual pre-emption in this case. In Judge Oberdorfer's opinion of May 2, 1991, in the PMPA case, reported at 1991 U.S.Dist. LEXIS 5977, he specifically held: "The Act does not prevent terminated franchisees from suing franchisors under state law. See, e.g., O'Shea v. Amoco Oil co., 886 F.2d 584 (3rd Cir. 1989); Bellmore v. Mobil Oil Co., 783 F.2d 300, 303-06 (2d Cir. 1986). " There was at that time a diversity of opinion in the federal courts as to the breadth of the pre-emption of 15 U.S.C. 2806. Judge Oberdorfer chose to follow the 2d and 3rd circuit narrow interpretation. In doing so he stated further:

> 15 U.S.C. 2806(a). This provision "neither expressly nor impliedly preempted state law relating to any aspect of the termination or nonrenewal of petroleum franchises. Rather it preempts only state [actions] as to grounds for, procedures for, and notification requirements with respect to termination and non-renewal." Bellmore v. Mobil Oil Corp., 783 F.2d 300, 304 (2d Cir. 1986)(footnote omitted).

This was in the context of Hoai's arguing that, *in lieu* of having to prosecute his tort claims in this Court, he could bring them separately as part of his PMPA claim by claiming the damages for them under it. To this the U.S. District Court responded by stating:

> None of the tort claims enumerated by Hoai have anything to do with the "grounds for, procedures for, and notification requirements with respect to termination and non-renewal." Id. at 304. Nor do they in any way "conflict with Congress' objective of establishing `a single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises.'" Barnes v. Gulf Oil Corp., 795 F.2d 358, 364 (4th Cir. 1986) (quoting Senate Report at 19).

Thus, while the pre-emption argument is not precisely the same as the argument for claim preclusion it is highly interactive with it and it is already decided in these matters that the preemption of the PMPA claim is extremely narrow and does not preempt the tort claims which Hoai brings here in his third party claims. It would have been helpful to the Court if Sun had focused on this rather than seeking to divert from it.

Likewise, with regard to the dismissed civil rights claim: though all three of the present defendants were plaintiffs there, the defendants were not the same and, as with the PMPA claim, the focus of the case and its claim, regardless of recitations of background facts, was that the single act of persuading

the judge in chambers to enter the consent order on September 8, 1986, violated 42 USC 1983 inasmuch as it was the use of the state proceedings which did not allow for proper notice or require it for all parties to the litigation. The court held, in dismissing it, that this was merely non-federal abuse of process. As stated by the Fifth Circuit, it was a case, "concluding that when private parties abused D.C. court procedures, their actions cannot be ascribed to the state". *Cinel v. Connick* (CA5 1994) 15 F3d 1338, 1344. Thus the civil rights case was narrowly focused on the same isolatable fact as the PMPA claim, the agreement and the persuading of the Court to enter the consent order. The tort claims here had already been filed against Vo at that point as a counter claim and were, to be, after intervening motions, filed against the third parties who worked with, or joined in with him. It is late in the day to say that civil rights claims and common law torts are the same cause of action. These defendants agree, of course, that their civil rights and PMPA claims have now indeed been adjudged and will be dismissed from their present complaints, both counter and third-party, and they are preparing a motion to amend, based on the federal court events, which will make the request for that dismissal, among other things.

Sun has sought to confuse the court by citing commonality of background facts recited. But these recitations in the federal cases were only background, they were not the facts of the claim except on the narrow points which we have discussed. If Sun had never betrayed Hoai and joined forces with Vo in violation of the PMPA, the case in counter and third party claims against Vo and his various henchmen would have still existed and would still have been brought. What Sun did was to join in other, earlier causes and then proceeded as well, after the act of joining in the agreement which became the consent order and violated the PMPA and did not violate the civil rights laws, respectively, engaged in further acts which the PMPA court held were separate matters in the opinion cited in Lexis-Nexis above.[2]

Generally, too, it must be observed here that cause of action in fraud and contract are generally different. The outcome of the PMPA case, as we have seen, was that, contrary to holdings in other circuits, this circuit follows the 2nd and 3rd in holding that what is really at issue is provisions imposed as

---

[2]The federal court did rule that the tort claims could have been brought separately but offered no opinion as to what forum that would have had to be in as it was only considering the question of their being subsumed in the damage claims under the PMPA, which it held were strictly contractual in nature, absent even special damages.

-10-

a matter of contract upon the franchise agreement and relating to specific breaches of those terms as set out above. By contrast the tort claims here arise, not from the contractual relations between Hoai and Sun that then existed, but rather from the duty that Vo, Thach, and their colleagues had to refrain from tortious conduct such as threats, deceit, and other such acts. These are not contract matters, as Judge Oberdorfer observed. This is like the different causes of action cited in a case relied upon by Sun, *Goldkind v Snider Bros., Inc.* (DC App 1983) 467 A2d 468, 474 where it was noted that a question of contract between two parties in a multi-party situation had nothing to do with questions arising from the sale of a building and moneys owed on notes in that same real estate matter. The mere fact that several causes of action involve the same building does not make them one any more than every cause of action concerning Hoai's gas station franchise leads to the same result.

This is relevant to Sun's reliance on *Molovinsky v Monterrey Cooperative* (DC App 1997) 689 A2d 581. Of course it is the case that you cannot sue twice in contract on the same contract. But there is no attempt to do that here. In addition, we would point out that in that case the civil rights claim under D.C. civil rights law was not barred by *res judicata* but by the statute of limitations, thus indicating that a civil rights claim is not the same as a contract claim, nor as a tort claim. Nor is there any question of delay here. All claims were brought as soon as motions were resolved in a timely fashion.

It would be premature to grant summary judgment here. Summary judgment should always only be sparingly granted. This present motion is largely an attempt to mislead and confuse the Court. Further, it lacks, in the copy served upon these defendants, a statement of material facts not in dispute and is, therefore, defective and Sun ought to be required to redo it in any case. Mere statements of supposed facts in a brief do not comply; as such they are merely argumentation of counsel.

For some reason, Sun sums up its argument, at page 12 of its brief, by indicating that Hoai promised to withdraw his PMPA claim and he should now do so. We do so. That is obvious. These defendants have never sought to relitigate the same PMPA claim and don't do so now. But Sun misleads the Court by arguing that the PMPA claim is identical with the other causes of action in this third party complaint. That was established by Oberdorfer, as we have pointed out. As Judge Edwards

-11-

said when Sun sought to use the same tactics in the federal courts and equate the two cases, when Sun suggested raised the spectre that "the Superior Court goes one way and the District Court goes another": "The Superior Court apparently is perfectly willing to wait."  Colloquy transcript, supra, at p. 11.  This Court has waited, the matter has now been reopened.  It is time to eliminate those claims which were actually litigated and resolved in the federal courts and go forward with those that were not.

Respectfully submitted.

Laurence A. Elgin #159582
Suite 900, South Building
601 Pennsylvania Avenue, N.W.
Washington, D.C.  20005
(202) 628-1114

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served by United States mail, first class, postage prepaid, a true and accurate copy of the foregoing motion with points and authorities and proposed order this 22nd day of April, 1998, upon the following: Charles R. Martin, Esq., Ste. 200, 8996 Burke Lake Road, Burke, Virginia  22105, J. Gordon Forester, Jr., Esq., 1742 N Street, N.W., Washington, D.C.  20036; Robert J. Pleshaw, Esq., 1111 Fourteenth Street, N.W., Washington, D.C.  20005; My Linh Soland, Esq., 6400-C Seven Corners Place, Falls Church, Virginia  22044; Minh Van Nguyen, pro se, 4102 N. River Street, Arlington, Virginia, Michael Holm, Esq., 510 King Street, Alexandria, VA  22314.

Laurence A. Elgin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA

SEP 5  9 25 PM '87

THANH VONG HOAI )
   927 N. Highland St. )
   Arlington, Va. )
  )
   Plaintiff, )
  )
v. )   Civil Action No. _____
  )
SUN REFINING AND MARKETING )
COMPANY, INC. )
   1801 Market Street )
   Philadelphia, Pa. 19103 )
  )
   Defendants. )

### VERIFIED COMPLAINT UNDER THE FEDERAL PETROLEUM MARKETING PRACTICES ACT 15 U.S.C. 2801, ET SEQ. FOR DAMAGES AND FEES AND FOR DECLARATORY RELIEF

This is a case by a retailer-franchisee against a refiner-franchisor under the Federal Petroleum Marketing Practices Act, ("Act") 15 U.S.C. 2801, et seq., for violations of that act including an improper termination of the franchise of the plaintiff under the Act by which plaintiff's business was destroyed and his business reputation and livelihood severely damaged. Plaintiff alleges against the defendant as follows:

I.

### JURISDICTION

1) Jurisdiction is conferred on this Court, and this action is authorized by 15 U.S.C. 2805 (a), 28 U.S.C. 1331, 28 U.S.C. 1343, 28 U.S.C. 2201, and 28 U.S.C. 2202.

II.

### VENUE

--

C004