SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

(Civil Division)

| | |
|---|---|
| THANH VAN VO | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7075-86 |
| v. | ) Judge Dixon, Calendar no. 1 |
| | ) |
| THANH VONG HOAI, et al., | ) |
| | ) |
| Defendant. | ) |

OPPOSITION OF DEFENDANT JOHN D. HEMENWAY

To Motion for Summary Judgment By

SUN REFINING AND MARKETING COMPANY, THIRD PARTY DEFENDANT

Attorney John D. Hemenway, named as a defendant in the within-captioned action respectfully opposes the motion for summary judgment on behalf of Sun Refining and Marketing Company, third party defendant.

As required in SCR 12-I(k), there is found at Part IV of this Opposition, a concise statement of genuine issues setting forth all material facts as to which there exists a genuine issue necessary to be litigated.

This opposition is timely filed, for by mutual consent of counsel and coordination with chambers, the hearing date was rescheduled from April 24, 1998 to May 8, 1998, which not only recognizes that the motion addresses complex matters rather than simple issues, but also allows service ten days prior to the hearing date in accordance with SCR 56.[1]

---

[1] SCR Civ 12-I(k) permits a party to oppose within 10 days, but SCR Civ 6(a) instructs that when the period of time prescribed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. Further, SCR Civ

2

## I. LACK OF CANDOR IN THE SUN MOTION

In its motion, Sun Oil claims that the doctrine of res judicata bars the instant cross claim against third party defendant Sun. In the supporting Memorandum of Points and Authority, Sun repeats and restates the "res judicata" argument by subdivision into terms currently in fashion such as "claim preclusion" and "issue preclusion" and cites the authority in a number of precedents in which these issues were commanding.

The problem with this approach is that it is untruthful and misleading. It is calculated to deceive by leaving out a great deal of factual detail unflattering to Sun Oil which are the basis of the current claims against Sun as a third party defendant.

## II. SUN OIL'S CLAIM OF "RES JUDICATA"

As is shown in Part III, below, Sun Oil has not met the burden of compiling a statement of genuine issues setting forth all material facts as to which it contends there is no dispute. The party that seeks the benefit of res judicata has the burden of showing that all issues were determined in his favor in the earlier judgment. Spilker v. Hankin, 188 Fed.2d 35, US Ct. App.,DC (1951). Summary judgment is properly granted when, in the Court's sound judgment, pleadings and other materials on file show that no genuine issue of material fact remains for trial and that the movant is entitled to judgment as a matter of law. Yuen v. Durham 488 A2d 1346, DC Ct. App (1985). That is not the case here, for

---

6(c) which adds three days to the prescribed period if served by mail. Sun's motion was mailed on April 3; therefore, this motion to be timely should be filed April 22.

3

the only issue decided in the Federal Court was the matter of damages for wrongful termination of 8 months of agency. It is acknowledged that, under the Petroleum Products Marketing Act, federal preemption determines termination. But the preemption doctrine requires the court to examine congressional intent, which may be express or implied. To determine whether there is a conflict with state laws, courts indulge a rule of construction which avoids, if possible, finding a conflict. <u>Conference of State Bank Supervisors v. Conover</u>, 710 F2d 878, 228 U.S. App. D.C.367 (1983). Thus, the critical question in any preemption analysis is always whether Congress intended that federal regulation supercede state law. <u>Louisiana Public Service Com'n v. FCC</u>, 106 S.Ct. 1890, 476 U.S. 355, 90 L. Ed.2d 369. In its motion for summary judgment, Sun Oil has not attempted any analysis of congressional intent; it has not listed the counts of the 3rd party complaint as to whether or not they were subject to a fair and full hearing on the merits, nor can Sun Oil state that all of the material facts which are necessary for judgment are not in dispute. Therefore Sun's motion must fail.

III. <u>SUN OIL'S MISLEADING 'FACTS' NOT IN DISPUTE</u>

Sun Oil presents us with four (4) seemingly simple statements under the rubric: "<u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>". Looking carefully at each "material fact" reveals the extent to which Sun will resort to legerdemain to mislead the Court.

<u>SUN'S "MATERIAL FACT NOT IN DISPUTE" #1</u>:

1-1  This "fact" is not one fact, but FOUR.

4

1-2  Two of these "facts" have no date affixed to them, which is critical to a legal drafter intending to be deceptive and mislead a conscientious judge and an overworked law clerk.

1-3  The Complaint in this case <u>was not</u> filed on August 26, 1986, as stated by Sun Oil, but on "08/28/86," according to the Superior Court Docket (See Attachment #1).

1-4  It is not clear whether Sun is disputing or confirming the charges made by defendant Hoai in the third party complaint that was made necessary by Sun Oil, which abandoned its own dealer after they had promised to support him in order to terminate a vexatious, if totally unjustified lawsuit in which Sun, like Hoai, was wrongly named as a defendant.

<u>COMMENT</u>:  That same Superior Court Docket (P.31) identifies 08/28/86 as the date on which the so-called consent order was granted in violation of the Petroleum Marketing Practices Act, which provided the basis for litigation in the U.S.District Court. This order was negotiated without consulting the person most affected, defendant Thanh Vong Hoai, whose station had already been handed over to the extortionist, plaintiff Thanh Van Vo, by extending the terms of the T.R.O. obtained by trickery and deception.  There never was a valid T.R.O. because the $3,000 bond personally pledged by the plaintiff's attorney Vo never was paid to the court by Ottman's personal check as agreed to by Attorney Ottman at the close of the hearing, August 29, 1986.[2]  On September

---

[2]  The docket has the name of the judge granting the T.R.O. incorrect here.  It was not Judge Eilperin who presided as Judge in Chambers and who authorized the T.R.O. restoring control of the

2, 1986, plaintiff Vo presented his check, giving the appearance of having met the obligation Ottman had undertaken, but the check "bounced" as noted on the docket entry on September 30, 1986, fully a month after the hearing on the T.R.O. produced the bizarre result of restoring a law breaker to the station and evicting the legitimate dealer.[3] Sun's statement of material fact that "Sun was dismissed as a defendant and was named as a third party defendant by Thanh Vong Hoai" is a misleading partial truth since Sun Oil knew that it was cutting a deal with the man (plaintiff Vo) that Sun knew was actively threatening Hoai to extort possession of the station. In other words, Sun Oil was entering into a consent agreement with a law breaker which it knew or should have known was a violation of the Petroleum Marketing Products Ace. The material facts that are omitted from this statement are those which give rise to most of the non-preempted State claims[4] that remain to be litigated in the case at bar, following lifting of the stay. **END OF COMMENT**

---

station not to the legitimate dealer, but to the scrambler/extortionist, here the plaintiff, Thanh Van Vo.

[3] The docket entry on September 30, 1986 reads: "A debit of $3,000.00 was made to Civil Action Escrow Account CA7075-86, due to a returned check of Sun-Tech Company." The reference to the Sun-Tech company indicates that funds were misappropriated from the dealer account identified as legitimate by Sun's sales representative in Washington, Ernie Peele. (See Attachment #4)

[4] The District of Columbia is, for these purposes, of course, a State which has its own state law regarding the regulation of stations selling petroleum products and to the extent the provisions of this law are not preempted by the Petroleum Products Marketing Act, there is no basis for Sun Oil's insupportable claim that all is "res judicata" following the disposition of eight months damages in the U.S. District Court.

6

**SUN'S "MATERIAL FACT NOT IN DISPUTE" #2:**

2-1  Again, Sun Oil has the date wrong in its material fact "not in dispute" number 2.  This matter is important because Sun attempted to claim statute of limitations problems with the Petroleum Products Marketing Act filing. District Judge Oberdorfer refused to hear of it.  As a matter of fact, the suit was filed on September 5, 1987, as the stamp on the filing establishes. Because of holidays at that time of year, the Civil Docket shows that it was "Filed: 9/8/87" and entered on the docket "9/8/87".

2-2  Again, number two is not one material fact, but a large number.  It is self-evident that this "fact" must encompass many others because, according to Sun, "...the same facts as contained in the third party complaint."

2-3  While it is true that there is a strong similarity in the eight paragraphs cited, the two complaints are totally different, the complaint filed in the United States District Court contained 52 paragraphs and one count, i.e., violation of the Petroleum Marketing Practices Act: Unlawful Termination,  while the answer and third party claims to the amended complaint of Vo contained 275 paragraphs with fourteen counts.

COMMENT:  It is *prima* *facie* evident that a comparison and finding of similarity between eight paragraphs in the two documents does not "...disclose that both are founded on identical facts...", especially when one contains more than five times the number of alleged facts than the other. It merely shows that there is a similarity in eight of the paragraphs.  END OF COMMENT

7

### SUN'S "MATERIAL FACT NOT IN DISPUTE" #3:

3-1  This fact is not "material" to the case at bar. There was only one basis for the judgment, i.e., the one count noted above in paragraph 2-3 for unlawful termination. The amount of $65,000 was awarded as damages equivalent to eight months of income of the station.

3-2  This fact has little to do with the case at bar other than the fact that the plaintiff Vo, who had threatened the defendant Hoai in an attempt to coerce defendant Hoai into a forced and illegal transfer of the station, had no legal status in the station.

3-3  Further, this fact which is only tangentially relevant to the case at bar, suggests that Sun Oil accepted the fact that Hoai had won the suit. This is contrary to fact. The Petroleum Products Marketing Act contains a fee switching provision so that the prevailing party receives his attorney fees. For a period of years, Sun Oil disputed the amount owed, making offers only of a "global settlement", i.e., payment that would prevent the reopening of the legitimate state charges in the case at bar when the stay was lifted, as now. COMMENT: This is not a "material fact" relevant to a motion for summary judgment, but merely a misleading statement concerning procedural posture and not much of that. Not only did Sun Oil dispute the fact that Hoai was the prevailing party, but also the amount of interest owed, forcing Hoai to initiate collection procedures in Philadelphia, where Sun's home office is located. When District Court Judge Shapiro heard the

bargaining position of Sun Oil regarding the "global settlement" for attorney fees, judgment and interest, she termed the position of Sun "obscene."  **END OF COMMENT**

**SUN'S "MATERIAL FACT NOT IN DISPUTE" #4:**

4-1 This "fact" contains more material that simply is not relevant to the third party complaint now in the Superior Court. In other words, these procedural facts in the District Court have no bearing on a motion for summary judgment in the Superior Court where state causes of action are to be considered.  **COMMENT**: The 4th "material fact" is correctly listed as docket entry 424.  Yet the docket entries went above 500 and dragged on another three years.  One must wonder why Counsel Gordon Forester cites Judge Norma L. Shapiro of the Eastern District of Pennsylvania as saying that "...this is a classic case of the legal system gone amok...", but failing to tell this court that she had called the settlement posture of Sun Oil "Obscene".  Neither did Counsel Forester reveal to this Court that Judge Shapiro's reference to "...even a motion to disqualify counsel..." referred to the undersigned counsel for Hoai, which was accomplished by Jones, Day, Reavis & Pogue, for the purpose of depriving defendant Hoai of counsel during the T.R.O. hearing, claiming that Attorney John Hemenway would be called as a witness.  He never was and he would have been a redundant witness, in any event.  **END OF COMMENT**

IV. **STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**
         (PRESENTED BY THE DEFENDANT)

1. Michael Arif, Esq. on August 25-26, 1986, acted as attorney for Thanh Van Vo and confirmed that he was the attorney of

Thanh Van Vo.

    2.   John D. Hemenway, Esq. on August 25-26, 1986, acted as attorney for Thanh Vong Hoai and was the attorney for Hoai.

    3.   District of Columbia police were present on the premises of the Sunoco Station at 2305 Penn. Ave., S.E. on or about 4:30 p.m., August 25, 1986.

    4.   Michael Arif, Esq. was present at the Sunoco Station at 2305 Penn. Ave., S.E. on August 25, 1986, late in the day.

    5.   At the Sunoco Station at 2305 Penn. Ave., S.E., John D. Hemenway handed Michael Arif a document entitled, "Notice to Surrender Premises" signed by Ernie Peele, the local company representative of Sunoco, Thanh Vong Hoai, and John D. Hemenway.

    6.   On the document handed to Michael Arif, Ernie Peele of Sunoco had declared that Thanh Vong Hoai "...is the holder of the SUNOCO lease at 2305 Penn. Ave., SE and is the only person authorized to be in possession ..." of the station.

    7.   There was no disturbance of the peace at 2305 Penn. Ave., S.E. on August 25, 1986.

    8.   Attorney Michael Arif, acting for Thanh Van Vo, and Attorney John D. Hemenway, acting for Thanh Vong Hoai, agreed to have Sunoco representative Ernie Peele meet with them early the next morning on August 26, 1986.

    9.   Concerning the matter of continued possession of the station, both Arif and Hemenway agreed to abide by the decision of Sunoco representative Ernie Peele.

    10.   Thanh Vong Hoai issued instructions to close the station

for business on August 25, 1986, until after Ernie Peele had made his decision the next day.

11.  Thanh Vong Hoai hired two additional persons to remain at the station overnight August 25-26, 1986, for the purpose of guarding and protecting the station, among them, an off-duty and armed District of Columbia police officer.

12.  For security reasons, a locksmith was instructed by Thanh Vong Hoai to change the locks to the station office.

13.  David Hemenway agreed to stay overnight with the security guards.

14.  Before he left the station the evening of August 25, 1986, Michael Arif, Esq. agreed that his client, Thanh Van Vo, would abide by the decision of the Sunoco representative.

15.  Attorney Michael Arif handed David Hemenway a note to give to his client, Thanh Van Vo, if he came in the night, explaining that he wanted to guard against the possibility of Van Vo's wrath as he warned of violence.

16.  Thach Duy Nguyen and a man identifying himself as "Lee" remained on public property, but near the station all through the night, being seen from time to time outside the perimeter of the property.

17.  At approximately 5:00 a.m. Thach Duy Nguyen was seen driving off, leaving "Lee" behind.

18.  At about 7:40 a.m. a vehicle (a Van) drove onto the station property carrying Mr. Van Vo, Thach Duy Nguyen, "Lee" and several other Vietnamese.

19. Soon after 7:40 a.m. Thanh Van Vo walked up to the station office door, which David Hemenway had locked, utilizing the newly installed lock for which he alone had a key.

20. The door of the station office was made of glass and on either side large glass panels formed the only barrier between the outside and the inside, as illustrated in the attached sketch.

21. Thanh Van Vo was all smiles upon approaching the office, saying "Hello" to Thanh Vong Hoai, but when close enough to the door to see that it was locked, he seemed to turn into a madman.

22. Upon reaching the thick glass wall of the office, Thanh Van Vo hit the glass windows, yelling at Hoai and pointing at David Hemenway as he beat at the glass.

23. At about 7:45 a.m., when Thanh Van Vo began to take action to break the glass, David Hemenway called 911.

23. Thanh Van Vo cried out in Vietnamese, "Nobody goes against me." He screamed that he was going to kill David Hemenway and his family.

24. Without the ability to understand Vietnamese, David Hemenway understood the danger of the situation and was fearful for Mr. Hoai and himself, outnumbered as they were.

25. "Lee" produced a long narrow knife and began to pick the locked door to the cashier's cage between the gasoline pumps.

26. David Hemenway, ever more fearful of the imminent danger he and Hoai were in, upon seeing the knife, and fearing that "Lee" might somehow cut the phone lines (which were attached to the cashier's cage), again called the police (911) while there still

was an ability to reach the outside.

27. When a woman operator for police emergency (911) said that someone was coming, David Hemenway asked her to tell them to hurry, for he feared that they were about to be attacked physically and that he would have to defend himself.

28. Then Thach Duy Nguyen came to the glass window of the office to yell threats at Thanh Vong Hoai and David Hemenway. At this time a noise was heard in the back of the shop which sounded like the noise someone would make while breaking into the station via the back window.

29. Upon hearing this noise, David Hemenway called the Police (911) once again to tell the police that if they did not get to the station fast, they (he and Hoai) would have to face violence.

30. The male operator on the third call said that someone was coming.

31. David Hemenway went into the garage repair bay area of the station, picked up a steel bar with which to protect himself, placed it on the desk of the office and secured the door between the garage bays and the office.

32. Thach Duy Nguyen observed these preparations David Hemenway made to defend himself and started to yell for Hemenway to "Come out and fight!"

33. About 8:00, when the police arrived, Thach Duy Nguyen was yelling from the tarmac of the station, outside the glass windows, "You coward. I kill you. I kill you. Fight me!"

34. The police got out of the squad car with drawn guns as

Attorney John D. Hemenway arrived with some food from MacDonalds and they initially pointed their guns at the station office, because suddenly the Vietnamese were all smiles.

35. The police shouted to a startled John Hemenway, "Stay back, Sir, or you will get shot!" Hemenway saw his son and Hoai in the station office and Vo and his henchmen outside and informed the police that they had the situation under control.

Wherefore, the defendant John D. Hemenway, acting *pro se*, prays that this Honorable Court will agree that the 3rd party defendant Sun Oil has failed to demonstrate that it should be granted summary judgment and that a schedule should be set for the remaining necessary discovery at a status hearing.

Respectfully submitted

John D. Hemenway DC #379663
Defendant, *pro se*

CERTIFICATE

The undersigned declares that he has served a copy of the within contained opposition to Sun's Summary Judgment Motion by U.S. Mail, all postage prepaid, this 22nd day of April, 1998, to the following persons: Charles R. Martin, Esq., Suite 200, 8996 Burke Lake Road, Burke, VA 22105, Robert J. Pleshaw, Esq. 1111 Fourteenth Street, N.W., Washington, D.C. 20005, Minh Van Nguyen, 4102 N. River Street, Arlington, Virginia, and J. Gordon Forester, Jr., 1742 N. Street, N.W. Washington, D.C. 20036.

John D. Hemenway