# DEALER FRANCHISE

## PART VII

## DAILY RECORDKEEPING AND

## INVENTORY CONTROL PROVISIONS

Dealer shall comply with all applicable laws, rules, regulations and orders now or hereinafter in effect relative to storing petroleum products. These laws include, but are not limited to, the Federal Occupational Safety and Health Administration (OSHA), Service Station Regulation 1910.106(g), which specifically requires that Dealer maintain and reconcile accurate daily physical and book inventory records of Dealer's underground storage of petroleum products to provide early detection of any leaks from such underground tanks and/or piping installation.

1. Dealer shall, on a <u>DAILY BASIS</u>, do the following:

   a. Gauge the physical measurements of all petroleum products contained in Dealer's underground storage. This includes checking for any water accumulation with water finding paste.

   b. Maintain adequate gasoline inventory records which shall include, by type of product, a reconciliation between sales, receipts and inventory on hand as identified in "a" above.

   c. Compute for each stored product its volume gain or loss.

   > NOTE: The mere recording of pump meter readings and product delivery receipts does not constitute adequate inventory records.

   d. Keep underground storage fill and gauge boxes free of ice, snow, water and parked vehicles prior to a transport delivery.

   e. Insure that all underground storage caps and fittings are securely replaced after removal.

   > NOTE: Dealer shall keep all gasoline inventory records on the premises for a minimum of twelve months.

2. In the event of the following, Dealer shall:

   a. Notify Company immediately if one-half (1/2) inch or more of water is present in any underground storage tank.

   b. IMMEDIATELY STOP SELLING PRODUCT TO THE PUBLIC if two (2) inches or more of water is present. NO FURTHER PRODUCT DELIVERIES WILL BE MADE BY COMPANY UNTIL THE WATER IS REMOVED.

   c. Notify Company immediately in the event of an abnormal product quantity difference (either plus or minus) and confirm such notification in writing with full details within ten (10) days.

   > NOTE: Abnormal product quantity differences for the purposes of this provision are defined as any change in the trend of normal daily product variation which is significant and any daily volume difference of 75 gallons or more.

   d. Permit Company and any local, state or federal enforcing authority, during normal business hours, to inspect Dealer's gasoline inventory records when Company desires to monitor compliance with this provision and/or where there is cause to believe there may be an underground storage leak and/or product contamination.

   e. Report immediately to the Company's Maintenance Department all broken underground storage caps and fittings.

   f. Inform Company in a timely manner of any petroleum dispensing equipment failure.

3. If Dealer should fail to strictly comply with the provisions in Sections 1 and 2 of Part VII, Dealer shall be solely liable for all related product losses, claims, customer complaints, and all damage to personal and real property.

4. In all situations where Company provides a maintenance service call for alleged water contamination and/or product losses, the following procedure is to be employed:

   a. Dealer (or an authorized employee) has the right to observe the petroleum dispensing and/or storage equipment being checked by Company's maintenance representative.

   b. Upon conclusion of the service call, Company's maintenance representative will summarize findings and action taken, if any, on a <u>Maintenance Inspection Report</u> which will then be signed by Dealer (or an authorized employee).

5. In the event of product losses resulting from equipment failure where Company owns the equipment, and Dealer keeps proper inventory control records as in Section 1 of Part VII, and Dealer informs Company in a timely manner as required by Section 2 of Part VII, Company shall authorize reimbursement for all of Dealer's bona fide product losses from the time that Company is informed.

NO. 0004-4180-14

DIVISION  Philadelphia - 750

### RECEIPT FOR FRANCHISE CONTRACTS
### SUN REFINING AND MARKETING COMPANY

Franchise Name  THANH VONG HOAI

Franchise Location  2305 Pennsylvania Avenue, S.E.

Washington, D.C.  20020

The undersigned, personally and/or as an agent, representative, officer or partner of the named prospective franchisee, does hereby acknowledge receipt of the following franchise contracts with all typing blanks filled in:

_____ Dealer's Franchise

___X___ Trial Franchise

___X___ Amendment/Addendum

___X___ UCC-1

___X___ Inventory Security Agreement

___X___ Resale Certificate

___X___ Insurance Certificate

___X___ Bank Honor Draft

___X___ Disclosure Statement

_____ _____

DATED:  3/31/86

THANH VONG HOAI

*EXHIBIT # 4*

Form 5144 (3/83)

Date: __March 27, 1986__

Duns No.: __0004-4180-14__

Division: __750__

# DISCLOSURE STATEMENT

**COMPANY/FRANCHISOR:**   SUN REFINING AND MARKETING COMPANY

**COMPANY'S ADDRESS:**   1801 Market Street
Philadelphia, PA  19103

**DEALER/FRANCHISEE:**   THANH VONG HOAI

**PREMISES' ADDRESS:**   2305 Pennsylvania Avenue, S.E.
Washington, D.C.  20020

## FRANCHISE BUSINESS HISTORY AND PREMISES INFORMATION:

The following information is being provided by Company, as Franchisor, to the named prospective Dealer, as Franchisee. This information was prepared on the above date from Company's records, and is correct as of such date.

1. ## Purpose and Type of Franchise:

   A Franchise, when made and executed by the Company and the Dealer is for the purpose of stating the terms and conditions by which Company will make available for sale Company's branded motor fuel to the Dealer, and the method by which the Dealer will operate Dealer's business, including the resale of Company's branded motor fuels to the public, at the Premises described in the Franchise. Depending upon the type of motor fuel franchise, as specified in the Franchise, Dealer may offer various automotive products and services to the motoring public normally associated with a branded retail gasoline outlet.

2. ## Dealer's Operation of the Business and Premises:

   Company may, as a condition of entering into a Franchise, include in the Franchise a provision designating HOURS AND DAYS OF OPERATION of Dealer's business at the Premises. If such is the case, then Dealer shall strictly comply with same, during the term of the Franchise.

3. ## Requirements to Sell Products:

   The Dealer is required to have available for sale and to promote and sell to the motoring public representative amounts of Company's branded motor fuels, now or hereafter marketed by Company, as provided by the Franchise. The Dealer, as an independent business person, is not required by the Company to sell or provide any other products or services. Company offers other branded and sponsored motor oils and/or automotive lubricants, tires, batteries and accessories which Dealer may purchase and resell depending on the type of motor fuel franchise. Dealer may sell competitive branded products, including motor fuels, subject to the foregoing and the terms of the Franchise.

© Copyright 1983 Sun Refining and Marketing C

4.  Franchise Premises Business History:

A.  Previous Dealer(s) (for last three years of operation) and reason for ending relationship:

| Name/Address | From | To | Reason for Ending Relationship |
|---|---|---|---|
| Temp Closed | 1-7-86 | Present | |
| M. Sherbert | 3-29-82 | 1-6-86 | Dealer's Request |
| | | | |
| | | | |

B.  Gallonage Volume History (for last three years of operation):

| From | To | Volume (Gallons) |
|---|---|---|
| Jan 1984 | Dec 1984 | 734,050 |
| Jan 1983 | Dec 1983 | 806,302 |
| Jan 1982 | Dec 1982 | 696,835 |
| | | |
| | | |
| | | |

5.  Initial Investment Requirements:

A.  TO COMPANY:

Collateral Deposit *          $5,000.00

Gasoline Inventory          20,000.00
Diesel

Rent (one month in advance)          2,000.00

SUBTOTAL          $ 27,000.00

> *Collateral Deposit:  In all instances, the Dealer must deposit with Company cash or securities acceptable to Company having a value equal to at least the initial load of gasoline to be delivered to the Franchise Premises.  Company may require Dealer to periodically increase amount of such deposit to currently reflect increases in motor fuel prices.  In addition, Company may require Dealer to deposit funds equal to one or more month's rental for the Franchise Premises.  The exact amount of the deposit is determined by the Company.  This amount is recorded in, and the rights of the parties thereto are governed by the Collateral Deposit Provisions in the Franchise.

B.  **TO VARIOUS THIRD PARTIES**                                    $ _44,000.00_ **
    (Estimation)

---

**\*\*IMPORTANT NOTE:**  This is an approximation by Company of the funds needed by Dealer for investment with various third parties. Depending on the type of franchise and the geographical location, the amounts involved may vary widely.

Dealer must obtain and maintain adequate insurance as specified in the Franchise before commencement of the Franchise business. Adequate insurance includes garagekeeper's liability, workmen's compensation, unemployment compensation, fire, theft and general liability coverage.

All permits, licenses, tax deposits, equipment and supplies required by any governmental authority relating to the Franchise business and location and its ongoing operation are Dealer's responsibility. If Company owns the Premises, the zoning permits and ad valorem taxes are excluded from this requirement.

Some examples of other third party investment requirements are:  power, water, sewer, space heating, telephone, merchandise, tools, equipment and deposits for utilities.

---

TOTAL ESTIMATED Initial Investment              $ _71,700.00_

6.  Credit Terms:

Company's basic terms and conditions for credit and financing require Dealer to pay for all motor fuels and other merchandise, supplies and equipment when received or when invoiced by Company. In all other instances, Company's credit arrangements are entirely dependent upon the credit status and history of the individual Dealer, and are subject to change by Company. Each party's obligations and rights concerning terms of payment are governed by the Franchise under the section "Terms of Payment". All credit terms and methods of payment shall be deemed a part of the Franchise.

7.  Equipment Loaned to Dealer:

All equipment listed in the Franchise is loaned (except credit card imprinter(s), which is leased),.by the Company to the Dealer upon the terms therein stated.

A credit card imprinter may be purchased or obtained from any source, or may be rented on an annual basis (rental payable in advance) from Company for the amount and upon the conditions set forth in the Franchise. Terms and conditions concerning credit card imprinters rented from Company are subject to change by Company.

8.  Maintenance:

Dealer's responsibility regarding maintenance of the Premises and equipment are described in the Maintenance Provisions of the Franchise.

9.  Daily Recordkeeping and Inventory Control:

Dealer is responsible for daily recording and reconciliation of motor fuels inventory (book to physical) to provide the early detection of any leaks and/or product and environmental contamination from the underground motor fuels storage system. This responsibility is specified in and governed by the Daily Recordkeeping and Inventory Control Provisions of the Franchise.

10. <u>Ownership Status of Franchise Premises:</u>    COMPANY OWNED

_____

_____

_____

11. <u>Underlying Lease:</u>    NOT APPLICABLE

Company's right to grant possession of the Premises to Dealer is subject to an underlying lease which contains an initial term of _____ (_____) years, from _____ to _____ with (_____) _____ (____) year renewal options, which lease might expire or nonrenew at the expiration of the initial term or any renewal option thereof.

12. <u>Property Disposition:</u>    NOT APPLICABLE

Legally binding obligations for the sale, demolition or condemnation of the Franchise Premises, known by the Company, if any, are:

_____

_____

_____

13. <u>Rent:</u>

Company will seek to collect from its Dealers a monthly flat rent equal to a percentage of each year's current fair market value of the property, plus one-twelfth of the annual carrying charges associated with the Premises.

14. <u>Training Program:</u>

The Company's Dealer Development Program is conducted at the Dealer Development Center located in the Greater Philadelphia, Pennsylvania, area.

The Center provides management training for new Dealers (or, if the Dealer is a corporation or a partnership, a mutually agreed upon individual who will exercise managerial responsibilities at the Franchise Premises). The Company recommends participation since it will be mutually beneficial and attendance of the Dealer at the Dealer Development Program may be required by the Company. Topics covered in the Dealer Development Program may include:

| | |
|---|---|
| Credit Cards | Dealer Financial Record System |
| Motor Oil | Planning |
| Tires, Batteries & Accessories | Personnel Management |
| Driveway Service | Merchandising/Sales Promotions |
| Cash & Carry Sales | Safety |
| Daily Recordkeeping and Inventory Control | Dealer Maintenance Responsibility |

15. **Division Personnel:**

The following individuals will be Dealer's contacts at this time during the operation of the Franchise business:

| | | |
|---|---|---|
| Retail Marketing Representative | Name: E. Peele | Phone: 202-737-7622 |
| Terminal Dispatcher (Motor Fuels) | Name: Li C or EARC | Phone: 800 551-5300 |
| Maintenance Man | Name: Lee Alston | Phone: (202) 737-7622 |
| Credit Representative | Name: J. Prendergast | Phone: 215 499-5773 |
| TBA Representative | Name: Craig Matter | Phone: (215) 499-5770 |
| Sales Manager | Name: H. Vaughn | Phone: 215-499-5761 |

Company's _____ Division Office is located at: 1801 Market Street

Philadelphia, PA 19103

16. **Miscellaneous:** _____

_____

_____

_____

17. **Attachments:**

The following franchise contracts and documents have been provided and reviewed with the prospective Dealer by the Company:

| | | | |
|---|---|---|---|
| _____ | Dealer Franchise | X | Rent Draft Agreement |
| X | Dealer Trial Franchise | X | Surcharge Collection Authorization |
| _____ | Dealer Supply Franchise | _____ | Credit Card Wall Chart |
| X | Certificate of Insurance | _____ | |

The undersigned hereby acknowledges receipt of this completed Disclosure Statement dealing with the Franchise Premises above stated, and understands that this information is offered and should be considered in the Dealer's determination of taking the Franchise.

Dealer has read and understands the foregoing information. In considering whether or not to enter into a Franchise with Company, Dealer is cautioned that:

(a) Company can estimate, based upon its experience and information, what may be the Dealer's earnings from the Franchise business, but cannot, and does not, make any representation, promise or claims whatsoever, concerning the future earning potential of the Franchise business.

(b)   Dealer should carefully examine this Disclosure Statement, the Franchise and all related documents regarding the Franchise offered by Company.  The Dealer should also examine the equipment and the location before entering into the Franchise.

(c)   Any agreements or understandings purported to be made between the Dealer and the Company must be made in writing and signed by an authorized representative of Company in order to be binding.

(d)   Dealer is cautioned to not borrow or expend any funds, nor take any action to perform the Franchise until and unless the Dealer Franchise, Dealer Trial Franchise or Dealer Supply Franchise has been signed by both parties.

(e)   Before executing a Franchise and any other documents relating to the Franchise, Dealer should consult with an attorney and an accountant of Dealer's choice.

(f)   Company may, per the terms of the Franchise, have the right to meet bona fide purchase offers of third parties for Dealer's business.

(g)   Company, by entering into the Franchise, is not granting any exclusive territory or market area to Dealer, and, depending upon future changes in market conditions and plans, Company may enter into Franchises with other Dealers within the same general vicinity.

Received: ___3/31/8 6_____          _____

_____          _____

_____          _____
            (Dealer)                          (Witness)

SUN REFINING AND MARKETING COMPANY

I certify that:

**Name of Firm (Buyer)**  THANH VONG HOAI

**Add.**  440 E. Swedesford Road, Wayne, PA 19087

**Street Address or P.O. Box No.**  2305 Pennsylvania Avenue, S.E.

**City**  Washington, D.C.    **State**    **Zip Code**  20020

Is engaged as a registered
☐ Wholesaler
☒ Retailer
☐ Manufacturer
☐ Lessor (*See note on reverse side)
☐ Other (Specify)

and is registered with the below listed states and cities within which your firm would deliver purchases to us and that any such purchases are for wholesale, resale, ingredients or components of a new product to be resold, leased, or rented in the normal course of our business. We are in the business of wholesaling, retailing, manufacturing, leasing (renting) the following:

| City or State | State Registration or ID No. | City or State | State Registration or ID No. |
|---|---|---|---|
| Washington, D.C. | | | |
| City or State | State Registration or ID No. | City or State | State Registration or ID No. |
| | | | |
| City or State | State Registration or ID No. | City or State | State Registration or ID No. |
| | | | |

I further certify that if any property so purchased tax free is used or consumed by the firm as to make it subject to a Sales or Use Tax we will pay the tax direct to the proper taxing authority when state law so provides or inform the seller for added tax billing. This certificate shall be part of each order which we may hereafter give to you, unless otherwise specified, and shall be valid until cancelled by us in writing or revoked by the city or state.

General description of products to be purchased from the seller:

PETROLEUM PRODUCTS

Under penalties of perjury, I swear or affirm that the information on this form is true and correct as to every material matter.

**Authorized Signature (Owner, Partner or Corporate Officer)**

**Title**  dealer    **Date**

**TO OUR CUSTOMERS:**

In order to comply with the majority of state and local sales law requirements, it is necessary that we have in our files a properly executed exemption certificate from all of our customers who claim sales tax exemption. If we do not have this certificate, we are obligated to collect the tax for the state in which the property is delivered.

If you are entitled to sales tax exemption, please complete the certificate and send it to us at your earliest convenience. If you purchase tax free for a reason for which this form does not provide, please send us your special certificate or statement.

This form of certificate has been determined to be acceptable to the following states:

| | | |
|---|---|---|
| ALABAMA | MAINE | RHODE ISLAND |
| ALASKA | MASSACHUSETTS | SOUTH CAROLINA |
| ARIZONA | MARYLAND | SOUTH DAKOTA |
| ARKANSAS | MICHIGAN | TENNESSEE |
| COLORADO | MINNESOTA | TEXAS |
| CONNECTICUT | MISSOURI | UTAH |
| DISTRICT OF COLUMBIA | NEBRASKA | VERMONT |
| GEORGIA | NEVADA | WASHINGTON |
| IDAHO | NEW MEXICO | WISCONSIN |
| ILLINOIS | NORTH DAKOTA | WEST VIRGINIA |
| IOWA | OKLAHOMA | WYOMING |
| KANSAS | PENNSYLVANIA | |

**NOTE:** Arizona law provides that a seller will be held liable for sales tax due on any sales with respect to which an exemption certificate is found to be invalid, for whatever reason.

Illinois, Iowa, and South Dakota do not have an exemption on sales of property for subsequnt lease or rental.

**CAUTION TO SELLER:** In order for the certificate to be accepted in good faith by the seller, the seller must exercise care that the property being sold is of a type normally sold wholesale, resold, leased, rented, or utilized as an ingredient or component part of a product manufactured by the buyer in the usual course of his business. A seller failing to exercise due care could be held liable for the sales tax due in some states or cities.

Misuse of this certificate by the seller, lessor, buyer, lessee, or the representative thereof may be punishable by fine, imprisonment or loss of right to issue certificates in some states or cities.



**Certificate of Insurance**

**Sun Company, Inc., its subsidiaries and affiliates**

This Certificate is issued as a matter of information only and confers no rights upon the Certificate holder. This Certificate does not amend, extend or alter the coverage afforded by the policies listed below.

| Name and Address Of Insured | Name and Address Of Agency |
|---|---|
| 0004-4180-14<br>THANH VONG HOAI<br>2305 Pennsylvania Avenue, S.E.<br>Washington, D.C.  20020 | |

This is to certify that policies of insurance listed below have been issued to the insured named above and are in force at this time. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies.

| Type of Insurance | Company Affording Coverage And Policy Number | Policy Expiration Date | Limits Of Liability in Thousands (000) | | |
|---|---|---|---|---|---|
| | | | | Each Occurrence | Aggregate |
| **General Liability**<br>☐ Comprehensive Form<br>☐ Premises-Operations  – incl<br>☐ Explosion and Collapse Hazard<br>☐ Underground Hazard | Garage Liability | | Bodily Injury | $ | $ |
| | | | Property Damage | $ | $ |
| ☐ Products/Completed<br>    Operations Hazard<br>☐ Contractual Insurance<br>☐ Broad Form Property Damage<br>☐    endent Contractors | | | Bodily Injury and Property Damage Combined | $ | $ |
| ☐    ...onal Injury | | | Personal Injury | | $ |
| **Automobile Liability**<br>☐ Comprehensive Form<br>☐ Owned | | | Bodily Injury (Each Person) | $ | |
| ☐ Hired | | | Bodily Injury (Each Accident) | $ | |
| ☐ Non-Owned | | | Property Damage | $ | |
| | | | Bodily Injury and Property Damage Combined | $ | |
| **Excess Liability**<br>☐ Umbrella Form<br>☐ Other Than Umbrella Form | | | Bodily Injury and Property Damage Combined | $ | $ |
| **Workers' Compensation and Employers Liability** | | | Statutory | | |
| | | | | $ | (Each Accident) |
| **Other**<br>Garagekeeper's Legal<br>Liability | | | | | |

Description of operations/locations/vehicles to which this certificate applies.

750 EP AA

Cancellation: Should any of the described policies be cancelled before the expiration date thereof, the issuing company will endeavor to mail 10 days written notice to the named certificate holder, but failure to mail such notice shall impose no obligation or liability of any kind upon the company.

| Name and Address Of Certificate Holder<br>Sun Refining and Marketing Co.<br>1801 Market Street<br>Philadelphia, PA  19103   Attn:  B. Boyd<br>22nd Flr. | Date Issued |
|---|---|
| | Authorized Representative |

Dealer shall further indemnify and reimburse Company for:

(1) Costs, expenses and fees (including court costs and attorneys' fees) incurred by Company relating to litigation undertaken by Company against Dealer to successfully enforce, terminate or nonrenew this Franchise, or to collect money or recover property due by Dealer to Company.

(2) Costs, expenses and fees (including expenses of transporting witnesses and documents, attorneys' fees, document searches and reproduction expenses, responding to subpoenas of courts, governmental demands for information) incurred by Company by reason of private legal matters of the Dealer, such as divorce and probate actions, and governmental investigations requiring the Company to produce information regarding the personal or business affairs of Dealer.

(3) Costs, expenses, fees (including court costs, attorneys' fees and costs of litigation), taxes, fines, penalties and judgments incurred or paid by Company by reason of a violation of law by Dealer.

b. All amounts due Company by Dealer by reason of indemnities and obligations imposed upon Dealer by this Franchise shall become due and payable by Dealer to Company upon demand as a part of Dealer's account to Company.

d. Dealer shall not be liable to Company, and does not protect, indemnify or save harmless the Company or any other person for claims, losses and damages caused by or arising solely out of the negligence of Company, its employees and contractors.

**13. INSURANCE**

a. To adequately protect both Dealer and Company against legal actions by customers, employees and members of the public generally, Dealer shall purchase and maintain at Dealer's expense, the following insurance coverage:

(1) Workmen's Compensation and Occupational Disease Insurance including Employer's Liability Insurance complying with the State in which this Franchise is to be performed or elsewhere as may be required. Employer's Liability Insurance be provided with a limit of not less than $500,000 per occurrence. If Dealer is not subject to requirements of state Workmen's Compensation Occupational Disease Laws, Dealer shall purchase voluntary Compensation Coverage to protect his employees.

(2) Comprehensive General Public Liability Insurance, including coverage for products and completed operations work, and Contractual Liability Insurance covering the indemnity clauses in this Franchise, with minimum limits of:

$500,000 — Bodily Injury and Property Damage, combined single limit per occurrence.

(3) Garagekeepers' Legal Liability:

$500,000 — Bodily Injury and Property Damage, combined single limit per occurrence.

(4) Automobile Liability Insurance:

$500,000 — Bodily Injury and Property Damage, combined single limit per occurrence.

b. A certificate or other appropriate evidence of insurance coverage as above required, including a provision holding the Company harmless, shall be provided by Dealer to Company. It shall be Dealer's responsibility to keep said insurance coverage in full force and effect during the term of this Franchise. Such certificate of insurance shall provide that ten (10) days' advance written notice shall be given to Company in the event of any change in, or cancellation of, such insurance.

**14. TAXES, FEES, LICENSES AND PERMITS**

Dealer is solely responsible for all taxes, fees, licenses and permits required in connection with Dealer's business, Premises and Equipment used by Dealer, including permits, fees and certifications for dispensing pumps. Dealer shall pay or remit in payment all taxes imposed on bills of lading, invoices, and delivery tickets for products purchased hereunder which are not included in Company's prices, unless Dealer furnishes Company with a legal exemption certificate with shipping instructions.

**15. MULTIPLE DEALERS**

If more than one person is named as Dealer herein, any one of them shall be deemed to have the authority to bind all named Dealers with respect to all aspects of the franchise relationship, including, but not limited to, the negotiation of the terms of subsequent franchise agreements, and the acts of any of them (including, but not limited to, giving or receiving of notices, signed reports, termination, nonrenewals and receipts, and transfer of credit card sales slips), shall conclusively be deemed the acts of all said Dealers, each of whom shall be jointly and severally liable hereunder to Company.

**16. NOTICES**

Any notices required by, or otherwise given in connection with, this Franchise shall be in writing and signed by the party giving such notice. Any notice directed to Company shall be mailed or delivered to Company's address stated in Part A Cover Provisions, and notices directed to Dealer shall be mailed or delivered to Dealer at the Premises.

**17. NON-WAIVER**

Should either Company or Dealer at any time waive or fail to enforce any provision of this Franchise (including all parts, amendments, ratifications and addenda thereto), such waiver or failure to enforce shall not be construed as a waiver or relinquishment of that party's right thereafter to enforce any such provision.

**18. ENFORCEMENT, APPLICABLE LAW, RENEWAL, NONRENEWAL AND TERMINATION OF THIS FRANCHISE**

a. Company has the right to enforce and require specific performance of all provisions of this Franchise including, but not limited to, Company's right to seek injunctive relief and any other rights or remedies available to Company.

b. This Franchise is subject to and governed by the Act, which is made part of this Franchise for purposes of expressing the grounds upon which it may be terminated and nonrenewed by Company. The Company's right to terminate and nonrenew under the Act shall be in addition to, and not in extinguishment of, all other rights and remedies provided in favor of Company by applicable law and this Franchise. Therefore, should Dealer fail to substantially comply with, or violate, any requirement imposed upon, or promise made by Dealer in this Franchise, Company may nonrenew or terminate this Franchise.

5

*EXHIBIT # 7*

AUTHORIZATION TO HONOR DRAFTS DRAWN BY

SUN REFINING AND MARKETING COMPANY

TO_____Bank

BANK ADDRESS_____

    As a convenience to me (us), I (we) request and authorize you to pay and charge to my account drafts drawn on my (our) account by and payable to the order of SUN REFINING AND MARKETING COMPANY P.O. Box 13812, Philadelphia, Pennsylvania 19101 provided there are sufficient collected funds in said account to pay the same upon presentation.  I (we) agree that your rights in respect to each such draft shall be the same as if it were a draft drawn on you and personally signed by me (us).  This authority is to remain in effect until revoked by me (or either of us) in writing; and until you actually receive such notice, I (we) agree that you will be fully ɔɔ  cted in honoring any such draft.

    I (we) further agree that if any such draft be dishonored, whether with or without cause, and whether intentionally or inadvertently, you shall be under no liability whatsoever.  Sun Refining And Marketing Company is instructed to forward this authorization to you.

ATE:_____     _____

                                                        _____

                                                       Bank Signature of Customer

JNS NO.  0004-4180-14  _____

)NTRACTED NAME:  Thanh Vong Hoai  _____

_____

)DRESS:  2305 Pennsylvania Avenue, SE  _____

        Washington, DC 20020  _____

*EXHIBIT #8*

PB-413 REV. B  B-71

Contract No. _____ 0004-4180-14 _____

# AMENDMENT AND RATIFICATION

District _____ Philadelphia Division - 750 _____

Date _____ March 27, 1986 _____

FOR AND IN CONSIDERATION of the mutual benefits accruing and expected to accrue hereunder, the undersigned, being all of the parties to that certain instrument entitled  DEALER TRIAL FRANCHISE . dated    March 27, 1986 pertaining to Premises situated at  2305 Pennsylvania Avenue, S.E. . Washington, D.C. 20020   , in the County of                              : State of                              . do hereby amend and modify said instrument, as follows:

**RENT:**

Dealer shall pay to Company rent for said Premises, in monthly installments in accordance with the following schedule:

For the period _____ April 1, 1986 _____ through _____ June 30, 1986 _____ ,

_ Two Thousand ------------ _ Dollars ($ _____ 2,000.00 _____ ) per month and for the period _____ July 1, 1986 _____ through _____ September 30, 1986 _____ ,

_ Three Thousand Five Hundred _ Dollars ($ _____ 3,500.00 _____ ) per month.

Each monthly installment is due and payable in advance, without demand or notice, on or before the fifth (5th) day of the month.  Rent shall be prorated on a daily basis for periods of less than one (1) month.

AND FOR THE SAME CONSIDERATION, it is further agreed that said instrument and all prior amendments thereto, in all other respects, are hereby adopted, and as herein amended and modified. are ratified, confirmed, and declared to be in full force and effect.

EXECUTED THE                      DAY OF              , 19

Witnesses:

_____          _____

                                   THANH VONG HOAI

_____          _____
        Salesman

                                   _____
                                   AREA SALES MANAGER

*EXHIBIT #9*

 **\*SUN OIL COMPANY OF PENNSYLVANIA**
**SURCHARGE COLLECTION**
**AUTHORIZATION**

| DATE |
|---|
| April 1, 1986 |

**DEALER NAME AND ADDRESS**

Thanh Vong Hoai
2305 Pennsylvania Avenue, SE
Washington, DC 20020

**CUSTOMER NO.**
0004-4180-14

**CONTRACT NO.**

**DEAR SIR:**

IN ACCORDANCE WITH _____our agreement_____ WE

WILL CHARGE YOUR ACCOUNT AN ADDITIONAL ___.0100_____ PER GALLON FOR ALL DELIVERIES OF
SUNOCO MOTOR FUELS TO YOUR STATION LOCATED AT THE ADDRESS SHOWN ABOVE.

**THE MONEY THUS COLLECTED IS TO BE DISTRIBUTED AS FOLLOWS:**

[X]  ___.0050_____ CENTS TO YOUR ___Collateral Deposit_____ ACCOUNT.

[X]  ___.0050_____ CENTS TO YOUR ___Merchandise_____ ACCOUNT.

[ ]  _____ CENTS TO BE PAID MONTHLY TO _____

_____

_____

_____

THIS PAYMENT TO _____
IS TO CONTINUE UNTIL:

[ ]  $ _____ HAS BEEN PAID.

[ ]  _____
          **DATE**

[ ]  CANCELLED BY YOU IN WRITING.
THIS ADDITIONAL CHARGE IS TO BECOME EFFECTIVE _____

**FURTHERMORE, THIS ARRANGEMENT IS SUBJECT TO THE FOLLOWING CONDITIONS:**

1.) SUN OIL COMPANY OF PENNSYLVANIA IS RESPONSIBLE FOR THIS CHARGE ONLY ON MOTOR FUEL DELIVERIES PAID BY
YOU IN FULL.

2.) SUN OIL COMPANY OF PENNSYLVANIA INVOICES OR DELIVERY SLIPS SHALL BE TAKEN TO BE CONCLUSIVE OF THE
AMOUNT OF SUCH DELIVERIES.

3.) SUN OIL COMPANY OF PENNSYLVANIA MAY CANCEL THIS ARRANGEMENT AT ANY TIME UPON NOTICE TO YOU.

**VERY TRULY YOURS,**

ACCEPTED: _____
                    **DEALER**

ACCEPTED: _____          **SUN OIL COMPANY OF PENNSYLVANIA**
                    **DEALER**             *SUN REFINING AND MARKETING COMPANY, Corporate Name Change

DATE _____

ORIGINAL TO: CONTRACT FILE
#1 COPY TO: CREDIT DEPT.
#2 COPY TO: BILLING DEPT.
#3 COPY TO: DEALER
#4 COPY TO: 3RD PARTY

| SURCHARGES | | | |
|---|---|---|---|
| **RENT** | ¢ | **3RD PARTY** | ¢ |
| **COLLATERAL DEPOSIT** | .0050 ¢ | **OTHER** | ¢ |
| **MERCHANDISE ACCOUNT** | .0050 ¢ | **TOTAL** | .0100 ¢ |

Date ___March 27, 1986___

Refers to Contract No. ___5004-4180-14___

Division ___750___

# RENTAL REBATE AGREEMENT

**CONTRACT:**   **DEALER TRIAL FRANCHISE**

**COMPANY:**   **SUN REFINING AND MARKETING COMPANY**

**DEALER:**   **THANH VONG HOAI**
**2305 Pennsylvania Avenue, S.E.**
**Washington, D. C. 20020**

**CONTRACT MONTHLY RENTAL:**   **Four Thousand Five Hundred Eighty Five Dollars**
**($4,585.00)**

**RENTAL REBATE TERM:** This Agreement shall commence on ___October 10 1986___
_____, 19__, and shall end on ___March 31_____, 19 86

For purposes and subject to the terms and conditions stated below, Company agrees to rebate portions of said monthly rental to Dealer, as follows:

**Company will reimburse Dealer at the rate of $1,000.00 per month during the term of this Agreement provided dealer purchases 100,000 gallons of gasoline or more per month for term of this Agreement.**

      The monthly rental rebate shall be paid by Company to Dealer within thirty (30) days following the month for which it applies in accordance with the foregoing paragraph.

      Company's delivery records shall be conclusive in determining the quantity of motor fuel purchased by Dealer from Company for purposes of calculating the amount of monthly rental rebate, if any, payable to Dealer. Company shall not be obligated to make monthly rental rebates on any motor fuel purchased by Dealer other than Company's branded motor fuel delivered by Company to Dealer's premises as stated in the above-referenced contract.

Company's agreement to pay monthly rental rebates to Dealer is made to meet market conditions in the geographical area in which Dealer's premises are situated. Company shall not be obligated to make monthly rental rebates to Dealer except in accordance with the provisions herein contained. Dealer shall not be entitled to offset amounts of monthly rental to be paid by Dealer to Company with amounts of monthly rental rebates due and owing by Company. Monthly rental rebates may not be transferred or assigned by Dealer.

This Agreement shall continue in full force and effect for said term; provided, however, in the event said contract is terminated by either party, or should Dealer breach this Agreement or said contract, then Company may immediately terminate this Agreement upon written notice to Dealer, and Company shall have no further obligation hereunder to Dealer. Should Company allocate motor fuel for its dealers to a level below one hundred percent (100%) of Company's allocation fraction, whether such allocation is imposed by governmental order or on a voluntary basis, Company shall have the right to terminate this Agreement upon written notice to Dealer, and Company shall have no further obligation hereunder to Dealer. Additionally, Company reserves the right to terminate this Agreement upon written notice at any time simultaneously with the termination of all other Rental Rebate Agreements it may have in effect throughout the Dealer's entire marketing area.

This Agreement constitutes the entire understanding between the parties concerning rebates of rental by Company to Dealer. Amendments or modifications hereto shall not be binding unless made in writing and signed by both parties. All prior agreements and offers between the parties concerning rental rebates payable to the Dealer and all prior agreements and offers for refunds of rent and reductions in rent by the Company are hereby cancelled and released as of the commencement date of this Agreement.

EXECUTED THIS _____ DAY OF _____, 19___.

WITNESSES:                          DEALER:

_____       _____
                                    THANH VONG HOAI

_____       _____

                                    SUN REFINING AND MARKETING
                                    COMPANY:

_____       BY: _____

                                    Title: AREA SALES MANAGER
                                          _____

# SUN

Inventory Security Agreement

Duns Number ____0004-4180-14____

...r and in consideration of the mutual benefits and advantages arising hereunder, and pursuant to the provisions of the Uniform Commercial Code of the State in which Debtor's place of business is located, the Debtor and the Secured Party, named herein, do hereby make and enter into this Security Agreement.

**Secured Party:** Sun Refining and Marketing Company, a Pennsylvania corporation having an office at 1801 Market Street, Philadelphia, Pennsylvania, 19103

**Debtor:** Thanh Vong Hoai

**Debtor's Place of Business:** 2305 Pennsylvania Avenue, SE, Washington, DC 20020

## The Terms, Covenants and Provisions of This Inventory Security Agreement Are:

**1. Purpose:** To secure the prompt and full payment of all indebtedness (as "indebtedness" is hereinafter defined) owed and which may be hereafter owed by Debtor to Secured Party, Debtor hereby grants to Secured Party a security interest in (a) all of Debtor's existing inventory (as "inventory" is hereinafter defined), (b) all inventory hereafter delivered to Debtor, (c) all proceeds of such existing or hereafter delivered inventory, (d) all such inventory returned or repossessed, (e) all of Debtor's existing and future accounts receivable arising from the sale of existing or hereafter delivered inventory, and (f) all existing and hereafter acquired equipment of any kind and nature which is used in any way in the conduct of Debtor's service station business.

**2. Definitions:** As used herein.

(A) "Inventory" means all gasoline, motor fuel, motor fuel blending agents, all other distillate fuels, tires, batteries and accessories now and hereafter delivered to Debtor's place of business.

"B) "Indebtedness" means all amounts, sums, monies, charges, loans, advances, liabilities, obligations of every kind and nature now and hereafter owed by Debtor to Secured Party including, but not limited to, all amounts owed for the purchase of inventory from Secured Party, the latter being evidenced and determined by Secured Party's invoices, delivery tickets and receiving reports.

(C) All other terms used herein have the same meaning herein as prescribed by the Uniform Commercial Code.

**3. Warranties and Covenants:** Debtor warrants and covenants the following:

(A) That Debtor will not mortgage, pledge, loan, lease, grant or create any other lien or security interest in said equipment, inventory, the proceeds thereof or said accounts receivable, until all obligations secured hereunder are paid in full, and Debtor shall not transfer or otherwise dispose, nor permit the transfer or disposition, of said equipment or inventory except for purposes of sale in the ordinary course of business.

(B) That no Financing Statement covering Debtor's equipment, inventory or the proceeds thereof, accounts receivable or any part thereof is presently on file in any public office;

(C) That Debtor will at all times keep said equipment, inventory and accounts receivable free of all taxes, encumbrances, writs, and other legal processes;

(D) That Debtor's place of business is located at the address above set forth, and that all inventory will be stored, exhibited, and sold in the ordinary course of business only at said address, and

(E) That Debtor will maintain complete and accurate records of equipment, inventory and accounts receivable at the address above set forth, and will make these records available to Secured Party, for inspection or audit, at any time upon demand.

**4. ...neral Provisions:**

(A) In the ordinary course of business, Debtor may store, exhibit and sell said inventory, provided:

(1) that upon each sale of inventory, or any part thereof, Debtor shall promptly collect and remit the proceeds of such sale to Secured Party to the extent that Debtor is indebted to Secured Party for the inventory sold thereby;

un—4018-A

:2) that the remitting of said p____ eds shall be in accordance with written ins___ __ s fr__ Secured Party: provided that in case of s__es made for credit upon terms approved and extended by Secured Party. Debtor s__ll promptly assign and remit to Secured Party the sales slips evidencing credit sales, in accordance with written credit instruct___s from Secured Party to Debtor; and all such written instructions shall constitute a part of this Security Agreement, as if copied __rein, and may be amended from time to time by Secured Party.

(B) Debtor agrees to execute and deliver to Secured Party such financing statements, security agreements, and amendments, requested by Secured Party which are to preserve or perfect the security interest. The cost of filing same for public record will be borne by Secured Party.

(C) Debtor may collect the accounts receivable, subject to the discretion and control of the Secured Party, but Secured Party may, without cause or notice, curtail or terminate such authority at any time upon demand. The proceeds of the accounts receivable collected by the Debtor, shall be promptly remitted by the Debtor to Secured Party. Such proceeds until remitted to the Secured Party shall be held in trust by the Debtor for, and as the property of the Secured Party and shall not be commingled with other funds, money or property. The Secured Party shall apply in its absolute discretion all collections received by it on the accounts receivable toward the payment of any of the indebtedness.

---

**5. Risk of Loss:**    The storing, exhibiting for resale, and sale of said inventory shall be at Debtor's risk of loss and destruction.

---

**6. Default and Termination:**

(A)   The following shall constitute events of default by Debtor:

(1)   Failure to pay and remit the indebtedness secured hereby when due;

(2)   Failure in any manner to strictly comply with and observe the terms and provisions of this Agreement, or written instructions from Secured Party relating to the making of credit sales and the remitting of proceeds, all of which shall be deemed of the essence and conditions upon which Debtor's rights hereunder exist;

(3)   Making, causing or allowing to be made any false report, representation, or statement to Secured Party pertaining to the equipment, inventory, accounts receivable, or indebtedness covered hereby, the falsity of which was or should have been known by Debtor when made.

(B)   The term of this Agreement shall commence on the date of execution hereof and shall continue in full force and effect for one (1) year, and from year to year thereafter, provided, however, that either Secured Party or Debtor, upon giving 30 days' prior written notice to the other, may terminate this Agreement as of the end of the initial term or of any extension thereof; and provided further, that such termination shall in no way affect any transactions, rights, or obligations arising hereunder, but the same shall be fully operative until final disposition.

---

**7. Remedies for Default:**

(A)   On default by Debtor, Secured Party has the right, and Debtor hereby authorizes Secured Party, at Secured Party's discretion and without notice, to:

(1)   Discontinue selling of inventory to Debtor except for cash on delivery;

(2)   Declare all indebtedness then owed by Debtor to Secured Party due and payable at once;

(3)   Pursue all remedies provided and permitted by applicable law to obtain satisfaction of such indebtedness;

(4)   Take possession and sell or otherwise dispose of the equipment, and/or inventory secured hereunder without the necessity of judicial process. In taking possession, the Secured Party shall have the rights and remedies granted under the Uniform Commercial Code, including but not limited to, the right:

(a) to enter any premi,   ~   property where the equipment and/or inve'    located and remove same without liability to Debtor for damage or ti   ass occasioned by such entry and removal;

(b) to require Debtor to assemble the equipment, and/or inventory and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both Debtor and Secured Party;

(c) to lock and place seals upon pumps, meters and tanks used for storing and dispensing inventory at Debtor's place of business, and

(d) to sell and dispose of equipment and/or inventory upon the premises where same is located, or at any other place designated by Secured Party.

(5) Demand, sue for, collect or receive any money or property at any time due and payable or receivable on account of or in exchange for any obligation securing any of the indebtedness secured hereby, or

(6) To terminate this Agreement.

(B) The failure of Secured Party to enforce any of the terms or provisions hereof, or to declare a default hereof, shall not operate against Secured Party to later enforce the same, nor shall such failure be deemed to extinguish or render ineffectual the terms or provisions so waived or left unenforced, but the same shall remain in full force and effect. Secured Party is authorized to execute the remedies for default above provided either jointly or severally and at such times as may be determined by Secured Party.

**8. Law Applicable; Severability of Provisions; Miscellaneous:**

(A) The rights and duties of Debtor and Secured Party hereunder are intended to conform with and be governed by the Uniform Commercial Code of the State in which Debtor's place of business is located.

(B) The parties intend the provisions of this Agreement to be severable, so that if any provision or any part of a provision is held unenforceable, the other provisions and parts hereof shall remain in full force and effect.

(C) This Agreement and all rights and duties existing hereunder are personal and are not assignable by Debtor without prior written consent of Secured Party.

(D) All representations, agreements, or understandings between the parties with respect to the subject matters concerned in this Agreement are fully set forth herein. It is understood that the person negotiating this Agreement on behalf of Secured Party is without authority to make any promises or agreements with Debtor which are not approved in writing by Secured Party.

EXECUTED THE _____ DAY OF _____ , 19____

WITNESS:

_____

_____

_____

Thanh Vong Hoai _____ Debtor

_____ Debtor

_____ Debtor

Company: _____

By: _____

Title: _____

Uniform Commercial Code—FINANCING STATEMENT—Form UCC-1.

PRINTED FOR AND SOLD BY JOHN C. CLARK CO.
832 WALNUT ST., PHILADELPHIA, PA 19107

IMPORTANT - Read instructions on back before filling out form.

This FINANCING STATEMENT is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code

No. of Additional Sheets Presented

3 ☐ The Debtor is a transmitting utility

| 1 Debtor(s) (Last Name First) and Address(es) | 2 Secured Party(ies) Name(s) and Address(es) | 4. For Filing Officer Date, Time, No. Filing Office |
|---|---|---|
| HOAI, THANH VONG<br>2305 Pennsylvania Avenue, S.E.<br>Washington, D.C. 20020 | SUN REFINING AND MARKETING CO.<br>1801 Market Street<br>Philadelphia, PA 19103 | |

5. This Financing Statement covers the following types (or items) of property:

6. Assignee(s) of Secured Party and Address(es)

☒ Products of the Collateral are also covered

7. ☐ The described crops are growing or to be grown on *
☐ The described goods are or are to be affixed to *
☐ The lumber to be cut or minerals or the like (including oil and gas) is on.*
* (Describe Real Estate in Item 8.)

8. Describe Real Estate Here:

☐ This statement is to be indexed in the Real Estate Records:

9. Name of a Record Owner

| No. & Street | Town or City | County | Section | Block | Lot |
|---|---|---|---|---|---|

10 This statement is filed without the Debtor's signature to perfect a security interest in Collateral (check appropriate box)
☐ which is proceeds of the original Collateral described above in which a security interest was perfected, or
☐ acquired after a change of name, identity or corporate structure of the Debtor, or
☐ as to which the filing has lapsed, or
☐ already subject to a security interest in another jurisdiction
☐ when the Collateral was brought into this State, or ☐ when the Debtor's location was changed to this State

11 If appropriate in this filing, the terms Debtor(s) and Secured Party(ies) shall respectively mean
☐ Consignee(s) and Consignor(s), or
☐ Lessee(s) and Lessor(s)

THANH VONG HOAI

SUN REFINING AND MARKETING CO.

4-4180-14 750 EP

By _____
Signature(s) of Debtor(s)

By _____
Signature(s) of Secured Party(ies)
(Required only if Item 10 is checked )

(3/83)

(1) FILING OFFICER COPY - NUMERICAL
STANDARD FORM—FORM UCC 1—Approved by Secretary of Commonwealth of Pennsylvania

**INSTRUCTIONS**

1. PLEASE TYPE this form in black.

2. You must use a standard form approved by the Secretary of the Commonwealth. The filing fee for this form is $5.00. No fee will be charged for supplementary pages identical in size to the standard form. A fee of $2.00 will be charged for the first supplementary page of non standard size and $1.00 for each such additional page.

3. If the space provided for any item(s) on the form is inadequate, the item(s) should be continued on additional sheet(s). Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of the financing statement. Use form DSCB UCC 5, or any paper identical in size to the standard form. A long schedule of collateral may be listed on any size paper no larger than 8½" × 11". For filing costs, see instruction #2 above.

4. When a copy of the security agreement is used as a Financing Statement, the filing fee is $5.00 plus the additional fees specified in instruction #2 above. It is requested that it be accompanied by a completed set of these forms. Conformed signatures (such as ɔ/S, name of Debtor") are required.

5. If the Debtor is a transmitting utility, check the box in Item 3.

6. Do not write in Box 4.

7. If collateral is crops or goods which are or are to become fixtures or timber to be cut, or minerals or the like (including oil and gas), check the appropriate box in Item 7, check the box in Item 8 indicating the Financing Statement is to be indexed in the real estate records, and describe in Item 8 the real estate by street and number, if any, or if none, by another description sufficient to identify it, such as "The real property described in Book _____ of Deeds (or Mortgages) at Page _____", and by city or town and county, if any. Insert name of record owner in Item 9.

8. Fold only above or below card copy for mailing.

9. Remove Secured Party and Debtor copies and send other three copies with interleaved carbon paper still intact to the filing officer.

10. Mail the statement along with a properly completed check to Uniform Commercial Code, Department of State, Harrisburg, Pennsylvania 17120 and/or to such other offices as may be required by §9 401 of the Uniform Commercial Code as adopted in Pennsylvania. Make the check payable to the "Secretary of the Commonwealth".

11. At the time of original filing, filing officer will return second copy as an acknowledgment.

Contract No. *0004-4180-14*
SMA *7.50*
Date *April 22, 1986*

## AMENDMENT AND RATIFICATION

For and in consideration of the mutual benefits accruing and expected to accrue hereunder, the undersigned Dealer, *Thanh Vong Hoai*, and Sun Refining and Marketing Company ("Company"), being all of the Parties to that certain <u>Dealer Franchise</u>, dated *April 10*, 19 *86*, pertaining to the Premises situated at *2505 Pennsylvania Ave S.E. WASH. DC.*, in the County of _____, State of *D.C. 20020*, do hereby amend and modify said Franchise, as follows:

Part I, Cover Provisions, <u>Company's Equipment</u>

Company's Equipment is hereby expanded to include one (1) Model 3205 Credit/Debit Terminal (CDT), operating on a dedicated telephone line, which is or will be installed at said Premises by Company.

Further, the above-referenced CDT Equipment is provided Dealer, subject to Dealer's strict compliance with the following:

o  Dealer and Dealer's employees shall fully utilize the CDT Equipment, in compliance with all rules, policies, procedures, and instructions as contained in Company's <u>Fast Credit/Debit Terminal Operator's Guide</u>, which has been developed by Company, and provided to Dealer for his use, which shall be deemed part of this Amendment. Company reserves the right to update, change, amend, or terminate said Manual's contents at any time, and from time to time, upon notification to Dealer. To the extent that there is any conflict between existing Company credit card rules, procedures, and instructions, and rules, procedures, and instructions for using the CDT Equipment, the CDT Equipment rules, procedures, and instructions shall prevail.

o  Rent: Rental for the Model 3205 Credit/Debit Terminal shall be One Hundred and Fifty Dollars ($150.00) per month, due and payable in advance, without demand or notice, on or before the fifth (5th) day of each month, following commencement of the operating term of this Amendment. Rent shall be prorated on a daily basis for periods of less than one (1) month.

o  Company shall install and maintain said Equipment, as deemed necessary by Company, at Company's expense, provided, however, that Dealer shall strictly comply with maintenance provisions of the Franchise, and the Fast Credit/Debit Terminal Operator's Guide.

o  Should Dealer cancel this Amendment for whatever reason, Company reserves the right to invoice Dealer for all costs charged to Company for said CDT System installation, and Dealer agrees to pay for such costs.

o  Dealer shall not make any changes, modifications, additions, or alterations to said CDT Equipment without receiving Company's prior written consent. This specifically includes, but is not limited to, any interface with other systems or components.

o  Dealer shall not remove said CDT Equipment from the Premises.

o Should said CDT Eq_, _nt be damaged beyond repair, u _croyed, or removed by Dealer, Dealer's customers, employees, or other persons, excluding Company, its employees and contractors, Dealer shall reimburse Company in the amount of Seventeen Hundred and Seventy Dollars ($1,770.00).

o Should this CDT Amendment end for any reason, such occurrence shall have no effect on the Branded Motor Fuel Franchise between the Parties.

o Company shall have thirty (30) days after termination of this Amendment in which to enter upon the Premises at any time during normal business hours, in order to remove and take possession of Company's CDT Equipment, referenced herein, without having liability to Dealer for trespass or damages.

This Amendment shall be in full force and effect upon date of execution shown immediately above signatures of Dealer and authorized representative of Company. Thereafter, and before Company shall be obligated further to perform under this Amendment, the following conditions must be met to the satisfaction of Company:

a. Necessary telecommunications lines must be installed at Dealer's Premises.

b. CDT Equipment shall be connected to said telecommunications lines, and shall be tested and proven operable.

c. Company shall have accepted completed installation of lines and CDT Equipment.

If all of the foregoing conditions are not met to Company's satisfaction, Company may, upon written notice to Dealer, declare this Amendment cancelled, whereupon the Parties shall be deemed fully released from any further liability under this Amendment.

The above conditions having been met, Company shall give Dealer written notice of the beginning date of the operating term, whereupon Dealer shall proceed to operate the CDT Equipment, and specified monthly rental shall begin. This Amendment shall thence continue in full force and effect for the period of time specified in said operating term letter.

For the same consideration stated above, it is further agreed that said Franchise and all existing amendments thereto, in all other respects, are hereby adopted, and, as herein amended and modified, are ratified, confirmed, and declared to be in full force and effect.

Executed this _____ day of _____, 19____.

Witnesses: 

_____          _____
                                                          Dealer

_____          
                        Salesman                 By: _____
                                                          For Company

                                                  Title: _____