*DEC. 23, 1987*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

THANH VAN VO,                    )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   CA. No. 7075-86
                                 )
SUN REFINING AND MARKETING       )
   CO., INC., et al.,            )
                                 )
    Defendants.                  )

DEFENDANT THANH VONG HOAI'S FIRST RENEWAL OF THE MOTION TO
DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH
RELIEF CAN BE GRANTED AND OF THE MOTION FOR A MORE DEFINITE
STATEMENT FILED IN APRIL AND REQUEST FOR A HEARING

I. DISMISSAL MOTION OF INDIVIDUAL DEFENDANTS NOW OVER SIX MONTHS
OLD

On April 29, 1987, while this case was removed to the United

States District Court for the District of Columbia, and before

Judge Stanley Sporkin, the defendants THANH VONG HOAI, JOHN D.

HEMENWAY and DAVID HEMENWAY filed a motion to dismiss the

plaintiff's complaint for failure to state a claim upon which

relief can be granted under Rule 12 (b)(6) of the Federal Rules

of Civil Procedure, which is identical to Rule 12 (b)(6) of this

Court.  This motion was accompanied by a Motion for a more

definite statement pursuant to Rule 12 (e) of the Federal Rules

of Civil Procedure, which also has an identical counterpart in

the Rules of this Court.

II. OPPOSITION FILED OVER FIVE AND A HALF MONTHS AGO

On May 13, 1987, the plaintiff filed an opposition to the

said motion to dismiss and to the said motion for a more definite

statement.  The two motions and oppositions have been outstanding

since that time.

III. CASE NOW REMANDED TO THIS COURT OVER FOUR MONTHS

On July 8, 1987, pursuant to a hearing on outstanding motions

at which he granted preliminarily the jurisdictional motions of

plaintiff and the nominal defendant Sun Refining and Marketing

Company, Inc., Judge Sporkin remanded the case to this Court.

That remand Order and the case file and a certified copy of the

docket entries were transmitted back to this Court with a cover

letter from the clerk of the United States District Court dated

July 21, 1987.

-1-

PLAINTIFFS'
EXHIBIT D

IV. ONLY TWO MOTIONS OF INDIVIDUAL DEFENDANTS RULED UPON IN OVER
A YEAR: ASSIGNMENT TO CIVIL I

Since that time of remand none of the outstanding motions
have been heard by this Court or even scheduled for hearing,
whether filed before or during removal to the United States
District Court, though many months have now elapsed.  These
motions are a preliminary injunction motion following the sudden
appearance of the plaintiff in the offices of the defendant John
D. Hemenway and before the home of the defendant Hoai, ultimately
resulting in a mutual stay away order, and the Civil I motion of
these defendants, now recently granted.

V. NOW THAT THE CASE IS ASSIGNED TO CIVIL ONE THE DISMISSAL
MOTION, WHICH IS JURISDICTIONAL AND IN THE NATURE OF A THRESHOLD,
SHOULD BE TREATED IMMEDIATELY AS, IF SUCCESSFUL, IT WILL DISPOSE
OF MOST IF NOT ALL OF PLAINTIFF'S CLAIM: RENEWAL AND
STRENGTHENING OF MOTION TO DISMISS FOR DEFENDANT HOAI

Since the outstanding Rule 12 (b)(6) dismissal motion is
jurisdictional and would dispose of all or a substantial portion
of this matter, the individual defendant THANG VONG HOAI (English
pronunciation rhymes with joy.) hereby renews and strengthens
that motion to dismiss as to himself in particular and gives
substantial additional reasons therefor in the accompanying
memorandum of points and authorities in support of that renewal
and also, in the event that all or part of his request is not
granted, hereby renews the motion for a more definite statement.

Respectfully submitted,

                              THANH VONG HOAI
                    By:


                    _____
                    Laurence A. Elgin, Esq.
                    4816 Rodman Street, N.W.
                    Washington, D.C. 20008
                    (202) 628-1114
                    Bar No. 159582

-2-

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT THANG VONG HOAI'S FIRST RENEWAL
OF THE PREVIOUS MOTION TO DISMISS.

I.

Rule 12 (b)(6) is identical in the Federal Rules of Civil Procedure and in the Rules of this Court.  It requires dismissal of a complaint when the allegations of that complaint, taken as pleaded, fail to state or make out a complaint upon which relief can be granted.  The present complaint fails to state such a complaint with respect to the defendant THANH VONG HOAI ("HOAI") in any of the counts which allege actionable torts or breaches of contract on his part.  The individual counts and the failure to state a cause with regard to each are set out herein.

II. THE COUNTS

The present complaint[1] contains the following counts:

I. Breach of Contract against defendant Hoai.

II. Civil Trespass against Hoai and John D. Hemenway and David Hemenway as his alleged agents.

III. Civil Assault against Hoai, John D. Hemenway and David Hemenway.

IV. Conversion aganst Hoai, John D. Hemenway and David Hemenway.

---

[1]The present complaint is substantially reworked from the one that was originally filed and was before the Court during the TRO hearing.  It has been largely changed, as explained and argued in connection with the prior motion of the defendants HOAI, JOHN D. HEMENWAY and DAVID HEMENWAY entitled MOTION OF THE DEFENDANTS THANG VONG HOAI, JOHN D. HEMENWAY AND DAVID HEMENWAY TO: A) QUASH OR DISMISS THE MOTION TO SHOW CAUSE (CIVIL CONTEMPT) HERETOFORE FILED BY PLAINTIFF; B) HOLD AS A MATTER OF LAW THAT THE UNDERLYING TEMPORARY RESTRAINING ORDER, VIOLATION OF WHICH IS ALLEGED, NEVER BECAME OPERATIVE, WAS IMPROPERLY ISSUED AND WAS ERRONEOUS FROM ITS INCEPTION; AND C) A PRELIMINARY INJUNCTION TO PREVENT PLAINTIFF FROM ATTEMPTING TO REMOVE HIS BOND BEFORE THE ERROR OF THE TRO, (HAVING AS IT DID THE EFFECT OF A JUDGMENT ON THE MERITS,) CAN BE ADJUDGED TO HAVE BEEN A MISTAKE OR IN ERROR,OR IN THE ALTERNATIVE, FOR AN INCREASED BOND AND A FULL HEARING ON THE SHOW CAUSE ORDER, to reflect the predisposition of the TRO judge to impose upon the situation the tort of wrongful eviction.  Originally this tort was not pled by plaintiff nor was

it mentioned in the plaintiff's opening argument in the TRO
hearing until the judge at that hearing interrupted and indicated
that she was interested in that tort. For reasons stated in the
text of this memorandum, the imposition of that tort upon this
situation is egregious error and the predominance of the concept
of it in the present complaint is one of the strongest factors
justifying its dismissal. There simply is no landlord-tenant
relationship here that would justify going forward with this
complaint, as set out in the recent motion for judgment on the
pleadings of the defendant Sunoco, the only landlord involved.

-3-

V. Lost Profits against Hoai, John D. Hemenway and DAvid
Hemenway.

VI. Tortious Interference with Advantageous Business
Relationship against Hoai, John D. Hemenway and DAvid Hemenway.

VII. Tortious Interference with Contract against John D.
Hemenway and David Hemenway.

VIII. Money Lent against Hoai.

IX. Wrongful Eviction against Hoai, John D. Hemenway and
David Hemenway.

X. Civil Conspiracy against Hoai, John D. Hemenway and David
Hemenway.

XI. Declaratory Judgment and Injunction against Hoai, John D.
Hemenway and David Hemenway.

Since the amended complaint now before the Court is dominated, as
we shall see, by the concept of wrongful eviction, we begin the
analysis in this memo by examining the specific wrongful eviction
count, Count IX.

III. WRONGFUL EVICTION: THERE MUST BE A LANDLORD-TENANT
RELATIONSHIP FOR THIS TORT TO EXIST; THERE IS NO SUCH
RELATIONSHIP HERE BETWEEN DEFENDANT HOAI AND PLAINTIFF VO.

The present complaint relies heavily upon the count of
wrongful eviction. The impropriety of this count can be seen by
asking the simple question: Could the defendant Hoai, as the name
franchisee of the station under his contract with Sunoco, which
is acknowledged by all parties, have gone to the Landlord and
Tenant Branch of this Court and summarily evicted plaintiff under
the statutory procedure for landlords, where plaintiff claims an
assignment by contract of the franchise and accompanying lease.
In other words can one from whom the assignment of a gas station

lease and franchise is claimed by a contract, believing the
contract to be invalid, evict the claimant under the contract by
the L & T procedures for landlords ?  We submit that the answer
is obvious, had defendant Hoai gone to L & T he would not have
gotten past the clerks.

There is only one landlord in the events alleged in the
present operative complaint.  That landlord is the SUN REFINING
AND MARKETING COMPANY, INC. ("SUN").  No one disputes that Sun is

-4-

the owner of the subject gas station premises and that no other
party owns any share of any rental property that is at issue
here.  As the above list of the counts shows, it is not presently
alleged that Sun has done anything wrong.  The present complaint
does not pray for any damages against Sun, though Sun is named as
a defendant.  Sun is, therefore, merely a nominal defendant.  Sun
has moved for judgment on the pleadings against plaintiff on that
basis, _inter alia_, praying to be dismissed and that motion, like
so many in this case, is presently outstanding and has been so
outstanding for much longer than is normally the case.[2]

A grasp of this fundamental fact of the present case is
important to this renewal by defendant Hoai of the dismissal
motion as to himself.  For the tort of wrongful eviction is one
that can only be committed by a landlord because the tort is
defined, by its historical development both generally and in the
law of this jurisdiction to be the use of methods other than
those prescribed by applicable statutes and by law for the
eviction of a tenant by the tenant's landlord.  The statutory
procedures for eviction are only available to landlords.  It may
seem like belaboring the obvious to state it, but since it has
cost this defendant so much, and because it was erroneously
ignored by the TRO judge, it needs to be said: one who is not a
landlord to another person cannot lawfully evict that person from
real property, unless he somehow be in the relationship of
landlord to that tenant as agent or otherwise.  Therefore one who

is not a landlord or acting with the landlord's authority cannot
unlawfully evict.  If one who is not a landlord and who does not
legally stand in the landlord's shoes dispossesses someone of a
premises it may be some other tort but it is not unlawful
eviction.

The tort of wrongful eviction was defined and created in this
jurisdiction in the well-known case of Mendes v. Johnson, 389 A2d

---

[2]There are motions outstanding in this case that have been
outstanding, unruled upon, since October of 1986.  Some
disruption of the progress on these motions was caused when
Defendants Hoai, Hemenway and Hemenway removed the matter to the
district court.  But it was remanded in July and the inaction on
the motions since then has not been explained.

                                -5-

781 (DCCA 1978).  The opinion in Mendes gives a fairly thorough
history of the development of statutes empowering and regulating
the rights of landlords to enter upon land and recover it,
starting with the early common law of England and the very early
statute of 1381 in England making the forcible entry by a
landlord, which a landlord was entitled to at common law, a
criminal offense.[3]  For a long time this resulted in a doctrine
in the District of Columbia under which a landlord had a right to
enter and repossess provided that it was done peacefully.  As
stated in Burford v. Krause 89 F.Supp. 818 (DDC 1950):

> The presence of the local forcible entry and detainer
> statutes does not supplant the common law right of self
> help in peacably entering into the premises on which a
> lease has expired where such entry is accomplished
> without breach of the peace.  They merely afford
> addtional means to which the parties may resort and
> under some circumstances may prove more orderly and less
> costly than the method employed in the case herein.

Burford was ratified, adopted and expanded upon by our municipal
court of appeals in Snitman v. Goodman, D.C. Mun. App. 118 A2d
394 (1955).  The Municipal Court of Appeals quoted at length from
Burford, which then said:

> In Lindner v. District of Columbia, D.C. Mun. App., 32
> A.3d 540,543, we said that "unless so declared in
> express terms or by necessary implication, a statutory
> remedy is merely cumulative and does not abolish an
> existing common law remedy."  There is no express
> provision in the statute under consideration which

abolishes t⸱ landlord's common law riᵤ⸱ and we see no necessary implication to that effect. [118 A2d at 397]

In Mendes the D.C. Court of Appeals ruled specifically that, despite the Snitman holding, and while it still acknowledged that statutory remedies were cumulative and did not exclude common-law remedies unless necessary, the statutory provisions[4] governing landlords' eviction of tenants were exclusive and did, by implication based on Congressional intent, exclude common-law remedies such as the landlord's right of self-help.  Mendes,

---

[3]Statute of Forcible Entry, 5 Rich. II, c.2.  The Mendes footnote on the statute continues: This statute "provided that 'none from henceforth make an entry into any lands and tenements, but in case where entry is given by the law, and such case not with strong hand or multitude of people, but only in peacable or easy manner.'"  1 F. Harpe & F. James, Law of Torts Sec. 3.15 at 255 (1956).
[4]Then D.C. Code 1973, Sec. 16-1501; also Secs. 45-910, 16-1124. The history of these statutes up to that point, including their origins in a Maryland statute adopted in the District in 1801, are given in Mendes at note 5.

-6-

supra, at 786.

Thus, it is quite clear from the history of the development of these statutes, and the adoption of the concept of a tort for a failure by a landlord to use them by the courts of this jurisdiction in Mendes and the cases that followed after, that the tort of wrongful eviction consists, in its essence, of the failure by a landlord to use the statutorily provided remedy for evicting a tenant.  Therefore one who is not a landlord or acting in the place of a landlord cannot be guilty of committing the tort since the statutorily provided remedy for eviction would not be available to such a person.  Nor can one who is a landlord be guilty of the commission of this tort of wrongful eviction unless there is a landlord-tenant relationship with the party claiming the wrongful eviction.  For these reasons, if the complaint here is examined it can be seen readily that the tort of wrongful eviction alleged against this defendant cannot survive a dismissal motion.  No claim is made against the defendant Hoai in the complaint now before the Court upon which relief can be granted for wrongful eviction because there is nothing in the

allegations of plaintiff that shows that Hoai was ever the
landlord of plaintiff Vo or that Hoai ever had a landlord-tenant
relationship with Vo.

Mendes, supra, is not the only case in the District making it
clear that the statutory remedies for summary judgment for
eviction in the Landlord and Tenant branch are only available to
landlords against their tenants, it is merely the case which
adopted the tort of wrongful eviction into D.C. law as a remedy
for tenants against their landlords where the latter have
available the statutory remedies for summary eviction but resort
to self-help instead.  It was earlier clearly held that the
statutory remedies for summary eviction in the Landlord and
Tenant Branch (formerly Landlord and Tenant Court) are only
available to landlords.  Mendes, citing Prosser and other
prominent authorities, took the step of asserting that the
statutory remedies for summary eviction exclude the landlord's
common law right of self-help and require the landlord to use the

-7-

summary eviction procedures set out in the statutes rather than
evicting tenants without the benefit of such processes, even in a
non-violent manner.

The situation was articulately discussed in 1985 by Judge
Taylor in Burleson v. Guest Services, Inc., L&T No. 21653-85,
Daily Washington Law Reporter Wednesday, August 8, 1985, Vol.
113, No. 167, p. 1737.  In that persuasive opinion Judge Taylor
pointed out that the possessor of the premises (one Berthau), who
possessed in what plaintiff Burleson claimed was his rightful
stead, was not in a landlord-tenant relationship with Burleson.
The only landlord in that case, corresponding to nominal
defendant Sun in this case, was Guest Services, Inc. ("GSI").  In
that case Berthau was in the position of plaintiff Vo in this
case and the plaintiff Burleson in the position of defendant Hoai
in this case in that Burleson was out of possession and Berthau
was in possession.  Judge Taylor pointed out, id. p. 1742:

"Burleson [corresponding to defendant Hoai here] was not a
landlord <u>vis a vis</u> either GSI or Berthau.  This was just after,
in discussing these matters, Judge Taylor had pointed out:

> Such rules [governing summary eviction in the L & T
> branch] were first promulgated for the L&T Branch in
> 1971; their most recent incarnation (May 19, 1980)
> provides (Rule 1) that they "govern the procedure in
> summary proceedings for possession brought in this court
> pursuant to D.C. Code (1967 edition, supplement IV)
> Secs. 45-909 and 16-1501 et seq. [a footnote here notes
> that these sections are now 45-1409 and 16-1501 of the
> 1981 Code] <u>i.e.</u>, summary actions in ejectment and for
> forcible entry and detainer, respectively.  <u>Both these
> actions may only be brought by landlords</u>. [emphasis
> added]  See, <u>e.g. Mendes v. Johnson</u> D.C. App., 389 A2d
> 781 (1978); <u>Tutt v. Doby</u>, 148 U.S.App. D.C. 171, 173;
> 459 F.2d 1195, 1197 (1972).  See also <u>Spruill v. Brooks</u>,
> D.C.Mun.App., 68 A.2d 204 (1940); <u>Bevlin v. Lewis</u>, D.C.
> App., 254 A.2d 404, 406 (1969). <u>Idem</u>.

These cases cited by Judge Taylor in this excellent opinion give
more detailed reasoning as to why it is so that these actions may
only be brought by a landlord and why, therefore, after <u>Mendes v.
Johnson</u>, there is a tort of wrongful eviction but it is only a
tort that can be pressed by aggrieved tenants against their
landlords.

The earliest of these cases cited by Judge Taylor in her
opinion in <u>Burleson</u> is that of <u>Spruill v. Brooks</u>, a 1949 case

-8-

before the old Municipal Court of Appeals.  In that case Judge
Claggett pointed out that the court's jurisdiction over summary
suits to recover possession of real property was limited to cases
arising under two statutes.  The first of these two statutes,
then Code 1940, Sec. 45-910, is today codified as Title 14, Sec.
45-1409 et seq., referred to above in the quote from Judge
Taylor's <u>Burleson</u> opinion.  Then as now, as Judge Clagett noted
back then, it was and is "limited to actions by landlords against
tenants."  <u>Id.</u> p. 205.  Present Sec. 45-1409, for example, states
that: "the landlord...may have a judgment for recovery...."
Sec. 45-1410 specifies that the, "landlord may bring an action of
ejectment...."  And so on throughout the following sections.
Only landlords are empowered by these sections to seek the

assistance of the processes and remedies set out therein.

Judge Clagett then turned his attention to what he stated is
known as "the forcible entry and detainer statute[,]" then
codified as Code 1940, 11-735.  Today this statute is codified as
Sec. 16-1501 et seq. of the Code of 1980 (Michie) and it is the
other of the two statutes referred to by both Judge Clagett in
1949 in <u>Spruill</u> and by Judge Taylor in 1985 in <u>Burleson</u>.  The
language of the statute has changed somewhat in the intervening
36 years, but the substance is substantially similar and there
has been a continuity of interpretation.  In <u>Spruill</u> Judge
Clagett referred to a case in which the Supreme Court of the
United States had had occasion to interpret this "forcible entry
and detainer statute."  He adopted and quoted what the Supreme
Court said:

>    "Considering the terms of the act of Congress, the
>    settled construction, before the passage of that act, of
>    the statute of Massachusetts from which it appears to
>    have been taken, and the general course of decision in
>    this country under statutes on the same subject, the
>    reasonable conclusion is that, in order to sustain this
>    form of proceeding, <u>the conventional relation of
>    landlord and tenant must exist, or have existed</u>, between
>    the parties." [emphasis added].  (<u>Willis v. Eastern</u>

-9-

>    <u>Trust & Banking Co.</u>, 169 U.S. 295, 309, 18 S.Ct. 347,
>    353, 42 L.Ed. 752.  See also <u>Thurston v. Anderson</u>,
>    D.C.Mun. App., 40 A2fd 342; <u>Brooks v. Trigg</u>, D.C.Mun.
>    App., 51 A.2d 302.)  (Footnote of Clagett opinion).

The later opinions cited by Judge Taylor elaborate upon this
holding and clarify it.  For example, in <u>Nicholas v. Howard</u>, 459
A.2d 1039 (D.C.App. 1983), the District of Columbia Court of
Appeals held, at 1040, that in order for the L & T summary
judgment processes to be available there must ve a contractual
landlord and tenant relationship between the parties in which the

tenant is obligated to pay rent to the landlord and the landlord is entitled to claim that rent is owed to him by the tenant.  No such relationship exists between defendant Hoai and plaintiff Vo in this case.  Nor is there any tenancy at will between these two.  As pointed out in Spruill, supra, the tenancy at will is statutory in the District of Columbia and exists between a purchaser of a real estate interest as landlord, and one holding over as occupier of the premises as tenant.  Here plaintiff is the occupier and he paid rent, he claims, to Sun, not to Hoai.  Hoai is not the purchaser, plaintiff is.

With this set out, if we examine the complaint now before the court it can be easily seen that, as a matter of law, even if the allegations of plaintiff are taken as true, he cannot make out a case of wrongful eviction against defendant Hoai because Hoai would not have had available to him the statutory summary proceedings to evict plaintiff in the Landlord and Tenant branch, not having any L&T relationship with plaintiff Vo.

Plaintiff alleges (Amended Verified Complaint, Paragraph 2, that is doing business selling gasoline and auto-related supplies and services at the gas station premises at 2305 Pennsylvania Avenue, S.E..  He alleges (Paragraph 3) that Sun is the title owner of the station.  He alleges (paragraph 4) that Hoai entered into an agreement with plaintiff "transferring to Vo the exclusive right to own and operate the Station and the franchise he [defendant Hoai] had with Sun."  Plaintiff Vo further alleges (paragraph 8) that defendant Hoai "could secure for Vo the dealer

-10-

franchise to operate the station...."  Plaintiff next alleges that he was assured by defendant Hoai that Hoai would, upon being granted the franchise by Sun, "promptly arrange transfer of all rights to Vo and any necessary approval thereof by Sun."  In paragraph 10 of the complaint as amended plaintiff alleges that Hoai represented to Sun's representative that Hoai would execute the dealer franchise in his own name but that "because of Hoai's

bad back, the station would be operated by Vo." In other words,
Hoai would be a straw man. He alleges that he paid the initial
deposits on the station and not Hoai (par. 11) and that Hoai
merely made representations about the station to "save face" and
that Hoai could not afford to operate the station himself. In
paragraph 14 plaintiff alleges that "Hoai (defendant movant)
signed over to Vo (the plaintiff) all his interest in the
Station." In paragraph 15 plaintiff alleges that "Hoai
repeatedly reassured Vo that he would arrange with Sun for the
formal transfer of the franchise to Vo, while in fact he has
failed to do so." In paragraph 16 he alleges that Sun knew he,
the plaintiff Vo, was to operate the Station. He alleges that he
has the occupancy permit and licenses.

In the wrongful eviction count proper (Count IX of the
complaint) all that is alleged, after the incorporation
allegation incorporating the preliminary allegations set out
above, is that:

> 54. By dispossessing Vo of his property and right of
> occupancy against his will and over the objection of Vo
> and his employees and representatives rather than by
> judicial process, Hoai, John D. Hemenway and David
> Hemenway have wrongfully evicted Vo, and are therefore
> jointly and severally liable to Vo for compensatory
> damages.
> 55. That in so evicting Vo from his property, with
> full knowledge that self-help is not legal in the
> District of Columbia, Hoai, John D. Hemenway and David
> Hemenway acted against Vo with malice and with willful,
> wanton and reckless disregard for Vo's rights, and are
> therefore liable jointly and severally to Vo for
> punitive damages.

By the reasoning and authority given above, it is required that
this count for wrongful eviction be dismissed unless the well-
established law in this jurisdiction on that tort is ignored.
For, by the plaintiff's own allegations, taken as true, defendant

-11-

Hoai cannot be a landlord, could not have used the summary
eviction procedures of the Landlord and Tenant Branch of the
Superior Court and therefore cannot have been a committer of the
tort of wrongful eviction.

IV. COUNT X, CIVIL CONSPIRACY: NOT AN INDEPENDENT TORT IN AND OF
ITSELF: NECESSITY FOR WRONGFUL OBJECT: ONLY OBJECT HERE "WRONGFUL
    EVICTION": NO WRONGFUL EVICTION, NO CIVIL CONSPIRACY

It has been established in the District of Columbia that
there is no such thing as an independent tort of civil
conspiracy.  For this tort to exist there has to be an object of
the conspiracy that is itself a wrongful act.  The cause of
action is not created by the conspiracy but rather by the
wrongful acts done by the defendants to the injury of the
plaintiff.  Ewald v. Lane (D.C. D.C. 1939) 104 F2d 222, 223.
Citing Rice v. Coolidge, 121 Mass 393, 394, 23 Am Rep 279.  See
International Underwriters, Inc. v. Boyle, 365 A2d 779, 784 (D.C.
1976).  "[T]here is no recognized independent tort action for
civil conspiracy in the District of Columbia."  See Waldon v.
Covington, 415 A2d 1070, 1074 n. 14 (D.C. 1980) (emphasis added)
(Citing Lamont v. Haig 590 F2d 1124, 1136 n. 73 (D.C. Cir. 1978).
See the comprehensive summary in Halberstam v. Welch (D.C. Cir.
1983) 705 F2d 472, 227 US App DC 167, 174.

The only independent wrongful act alleged in Count X of the
present complaint is alleged in paragraph 57, viz.: "By meeting
and agreeing to dispossess plaintiff from the Station by
resorting to self-help in violation of the law of the District of
Columbia, Hoai, John D. Hemenway and David Hemenway conspired to
commit a tortious act."  If resorting to self-help is not a
wrongful act this count cannot stand under applicable District
law.  We have seen that the tort of wrongful eviction, which is
what plaintiff alleges this self-help to be, can only be
committed by a landlord or his agent.  We have shown above that
by the allegations of this complaint, defendant Hoai cannot be
made out to be such a landlord.  Therefore Count X falls with
Count IX.

V. COUNT I: BREACH OF CONTRACT: FAILURE TO PERFORM CONDITION
PRECEDENT OR COMPLY WITH APPLICABLE LAW APPARENT ON FACE OF
        PLEADINGS: THEREFORE NO BREACH BY PLAINTIFF

-12-

At the outset we ask the Court to note that there are venue

and jurisdiction problems with this breach of contract count.
There is no allegation that the contract was entered into in the
District of Columbia and the notarization which is pled and
attached as an exhibit shows that it was notarized in Virginia,
giving rise to a presumption that it was executed there and only
concerned, as its subject matter, a gas station in the District.
Perhaps on that reason alone this count should be dismissed but
there are other more substantive problems as well.

Plaintiff alleges three things in paragraph 31 as breaching
the contract he alleges between himself and the defendant Hoai:
1) Hoai's alleged failure to acknowledge to Sun the transfer of
Hoai's interest in the gas station, 2) Hoai's having seized
possession of the station in spite of his alleged sale of the
business to plaintiff and 3) Hoai's alleged interference with the
conduct of Vo's business.   Count I incorporates by reference, in
paragraph 30, paragraphs 1 through 29 of the amended complaint.

In paragraph 13, thus incorporated, plaintiff avers and thus
acknowledges, that defendant Hoai entered into "a Dealer Trial
Franchise Agreement with Sun which gave Hoai the right to sell
Sun's branded motor fuels and products for the one-year period
beginning April 10, 1986. (Exhibit 1)."  Thus this franchise
agreement, which by plaintiff's own allegations was between
defendant Hoai and Sun, is attached to and is part of the
complaint.

In the next paragraph (14) of the complaint, the plaintiff
avers that "By written agreement dated the 4th day of April,
1986, but executed on May 2, 1986 before a notary public (Exhibit
2), Hoai signed over to Vo all his interest in the Station."
This is the only contract which plaintiff alleges in these first
29 paragraphs as incorporated in Count I as a paragraph between
defendant Hoai and himself.  Note the langauage alleging the
purport of the contract,viz: "Hoai signed over to Vo all his
interest in the Station."   Note also that this contract is also
attached to the complaint, as Exhibit 2, and that it bears in
turn attachments which include the subject franchise agreement

-13-

between plaintiff Vo and defendant Hoai.  This Exhibit 2 then is the contract which plaintiff alleges in paragraph 31 that the defendant Hoai has breached.  It in turn incorporates as an exhibit what plaintiff has included in the complaint as Exhibit 1, the franchise agreement which is admitted by the allegations to be between Hoai and Sun.  Therefore, both contracts, as a technical matter, are cognizable by the Court in reviewing this dismissal motion and may be interpreted as a matter of law.

Thus, Exhibit 2 is the contract alleged between plaintiff and defendant Hoai in the complaint and, as such, speaks for itself. Further, by its terms the agreement reinforces and even goes beyond the parol evidence rule in that paragraph 7 of the agreement explicitly states: "PURCHASER and SELLER agree that this instrument encompasses their entire agreement.  Any modification of this instrument must be done so [sic] with the equal formalities."

Thus plaintiff, parallel to the language of the contract pled, which plaintiff drafted, does not allege that the defendant Hoai transferred his franchise to plaintiff Vo in those terms, of transfer of a franchise, but rather that the defendant Hoai transferred "all his interest in the Station" to plaintiff Vo. This is reinforced by the allegations of paragraph 20 concerning defendant Hoai's attempts to hold his franchise, where it is alleged, <u>inter alia</u>, that "He [Hoai] thereupon sought to claim the Station as his own, and to deny the lawful transfer of all his <u>interest</u> therein to Vo."  (emphasis added)  Here, we point out, there is an ambiguity in both the pleading and the contract, both of which are the product of plaintiff and his counsel. (Defendant Hoai, it should be realized, never had benefit of counsel in the contractual negotiations.)

It is axiomatic that only that can be transferred by contract which the party contracting to transfer has the legal power to transfer.  Thus a party may contract to transfer all his business "interest" as defendant Hoai is alleged to have done here but that will not include, regardless of such language, the transfer of legal interests which the alleged transferor has no power to

-14-