transfer without other steps being taken. That is to say, X cannot, by general langauge of transferring "all" of his business interests to Y transfer specific interests which he is forbidden by contract or law to transfer. And this is as true where the legal power to transfer may be created by actions of X and a third party precedent to the claimed transfer between X and Y as it is where the barrier to the legal power is absolute. That is to say, where there is a condition precedent, and it is known to both parties to the claimed contract, and, further, it is known to involve interaction between the alleged seller under the contract and a third party, (as here Sun,) then until those precedent actions are taken and the necessary conditions precedent thus performed, the claimed transfer cannot occur. An unperformed set of condtions precedent is just as much a barrier to the sale of a business interest as an absolute barrier so long as that set of conditions precedent remains unperformed.

   Thus if Hoai had no legal power to transfer the franchise then he could not have done so by the contract of May 2, 1986 between himself and plaintiff Vo. That this was in fact the case can be seen from the facts pleaded, since they include both the alleged contract of sale of the business interest at issue and the contract of franchise between Sun and Hoai and because there is also statutory law imposing similar conditions precedent to those imposed by the franchise agreement.

   This alleged contract of May 2, 1986, between plaintiff and defendant Hoai, which is attached to the complaint, is a relatively simple one of 2 pages. By the second WHEREAS clause on the first page the alleged purchaser, plaintiff Vo, purchased "the said business ... on the terms and conditions" thereinafter set forth. By paragraph 1 of the contract Hoai sells to Vo, and plaintiff so alleges by incorporation and reference, "the said business as owned and conducted by the SELLER [defendant Hoai] as aforesaid including all his rights, assets, liabilities and obligations, <u>as described and stated in the Exhibits attached</u>

<u>hereto and specifically described as follows:</u>

-15-

    <u>Exhibit # 1 - Dealer Trial Franchise, Part I</u>

    <u>Exhibit # 2 - Dealer Franchise Part, II</u>

    <u>Exhibit # 3 - Receipt for Franchise Contracts Sun Refining and Marketing Company</u>" (emphasis added).

Now it is evident from the agreement here described as a Dealer Trial Franchise, which is attached to the complaint in this cause as Exhibit 1, that the liabilities and obligations of the defendant Hoai as stated in that franchise agreement included an obligation to notify Sun a fixed time before any proposed transferring of his franchise business to someone else and a liability to have the transferee proposed in any such transfer subjected to investigation and checking by Sun as to business experience and credit. But this obligation and liability includes also a right in defendant Hoai as the franchisee named in the franchise agreement to have any proposed transferee subject to such an investigation and check and, further, to have that transferree act in accord with applicable and governing statutory law, both federal and D.C.

    Thus part 19 of the franchise agreement between Hoai and Sun is specifically entitled "<u>SALE AND ASSIGNMENT</u>" and contains subparts denominated a. and b., with the former having 7 paragraphs thereunder and the latter 3. As we shall see the whole comprises a carefully crafted contractual scheme designed to preserve the rights of both parties and fit within the two sets of governing statutory law, federal and local (The local law being D.C. law in this case.)

    It is important for the Court to understand the complete scheme of this carefully crafted section as it applies to defendant Hoai in this instance. Therefore we review briefly the applicable parts: Subpart a. sets out provisions and provides specifically that subject to them the dealer, defendant Hoai in

this case, may make a sale of his "business," thus using almost the same word chosen by plaintiff in his alleged contract with defendant Hoai for the sale of Hoai's business interests. It is evident then that according to the contract, if the dealer fails to comply with the provisions of subpart a. he may not make a

-16-

sale of the business. These provisions of subpart a. of part 19 of the franchise contract then are clearly conditions which must be complied with or there cannot be a sale and, as we shall see, some of them are clearly precedent conditions. Moreover, they are conditions as to which plaintiff was from the outset clearly on notice since plaintiff attached a copy of this franchise agreement to the contract under which he now claims.

In paragraph (1) of this subpart a. it is made clear that for purposes of the franchise agreement a sale of the business includes "any reorganization...whereby another person, not previously a party hereto, <u>acquires rights with respect to Dealer's business or its operation</u>". (Emphasis added) That is, of course, precisely what is alleged here in the complaint before the Court, that plaintiff "operated" the station and was "ratified" by Sun as its dealer though not named in the franchise agreement. Clearly the agreement of transfer alleged here by plaintiff is a "transfer or assignment of an interest" as set out in (1)(a). And clearly the definition contained in this paragraph of "Dealer's business" to include the purchasing and reselling of Sun's branded motor fuel and the use and possession of the premises is applicable here.

So the contract alleged by plaintiff Vo as being between himself and defendant Hoai for the sale of all Hoai's business interest in the station is a sale subject to this part 19 of the franchise agreement so that it was subject to the provisions contained in Part 19 and, therefore, was subject to paragraph (2) of Part 19 requiring a 60 day notice to Sun by Hoai in writing. Further, by paragraph (2) also, Hoai would have to have given Sun

in this 60 day notice Vo's name, address and the purchase price ($1.00)[5] as well as the essential terms and conditions of the

---

[5] It should be noted that the purchase price by the terms of the contract is one dollar and evidence to the contrary is excluded by the parol evidence rule, the price not being ambiguous, and by the terms of the contract itself as pointed out above. The Court will note that the allegation of other consideration was not in the original complaint. It is, in fact, an afterthought of plaintiff and his counsel, introduced after defendant Hoai pointed out that the recited one dollar consideration had in fact never been given or delivered and had formally rescinded the alleged contract while reserving the right to dispute that it ever existed because it was exacted under threat of murder of his person.

-17-

proposed sale. Further, Hoai would have to have represented to Sun that all the information he was supplying was true and correct.[6]

By paragraph (3) of subpart a. Sun is to have up to 60 days to conduct an examination of the proposed purchaser's "credit standing, financial condition, business suitability to function as a franchisee of Company and to evaluate the proposed sale of Dealer's business." Dealer and the proposed purchaser are mandatorily required to provide Sun with all information as Sun requests it to make this examination and Hoai would have had to pay for its costs. A standard is set for the examination of "reasonable and objective business practices and standards" and the Company, Sun, is not to be liable for any damages caused by its disapproval or any contingency it places on an approval. We ask the Court to note that this requirement is as much a service to and a right of the dealer as it is an obligation and liability on his part. Indeed it is a service that he is to pay for. It requires the dealer to take the precautions that a reasonable and prudent businessman should take in selling a business, and thus does not impose any more onerous requirement than that which benefits the dealer as much as it does Sun and and protects the dealer as much as it does Sun.[7]

Paragraphs (4) and (5) then allow Sun to prevent the sale or make it contingent if the proposed transferee does not measure up and allow them to use a trial franchise arrangement and make it

contingent on their specialized dealer training even if the proposed transferee does measure up.

---

[6] It is not part of this motion but, of course, these last two requirements would have required Hoai to reveal in any case that the one-dollar contract, given its facial unreasonableness and unconscionability in the first place, was, in fact, exacted from him under threats of murder and harm to his family. So that the wisdom of these provisions and the statutory provisions discussed further on in providing for orderly transfer of franchises is evident.

[7] Indeed, though it not germane to this motion per se that Hoai complains that Vo was extorting him and threatened him and his family but clearly these provisions are designed, in providing for an orderly and responsible transfer, to preclude that kind of situation as much as any other.

-18-

Paragraph (6) then makes it clear that any sale of the franchise, whether actual or contemplated, is subject to these conditions.  Paragraph (7) then makes it clear that a sale or assignment which violates these provisions or conditions is to be treated "for all purposes" as a fraud.  Again it should be noted that this protects the dealer as much as it does Sun.  For fraud is more often than not of such a nature as to be thwarted by such careful and wise provisions.[8]

Nor is this obligation, liability and right altered by the Petroleum Marketing Practices Act, 15 U.S.C. 2801, et seq.  In fact, just the opposite is the case.  The act specifically preserves the obligation, liability and right.  For it specifically provides, at sec. 2806 (b):

> Nothing in this title authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise <u>as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise.</u>  (Emphasis added.)

In other words the federal act is neutral with regard to sale and assignment of dealer franchises provided that they take place as authorized by the franchise agreement.  Since as a matter of law based on the allegations of the complaint and its attached exhibits the allegations of the complaint show that plaintiff

claims the transfer of the franchise by "operation" and "ratification" and alleges that defendant Hoai even refused to contact Sun on the matter much less notify Sun in accord with the contractual requirements of the franchise, the transfer claimed here is not as authorized by the franchise and therefore falls without the statutorily prescribed neutral zone and falls, to the extent that Sun would switch sides and "ratify" the claimed transfer, even if it had, into the zone of the prohibitions against improper termination of a franchise in subsection (a) of 15 U.S.C. 2806.

However there is also the final question of whether or not the franchise agreement, in so regulating transfer of the

---

[8] Indeed that is precisely what defendant Hoai complains of in his counterclaim to the original complaint.

-19-

franchise, falls afoul of any state law which enables or empowers the transfer regardless of the terms of the franchise agreement. For were that the case, the provisions of the franchise agreement discussed above could not control the situation under the language of the federal statute quoted with emphasis above. The relevant D.C. statute is the D.C. Retail Service Station Act, ("RSSA") found in the D.C. Code (1981 Ed. Michie) at Section 10-201 <u>et seq</u>. The D.C. Act requires, at Sec. 10-221, that the franchise agreement be in writing and it bars a distributor such as Sun from prohibiting the sale or transfer of a station in the same section at (a)(5). However, this right, by a following section, Section 10-225, is made subject to conditions which are virtually identical to and certainly in congruence with those imposed by the franchise agreement. Section 10-225 (a) provides that no distributor shall, in language reminiscent of that of the franchise agreement in question, "unreasonably withhold his approval of any sale, assignment or other transfer, including any transfer of the retail dealer's right, privilege, or authority to occupy a retail service station pursuant to a marketing

agreement, of a marketing agreement or any interest therin to another person by a retail dealer." "Marketing agreement", by the definition section of the RSSA, Section 10-201, is the term used for a dealer franchise in the RSSA.

The following subsections then spell out reasonable conditions which are remarkably similar to those set out in the franchise agreement provision governing sales or transfers of the franchise which we have discussed. Subsection 10-225 (b) requires the dealer to furnish prior written notice the distributor of his intention to make such sale, assignment or other transfer. The notice of the intended transfer is required to be sent to the distributor by registered or certified mail and shall include the prospective transferee's name and address, a statement of his financial qualifications, a statement of his business experience during the past five years, and a statement of his ability, character and credit history.

-20-

By subsection (c) the distributor is then given up to 60 days to either approve or disapprove the proposed sale, assignment or other transfer in writing.

So all in all the D.C. Act does not conflict in any way with the requirments of the franchise agreement itself. They complement each other with the franchise agreement only defining a little bit more some of the requirements of the RSSA and the RSSA in turn spelling out a few details not in the franchise agreement, such as the required use of certified or registered mail.

Thus, what the Court has here before it in the conditions imposed by both the franchise agreement and the applicable federal and D.C. statutes, according to the allegations of the complaint, is a clear situation of a failure to fulfill the necessary conditions precedent to a valid contract of transfer of a service station franchise in the District. A transfer by

"ratification" such as is pled here violates both the statutory requirements and the requirements of the franchise agreement. Plaintiff, having relied upon the franchise agreement and incorporated it in the alleged concontract of sale which he also relies upon, can hardly claim ignorance of these conditions precedent as contained in the franchise agreement and he certainly cannot claim he can ignore the statutes. he hasn't ped good faith, or bona fide purchaser for value ($1.00 ??) but it is clear he would be estopped even if he had.

An agreement cannot be valid if at the time it is made it is obviously impossible of performance. McGar v. Williams 26 Ala 469; LeRoy v. Jacobsky 136 NC 443, 48 SE 796. In the District we have a doctrine of failure of consideration covering this. A contract whose fulfillment depends upon the act or consent of a third person whom neither party has any control, the contract cannot be enforced unless the act is performed or the consent given. O'Brien v. Fricke, 148 Neb 369, 27 NW2d 403; Evans v. Platte Valley Public Power & Irrig. Dist. 144 Neb 368, 13 NW2d 401; most importantly since Maryland law is looked to in the District if District law is silent: Compania de Astal, S.A. v.

-21-

Boston Metals Co. 205 Md 237, 107 A2d 357, 108 A2d 372, 49 ALR2d 646, cert den 348 US 943, 99 Led 73. Nor is the alleged promisor bound to take positive action to bring about the performance of the condition as is alleged here.[9] Amies v. Wesnofske, 255 NY 145, 174 NE 436, 73 ALR 918. A condition in a contract may be express or implied. Stewart v. Stone 127 NY 500, 28 NE 595; Lauer v. Equitable L. Assur. Soc.8 Ohio NP 117, 10 Ohio Dec 397. Conditions may be created by the manifested assent of the parties, or they may be created by law from the terms or nature of the contract. From this viewpoint conditions are sometimes ut into two broad classes: (1) the express condition; and (2) the constructive condition, also frquently called a condition implied in law. It should also be recognized that there is a class of

conditions implied in fact, that is, conditions which appear from the terms of the contract to be necessarily inherent in the actual performance of the agreement. Williston, Contracts 3d Ed. Sec. 668, cited in Ross v. Harding (Wash 2d) 391 P2d 526. No particular form of words is necessary in order to create an express condition. U.S. v. Schaefer (CA9 Wash) 319 F2d 907; Ross v. Harding, supra; Beattie-Firth, Inc. v. Colebank 143 W Va 740, 105 SE2d 5, 75 ALR2d 431.

The condition precedent here, of prior notification of and a credit, business history and ability check by Sun & c., is, by definition, precedent to the very existence of the alleged contract. Because the notification and the check must be prior. Therefore, these conditions precedent are of the type of condition precedent which precedes the very existence of the contract and without which it cannot exist. Atlantic-Pacific oil Co. v. as Development Co. 105 Mont 1, 69 P2d 750; O'Brien v. Fricke, supra; Evans v. Platte Valley etc., supra; Federal Reserve Bank v. Neuse Mfg. Co. 213 NC 489, 196 SE 848; Quinn Distributing Co. v. North Hill Bowl, Inc. (ND) 130 NW2d 860;

---

[9] It should be pointed out that by asserting a ratification contract, which is what he did if one takes the allegations of the complaint as true, the plaintiff virtually made it impossible to fulfill the conditions precedent of the franchise agreement and the RSSA which may make the matter moot as regards plaintiff's contentions in any case.

-22-

Toland v. Kaliff (Tex Civ App) 435 SW2d 260. The condition precedent may be conditioned on the act or will of a third person. Federal Reserve Bank v. Neuse Mfg. Co., supra; Miners & Merchants Bank v. Gidley 150 W Va 229, 144 SE2d 711.

Here there was a failure of consideration for the contract sued upon, the alleged agreement to transfer of May 2, 1986. For by its own attachments it was a contract in which there was this precedent condition created by the franchise agreement which condition was also created by statute. The precedent condition included the requirement of prior notice to Sun. Yet by its

terms the contract purported to be making an instantaneous transfer. Instantaneous transfer cannot be and cannot be a consideration making a valid contract where prior notice of thirty days or any amount of time, for that matter, is required.

Then there is the matter of the legality of the contract. All agreements which have for their object anything which is repugnant to justice or against the general policy of the common law or contrary to the provisions of any statute are void. <u>Johnson v. Van Wyck</u> 4 App DC 294. See also <u>Baxter v. Wilburn</u> 172 Md 160, 190 A 773; <u>Nicholson v. Ellis</u> 110 Md 322, 73 A 820. Here the performance of the contract as promised by both parties was illegal and it further had, as its expressly stated intention, the circumvention of the governing law.

Therefore this Count I for breach of contract should be dismissed with regard to defendant Hoai. It is evident from the provisions in the franchise agreement between Hoai and Sun which comprises Exhibit 1 to the complaint that they are carefully drawn to comport with positive requirements of D.C. statutory law governing the transfer of gas station franchises and that the D.C. statutory law, in turn, does not forbid and even encourages the said obligation, liability and right contained in Exhibit 1.

There are unfulfilled conditions precedent which must be met before any business interest of defendant Hoai can have been transferred so that a transfer of such business interest cannot have occured by virtue of the May 2, 1986, agreement. Plaintiff can only have obtained what Hoai was legally empowered to give

-23-

and the flaw in the contract in that it purports to transfer, albeit in clever and general language, by the allegations as to the motives for which defendant Hoai allegedly negotiated the franchise for the gas station in his own name and not that of plaintiff, that which cannot and could not be so transferred. It is averred also that defendant Hoai assured plaintiff "Vo that he would promptly arrange transfer of all rights to Vo and any

necessary approval thereof by Sun." However, this was simply an attempt to circumvent the requirements of the franchise and the laws. You cannot perform that which is required to be performed prior to the contract by specifying that the other party will be required to do it after the contract is allegedlyl entered into. Certainly that would defeat the very purpose of the franchise agreement provisions cited above and the statutes involved.

VI. COUNT VI: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP: BUSINESS RELATIONSHIP WITH SUN BY PLAINTIFF PRIOR TO SUIT NOT SHOWN: INTERFERENCE WITHOUT JUSTIFICATION NOT ALLEGED OR SHOWN.

In Count VI plaintiff alleges two acts as being those that constitute the tort of interference with an advantageous business relationship. The first is a letter sent by defendant Hoai through counsel to Sun on June 10, 1986,

This letter, referred to and incorporated as an exhibit by the allegations of paragraph 44 of the complaint, is alleged further, in paragraph 45, to have been instrumental in "causing Sun's employee, Ernie Peele, to endorse the aforesaid specious Notice to Surrender Premises (Exhibit 4) which was used by the individual defendants as a pretext for the wrongful acts described herein."

The other act is alleged, in paragraph 46, to have been the wrongful eviction of plaintiff from the gas station by defendant Hoai and his agents and the possession and operation of the plaintiff by the defendant Hoai and his agents.

As we have seen from the above, there is no legitimate relationship of a business nature between plaintiff and Sun that could have been interfered with. There was no such relationship

-24-

established by the contract attached to the complaint as Exhibit 2 because of its failure to have come into being as a result of unfulfilled conditions precedent and also because of illegality.

Looking then, at the letter sent by Hoai's counsel on June

10, 1986, the Court can readily see that there is no unjustified intrusion on a business relationship there for two reasons. The first is that there was no legitimate business relationship that is shown by these allegations of the present complaint to have existed between Sun and plaintiff and you must have such a relationship to be interfered with before a cause of action such as is pled here can be maintained. Secondly, the letter is simply a letter from counsel asserting Hoai's still being the legitimate franchisee and asking that Sun do something. This is simply not an unjustified intrusion into any business relationship.

As to the charge of wrongful eviction: We have already seen how it is erroneous and must be dismissed. Likewise, by these allegations discussed above it is seen that no transfer was made and Hoai, therefore, had every right to possess and operate his own franchise. Therefore the second specific allegation of an instance of an alleged interference with the alleged advantageous business relationship, set out in paragraph 46, is also insufficient as a matter of law.

The interference in the tort of interference with an advantageous business relationship must intentionally be interference. <u>Sullivan v. Heritage Foundation</u> 399 A2d 856 (D.C. App 1979). Having your counsel write a letter under the circumstances alleged here is hardly an intentional interference such as is required under this controlling case. Rather it is simply an attempt, however inarticulate, as the letter itself shows, to assert defendant Hoai's legitimate rights. We have seen above that the allegations in the amended complaint show no wrongful eviction or breach of contract. A fortiori, if the plaintiff's claims that are well-pleaded (We think the Court is beginning to see that many are not) are not all taken as true then it is abundantly clear that defendant Hoai had every

-25-

positive reason to have his counsel write that letter without

having any intention of interfering with any advantageous business relationship between Vo and Sun.

Similarly he had every right to have his lawyer go with him to the station and ask the usurper Vo, who, as we have seen, had no contractual or tenant's rights to possess the station, or Vo's employees, to leave in writing. So again, this was not an intentional act in the sense that the tort requires. It is only unlawful interferences that can comprise this tort. Lukens Steel Co. v. Perkins 70 App DC 354, 107 F2d 627 (1940). This count too should be dismissed.

VII. COUNT II. CIVIL TRESPASS: VO A MERE SCRAMBLER WITHOUT TENANCY OR CONTRACTUAL RIGHTS: THEREFORE NO TRESPASS

In Mendes v. Johnson, supra our Court of Appeals, in setting out the history of the development of the tort of wrongful eviction, relied upon and quoted from Professor Prosser's classic casebook on torts. A reading of the section referred to in that case will reveal that Professor Prosser set it out that the tort cannot obtain where the person being ousted from the property is, as he puts it, a mere scrambler. We have seen above that that was the status of the plaintiff in this case. He had neither tenancy nor contractual rights as against defendant Hoai.

Thus in Prosser and Keeton, The Law of Torts, 5th Ed. 1984, we find, at p. 145:

> The Scrambling Possessor
>
> The statutes of forcible entry protect only a plaintiff who is himself in peacable possession of the property. A mere "scrambling" possession is not enough. A trespasser who ousts the owner acquires no possession which will entitle him to protection against an immediate forcible reentry, even though that reentry may involve assault and battery.[10] What is required is "something like acquiescence in the physical fact of his occupation on the part of the rightful owner."[11] Mere delay in taking effective action, even for a period of months, will not make the entry tortious, if he owner has ... has made persistent efforts to enter;[12] (footnotes renumbered from the original).

---

[10] Cox v. Cunningham, 1875, 77 Ill. 545; Taylor v. Adams, 1885, 58 Mich. 187, 24 N.W. 864; Hodgkins v. Price, 1882, 132 Mass. 196; O'Donohue v. Holmes, 1895, 107 Ala. 489, 18 So. 263. See cases collected in 121 Am.St.Rep. 384.
[11] Pollock, Law of Torts, 13th Ed. 1929, 403.
[12] Anderson v. Mills, 1882, 40 Ark. 192; Wray v. Taylor, 1876, 56 Ala. 188; Jones v. Czaza, 1935, 19 Tenn.App. 327, 86 S.W.2d 1096; Hoag v. Pierce, 1865, 28 Cal. 187; Benevides v. Lucio, Tex.Com.App.1929, 13 S.W.2d 71

Here the plaintiff alleges exactly the opposite of acquiescence by defendant Hoai. Instead he alleges that Hoai and his agents have interfered with his contract with Hoai (Which, as we have seen, is invalid as a matter of law.). He alleges that Hoai and his agents have interfered with the advantageous business relationship he enjoyed with Sun as "operator" of the station. He has alleged that Hoai has refused to acquiesce in refusing to notify Sun that he, Vo, was the franchisee. Paragraph 15. In Paragraph 20 plaintiff specifically alleges that defendant Hoai "sought to claim the Station as his own, and to deny the lawful transfer of all of his interest therein to Vo."

Actual possession of real property without title is sufficient to sustain an action of trespass but only against one having no superior right. Campbell v. Rankin 99 US 261; Burt v. Panjaud 99 US 180. An occupant of land who who takes possession thereof in violation of law cannot maintain an action for trespass against the rightful owner of the real interest for entry by that lawful owner. Lambert v. Rainbolt 207 Okla 451, 250 P2d 459. Indeed, possession without right can only be disturbed by the rightful owner of the real property interest, or by someone claiming under him. Hughes v. Graves 39 Vt 359. In effect, what plaintiff does here is to try to claim under the title of Sun, which he cannot do and with whom he has no privity. Northern P.R. Co. v. Lewis 162 US 366; Vidmer v. Lloyd 193 Ala 386, 69 So 480; Thomsen v. State 70 Wash 2d 92, 422 P2d 824. Either the alleged contract of sale is valid or invalid. Corrspondingly, either plaintiff or defendant Hoai had title to the leasehold. If Hoai owned the leasehold as we have shown he did, and title to it never transferred, then his ownership of the leasehold, together with his right of possession, is a defense to any claim for trespass. See Restatement, TORTS 2d, Sec. 185, Lambert v. Rainbolt, supra; Thomsen v. State, supra. One who enters upon his own land, and tears down a fence which has been built to enclose it by a person who wrongfully took possession of it is not liable to an action by the wrongful taker for trespass. Stillwell v. Duncan 103 Ky 59, 44 SW 357.

-27-

This count for civil trespass should be dismissed.

VIII. COUNT IV, CONVERSION: PROPERTY NOT VO'S, THEREFORE NO CONVERSION

We have seen that the franchise never transferred to plaintiff as a matter of law and that this law is both of the contract and of statutory law. Therefore there can have been no fuel delivered, by the terms of the franchise agreement, that was plaintiff Vo's. Further, although plaintiff claims in the complaint to have paid for inventory and since he wrongfully alleges that he is the "ratified" dealer, there is deliberate ambiguity in the pleading. This ambiguity was the subject of defendants' motion for a more definite statement. The ambiguity is that words are used which fail to clarify whether plaintiff is claiming to have spent his own personal funds or those of the station itself, i.e., its daily receipts. Ambiguity in the pleading should be interpreted against the pleader. The assumption that facts alleged should be assumed to be so for purposes of a dismissal motion only goes to well-pleaded facts. Certainly it does not include ambiguities by the pleader in the light most favorable to the pleader but rather the opposite.

This count also should be dismissed. Conversion cannot be pleaded by one who does not have rightful possession and control.

IX. COUNTS IV (LOST PROFITS) AND VII (TORTIOUS INTERFERENCE WITH CONTRACT)

Lost profits is not an independent tort. Rather it is a measure of damages applied when there are special or aggravating circumstances. Here lost profits cannot stand because it in turn depends upon the conversion count preceding it as is alleged in paragraph 41. Therefore this count also must be dismissed. The tortious interference with contract count does not name defendant Hoai and so we pass on to Count VIII.

X. COUNT VIII. MONEY LENT: IMPROPER JURISDICTION, NO CONNECTION WITH THE CAUSE OF ACTION IN THE DISTRICT OF COLUMBIA

By the allegations of plaintiff defendant Hoai is a resident of Virginia (Complaint, para. 4) and the alleged loan to Hoai in

February and March of $2,000.00 had nothing to do with the gas station business which is the subject of the present dispute and

-28-

complaint. The money loaned was for Hoai and his family personally, the allegations claim, and the former business alleged about is not placed in D.C. by any allegation.[13]

Also in paragraph 52 plaintiff alleges that there is another amount of $15,000.00 lent on May 2, 1986. The reference to this amount is in paragraph 20 of those paragraphs incorporated by reference into this count VIII. Paragraph 20 in turn refers to paragraph 14 where it is alleged that:

> On this same day, May 2, 1986, as further consideration for the transfer of Hoai's interest in the Station, Vo loaned to Hoai an additional $15,000, which Hoai represented was to be used in connection with Hoai's and his wife's operation and eventual purchase of a grocery business located in the community of Clarendon, in Arlington, Virginia.

There are no allegations showing that this other alleged loan had any connection with the District of Columbia. Indeed, there are no allegations in the complaint that show that the alleged contract of May 2, 1986, between plaintiff and defendant Hoai was executed or is to be interpreted in light of D.C. law as set out above.

The alleged contract itself, as we have pointed out above, states specifically that it is the entire agreement between the parties. Thus if there was this additional consideration it is barred from being considered by the Court both by its own terms and by the parol evidence rule. Furthermore it must be presumed to have been undertaken in Virginia and concerns a Virginia subject matter. Therefore this entire count ought to be dismissed from this suit.

XI. COUNT XI DECLARATORY JUDGMENT AND INJUNCTION

As to the claim for declaratory judgment: declaratory judgment is not an independent tort or claim for a civil wrong. If the torts in the complaint are dismissed so must the claim for declaratory judgment be dismissed. The same is true of the claim

for injunctive relief. Absent the torts actually claimed there can be no substantial likelihood of success on the merits and therefore no preliminary injunctive relief. The business, we have shown, is not now and never was the plaintiff's and

---
[13] In fact, it was in Springfield, Virginia.

-29-

therefore he is not entitled to any permanent injunctive relief. This count should be dismissed.

XII. REQUEST FOR HEARING ON THE DISMISSAL MOTION AS A THRESHOLD MATTER.

Now that this matter has been assigned to civil I the defendant Hoai requests that his renewal of the motion to dismiss be heard before all other matters because of its threshold and jurisdictional nature.

Respectfully submitted,

THANH VONG HOAI
By:

_____
Laurence A. Elgin
4816 Rodman Street, N.W.
Washington, D.C. 20016
(202) 628-1114, #159582

CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing first renewal of the defendant Thanh Vong Hoai's motion to dismiss, together with its supporting memorandum of points and authorities and accompanying order have been caused by me to be delivered by hand this _____ day of December, 1987, upon the following: J. Gordon Forester, Jr., Esquire, Pohoryles and Greenstein, suite 800, 1920 N Street, N.W., Washington, D.C. 20036 and Robert J. Pleshaw, Esquire, 1319 H Street, N.W., Washington, D.C. 20006.

_____
Laurence A. Elgin

-30-

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| THANH VAN VO, d/b/a<br>   SUNTECH SUNOCO, INC.<br>       Plaintiff,<br><br>v.<br><br>SUN REFINING AND MARKETING<br>   COMPANY, INC., et al.<br>       Defendants. | )<br>)<br>)<br>)<br>)<br>) CA No. 7075-'86<br>)<br>)<br>)<br>) |

ORDER

Upon consideration of the dismissal motion filed by the individual defendants in this cause in April while the case was removed to the United States District Court and the opposition thereto, the first renewal of that motion to dismiss recently filed by the plaintiff Thanh Vong Hoai, and the opposition thereto, and the Court finding that no cause of action is stated upon which relief can be granted, the complaint in this matter is hereby dismissed with prejudice.

_____
Judge

copies to:
Laurence A. Elgin, Esq., 4816 Rodman Street, N.W., Washington, D.C. 20016; John D. Hemenway, Esquire, 4816 Rodman Street, N.W., Washington, D.C. 20016; J. Gordon Forester, Jr., Esquire, Pohoryles and Greenstein, suite 800, 1920 N Street, N.W., Washington, D.C. 20036 and Robert J. Pleshaw, Esquire, 1819 H Street, N.W., Washington, D.C. 20006.