IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THANH VONG HOAI, *et al.* ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:06-cv- 00210-RJL |
| ) | |
| ) | |
| The SUPERIOR COURT of the ) | |
| DISTRICT of COLUMBIA, *et al.,* ) | |
|     Defendants. ) | |

**PLAINTIFFS' REPLY TO THE OPPOSITION OF THE DEFENDANTS TO THE PLAINTIFFS' MOTION FOR RECONSIDERATION**

The defendants appear to concede that the case is presently in the Court of Appeals and that, therefore, this Court lacked jurisdiction to make the decision that it has made on the first motion that the plaintiffs made for preliminary and permanent injunctive relief to avoid relitigation. The defendants cite no authority to counter that cited by the plaintiffs in that regard, leaving that authority unchallenged. We would hope, therefore, that the Court would vacate its decision for that reason alone, pending the outcome of the present appeal.

The defendants address their opposition only to the substantive question addressed in plaintiffs' motion for reconsideration. In doing so, however, they do not address plaintiffs' principal point: What claim is there in the complaint of Vo that Vo can go forward with and prove without disputing that the franchise belonged to Hoai? In failing to address that issue, the defendants begin with a serious mischaracterization of the law as put forth in the plaintiffs' motion. They say, p.1, ¶ 2:

> In support of their Motion for Reconsideration, Plaintiffs vigorously argue that Judge Oberdorfer resolved only the issue of

1

ownership of the Sunoco station in his 1990 opinion under the Petroleum Marketing Practices Act ("PMPA"), and admit that Judge Oberdorfer did not decide the question of whether Hoai or Vo was entitled to possession of the service station.

While the defendants refer to the PMPA their mischaracterization of the plaintiffs' argument shows that they still fail to grasp what the PMPA does as a matter of controlling law. We repeat for the umpteenth time: under the pre-emptive definitions of the PMPA and the case law under that Act as cited by Judge Oberdorfer as well as a plethora of other cases before and since there is no such entity as a "station"; there is only the franchise, which is by definition the contract of franchise, and it has three components, also contracts. They are the contract to use the trademark, the contract for the motor fuel, and the contract for the premises. The three contracts are the coherent whole contract which is, by definition of the Act, the franchise. The District of Columbia cannot create an entity apart from the franchise called the station to which any party has a right of possession if they do not have a right of possession of the franchise.

This preemptive law is not altered by picking and choosing among what Judge Oberdorfer said in his opinion and placing contrary interpretations upon his comments to create some "possessory" right to a "station." In often-cited case our United States Court of Appeals pointed out the law that is directly applicable here and which points out the flaw in the argument of the defendants and why their mischaracterization of the argument of the plaintiffs is not only misleading, but is also immaterial:

> In issue preclusion, it is the prior *judgment* that matters, not the court's opinion explicating the judgment. "Even in the absence of *any* opinion a judgment bars relitigation of an issue necessary to the judgment." *American Iron & Steel Inst. v. EPA*, 886 F.2d 390, 397 (D.C.Cir. 1989) (emphasis in original), *cert. denied*, __ U.S. __, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990) (emphases in original) *Yamaha Corp. of America v. U.S.*, 941 F2d 245, 254 (D.C.Cir. 1992)

2

The pre-emptive law of the PMPA as applied by Judge Oberdorfer would be controlling whether Judge Oberdorfer had set it out or not. As it happens he correctly analyzed and stated the controlling law of the three components of a franchise, citing PMPA cases. He did not cite or mention the pre-emptive definition that the contract is the franchise. He mentioned some things about disputes between Vo and Hoai but did not attempt to define what they were and it would not have made nay difference if he did. The pre-emptive law is the law. In fact it would not matter if he, then or now, decided he wanted Vo to be able to go after Hoai for some non-existent possessory right that somehow overrode the PMPA. Once he decided that the franchise belonged to Hoai the issue of who owned the franchise, including the right to the leasehold, was decided, correctly, as a matter of law.

The defendants assert that plaintiffs' argument "defeats their claim for relief in that (1) Plaintiffs admit that Judge Oberdorfer's ruling was expressly limited to conclusions under the PMPA;…" Usually, those arguing for a municipality admit that federal law is pre-emptive. That does not seem to be the case here. What a service station franchise is and consists of is defined by federal statute. We have pointed out what that definition is and to the controlling authority of what it consists of as pointed out by Judge Oberdorfer. If there is some right of possession in the District of Columbia that Vo could have had that is not pre-empted by this federal law then surely the defendants can explain to us what it is. They have not done so. There is no such possessory right that is outside the federal statutory definitions. So far there has been a deafening silence on this point. We would respectfully suggest that it is time for the Court to analyze and articulate just what this "possessory right" that is outside the limits of the PMPA may be,

if there is one that Vo can invoke under the claims in his complaint and can do so without seeking to claim that he, Vo, and not Hoai, owned the franchise. We do not think, with all due respect, that there is such a possessory right, but if there is, the Court ought to be able to ascertain what it is.

Next, in the opposition, the defendants assert that "Plaintiffs admit that Vo was not a party to the litigation before Judge Oberdorfer;…" This is true but not necessarily relevant. It is not that plaintiffs "admit" this; it is part of the facts. No attempt was ever made to assert otherwise. The Supreme Court, it is noted repeatedly, long ago severed the "mutuality" requirement with regard to collateral estoppel or issue preclusion. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Yamaha Corp. of America, supra*, the United States Court of Appeals also pointed out that:

> The Supreme Court has defined issue preclusion to mean that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed. 2d 308 (1980) *Id.* 961 F.2d at 254

We note that the Supreme Court spoke of "a party" not the <u>same parties</u>. In another decision by our United States Court of Appeals for this circuit there is a similar reference to another of the landmark Supreme Court cases on issue preclusion. In a case that we have cited a number of times in this litigation, *Thomas v. Powell*, 247 F.3d 260, 262-263 (D.C.Cir.2001) the court said:

> Although the attorney-defendants in the Superior Court action case were not parties to the concluded federal action, traditional preclusion principles may nonetheless bar Thomas and his co-plaintiffs from prosecuting that action against them. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 325 n.5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979);

4

> *Ethnic Employees of the Library of Congress v. Boorstin*, 75 F.2d 1405, 1409 (D.C.Cir.1995); RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1980). The doctrine of collateral estoppel, or as it is now commonly called "issue preclusion," *see* RESTATEMENT, *supra*, at 1, provides that "Once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see McLaughlin v. Bradlee*, 803 F.2d 1197, 1201-02 & n.1 (D.C.Cir.1983); *Otherson v. Department of Justice*, 71 F.2d 267, 273 (D.C.Cir.1983).

Again note that the Supreme Court, in the landmark *Montana* case speaks of "a party" as having been involved in the prior case, not of all parties having been involved in that prior case.

The issue decided, as plaintiffs have repeatedly pointed out, is that Hoai owned the franchise. By pre-emptive federal statutory law that includes the contract of leasehold. A right to possess that leasehold in Vo would contravene the already decided point that Hoai owned the franchise. That is what plaintiffs have shown and it seems it would be at least required to examine the claims of Vo in his complaint and see if they do point to some possessory right that does not contravene the ownership of the franchise by Hoai. In any case we have shown repeatedly that Vo's interests were advanced over and over again by Sun in the PMPA litigation, and that Vo stood in the shoes of Sun and Sun in the shoes of Vo in denying that Hoai owned the franchise and that Sun had been compelled to do what it did by an order of the Superior Court giving the franchise in effect to Vo, a contention repudiated not only by this Court but by the District of Columbia Court of Appeals.

What the Court needs to ask, and with all due respect, what it has not asked and analyzed, is what claim is there that Vo raises in his complaint that can be pursued

without encountering what was decided by the decision that the franchise belonged to Hoai?  If Vo does indeed have some possessory right that was not advanced by Sun on his behalf in the PMPA litigation, where Sun stood in his shoes, then what is that claim?  Surely it can be described, but so far it has not been.  Perhaps at this juncture it would be of great benefit to the Court to actually analyze the Vo complaint in the Superior Court to see if it raises any claim of possessory right that does not, if the complaint were to be prosecuted further, run afoul of the decided issue that Hoai owned the franchise and that would, therefore, cause that issue to have to be relitigated.

It is by examining the complaints of Vo and in conjunction with them the Consent Order between Vo and Sun which was the focus of the litigation in this Court and the United States Court of Appeals for this circuit that one sees that Vo has but one possible small count in his complaints, a count for money ostensibly lent in a Virginia transaction unrelated to the Sun franchise, that he can possibly prove without relitigating the issue of ownership of the franchise that was determined in this Court and the United States Court of Appeals for the District of Columbia Circuit.   And in doing so one also inexorably has to see the privity that existed between Vo and Sun, belying the continuing argument of the defendants that there is no such privity, an argument which they again advance in this opposition.

As we have pointed out before the two complaints of Vo are attached to the TRO motion made in this Court by the plaintiffs (Paper No. 10) as Attachments E and F.  Each complaint had attached to it a copy of the franchise agreement between Hoai and Sun, and incorporated that agreement as Exhibit 1.  See ¶ 13 of the original complaint referring to Exhibit 1 attached to the complaint and the same number paragraph referring to

6

Exhibit 1 to the amended complaint.  Each complaint alleges that Hoai entered into this franchise agreement with Sun on April 8, 1986.   Similarly each complaint has a following paragraph, ¶ 14 which refers to an Exhibit 2 attached to and incorporated in the complaint by which Vo alleges that by an agreement dated April 4th 1986 but not executed until May 2, 1986, Hoai signed over to Vo (who is referred to in the complaint as "Van" from a variant of his name, Thanh Van Vo) "all his interest in the station."  This purported agreement for Hoai to sign over to Vo all his "interest in the station," by its language purports to transfer the contract of franchise from Hoai to Vo for one dollar and has attached to it a copy of the franchise agreement between Sun and Hoai, which, of course, did not exist until April 8, 1986.  In ¶ 24 of the original complaint and ¶ 28 of the amended complaint Vo (Van) alleges that Ernie Peele, Sun Area Representative, signed a document, Exhibit 4 attached to and incorporated into the complaint, stating that Hoai was the dealer or franchise owner, not Vo, and which was used by the present plaintiffs to get Vo's (Van's) employees and occupants to leave the premises.

   Thus it is acknowledged that Sun, at the point where the present plaintiffs ousted Vo from the premises of the franchise, regarded Hoai, not Vo as its dealer and thus the owner of the franchise as set out in the franchise agreement which is part of the complaint.  We would ask the Court to note at this point, and the Court has not discussed it heretofore, that the complaints of Vo speak of something called the "station" and do not comport with the pre-emptive definitions of the PMPA as we have repeatedly pointed out.  Further, in ¶ 15 of each complaint it is acknowledged that the transfer of the station from Hoai to Vo has never been effected by Sun as of the filing of either complaint. Thus Vo is making claims of a right to "possess the station" which is a right to have the

contract of possession of the leasehold, the right to supply of the motor fuel under a contract from Sun which Sun has allegedly failed to perform and the right to have the contract to use Sun's trademark which Sun has allegedly failed to deliver to him. This is, by definition, the franchise albeit expressed in terms not consonant with the terms imposed pre-emptively by the PMPA, because the complaint, as pointed out by the Court during the PMPA litigation in this Court and the Court above, ignores the PMPA. This appears to be either deliberate ignoring of the controlling law by whoever drafted the complaint, or perhaps ignorance of the controlling law. At any rate, as Judge Oberdorfer noted, the manner in which the franchise of Hoai (not of Vo) could be terminated is controlled by the PMPA and Sun terminated Hoai's (not Vo's) franchise in violation of controlling law.

Therefore, by the decisions in this Court and the United States Court of Appeals the right that Vo alleges and prays for in the prayers of his complaint to have and possess the "station" has no validity as a matter of law. Throughout the case of Hoai against Sun which led to the decision in Hoai's favor that Sun had illegally terminated Hoai's franchise, Sun argued and put forth the position of Vo that Hoai had somehow transferred the station to Vo and that Vo had some possessory right to the station that justified Sun's effectively transferring the station to Vo. These arguments failed.

The reason that the above-cited provisions from the Vo complaints relate to the results in the Hoai PMPA case in this Court and the United States Court of Appeals is that Vo knew when he supposedly purchased the "station" for one dollar ($1.00) is that the actual contract which was the franchise, which he attached to the one dollar ($1.00) contract contained a precedent condition that he could not be the transferee of the

franchise unless he met the precedent condition of first being vetted and approved by Sun. Yet in his complaints he made it clear that he knew that this condition had not been fulfilled. He was alleging in the complaints Hoai had to give him "the station" in violation of this condition that he knew had not been fulfilled and that the Superior Court should give him the station based on a contract to purchase the station and business for one dollar ($1.00) despite his failure to meet that condition. His one dollar ($1.00) contract which he claimed under, like the complaints themselves, ignored the PMPA.

That failure is fatal to any claim Vo (Van) may have that seeks possession of any one of the three essential components of a franchise under the PMPA, and certainly of a claim that seeks possession of all three, because the provision that Sun was entitled to a notice period and the opportunity to check out any proposed transferee was in the contract that Vo (Van) claimed to be purchasing when he compelled Hoai to enter the one dollar ($1.00) contract under threat and attached to that one dollar ($1.00) contract the franchise agreement which is, under the PMPA, the franchise. It is a fact of the litigation that at the TRO hearing, which is referred to in the amended complaint of Vo, the late Ernie Peele, who at the time was the area representative for Sun, testified that Sun had checked out Vo and found him wanting. But even if that were not so, it is plain in both complaints that Sun had not approved Vo as required if Vo were to be a legitimate transferee and had in fact refused him as a potential transferee.

It is the refusal to look at this clear law for all these years that puzzles the plaintiffs. It is not all that complicated; it is a simple matter of whether a precedent condition was fulfilled. By the language of the Vo complaints that precedent condition was not fulfilled and Vo and his counsel knew that when they filed their complaints.

9

This is not just a question of contract law. The PMPA itself empowers such precedent conditions in contracts of franchise for service stations. It does so by declaring that the provisions for transfer of the franchise contained in the franchise agreement (which, remember, is the franchise) are not "prohibited" by the PMPA provided that there is no contravening state law. (Or, in this case, D.C. law) The provision, as we have pointed out before, that allows such precedent conditions, is contained in 15 U.S.C. § 2806 (b) where the federal Act says, in pertinent part: "Nothing in this Title .. prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise…." Note that while the PMPA itself does not authorize any such precedent conditions as are at issue here, it does say that it does not prohibit such authorizations in the provisions of the franchise, which is to say, of the contract of franchise. Therefore such provisions in a franchise are empowered by the federal Act if they do not contravene state (or D. C.) law.

    All that plaintiffs ask is that the Court finally examine and analyze this provision of the PMPA in connection with the actual language in the Sun franchise which this Court held belonged to Hoai so as to be illegally terminated by Sun. So far this has not happened. Although it seems the lack of attention to this enabling provision of the PMPA was obliquely referred to in the PMPA case by the comments about the PMPA being ignored in the complaints and at the TRO hearing, it was not in fact discussed, nor need it have been. But the question of whether or not Vo had some right of possession of the franchise was vigorously argued and put forward by Sun in the PMPA case and failed. We have demonstrated that in our briefing.

The language of the franchise, (which is also the contract of franchise,) that provides for the precedent condition, is quite clear. When plaintiffs filed their first motion for preliminary and permanent injunctive relief which is the object of the present motion to reconsider, plaintiffs attached as Attachment B to that motion (Document 11-3) the pertinent sections of the franchise. In the Memorandum in Support of that motion the plaintiffs pointed out in detail the provisions containing the language governing any transfer of the franchise with the precedent conditions that were set out in the franchise. We would urge the Court to go back and read that description in detail, which is found at pages 38 through 40 of the opening brief on the motion that we are presently asking to be reconsidered. This section of that brief to which we refer is entitled "THE TRANSFER PRESCRIPTION OF THE SUN FRANCHISE." It is followed by another section that we would also respectfully request that the Court carefully scrutinize entitled "THE LOCAL STATUTORY LAW THAT PERMITS TRANSFERS." The franchise, as we point out, among other precedent conditions with which Vo was not compliant, required Vo to notify Sun within 60 days of his intended transfer that he intended to have the station transferred to himself or his company and to do so in writing. Clearly, when Vo entered the one-dollar ($1.00) contract with Hoai by threatening Hoai he ignored this requirement even though he was clearly on notice as to it and the other precedent requirements since he attached the franchise agreement between Hoai and Sun to the one dollar ($1.00) contract.

The follow-on section in that opening brief about the local statutory law points out that, though the provisions of the PMPA empowering the franchisor to impose such reasonable requirements by precedent condition cannot contravene local statutory law

11

that prohibits such requirements, in this case the District of Columbia statutory law imposes even stricter precedent conditions and that here they were not met. The local statute also absolutely prohibited Vo from suing Sun as he did when he named Sun as a defendant along with Hoai and the Hemenways. Thus, the Consent Order, private contract between Sun and Vo was clearly an illegal attempt to get around controlling law. Vo could not "settle" a law suit with Sun he was forbidden by law to bring. There was no consideration whatsoever from Vo to Sun because what Vo was "giving up" was illegal.

Plaintiffs would respectfully submit that this Court is required to examine and analyze this controlling law and the provisions of the Sun franchise in question. If the Court has done so, it has not elucidated the law in its opinions; plaintiffs would ask that it do so.

The follow on section of the Memorandum in support of the motion for injunctive relief which is the subject of the present reconsideration motion, the section that follows the one about the D. C. Retail Service Station Act, begins at page 43, and is an analysis of the counts of Vo's complaint showing how he cannot go forward with all of his counts save one without running afoul of the decision in this Court that the franchise belonged to Hoai. We would urge the Court to carefully look at the Vo complaint and articulate how it is that the counts can be carried forward without challenging the judgment that the franchise belonged to Hoai. Plaintiffs do not believe this can be done.

Sun sought without success, in the PMPA litigation between it and Hoai in this Court, to justify its effectively giving Hoai's franchise to Vo by continually pointing to its agreement between Sun and Vo which Sun and Vo entitled as a Consent Order and had signed by a Superior Court Judge-in-Chambers without any notice whatsoever to

Hoai or the Hemenways. Sun claimed that that agreement was a court order which by virtue of the earlier TRO they had no choice but to enter into and recognize Vo as being entitled to possession of the franchise. Sun lost this argument and the decision and this Court necessarily required those contentions to be decided against. The turning point was when the United States Court of Appeals for this circuit, in its published opinion found that the Consent Order had no force of an independent judgment of the Superior Court. It was found to be a private agreement, in effect, to which Hoai and the Hemenways were explicitly not parties and which did not ever purport to affect the rights of Hoai.

That does not mean, however, that it did not affect the rights of Vo, who was a party to it. For by entering into the private agreement between themselves, Vo and Sun established an "identify of interest" against Hoai and, for that matter, the Hemenways as well. Further the attempt to transfer the franchise to Vo by what amounted to a private agreement between Vo and Sun clearly showed that Sun attempted to put Vo in the stead of Hoai when to do so was a violation of federal law and to make Vo a successor in interest to Hoai, to stand precisely in the shoes of Hoai under the franchise.

It was long ago decided in this Circuit that privity is the "mutual or successive relationships to the same right of property." *First National Bank of Holdenville, Okla. v. Ickes*, 154 F.2d 851, 853 (D.C.Cir.1946). The right of property here was the franchise as defined by the PMPA. Once Vo and Sun entered their private agreement which they then had enrolled as a "Consent Order" by a Superior Court Judge in Chambers, they had a mutual interest which they pursued cooperatively in establishing that Vo and not Hoai was entitled to the possession of the franchise. They also had a common interest in asserting that Vo was a legitimate successor to the property rights of Hoai. And, in fact,

as we have demonstrated, they cooperated extensively in the PMPA case to protect that mutual interest. Vo effectively participated in the PMPA litigation. In fact, if Vo really believed that the franchise had been transferred to him under controlling law he could have intervened in the PMPA case as a party claiming to be the franchisee legitimately, which is what Sun asserted on his behalf by the positions it took, and have had this Court and the court above make the decision explicitly which they made by necessary implication.

One of the broad categories of persons in privity that come under the doctrine is "… a person who is not a party may be concluded when his substantive legal right is so defined that it stands or falls according to a judgment involving another who was a party to prior litigation….." F. James & G. Hazard, "Civil Procedure" 576 (2d Ed. 1977), quoted in *Gill & Duffus Services, Inc. v. A. M. Nural Islam*, 675 F.2d 404, 406, n.4 (1982). We would ask the Court to consider closely whether there is anything that Vo could prove pursuant to his complaints as we have discussed them that would not stand or fall according to who owned the franchise. If there is such a right plaintiffs would greatly appreciate if the Court would elucidate what it is. "[T]he word privity designates a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *First National Bank of Holdenville, supra, Id.*

These plaintiffs beseech the Court to point out some legal right that Vo asserts in his complaints that can be pursued without Vo's claiming that he and not Hoai owned the franchise or any one or more of the three essential contract components of a franchise. For over twenty (20) years now the judges of the defendant courts have assiduously

avoided facing this issue.  As we have pointed out in an earlier brief, when counsel for Hoai and David Hemenway, and John D. Hemenway, acting *pro se*, brought up this law of the transfer of a franchise in a motion in the Superior Court they were threatened with sanctions for bringing up the idea of even analyzing this law which they believe to be controlling.  But what they sought and were attacked for in the Superior Court, Hoai prevailed upon in the federal courts at the very least in substantial part, and actually, they maintain, by virtue of the law set out herein and in earlier briefing, implicitly and as necessary to the decision in this Court, as a whole.

Respectfully submitted,

 /s/

_____
Laurence A. Elgin #159582
Suite 900, South Building
601 Pennsylvania Avenue, NW
Washington, D. C. 20004-3615
TEL:   (202) 628-1114
FAX:   (202) 628-6798