RECEIVED
SEP 2 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THANH VONG HOAI, *et al.* <br> Plaintiffs, <br><br> v. <br><br> The SUPERIOR COURT of the <br> DISTRICT of COLUMBIA, *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 1:06-cv- 00210-RJL <br> ) <br> ) <br> ) <br> ) <br> ) |

PLAINTIFFS' OPPOSITION TO THE MOTION OF THE DEFENDANTS TO DISMISS

The plaintiffs, acting for themselves, oppose the motion of the defendants to dismiss the plaintiffs' case for the reasons set out in the accompanying memorandum of points and authorities in support.

Respectfully submitted

John D. Hemenway, *pro se*
4816 Rodman Street, NW
Washington, DC 20016
(202) 244-4819

David Hemenway, *pro se*
4816 Rodman Street, NW
Washington, DC 20016
(202) 244-4819

Thanh Vong Hoai, *pro se*
2820 Poag Street
Alexandria VA 22303
(703) 768-9505

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THANH VONG HOAI, *et al.* )
    Plaintiffs, )
)
v. ) CIVIL ACTION NO. 1:06-cv-00210-RJL
)
)
The SUPERIOR COURT of the )
DISTRICT of COLUMBIA, *et al.*, )
    Defendants. )

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR OPPOSITION TO THE MOTION OF THE DEFENDANTS TO DISMISS

### THE ISSUE OF THE ANTI-INJUNCTION ACT

The Supreme Court, in its decision in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), squarely faced the issue of whether or not a suit pursuant to 42 U.S.C. § 1983, the Reconstruction era Klu Klux Klan Act, for relief against state court action violates the Anti-injunction Act, 28 U.S.C. § 2283. At that point in time there was a split among the circuits on the issue. In an opinion by Mr. Justice Stewart expressing the unanimous opinion of the Court, the Supreme Court held that suits under the Klu Klux Klan Act fall expressly within the exception to the bar of the Anti-Injunction Act, the first of the three exceptions enumerated in the Anti-injunction Act when Congress re-enacted it, for injunctions "to stay proceedings in a State court" that are "expressly authorized by an Act of Congress...." 28 U.S.C. § 2283

We mention this at the outset of this brief because this unanimous decision and the exception that it holds applies to 42 U.S.C. § 1983 are not mentioned in the first five (5) pages of the section entitled "ARGUMENT" in the brief in support of the defendants' motion to dismiss the case of the undersigned beginning at page 6 of the defendants'

1

support memorandum and continuing through most of page 10 of the memorandum. It is as if the first exception listed in the Anti-injunction Act did not exist. The entirety of these first almost five (5) pages of the ARGUMENT section of defendants' brief are taken up in their entirety with a discussion of the third exception listed in the Anti-injunction Act, a discussion which, to at least a significant extent, would seem to be moot at this point.

But that argument would seem to affect only Count One of the complaint. For that is the only complaint concerned with issue preclusion. It is concerned with issue preclusion as a subset of the concept of *res judicata*. The other counts of the complaint are focused on claims other than *res judicata*. The argument in the five (5) pages of the ARGUMENT section of the brief which we have just mentioned would seem to have no applicability to counts two through four of the complaint, which are counts invoking 42 U.S.C. § 1983. Nor would it seem to have any applicability to the other count of the complaint, the count invoking 42 U.S.C. § 1981.

In speaking of the complaint, we speak of what would seem to be the operative complaint, plaintiffs' first amended complaint, Document 5, as filed June 16, 2006, rather than the example given as an attachment to Document 7, in opposing the earlier motion to strike which the defendants filed. A Rule 12(b)(6) motion such as we presently address in this opposition is, after all, addressed to the complaint as filed. By that we mean that it is not addressed to what the defendants might perceive as the position of the plaintiffs rather than the complaint itself and certainly not to characterizations of the complaint apart from its actual test as filed. Further, we address here the arguments actually made by the defendants in their instant motion, not other arguments which they might make, as

2

to which the plaintiffs could only speculate. We would hope that the Court would confine itself to ruling upon what the defendants actually have presented and argued and the plaintiffs' opposition to it as presented in this brief and not make any *sua sponte* decisions regarding other possible issues which might have been raised without allowing an opportunity for them to be fully briefed. The particular issue which we deal with in this part of the brief, for example, is that raised by the defendants. There are no doubt other related issues that could be raised which we do not address because to do so we require speculation.

Before looking then to the text of the complaint we note parenthetically that it would make no substantive difference if we were to examine the attachment we have just mentioned to Document 7 rather than Document 5 for purposes of the present analysis although we also note that there is an obvious error in the examplar complaint attached to Document 7 in that what should be Count Five is mistakenly labeled as Count Seven.

The complaint begins in its very first paragraph by stating that the plaintiffs are bringing suit pursuant to 42 U.S.C. § 1983 and lists the federal constitutional rights that the plaintiffs contend are being violated under color and authority of the laws, customs and practices of the District of Columbia. The opening paragraph mentions that the plaintiffs are also bringing suit upon 42 U.S.C. § 1981.

Paragraph 4 of the complaint then goes on to say:

> 4. The gravamen of the case pursuant to 42 U.S.C. § 1983 is the deprivation of the rights of these plaintiffs by the municipal courts of municipality of the District of Columbia through administrative and judicial practices, policies and customs of the courts of the District of Columbia, which, even where pronounced by judges or judicial panels, are decisions of policy the administration of cases rather than decisions of straight substantive law.

3

Thus each count of the complaint is brought pursuant to 42 U.S.C. § 1983 and is, according to the Supreme Court decision in *Mitchum v. Foster, supra*, within the specific exception to the Anti-injunction Act for cases where the Federal Statute invoked is of such a nature that injunctive relief is available to the private litigant seeking to enforce that statute. This is particularly true of Counts Two, Three and Four of the complaint, each of which alleges in some detail specific violations of federal rights of the plaintiffs under color and authority of the policies, laws, practices and customs of the municipal courts of the District of Columbia.

Thus the instant motion ignores the actual language and text of the complaint and incorrectly asserts that the "relitigation exception" in the Anti-injunction Act is the only exception of that Act at issue. So that the defendants conclude their argument on the Anti-injunction Act toward the bottom of page 10 of their memorandum by asserting that "Plaintiffs' claims for declaratory and injunctive relief against these Defendants must be dismissed as barred by the Anti-Injunction Act." Yet the argument leading to this conclusion, as we have shown, is based entirely upon the erroneous and mistaken premise that the only exception to the Anti-injunction Act at issue is the "relitigation" exception, which is not the case. The gravamen of the plaintiffs' case as alleged in the complaint, and by far the more important exception invoked in the suit is the exception for federal statutes where the congressional intent makes clear that litigants are entitled to injunctive relief against state agencies, including courts in order to insure that the intent of Congress is not blocked or frustrated.

The Supreme Court, in its unanimous decision in *Mitchum* went into the history of the development of the Klu Klux Klan Act in order to illustrate why that Act allowed

4

litigants to enjoin state court proceedings.  See *Mitchum v. Foster, supra*, 407 U.S. at 238-42.  See particularly the following passage:

> It is clear from the legislative debates surrounding passage of § 1983's predecessor that the Act was intended to enforce the Fourteenth Amendment "against state action,… whether that action be executive, legislative, or *judicial*." Ex parte Virginia, 100 US 339, 346, 25 L Ed 676, 679 (emphasis supplied).  Proponents of the legislation noted that state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights. *Id.*, 407 U.S. 240

Further, the *Mitchum* unanimous court went on to say:

> The legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts. *Id.*, 407 U.S. at 242

In setting out this legislative history of the Klu Klux Klan Act the *Mitchum* court recited a quote from Representative Perry that seems particularly pertinent to the present situation:

> "…; judges, having ears to hear, hear not; witnesses conceal the truth or falsify it;… all the apparatus and machinery of civil government, all the processes of justice, skulk away as if government and justice were crimes and feared detection.  Among the most dangerous things an injured party can do is to appeal to justice." *Id.*, 407 U.S. at 241

And so here all we the undersigned have seen so far is judges protecting judges, which is manifestly a rule of men rather than of law.  We have seen the processes of justice "skulk away" now for over twenty years.

Moreover, we do not seek to "interfere with the enforcement of judgments at law rendered in the state courts," so much as we seek to have the municipal courts of the District of Columbia apply the law in the first place and cease avoiding it in violation of

5

our federal rights. See *Mitchum, supra*, 407 U.S. 232 n.10 the discussion of the views of Attorney General Edmund Randolph at the time of the passage of the Anti-injunction Act.

Further, the legislative history of the Klu Klux Klan Act as set out by the unanimous opinion in *Mitchum* makes clear also that the same legislative history and purpose to "alter" the relationship between States and the Nation applies to 42 U.S.C. § 1981. In fact, as noted in the legislative history discussion in *Mitchum*, the Klu Klux Klan Act was modeled on the earlier Reconstruction civil rights act. The plain, directly applicable language of 42 U.S.C. § 1981(a) is that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory ... to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,..." Further, in a clear echo of the language of 42 U.S.C. § 1983, 42 U.S.C. § 1981(c) says: "The rights protected by this section are protected against impairment nongovernmental discrimination and impairment under color of state law." It has never been the case that the Anti-injunction Act was a barrier to suits to protect the infringement of rights protected by 42 U.S.C. § 1981.

There was never a split in the circuits on this point that required a decision such as *Mitchum v. Foster, supra*. And the right to bring suit under 42 U.S.C. § 1981 extends to those helping a member of a minority or group of different national origin than the "white people" referred to in the statute when that member of the minority or group of different national origin is harmed in violation of the Act as well as affording its protection to the member of the group. This was decided by the Supreme Court in *Sullivan v. Little*

6

*Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) where it was held that a white person who has been `... punished for trying to vindicate the rights of (non-white) minorities ...' has standing to sue under § 1981. *Id.*, 396 U.S. at 237, 90 S.Ct. at 404. So here we, the Hemenways, have as much standing to sue for the discrimination alleged in the complaint as does our co-plaintiff, Thanh Vong Hoai. See the discussion in a case from this court in *Glymph v. District of Columbia*, 211 F. Supp.2d 152, 154-156 (D.D.C. 2002)..

Therefore the present motion must be denied because it is based in its largest part on false premise that the only basis for our complaint is the "relitigation exception" to the Anti-injunction Act 28 U.S.C. § 2283. In plain fact it is principally reliant upon the fact that Congress intended, during the Reconstruction Era, in passing what is now 42 U.S.C. § 1983 and also in passing what is now 42 U.S.C. § 1981 in fundamentally altering the relationship between the States and the Nation, to enable litigants who have been treated in state courts as we have been treated in the municipal courts of the District of Columbia, to enjoin activity in those courts.

## THE ISSUE OF JUDICIAL IMMUNITY

Plaintiff's concede that since the 1996 amendments to 42 U.S.C. § 1983, inasmuch as they have sued judges, they are confined to seeking declaratory relief first, must allege its unavailability to them in the municipal courts and can only get injunctive relief in the absence of the ability to obtain a declaratory judgment. This the language of the statute since the 1996 amendments: "except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was

unavailable." Here is the pertinent part of the legislative history from 1996 USCCAN 4216-7, which is now usually quoted in opinions on this point:

> This section does not provide absolute immunity for judicial officers. Immunity is not granted for any conduct "clearly in excess" of a judge's jurisdiction, even if the act is taken in a judicial capacity. Moreover, litigants may still seek declaratory relief, and may obtain injunctive relief if a declaratory decree is violated or is otherwise unavailable.

These plaintiffs have sought declaratory relief in their prayers in all five counts of their complaint. They have specifically invoked the Federal Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202 in opening their complaint in ¶ 2 of the complaint. They have alleged in great detail how the municipal courts of the District of Columbia have made a practice, custom and rule that no longer will decisions early in a case be vacated or changed even if they work a manifest injustice or are clearly in error and how that was used here to sacrifice the right of the plaintiffs to have their case heard in order to protect early decisions that were both clearly erroneous and worked a manifest injustice. See Section V of the complaint starting at page 6. They have alleged in detail the decisions that were clearly erroneous and worked a manifest injustice. See Section X of the complaint, starting at page 19, Section XI starting at page 22. Section XII starting at page 33, Section XIII starting at page 25. Section XIV starting at page 33 makes clear that there is no declaratory relief available through the D.C. municipal courts.

Further when a Superior Court judge declared a plan to split the claims between D.C. and federal and the plaintiffs, who had no real choice in the matter, followed that declaration, they were deprived of due process, when, upon returning from the federal courts to try their separated claims, they were denied the right to try their non-federal claims against the defendant Sun, a further clearly erroneous decision working a manifest

injustice that the defendants have refused to correct. See Section XV beginning at page 35 and Section XVII beginning on page 42. And see particularly Count Two. And see Count Three specifically requesting declaratory relief and injunctive relief because there is no declaratory relief available in the D.C. municipal courts.

Further, the shift in the 1996 amendments from a right to sue only for judicial acts where there is no jurisdiction to the right to sue for judicial acts "in excess of jurisdiction" empowers Count Four and Count Five of the complaint in particular. No longer are judges free to disobey the Constitution as they were. To send us to the federal court to try our claims separately as the Superior Court did and tell us that when we were through in the federal courts we could come back, lift the stay and try "what was left" and then deny that right is plainly beyond the jurisdiction of the judge who denied us that right upon our return. A judge does not have the right to knowingly violate the right of due process and to be heard and have access to the courts in this fashion nor does he have the right to deny these fundamental rights to a member of an ethnic minority and those seeking to assist him. To do so knowingly exceeds his jurisdiction.

We will revise our complaint again to sharpen these contentions and make clear that we seek no money or costs from judicial offers not acting in excess of their jurisdiction in accordance with the 1996 amendments of which we speak and that we seek declaratory relief and injunctive relief only where declaratory relief, it has been made clear, is not available.

## THE NAME USED FOR THE DEFENDANTS

The cases cited by the defendants properly point out that amendment is the cure for any belief that, although the Court of Appeals has not ruled on the point, the District

9

must be named as the District rather than the judicial agencies and the judges. We allege in the complaint at ¶ 6 the Galloway case showing that the Superior Court has been sued by name in this Court. And a ninth circuit case has pointed out that a judicial administrative body can be sued in its own name. See *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004) See also *Smith v. Oakland County Circuit Court*, 344 F.Supp.2d 1030 (E.D.Mich. 2004) where a state court was sued in its own name.

Finally we would not that the heightened standard applied to antitrust cases by the Supreme Court does not alter the rule that where, as here legal claims are pled backed by copious detailed allegations of fact that recite actual occurrences and not unsupported conclusions, the allegations of the complaint must be taken as true.

Respectfully submitted

_____
John D. Hemenway, *pro se*
4816 Rodman Street, NW
Washington, DC 20016
(202) 244-4819

_____
David Hemenway, *pro se*
4816 Rodman Street, NW
Washington, DC 20016
(202) 244-4819

_____
Thanh Vong Hoai, pro se
2820 Poag Street
Alexandria VA 22303
(703) 768-9505

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing to be served by first class United States mail, postage prepaid, this 24th day of September, 2004 upon counsel of record.

_____
John D. Hemenway