SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

## ATTACHMENT #1

| THANH VAN VO, et al., | ] |
| Plaintiffs, | ] |
| | ] |
| v. | ]   Civil Action No. 07075-86 |
| | ]   Calendar I |
| THANH VONG HOAI, et al., | ]   Judge Dixon |
| Defendants. | ]   Next event: this status conference? |

### MOTION FOR A STATUS CONFERENCE

We, the undersigned, acting *pro se*, request of this Court a status conference in this case, which has now been pending since August of 1986, or for over 20 years. There are motions in the case that have gone unruled upon for years. Some of them are dispositive. For example, on August 25, 1989, the undersigned filed through the then attorney for Thanh Vong Hoai and David Hemenway, with John D. Hemenway signing *pro se*, a motion to enjoin the complaint of Vo because it was filed in violation of a settlement agreement. A transcript of the conversation embodying the settlement agreement was an attachment. It has now been pending for almost eighteen (18) years. Another, more comprehensive motion to dismiss Vo's complaint has been pending now for over seven (7) years, or since May 2, 1998.

It has been mentioned to us by opposing counsel both before when two of us were still represented by counsel, with only John D. Hemenway proceeding *pro se*, and since, that this Court has shown some acknowledgement of the impropriety of outstanding motions being unruled upon for so long. But we are interested even more in the apparent willingness of this Court to deprive us of our rights of due process and discriminate against Thanh Vong Hoai as one of us who is of an ethnic and racial minority in this country and also against the two of us who are Hemenways for having come to his aid

1

when he was beset by a group of vicious individuals of whom the plaintiff in this cause was a ringleader and for persisting in assisting him as he has fought to bring those who have wronged him to justice..

We note that Thanh Van Vo, the plaintiff and counterdefendant has not been seen or heard from for more than eight (8) years and possibly longer than that. A third-party defendant, Minh, we believe, returned to Viet Nam where he was killed by agents of the communist regime. His wife Minh, also a third-party defendant, has disappeared and My-Linh Soland, another third-party defendant, has served time in federal prison for violating the immigration laws. Thus the group that set upon the undersigned, Thanh Vong Hoai, and (Hoai speaking) took my service station franchise and my food business that my wife and I operated, has been broken up and it seems to be discriminatory against me, Thanh Vong Hoai, that I cannot get justice in this Court, particularly against Sun for its part in cooperating with such a gang to my harm. I was Sun's own dealer at that time as now determined by federal court decision,

In this regard we, all three of us, are most concerned with this Court's apparent unwillingness to deal with the law of the case doctrine as it applies to Judge Weisberg's having split the claims in the case and having induced us to try our federal counter and third-party claims in the federal courts, which we did do while matters in this Court were stayed as he had suggested. He promised us that we could return here and try what was left after we tried the federal claims in federal courts. Yet this Court has resolutely refused to deal with this issue. To allow Judge Weisberg to split our claims between federal and common law or state law claims and try the federal claims in the federal court while reserving the non-federal claims, with action stayed, in this Court upon his

2

statement and promise that we could try the common law tort type counts and state statutory counts, here, and then, when we finished in the federal courts and had the stay here lifted, to tell us that his promise was no good strikes us as clear error and, more importantly, a manifest injustice. This ability of a judge to split the claims in a case is a recognized exception in the Restatement of Judgments that is established in the case law and yet it has been absolutely ignored to date in this case.

We did try the federal counts in the federal courts as Judge Weisberg implored us to do and, during the time that we did that, matters in this court were stayed as Judge Weisberg had stated that they would be. But when we finished in the federal court, where the success was in Thanh Vong Hoai's case against Sun under the Federal Petroleum Marketing and Practices Act (PMPA) 15 U.S.C. § 2801 *et seq.*, this Court then ignored the splitting of the claims between state and federal courts that Judge Weisberg had imposed upon the case and had thus made the law of the case. This Court did this when Sun moved for summary judgment immediately upon our reopening of this case after the long stay. Sun also revived an earlier motion from before the stay and asked to be dismissed on alleged grounds of expiration of the statute of limitations that had no basis because Sun did not set forth correct information about the filing of the case and because it tried to subsume the common law counts filed against under the Federal Petroleum Marketing Practices Act ("PMPA") and conflate what Judge Weisberg had split.

Sun's motion for summary judgment in its favor was premised solely on the grounds that when in federal court we had not brought the very state law and common law counts that Judge Weisberg had made us keep here in this court separate from our

federal claims. A large part of his rationale in imploring us to separately try our federal claims in federal court was, as he put it, to "simplify" the case in this court. Obviously, the case in this court would not be simplified if all our counter and parallel third-party claims were brought in the federal court. For that would have eliminated our claims in this court, not simplified them. Sun, in moving for summary judgment and dismissal on the grounds that it did, deliberately avoided mentioning that this splitting of the claims by Judge Weisberg. This splitting of the claims was not a choice by us subject to the doctrine that Sun cited, but was rather the choice of Judge Weisberg, imposed upon the case and upon us by a judge of this very same court and was thus the law of the case.

This Court has now, for years, avoided addressing what Judge Weisberg said and did and has refused completely to discuss and analyze the law of the case that he set out in thus splitting the claims. At one point it promised in order to address the merits of Sun's summary judgment attempt but it in fact has never done so. We ask that it now do so, almost nine (9) years after we put this issue squarely before the Court.

Sun sought summary judgment of dismissal from this case precisely because we did what Judge Weisberg said to do and did not ignore what Judge Weisberg had told us to do, namely, split the claims in this case between state or common law claims on the one hand, and federal claims on the other and try the latter in the federal courts while the former where stayed and pending in this court on the promise of Judge Weisberg that they would be tried as what was "left over" when we finished in the federal courts.

In asking to be dismissed from this case based on what it alleged was our failure to bring the non-federal claims in the federal court, Sun did not reveal to this Court what Judge Weisberg had done, but instead briefed the matter as if Judge Weisberg had never

done what he did. Sun completely failed to inform this Court of Judge Weisberg's splitting of the claims and imposing upon us the necessity of trying the federal claims in federal court in order, as he put it, to simplify this case. This amounted to attempting to "mouse trap" us for obeying the law of the case doctrine as established by Judge Weisberg. Why is it that you will not address this point? If you will not address it will you certify the issue to the Court of Appeals under Rule 54(b)? Your decision to help Sun is but interlocutory at this point and cannot be addressed by the Court of Appeals at this stage without such certification. As an interlocutory decision it is subject to being vacated or reversed at any time before trial, particularly because, in the words of many cases going back a long ways it is a decision that is clear error and works a manifest injustice, this last particularly because it was a "mousetrapping," and as such is beneath the dignity of the Court to bless with an unexplained decision completely lacking in factual basis, analysis and reasoning and is a wrong decision that should be faced and corrected. We would like the opportunity, as *pro se* litigants, to discuss this matter with the Court. We do not understand while you will not face this issue. The refusal to face it we hope does not reflect a favoritism for Sun and a feeling against us that has become so deep that it alters your objectivity in dealing with our case. Any objective analysis of what Judge Weisberg said and what he induced us to do based on what he said, we believe, would result in your allowing not just Mr. Hoai, but the other two of us as well to proceed against Sun for the tort-type wrongs that it did us in decided to cooperate and collude with the now disappeared plaintiff Vo when he was one of the ringleaders of the Vietnamese gang that took over Mr. Hoai's businesses and threatened him with violence and death.

Respectfully submitted,

_____
Thanh Vong Hoai

_____
John D. Hemenway

_____
David Hemenway

### Rule 12-I Certification

I hereby certify that I have tried to contact Robert J. Pleshaw, attorney of record for the missing plaintiff and counterdefendant Thanh Van Vo, and that he has refused to communicate with me and that I have contacted J. Gordon Forester, attorney of record for Sun Refining and Marketing (Sun) and he does/does not consent to this motion and and that I have contacted _____ attorney of record for My Linh Soland and he does/does not agree to this motion

[signature or signatures]

### CERTIFICATE OF SERVICE

We hereby certify that we have served by U.S. Mail, first class, postage prepaid, a true and accurate copy of the foregoing upon the following:

J. Gordon Forester

Robert J. Pleshaw

_____  _____
Thanh Vong Hoai                John D. Hemenway

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### A. WHEN A JUDGE SPLITS THE CLAIMS

The Restatement of Judgments 2d sets out the General Rule that claims with their genesis in the same events may not usually be split. However, the Restatement also recognizes the exception to the general rule that a judge may split the claims in a case, reserving certain ones for further litigation after others are decided, often in a different forum, as Judge Weisberg did here. At the point where that issue came up in this case that exception in the Restatement was pointed out by the undersigned. That was in a supplemental memorandum specifically addressed to the issue and filed on June 11, 1998. That was after this Court granted a motion to reconsider its granting of Sun's motion for summary judgment against our third-party claim against Sun. The Court granted that motion because of defects in the earlier granting of Sun's motion such as calling the earlier Sun motion unopposed when in fact the Court just had not waited until the time for an opposition had run and Sun's improperly scheduling the hearing for the motion  That Order granting reconsideration was dated June 5, 1998 and it noted that a separate order treating of the merits would be issued later. However, it does not appear that the merits ever were considered.

Our supplemental memorandum setting out what Judge Weisberg had done in splitting the claims of the case and why, therefore, Sun's request to be dismissed in summary fashion for our having split the claims and not brought them all in federal court was without a basis and its omission of what Judge Weisberg had done was an attempt to mislead the Court was filed on June 11, 1998, in a few days after the Court's granting of the reconsideration. As attachments to this supplemental memorandum which was

addressed specifically to the issue of a judge in a case splitting claims as an exception to the general rule concerning the necessity of bringing all claims in a single action we set out the pertinent transcript excerpts from the two hearings in which Judge Weisberg made it clear that he wanted the claims split in this case into federal and non-federal claims. He made it clear that he wanted the federal claims tried in federal court while the non-federal claims were stayed in this court during that process and then we were to be permitted to return to this court to try all non-federal claims that were left after matters were resolved in the federal courts. For the Court's convenience, we attach a copy of that brief to this brief so that the Court may see that we squarely put before it the exception of which we speak as set out in the Restatement. On the very first page we specifically set out the section, § 26(1)(b) which states the exception as follows:

§ 26. Exceptions to the General Rule concerning splitting.

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part of or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> > (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
> >
> > (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action;...

The reservation of our rights to pursue the non-federal claims in this Court by Judge Weisberg can scarcely have been more express. Here is what he said in one of the two hearings, the one from September 1988, in the excerpt from that hearing that we attached to the memorandum of June 11, 1998: "Speaking only to the question of whether we can simplify the Superior Court litigation without depriving you in any way of your

8

right to litigate the rest of it, perhaps after the Federal Court case runs its course, is there any way you can think of to do that?" Coming from the judge at that time in charge of this case, this is not a "mere suggestion," it is a command. Moreover, it is a promise that if we were to go forward in the federal courts to a conclusion, which we did, our rights to litigate the non-federal claims that we have brought in this court against counter and third-party defendants are claims that we will not be deprived of "in any way," yet that is just what this Court has done.

The same splitting of the claims between federal and non-federal claims was again put forth by Judge Weisberg in the following year at another hearing in this court on this case on March 14, 1989. If the court will look in its files it will see that the pertinent extracts from the transcript of that hearing are also attached to the memorandum that we filed on June 11, 1998. Not only did Sun neglect to mention this splitting of the claims by Judge Weisberg in filing for summary judgment, it did not then or later cite any case as dealing with the exception to the general rule regarding not splitting claims where the splitting of the claims is imposed upon the litigation by a judge. There is substantial federal case law dealing with this exception which we would like this court to address, including a case cited by Sun as supporting the opposite conclusion of the point Sun cited it for, a decision by our own Court of Appeals.

That decision is *Washington Medical Center v. Holle*, 573 A.2d 1269, (D.C.App. 1990). *Holle*, as it has become generally known, is the case in which the District of Columbia Court of Appeals recognized the exception as set out in the RESTATEMENT OF JUDGMENTS 2d § 26(b)(2) where the judge in an earlier case splits the claims by an express statement so that some are tried but others are reserved to be tried subsequently

as occurred here when Judge Weisberg split the claims at the hearings to which we refer. However, as is commonly done, the opinion in *Holle* stated the exception of § 26(b)(2) after first citing the general rule as set out in § 24 of the Restatement. Since the *Holle* opinion first sets out the general rule and then states the "well known" exception it can be cited for the general rule as well as the exception and sometimes is. Here Sun cited *Holle* along with leading cases that only set out the general rule without the exception being in issue when Sun filed its summary judgment motion in this case. Thus Sun either did not actually read the *Holle* opinion or, if it did read the opinion, chose to ignore what it principally stands for, the recognition of the § 26(b)(2) exception for the situation where a judge splits the claims. The latter course would be consistent with its failure to mention, in seeking summary judgment based on an alleged required failure to bring all the claims in the federal court, that Judge Weisberg had split the claims in the case back when it first began in the 1980's. Sun was careful to mention a passage in which Judge Weisberg had criticized former counsel and John D. Hemenway in one of the hearings before him, indicating that it was able to research what he said when it came to a gratuitous attempt to smear opposing counsel so as to bias the Court, an impropriety this Court let slide. (We would not that what Judge Weisberg criticized counsel for in that hearing was the very point then won on summary judgment in the federal court when matters did proceed there after Judge Weisberg split the claims.)

This exception of § 26(b)(2) is well recognized in the federal case law in the Article III courts to which we look for guidance as well as by our District of Columibia Court of Appeals. It has been recognized in the First Circuit in *Apparel Art International, Inc. v. Amertex Enterprises, Ltd.*, 48 F.3d 576, 585-586 (1st Cir.1995), and

by the Seventh Circuit in a number of cases, *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir.2002) (recognized and applied because, as here, the reserving language was a clear expression); *In the matter of Energy Cooperative, Inc.*, 814 F.2d 1226, 1233-34 (7th Cir.1987) (recognized but not applied because the language was not a clear expression); *D & K Properties Crystal Lake v. Mutual Life Insurance Company of New York, Inc.*, 112 F.3d 257, 259-60 (7th Cir.1997) (Exception recognized but language not specific enough). There is a Fifth Circuit case as well and there has been an unreported opinion in the Sixth Circuit that is referred to in one of the Seventh Circuit opinion.

We cannot understand why you have refused to deal with the exception here and with the clear expression of Judge Weisberg that we should split our claims between the federal and non-federal claims and pursue them in the two separate systems. Prior to the first hearing where Judge Weisberg told us to split the claims, in August of 1998, we filed our counter and third-party claims with our answer to Vo's complaint, and there were a number of tort-type common law claims against Sun. Later we amended the complaint at this court's request. We put in the federal claims at one point to protect ourselves and then, after we were able to go forward in the federal court, took them out. But the common law, tort-type claims have been here since before Judge Weisberg decided to split the claims, contrary to assertions made by Sun.

At this point we believe that you are a judge with a conscience but that for reasons we do not completely understand you have decided for years now to protect Sun and harm us, refusing to apply the law and particularly refusing to deal with the fact that

Judge Weisberg split the claims in this case back in 1988 and 1989. The only reasons for this seem to be a favoritism toward Sun based on a friendship with its counsel.

The effect is to, objectively, discriminate against us because Hoai is Vietnamese as opposed to Sun as part of the non-Vietnamese establishment along with its counsel, a man whom you know on a first name basis because of his political activities with the organized bar. Sun's counsel could have had this case dismissed as against Sun at the outset had he simply informed his client that the local statute, the RSSA, absolutely bars someone in Vo's position from suing a franchisor, but he chose instead to have his client collude with Vo, knowing, as Sun did through Peele and others of its officers, that Vo was the leader of a group that was threatening its dealer with physical violence. Contrary to Sun's misrepresentations there is no preemption by the PMPA of the common law torts that such knowing collusion with a thug comprises. Why do you not face the reality of this and of the fact that Judge Wiesberg split the claims in this case between those common law torts and offenses and the now-established violation by Sun of the PMPA. The effect is to deprive us of our most fundamental rights of due process and our ability and right to petition for the redress of our grievances, all in violation of 42 U.S.C. § 1983 as well as violating Mr. Hoai's right to be free of discrimination under statutory law and the Constitution as well as the Hemenway's right to also be free of such discrimination for coming to his assistance. We would like to be able to have a hearing and discuss these matters.

_/s/ Thanh Vong Hoai_
Thanh Vong Hoai

_/s/ John D. Hemenway_
John D. Hemenway

*David Hemenway* (signature)
David Hemenway

## APPENDIX: CHRONOLOGY OF EVENTS LEADING TO THE CLAIMS

1. In the months leading up to April 10, 1986, Thanh Vong Hoai, a former intelligence officer in the Army of the Republic of South Vietnam and liaison with American military intelligence in that capacity, enters into discussions with Sun to become their franchisee and dealer at a Sun franchise located at Pennsylvania Avenue, SE, Washington, D.C. Hoai had to flee when we abandoned his country to the communists and was resettled in a refugee camp in Oklahoma where he was trained by Phillips 66 in Service station operation and management, going on to work for major oil companies, including for Sun as a manager of company owned stations and then leaving Sun to operate several franchises as a dealer, including a previous Sun franchise in Prince Georges County, Maryland.

2. During this period leading up to April 10, 1986, Hoai meets Thanh Van Vo, another Vietnamese in American living in this area who claims to Hoai that he is a successful businessman who owns a large construction company and has owned and operated service stations and who, he claims, likes to lend funds to other aspiring Vietnamese businessmen trying to make it in America to help them get started. Ultimately, none of these representations, as it turns out, are true by Hoai accepts them at face value and introduces Vo to the late Ernest "Ernie" Peele, then the Sun Area Representative and the man with whom Hoai is negotiating on scene for the Pennsylvania Avenue SE franchise. Sun imposes a requirement of $70,000.00 in the bank in order for Hoai to obtain the franchise. Hoai raises half of this within his family and accepts the proffered loan from Vo for the other half.

3. After Hoai opens the Sun franchise and he and his wife are operating the food business in Arlington, Vo and Thach, who falsely represents himself as owning a local bank, bar Hoai from access to the station's bank account in the guise of protecting Vo's loan (the loan does not exist). Soon Vo brings young toughs known as "cowboys" into the station and Hoai is threatened with violence and even death if he comes to his own station. In the food business, Minh and Luu, the purported sellers, stall the purchase for months. Unbeknownst to Hoai and his wife, they are acting in concert with Vo through Thach. Eventually there too Hoai is threatened with violence and murder. Young "cowboys" with Texas plates show up and, with threats of physical violence, eject Hoai and his wife from the business, taking their inventory which is all their investment in the business that they thought that they were going to be able to buy.

4. Sun, whose personnel are told by Hoai about the threats, insists that Hoai reoccupy the station or lose his franchise. Hoai's first lawyer, Soland, the present third-party defendant, unbeknownst to Hoai, is actually an attorney for Minh and Luu. She pretends to be helping Hoai while secretly assisting his oppressors.

5. Hoai, his car stopped on the side of the road, is assisted by David Hemenway, who happens to be passing by. Hoai tells David Hemenway of his plight. David

Hemenway introduces Hoai to John D. Hemenway, a member of the bar. They undertake to assist Hoai in his plight.

6. In late August of 1986, after meeting with Ernest Peele, late Sun Area Representative, and obtaining Peele's signature on a notice to surrender the premises, Hoai and the two Hemenways go to the station and ask those there to leave so that Hoai can have his station back as the legitimate dealer. Vo is not there but a cousin of his Phuly Vo, calls the police, with the approval of Hoai and the Hemenways and the police come and witness the individuals there leaving, some taking their equipment and tools.

7. The next morning, Vo returns from Toronto, where he had been when Hoai and the Hemenways entered, with a gang, including individuals brandishing weapons such as knives, and attempts to retake the station by force. Hoai and David Hemenway are there and they take refuge in the station building, whose doors they lock The gang tries to break in through the roof and rear. Inside David Hemenway calls 911. The police come, as do John D. Hemenway and Vo's lawyer, Arif. There is a verbal confrontation and the parties agree to meet the next day and have Ernest Peele there as Sun's Area Representative, to state who is the owner of the franchise, the Sun dealer, and abide by Peele's pronouncement on that point.

8. The following morning the parties meet in the presence of Peele. Peele pronounces that Hoai is Sun's dealer and the owner of the franchise.

9. Vo purports to be abiding by this decision and Arif stays behind for a while at the station purportedly to take an inventory of what Vo purchased in the station's inventory. In reality this is a ruse because Vo obtains other counsel and prepares this suit in its original form (without any count of wrongful eviction) against us and against Sun.

10. Vo files suit and his new attorneys request a TRO. At the TRO hearing, which goes on for two days because the judge, Judge Wagner, has to break off the first day to go to the hairdresser's, Judge Wagner ignores testimony of Peele about the plaintiff and his colleagues talking of breaking Hoai's legs and announces that what she is interested in is wrongful eviction, an area of law she is familiar with from private practice and makes it clear that she thinks Sun, Hoai and the Hemenways have engaged in wrongful eviction. Vo and his attorneys obligingly follow her predisposition and agree to seek such a charge. She grants a TRO for wrongful eviction to last for 10 days and requires a bond..

11. Vo, despite his lawyers promising cash or counsel check, "posts" the bond with an NSF check drawn of the account of the account of the station.

12. As the TRO approaches expiration, Sun and Vo, without notifying Hoai or the Hemenways or their counsel, makes a private agreement with Vo to hand over the franchise to him under the pretense that the judge made them do it. Taking advantage of the then procedure for a judge-in-chambers, they get another judge to sign this private agreement as a "Consent Order," although only they have consented to or even been notified of it..

13. Under the guise of having to obey this private agreement, Sun effectively gives the franchise to Vo for the rest of its term, then notifies Hoai that his franchise is being terminated because of his troubles with Vo. Eventually Hoai obtains a judgment against Sun in federal court for wrongful termination under the PMPA.

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| THANH VAN VO, et al.,<br>    Plaintiffs,<br><br>v.<br><br>THANH VONG HOAI, et al.,<br>    Defendants. | ]<br>]<br>]<br>]  Civil Action No. 07075-86<br>]  Calendar I<br>]  Judge Dixon<br>]  Next event: this status conference? |

ORDER

The Court, having considered the motion of the defendants and counter and third-party plaintiffs for a status conference, and the opposition thereto and the reply to that opposition, and argument on the same, now hereby,

GRANTS the motion, and a status conference will be held in this case on _____.

 

_____
Herbert B. Dixon, Superior Court Judge